**19-12832**

U.S. COURT OF APPEALS
RECEIVED
CLERK
AUG 28 2019
ATLANTA, GA

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

AUG 28 2019

David J. Smith
Clerk

| | |
|---|---|
| OLUWAMUYIWA AWODIYA, | ) |
| *Plaintiff-Appellant,* | ) Appeal No. 19-12832-DD |
| | ) |
| -v- | ) On Appeal from the United States |
| | ) District Court for the Southern |
| ROSS UNIVERSITY SCHOOL OF | ) District of Florida |
| MEDICINE, SCHOOL OF | ) Case No. 0:18-cv-60482-RKA |
| VETERINARY MEDICINE | ) |
| LIMITED, | ) |
| *Defendant-Appellee.* | ) |

## APPELLANT'S OPENING BRIEF

*Pro se* plaintiff-appellant Oluwamuyiwa Awodiya ("Plaintiff") hereby files

his opening brief.

OLUWAMUYIWA AWODIYA
15005 DAHLIA DR.
BOWIE, MD 20721
PRO-SE

## CERTIFICATE OF INTERESTED PERSONS

1.  Akerman LLP, Law firm for Defendant-Appellee

2.  Altman, Roy K., U.S. District Court Judge

3.  Awodiya, Oluwamuyiwa, *Pro se* Plaintiff-Appellant

4.  Green, Octavia M., Attorney for Defendant-Appellee

5.  King, Donnie M., Attorney for Defendant-Appellee

6.  Marsh, Michael C., Attorney for Defendant-Appellee

7.  Roman, Ryan A., Attorney for Defendant-Appellee

8.  Ross University School of Medicine, School of Veterinary Medicine Limited, Defendant-Appellee

i

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary.

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................................... i

Statement Regarding Oral Argument.............................................................. ii

Table of Contents ......................................................................................... iii

Table of Citations ..........................................................................................v

I.     Statement of Jurisdiction ..................................................................... ix

II.    Statement of Issues On Appeal............................................................1

III.   Statement of the Case ...........................................................................1

      A.    COURSE OF PROCEEDINGS AND DISPOSITIONS BELOW ............................1

      B.    STATEMENT OF FACTS .........................................................................3

           i.    Discrimination..............................................................................3

           ii.   Fraudulent Misrepresentation .....................................................8

IV.   Summary of the Argument ....................................................................8

V.    Legal Standard....................................................................................10

VI.   Argument............................................................................................11

      A.    THIS CASE INVOLVES A DOMESTIC APPLICATION OF THE ADA AND THE
           REHABILITATION ACT. ......................................................................11

           i.    How to Identify a Statute's Focus............................................11

           ii.   The Focus of the ADA and the Rehabilitation Act Is Not Limited
               to Discriminatory Decisions. The Focus Includes the
               Discriminatory Effects of Unequal Services and Activities.....12

           iii.  The Administration of Unequal, Unaccommodated
               Examinations in the United States, Is Conduct Relevant to the
               Focus of the ADA and the Rehabilitation Act..........................15

      B.    THIS CASE INVOLVES ANOTHER DOMESTIC APPLICATION OF THE ADA
           AND THE REHABILITATION ACT BECAUSE THESE CLAIMS DO NOT "END"
           IN DOMINICA. ...................................................................................19

           i.    RUSM Administrators Located Within the United States Should
               Have Instituted a Sixth Examination Attempt with Corrective
               Measures for Testing Accommodations. ...................................19

        ii.    RUSM Administrators Within the United States Also Had a Duty to Act on Plaintiff's Need for Examination Accommodations.22

    C.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S FRAUDULENT MISREPRESENTATION CLAIMS. ..........................................................25

        i.    The Elements of Fraud in the Inducement ...............................25

        ii.    The District Court Misconstrued Plaintiff's Claims ................27

**VII.** **Conclusion** ......................................................................................**30**

## TABLE OF CITATIONS

### Cases

*Allmond v. Akal Security, Inc.*,
  558 F.3d 1312 (11th Cir. 2009) ............................................................12

*Bank of Am., N.A. v. Grec Homes IX, LLC*,
  CASE NO. 13-21718-CIV-ALTONAGA/Simonton (S.D. Fla. Jan. 23, 2014)27

*Binno v. Am. Bar Ass'n*,
  826 F.3d 338 (6th Cir. 2016) ...............................................................17

*Bonnette v. Dist. of Columbia Court of Appeals*,
  796 F. Supp. 2d 164 (D.D.C. 2011)......................................................17

*Butler v. Yusem*,
  44 So. 3d 102 (Fla. 2010) ....................................................................27

*Cote v. R.J. Reynolds Tobacco Co.*,
  909 F.3d 1094 (11th Cir. 2018) ...........................................................26

*Dem. Rep. Congo v. Air Capital Grp., LLC*,
  CASE NO. 12-20607-CIV-ROSENBAUM/SELTZER (S.D. Fla. Jun. 24, 2013)

  ...............................................................................................................27

*Doe v. County*,
  604 F.3d 1248 (11th Cir. 2010) ...........................................................21

*Enyart v. National Conference*,
  630 F.3d 1153 (9th Cir. 2011) .............................................................15

*Feliciano v. City of Miami Beach*,
  707 F.3d 1244 (11th Cir. 2013) ...........................................................10

*Frederick v. Sprint*,
  246 F.3d 1305 (11th Cir. 2001) ...........................................................10

*G Barrett LLC v. Ginn Co.*,

Case No. 5:09-cv-374-Oc-10TBS (M.D. Fla. Dec. 23, 2011)............................27

*Helen L. v. DiDario,*
46 F.3d 325 (3d Cir. 1995) ...............................................................14

*J.S. v. Hous. Cnty. Bd. of Educ.,*
877 F.3d 979 (11th Cir. 2017) ................................................... 20, 21

*Jack Eckerd Corp. v. Smith,*
558 So. 2d 1060 (Fla. Dist. Ct. App. 1990), *review denied,* 577 So. 2d 1321 (Fla.

1991) .........................................................................................26

*Jones v. Nat'l Conference of Bar Examiners,*
801 F. Supp. 2d 270 (D. Vt. 2011) ................................................16

*Liese v. Indian River Cnty. Hosp. Dist.,*
701 F.3d 334 (11th Cir. 2012) ................................................... 20, 21

*McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.,*
768 F.3d 1135 (11th Cir. 2014) .......................................... 19, 20, 29

*McGary v. City of Portland,*
386 F.3d 1259 (9th Cir. 2004) .......................................................14

*Miller v. Donald,*
541 F.3d 1091 (11th Cir. 2008) .....................................................11

*Miranda v. B & B Cash Grocery Store, Inc.,*
975 F.2d 1518 (11th Cir. 1992) .....................................................30

*Morrison v. Nat'l Austl. Bank Ltd.,*
561 U.S. 247 (2010)......................................................................11

*Philip Morris USA, Inc. v. Duignan,*
243 So. 3d 426 (Fla. Dist. Ct. App. 2017)......................................26

*Rendon v. Valleycrest Productions, Ltd.,*
294 F.3d 1279 (11th Cir. 2002) .......................................... 13, 18, 29

vi

*Ricci v. DeStefano,*
    557 U.S. 557 (2009)..................................................................................14

*RJR Nabisco, Inc. v. European Cmty.,*
    136 S. Ct. 2090 (2016)..................................................................... 11, 12

*Schwarz v. Villages Charter Sch., Inc.,*
    165 F. Supp. 3d 1153 (M.D. Fla. 2016)..................................................19

*Singh v. George Washington,*
    508 F.3d 1097 (D.C. Cir. 2007).............................................................24

*Steere v. George Washington University,*
    368 F. Supp. 2d 52 (D.D.C. 2005).................................................. 22, 23

*Thompkins v. Lil' Joe Records, Inc.,*
    476 F.3d 1294 (11th Cir. 2007) ..............................................................25

*U.S. v. Hialeah Housing Authority,*
    418 Fed. Appx. 872 (11th Cir. 2011)......................................................19

*United States v. Atlantic Research Corp.,*
    551 U.S. 128 (2007).................................................................................14

*Von Drasek v. Burwell,*
    121 F. Supp. 3d 143 (D.D.C. 2015)........................................................24

*Westerngeco LLC v. Ion Geophysical Corp.,*
    138 S. Ct. 2129 (2018)..........................................................................9, 11

*Woods v. On Baldwin Pond, LLC,*
    No. 15-13082 (11th Cir. 2015) ...............................................................26

*ZC Insurance Co. v. Brooks,*
    847 So. 2d 547 (Fla. Dist. Ct. App. 2003)..............................................25

## **Statutes**

28 U.S.C. § 1291 ........................................................................................ ix

28 U.S.C. § 1331 ........................................................................ ix

28 U.S.C. § 1332 ........................................................................ ix

28 U.S.C. § 1367 ........................................................................ ix

29 U.S.C. § 701 .......................................................................... 13

29 U.S.C. § 794 ..................................................................... ix, 1

42 U.S.C. § 12101 ........................................................... ix, 1, 9, 13

42 U.S.C. § 12182 .................................................. 9, 13, 18, 29

42 U.S.C. § 12189 ...................................................... 9, 15, 29

**Rules**

Fed. R. Civ. P. 36 ...................................................................... 4

**Regulations**

28 C.F.R. § 36.309 ............................................................... 9, 15

34 C.F.R. § 104.44 ............................................................... 9, 16

## I.    STATEMENT OF JURISDICTION

Jurisdiction is proper in this case under 28 U.S.C. § 1331, as this appeal arises from a judgment dismissing a civil action in the United States District Court for the Southern District of Florida, alleging violations of 29 U.S.C. § 794 and 42 U.S.C. § 12101, *et seq*. Supplemental jurisdiction over Plaintiff's state law claims is also proper pursuant to 28 U.S.C. § 1367. Diversity jurisdiction is also proper pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship and the matter in controversy exceeds the value of $75,000. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered an order granting summary judgment in favor of the defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM") on June 18, 2019. Doc. 210. The District Court entered the Final Judgment order on June 20, 2019. Doc. 211. A notice of appeal was timely filed on July 17, 2019. Doc. 218.

## II. STATEMENT OF ISSUES ON APPEAL

(1) Whether the District Court erred in ruling that Plaintiff's discrimination claims do not involve a domestic application of 29 U.S.C. § 794 (the "Rehabilitation Act") and 42 U.S.C. § 12101, *et seq.* (the "ADA").

(2) Whether the District Court erred in its legal conclusion that because the unaccommodated examinations were administered at an off-campus testing center in the United States, that RUSM is not liable for those examinations.

(3) Whether the District Court correctly concluded that RUSM was entitled to summary judgment on Plaintiff's claims for fraud in the inducement via false statement and omission of fact.

## III. STATEMENT OF THE CASE

### A. Course of Proceedings and Dispositions Below

On July 26, 2018, *pro se* plaintiff Oluwamuyiwa Awodiya filed his third amended complaint. Doc. 47. On August 13, 2018, defendant RUSM filed its answer and affirmative defenses. Doc. 58.

As relevant here, Plaintiff claimed, *inter alia*, that he was "subjected to discrimination" in violation of the Rehabilitation Act and the ADA because of examinations—including the National Board of Medical Examiners Comprehensive Basic Science Exam (the "NBME CBSE" or "COMP Exam")—that were administered without any accommodations for his disabilities. Doc. 58 ¶ 50. Plaintiff further alleged that this was a manifestation of "RUSM's failure to provide the

1

reasonable accommodations." *Id.* Plaintiff also brought claims against RUSM under Florida law, alleging fraud in the inducement via false statement and omission of fact. Doc. 58 at 20.

On August 16, 2018, Plaintiff filed his first motion for partial summary judgment, Doc. 61, against RUSM, which included his failure to accommodate claims, as well as his fraudulent inducement claims. On August 29, 2018, the District Court denied the motion without prejudice to allow the parties to conduct discovery regarding the allegations contained in Plaintiff's motion. Doc. 66.

On December 10, 2018, Plaintiff filed his second motion for partial summary judgment. Doc. 102. On January 4, 2019, RUSM filed its motion for summary judgment. Doc. 120. On March 2, 2019, the District Court, with then-presiding Chief Judge K. Michael Moore, entered an omnibus order where Plaintiff's failure to accommodate claims under the Rehabilitation Act and the ADA survived, as well as his claims for fraudulent inducement. Doc. 154.

On April 11, 2019, this case was reassigned to Judge Roy K. Altman. Doc. 176. Then, on May 15, 2019, the District Court gave notice "to both parties of its intention *sua sponte* to consider the applicability of the ADA and the RA in Dominica." Doc. 191 at 5. On June 18, 2019, the District Court dismissed Plaintiff's failure to accommodate claims, as well as his fraudulent misrepresentation claims. Doc. 210. On June 26, 2019, Plaintiff filed a motion for amended and additional

2

findings. Doc. 212. On July 10, 2019, the District Court construed the motion as a motion for reconsideration and denied the motion. Doc. 217.

**B.    Statement of Facts**

    i.   <u>Discrimination</u>

In May of 2014, Plaintiff enrolled as a medical student at RUSM. Doc. 102-1 ¶ 2. Although RUSM requires its students to begin its medical program in Dominica, Doc. 119-22 at 5, 12, it also requires its students to continue and complete the medical program in the United States, Doc. 119-22 at 6, 13. RUSM also has a campus in Miramar, Florida of the United States that includes "[f]ive classrooms ranging in capacity from 32 to 150 seats." *Id*. at 65. RUSM's administrative offices are also located in Miramar, Florida. *Id*. at 3; Doc. 213 at 5.

On December 31, 2015, Plaintiff was diagnosed with ADHD. Doc. 59 at 30.

The RUSM Director of Student Affairs sent an email to students outlining the process for NBME CBSE (aka COMP Exam) retakes at "Prometric sites." Doc. 213 at 7. Therein the email, the Director of Student Affairs stated: "At the class meeting I promised I would get back with you regarding some information for transitioning to Clinical Semesters." *Id*. For NBME CBSE (aka COMP Exam) retakes, RUSM "will register [students] for the next retake testing window if [they] were to fail [their] first attempt. [The student's] testing permit will then be sent to [their] RUSM email by NBME to be used for schedule [their] sitting date for the exam." *Id*.

3

Students were also advised to schedule their "COMP retake as early as possible as Prometric sites fill-up quickly." *Id.*

RUSM Rule 36-admits[1] that Plaintiff's second through fifth attempts of the NBME CBSE "occurred at Prometric Test Centers in the United States of America." *See* Plaintiff's Requests for Admission No. 71, Doc. 195 at 16.

RUSM Rule 36-admits "that RUSM, not the NBME, is the entity that determines whether its students require accommodations to a disability when taking the NBME CBSE and that this is referenced at Page 2 of Exhibit 10." *See* Plaintiff's Requests for Admission No. 18, Doc. 195 at 5–6; *see also* Doc. 195 at 19 (This is "Exhibit 10" as was referenced in Plaintiff's Requests for Admission No. 18, which states: "This document provides basic information on ordering, fees, and related information to request administration of an NBME subject examination to your students at Prometric Test Centers."). The referenced document states that "[T]he decision to provide an accommodation is still [RUSM's], as it is with locally-delivered NBME web-based examinations." Doc. 195 at 20. It is RUSM's decision to provide its "students who need extra testing time" with "1.25x, 1.5x, or 2x" the amount of time for extended testing time on the NBME CBSE at Prometric Test Centers in the United States. *Id.*

---

[1] "A matter admitted under this rule is conclusively established …." Fed. R. Civ. P. 36(b).

4

Dr. Davendranand Sharma was a campus administrator at RUSM. Doc. 119-22 at 70–71 (see under the "Foundations of Medicine Campus Administration" section). Dr. Sharma was also a professor at RUSM. *Id.* at 71.

Dr. Sharma testified that he has helped other students obtain testing accommodations at RUSM, and that he routinely sends the necessary documentation to the RUSM accommodations office to facilitate that process. Sharma Dep. 27:1–18, Doc. 102 at 102. Dr. Sharma also testified: "The accommodations office ... could override my request, because I'm the one -- or the doctors make the request for accommodation, which is time-and-a-half. You get extra time. We actually put it we want the student to get the accommodation[.]" Sharma Dep. 37:15–21, Doc. 102 at 104.

Dr. Sharma testified that Plaintiff had adequate documentation of his ADHD to get test accommodations. Sharma Dep. 37:9–12, Doc. 102 at 104. Dr. Sharma also testified that he was informed that Plaintiff was running out of time on his exams and that his symptoms, ADHD, and running out of time, were "all connected." Sharma Dep. 23:7–23, Doc. 102 at 101.

It was RUSM's policy that: "Disclosure can be made without consent to RUSM officials with legitimate educational interests who need to review a record in order to fulfill their professional responsibilities. A RUSM official is a person employed by RUSM in an administrative, supervisory, academic or research, or

5

support staff position (including law enforcement unit personnel and health staff)." Doc. 119-20 at 98.

RUSM Rule 36-admits that Plaintiff took the NBME CBSE exam five times without any accommodations for his disability. *See* Plaintiff's Requests for Admission Nos. 16, 53–57, Doc. 195 at 5, 12–13.

In April 2017, Plaintiff was also diagnosed with OCD. Doc. 102 at 40.

Dr. Neils Larsen was a campus administrator at RUSM. Doc. 119-22 at 70. From Miramar, Florida on June 1, 2017, Dr. Neils Larsen sent Plaintiff a letter that states: "If additional information has become available or if you believe university procedure wasn't followed, you may appeal this decision by submitting an appeal to the Dean…. The Dean or his designee will make a final decision …." Doc. 213 at 14.[2] On June 2, 2017, Plaintiff sent an email to Dr. Neils Larsen where he states: "I would also want to ask if it is possible for Ross to set up a proctored NBME exam of any fashion. I have been working diligently on addressing my recent diagnosis and have made remarkable progress…. It would be great if I could take the next

---

[2] At RUSM, an academic dismissal is a process that is not final until the Dean of RUSM makes a final decision or if a student fails to appeal within 15 days of a dismissal notification letter. Doc. 119-20 at 37–38 ("The Dean's decision is final."). The Dean of RUSM testified that this process includes an evaluation of a student's academic performance and/or disability and possible modifications that could allow the student to remain at the school in lieu of making a final decision to dismiss the student. *See* Owen Dep. 9:18-11:13, Doc. 113 at 6–7.

unofficial NBME in an environment that Ross considers adequate enough so that there is no doubt that I can now pass these exams." Doc. 213 at 16.

William Owen is the Dean of RUSM. Owen Dep. 7:20–25, Doc. 113 at 6. The Dean's office is located in Miramar, Florida. *Id.*

On June 12, 2017, Plaintiff's psychiatrist and psychotherapist informed the Dean of RUSM that Plaintiff has ADHD and OCD. Doc. 213 at 20. Plaintiff's psychiatrist and psychotherapist further informed the Dean of RUSM that "[Plaintiff] has had symptoms of the latter for the past 4-6 years but did not understand the nature of the diagnosis until recently. We believe that the anxiety and checking rituals inherent to this condition have been adversely affecting his academic performance in medical school." *Id.*

On June 13, 2017, Plaintiff submitted his Appeal Letter to the Dean of RUSM. Doc. 213 at 22–24. In the Appeal Letter to the Dean of RUSM, Plaintiff stated that "the purpose of this letter is to seek one more chance to take the NBME comp exam…. [M]y objective is to keep this letter relevant to how OCD has influenced my academic performance." *Id.* at 23. On the same page of the Appeal Letter, Plaintiff stated, "I'm the student who never finished an exam on time." *Id.*

The Dean of RUSM testified that he saw and recalled Plaintiff's Appeal Letter and the letter from Plaintiff's psychiatrist and psychotherapist that was sent to him. Owen Dep. 20:21–21:7, Doc. 113 at 9. From Miramar, Florida on June 29, 2017,

RUSM made the final decision to dismiss Plaintiff from the university. *See* Dismissal Letter, Doc. 119-28 at 2.

### ii. Fraudulent Misrepresentation

Continuously between 2012 and 2018, RUSM advertised a statement in the Admissions Requirements section of its website that stated: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *See* Plaintiff's Requests for Admission No. 28, Doc. 195 at 8; *Compare* Doc. 58 ¶ 107, *with* Doc. 47 ¶ 106. RUSM published the advertised statement "for prospective students." Doc. 58 ¶ 106. Plaintiff relied on the advertised statement in his decision to enroll at RUSM. Doc. 102-1 ¶¶ 14, 15.

Matthew Stewart-Fulton was one of the accommodation coordinators at RUSM. Doc. 58 ¶ 17. Dr. Bryan Hayse's was the Associate Dean at RUSM where his "[a]reas of oversight include[s] ... academic accommodations." Doc. 102 at 63.

When Plaintiff was enrolled at RUSM, RUSM did not have a policy that required its faculty to comply with the ADA in Dominica. *See* Stewart-Fulton Dep. 32:1–4, 32:12–19, 34:5–9, Doc. 138 at 52–53; *see also* Hayse Dep. 14:11–18, Doc. 138 at 64. Faculty at RUSM was not provided with "any policy," "any guidance," or "any rules" on how to comply with requests for accommodations. *See* Hayse Dep. 33:11–16, Doc. 138 at 68; *see also* Stewart-Fulton Dep. 34:20–35:1, Doc. 138 at 53.

## IV.  SUMMARY OF THE ARGUMENT

8

The District Court's decision to dismiss Plaintiff's claims under the ADA and the Rehabilitation Act should be reversed because its legal conclusion is contrary to the text of these statutes. When identifying the "focus" of a statute, we must do so as recently explained by the Supreme Court in *Westerngeco LLC v. Ion Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018). Therefore, the focus of the ADA and the Rehabilitation Act must be one that encompasses all forms of discrimination. 42 U.S.C. § 12101(a)(5); 42 U.S.C. § 12182. Nowhere in these statutes does it mention the phrase "discriminatory decision." In fact, even in the absence of a "[d]enial of participation" in services or accommodations, 42 U.S.C. § 12182(b)(1)(A)(i), a disabled individual's mere "[p]articipation in [an] unequal benefit" is itself a form of discrimination, 42 U.S.C. § 12182(b)(1)(A)(ii). Working in tandem with these provisions, the ADA and the Rehabilitation Act also regulates examinations. 42 U.S.C. § 12189; 28 C.F.R. § 36.309; 34 C.F.R. § 104.44(c). This case involves a domestic application of the statutes because Plaintiff's unaccommodated examinations were administered in the United States. Importantly, RUSM is liable for those examinations administered in the United States because RUSM is the entity that selects and controls the manner in which those examinations are administered, that is, with or without accommodations.

The District Court's ruling was also erroneous because this case involves another domestic application of the statutes. RUSM administrators located within

9

the United States continued to fail to accommodate Plaintiff when it was re-informed of Plaintiff's need for examination accommodations, before making its final decision to dismiss Plaintiff from the school.

The District Court's decision to dismiss Plaintiff's claims for fraud in the inducement should also be reversed because it overlooked that reasonable minds can conclude that by choosing to advertise a statement to prospective students regarding a nonexistent policy, RUSM omitted the material fact that no policy actually existed.

## V.    LEGAL STANDARD

This Court "review[s] a district court order granting summary judgment *de novo,* and view all of the facts in the record in the light most favorable to the non-moving party, and draw all inferences in her favor. The Court, however, will not make credibility determinations, nor weigh the parties' evidence. Summary judgment is only proper if there are no genuine disputed issues of material fact, and the moving party is entitled to judgment as a matter of law." *Frederick v. Sprint*, 246 F.3d 1305, 1311 (11th Cir. 2001) (citations omitted). This Court "may also choose to disregard a district court's determination of the facts for summary judgment purposes and determine those facts [itself]." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 n.5 (11th Cir. 2013). "[P]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be construed

10

liberally." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted).

## VI.  ARGUMENT

### A.  This Case Involves a Domestic Application of the ADA and the Rehabilitation Act.

"If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's 'focus.' If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).

#### i.   How to Identify a Statute's Focus.

The Supreme Court recently explained how to identify a statute's focus in *Westerngeco LLC v. Ion Geophysical Corp.*, 138 S. Ct. 2129 (2018). The Supreme Court explained that "[t]he focus of a statute is 'the object of its solicitude,' which can include the conduct it 'seeks to regulate,' as well as the parties and interests it 'seeks to protect' or vindicate." *Id.* at 2137 (brackets omitted) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010)). "When determining the focus of a statute, we do not analyze the provision at issue in a vacuum." *Id.* (citing *Morrison*, 561 U.S. at 267-69). Instead:

> If the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those

11

> other provisions. Otherwise, it would be impossible to accurately determine whether the application of the statute in the case is a "domestic application." And determining how the statute has actually been applied is the whole point of the focus test.

*Id.* (citation omitted) (citing *RJR Nabisco*, 136 S. Ct. at 2101).

### ii. The Focus of the ADA and the Rehabilitation Act Is Not Limited to Discriminatory Decisions. The Focus Includes the Discriminatory Effects of Unequal Services and Activities.

The District Court suggested that "the alleged discriminatory decision to deny [Plaintiff's] requested accommodation" is the focus of the ADA. Doc. 210 at 10–11. The District Court's decision was erroneous because it overlooked the discriminatory effect of unequal, un-accommodated examinations—which the plain language of the statutes' make clear, is a form of discrimination even in the absence of a "discriminatory decision" or "denial." "Because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably." *Allmond v. Akal Security, Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009).

Under the ADA, Congress found that:

> (5) individuals with disabilities continually encounter **various forms of discrimination, including** outright intentional exclusion, the **discriminatory effects** of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria,

12

segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

....

(7) the Nation's proper goals regarding individuals with disabilities are **to assure equality of opportunity, full participation**, independent living, and economic self-sufficiency for such individuals[.]

42 U.S.C. § 12101(a) (emphasis added); *accord* 29 U.S.C. § 701; *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1284 (11th Cir. 2002) (noting examples of "the very sorts of discrimination the statute seeks to redress"). The ADA is a multipurpose Act in that it seeks "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), as well as "**to regulate commerce**, in order to address the major areas of discrimination," 42 U.S.C. § 12101(b)(4) (emphasis added).

It is true that a form of discrimination can be the "denial" of an accommodation. 42 U.S.C. § 12182(b)(1)(A)(i). However, it is equally true that another form of discrimination can be the mere "unequal" good, service, facility, privilege, advantage, or accommodation that was afforded to the disabled individual. 42 U.S.C. § 12182(b)(1)(A)(ii). In regulating these services, the ADA makes it clear that the "[g]oods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B). "We must

13

interpret the statute to give effect to both provisions where possible." *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009); *see, e.g., United States v. Atlantic Research Corp.*, 551 U.S. 128, 137, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007) (rejecting an interpretation that would render a statutory provision "a dead letter").

As the Third Circuit has emphasized:

> The ADA is intended to insure that qualified individuals receive services in a manner consistent with basic human dignity rather than a manner which shunts them aside, hides, and ignores them. "[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act [and the ADA] would be difficult if not impossible to reach were the Act[s] construed to proscribe only conduct fueled by a discriminatory intent." *Alexander v. Choate,* 469 U.S. at 296-97, 105 S.Ct. at 718. Thus, we will not eviscerate the ADA by conditioning its protections upon a finding of intentional or overt "discrimination."

*Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) (alterations in original) (footnote omitted).

Similarly, in *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004), the Ninth Circuit found that "the district court appears to have misconstrued McGary's claim as either a 'disparate treatment' or a 'disparate impact' claim, rather than a 'reasonable accommodation' claim." The Ninth Circuit held:

> The purpose of the ADA's reasonable accommodation requirement is to guard against the facade of "equal treatment" when particular accommodations are necessary to level the playing field…. The district court's suggestion

14

> that *un*equal treatment is required to state a reasonable
> accommodation claim eviscerates this fundamental
> purpose of the ADA.

*Id.* at 1267.

### iii. The Administration of Unequal, Unaccommodated Examinations in the United States, Is Conduct Relevant to the Focus of the ADA and the Rehabilitation Act.

The heading of the statutory provision at issue here, 42 U.S.C. § 12189, makes

it clear that the ADA also regulates examinations. "42 U.S.C. § 12189, which falls

within Title III of the ADA, governs ... examinations." *Enyart v. National*

*Conference*, 630 F.3d 1153, 1160 (9th Cir. 2011). "The purpose of this section is 'to

assure that persons with disabilities are not foreclosed from educational,

professional, or trade opportunities because an examination or course is conducted

in an inaccessible site or without an accommodation.'" *Id.* (quoting H.R. Rep. No.

101-85(111), at 68-69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 491-92). "The

text of these other ADA provisions does not resolve the ambiguity in § 12189's use

of term 'accessible' because an examination is not equivalent to a physical space."

*Id.* at 1162. The "DOJ's regulation is not based upon an impermissible construction

of § 12189, so this court affords *Chevron* deference to 28 C.F.R. § 36.309 and applies

the regulation's 'best ensure' standard." *Id.* 28 C.F.R. § 36.309(b) provides that:

> (1) Any private entity offering an examination covered by
> this section must assure that -

> (i) The examination is **selected and administered** so as to **best ensure** that, when the examination is administered to an individual with a disability that … the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills ….

*Id.* (emphasis added); *accord* 34 C.F.R. § 104.44(c) (same under the Rehabilitation Act); *see also Jones v. Nat'l Conference of Bar Examiners*, 801 F. Supp. 2d 270, 284 (D. Vt. 2011) ("This court, like several other courts, concludes that 28 C.F.R. § 36.309(b)(1)(i) is neither arbitrary nor capricious, nor manifestly contrary to the statute it implements. The court thus concludes that a 'best ensure' is entitled to controlling weight and governs the outcome in this case." (footnote omitted)). The *Jones* court continues:

> A "best ensure" standard not only prevents an entity such as Defendant from directly or indirectly providing "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit and to reach the same level of achievement as that provided to others[,]" 28 C.F.R. § 35.130(b)(1), it also reflects the special challenges to the establishment of a level playing field in the administration of professional exams.

*Jones*, 801 F. Supp. 2d at 284 (emphasis added).

The District Court also erred in its legal conclusion that because the unaccommodated examinations were administered at an off-campus testing center

16

in the United States, that RUSM is not liable for those examinations. Doc. 210 at 10 n.6. The D.C. Circuit has rejected this very argument in *Bonnette v. Dist. of Columbia Court of Appeals*, 796 F. Supp. 2d 164, 179 (D.D.C. 2011). *Bonnette* is on point. In *Bonnette*, "NCBE argues that it is the Court of Appeals that 'offers' the MBE because the Court of Appeals administers the examination and NCBE is merely a vendor that provides testing materials." *Id.* The circuit court rejected the argument and held that, "to the extent that NCBE exercises control over the manner in which the examination is given, it is subject to § 12189." *Id.* at 179–180; *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 347 (6th Cir. 2016) ("[T]he term 'offer' nevertheless must be interpreted so that Section 309 [28 C.F.R. § 36.309] is not meaningless. Because the statute states that an entity that 'offers' exams must do so 'in a place and manner accessible' to disabled persons or else offer alternative accommodations, the entity must have some ability to grant those accommodations in the administration of the exam."). "NCBE also suggests that § 12189 applies only to 'public accommodations' as defined in Title III of the ADA .... However, § 12189 clearly applies to 'any person' that offers examinations, not just public accommodations." *Bonnette*, 796 F. Supp. 2d at 180 n.2.

Moreover, with regard to intangible barriers, this Court has held "that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers ... and intangible barriers, such as eligibility

17

requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges. There is nothing in the text of the statute to suggest that discrimination via an [intangible barrier] must occur on site to offend the ADA." *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283-84 (11th Cir. 2002). "The statute also recognizes that an intangible barrier may result as a consequence of a defendant entity's failure to act, that is, when it refuses to provide a reasonable auxiliary service that would permit the disabled to gain access to or use its goods and services." *Id.* at 1284 n.7 (citing 42 U.S.C. § 12182(b)(2)(A)(iii)).

Here, this case involves a domestic application of the statutes because Plaintiff's unaccommodated examinations were administered in the United States. *See* Plaintiff's Requests for Admission No. 71, Doc. 195 at 16. Importantly, RUSM selects and controls the manner in which the examinations are administered in Prometric Test Centers in the United States. *See* Plaintiff's Requests for Admission No. 18, Doc. 195 at 5–6; *see also* Doc. 195 at 20 (This is "Page 2 of Exhibit 10" as was referenced in Plaintiff's Requests for Admission No. 18).

The District Court therefore erred in granting summary judgment in favor of RUSM on the ADA and Rehabilitation Act claims, as this case involves a domestic application of the statutes. The District Court's decision must therefore be reversed.

18

**B.** **This Case Involves Another Domestic Application of the ADA and the Rehabilitation Act Because These Claims Do Not "End" in Dominica.**

The District Court also ruled that "the beginning and the end of the Plaintiff's ADA and RA claims" occurred outside of the United States. Doc. 210 at 10. Even if the administration of unequal, unaccommodated examinations in the United States is not relevant to the focus of the ADA and the Rehabilitation Act—to be clear, it is relevant to the focus—the District Court also erred when it overlooked the fact that Plaintiff also re-informed RUSM administrators located within the United States, that should have instituted a sixth examination attempt with corrective measures for testing accommodations before making its final decision to dismiss Plaintiff.

      i.    <u>RUSM Administrators Located Within the United States Should Have Instituted a Sixth Examination Attempt with Corrective Measures for Testing Accommodations.</u>

Under the ADA and the Rehabilitation Act, a "plaintiff must also establish that the plaintiff requested an accommodation or the need for one was obvious." *Schwarz v. Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1173 (M.D. Fla. 2016) (parenthesis omitted); *U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011) ("or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation"); *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) ("Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that

19

substantial risk of harm…. That is, the entity will know of the individual's need for an accommodation because it is obvious." (citations omitted)).

"To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014).[3] "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *Id.* at 1147 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)).

"We have held that it is appropriate to look to Title IX case law for guidance in examining discriminatory intent under § 504." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (citing *Liese*, 701 F.3d at 347). So, "[f]or an organization to be liable for Title IX purposes, [a plaintiff must show] the deliberate indifference of 'an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has *actual knowledge* of discrimination in the organization's programs and fails

---

[3] "Where a plaintiff is not seeking compensatory damages, discriminatory intent is not required. In that situation, a showing that the auxiliary aids he received to assist him in communicating were not sufficient to provide him with an equal opportunity to benefit from the healthcare provider's treatment is enough by itself to establish a violation of both the RA and ADA." *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 n.8 (11th Cir. 2014).

adequately to respond." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (alterations in original) (citing *Liese*, 701 F.3d at 349).

"In the § 504 context, we conclude that an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 350 (11th Cir. 2012) (citing *Doe v. County*, 604 F.3d 1248, 1256-57 (11th Cir. 2010)). In *Doe*, the Eleventh Circuit found that notice to a school official met this standard because "[m]ore importantly, … [he] could 'initiate corrective action' … even if he could not take final adverse employment actions." *Doe*, 604 F.3d at 1255. "In *Broward County* [*Doe*, 604 F.3d 1248], we rejected the notion that 'final employment decisions such as suspending, terminating, or reassigning an offending [individual] [are] the *only* corrective measures giving an official the power to remedy' …." *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F.3d 979, 990 (11th Cir. 2017) (quoting *Doe*, 604 F.3d at 1257). For example, the Eleventh Circuit held, "we conclude that [even] a teacher can serve as an appropriate person." *Id.* at 989.

Here, RUSM administrators, that were located in Miramar, Florida of the United States—and had the ability to institute a sixth examination attempt with

21

corrective measures—failed to act when it had knowledge of Plaintiff's need for examination accommodations. *See* Statement of Facts, *supra* Part II.B.i. at 6–8.

ii.  <u>RUSM Administrators Within the United States Also Had a Duty to Act on Plaintiff's Need for Examination Accommodations.</u>

There is perhaps no case more on point than *Steere v. George Washington University*, 368 F. Supp. 2d 52, 56–57 (D.D.C. 2005) (Denying defendants summary judgement on the grounds that a medical student's subsequent request for test accommodations made after she was dismissed but during her appeal to the Dean, were timely because the Dean had total discretion to adopt or ignore the decision of the school's Medical Student Evaluation Committee ("MSEC")). In *Steere*, "defendants first argue that they had no obligation to provide either modification because plaintiff had failed to request the modifications in time — that is, before dismissal." *Id.* at 56. With respect to timeliness, the *Steere* court held:

> It is presently undisputed that plaintiff requested accommodations and submitted medical evidence of his condition after the MSEC made its recommendation but before the dean acted on that recommendation.
>
> … [W]hile a university has no obligation to readmit a dismissed student who later learns of a disability, and while an university need not accommodate a student undergoing testing for a disability or a student who only thinks she is disabled, a university does have an obligation once it learns that a student is disabled.
>
> The defendants' own regulations doom their timeliness argument: they give the Dean total discretion to adopt or ignore the MSEC recommendations.

*Steere*, 368 F. Supp. 2d at 56 (internal citations omitted). With respect to reasonableness, the *Steere* court further held:

> Defendants next argue that the modifications that plaintiff requests are unreasonable because they amount to a request for a second chance. Some courts have admonished that the ADA requires reasonable modifications, but not second chances. Under this "no second chance" banner, courts have held that for a student or worker who cannot perform satisfactorily even when accommodated and gets terminated as a result, the reversal of the termination decision would not be a reasonable modification.... The second chance doctrine, in so far as it is a doctrine, works to deny already accommodated and at-fault plaintiffs from winning an endless string of new accommodations after each failure. The doctrine does not apply to plaintiffs who, through no fault of their own, have not yet had a chance to get the modifications they need. *See Dudley v. Hannaford Bros. Co.*, 333 F3d 299 (1st Cir. 2003).
>
> In *Dudley*, the First Circuit found that a second chance — a reconsideration of a decision — could be required under the ADA.
>
> The facts of this case fit far more comfortably within the *Dudley* framework than within the framework of the typical "no second chance" cases. In this case, **the Dean, though he had plaintiff's disability report, gave it no weight in his decision to adopt the MSEC recommendation.** He stated that his decision was based on plaintiff's poor academic performance and that he was adopting the recommendation of the MSEC, which was made before anyone knew of plaintiff's disability.... **Plaintiff's medical school failures, then, occurred while he was not accommodated in any way. He does not seek a second chance to monitor her disability or a new set**

23

**of accommodations. Plaintiff seeks a first chance to successfully handle his disability.** Plaintiff's request for reconsideration, like Dudley's, is not unreasonable on the ground that it asks for a second chance, and therefore, summary judgment is not appropriate.

*Steere*, 368 F. Supp. 2d at 56–57 (emphasis added).

Also on point is *Singh v. George Washington*, 508 F.3d 1097, 1105 (D.C. Cir. 2007), holding:

> GW argues that Singh's request for reasonable modifications was untimely, as she did not notify the school of her diagnosis or disability until a faculty committee had already recommended her dismissal.
>
> … [Plaintiff] challenges GW's actions *after* she informed the Dean of her diagnosis and requested modifications, when the University was in a position to respond.
>
> While GW invokes a so-called "no second chance" doctrine to justify its refusal to accommodate Singh, its argument confuses the issue of timeliness with the underlying reasonableness of the plaintiff's request. The precedential authorities cited by GW and *amici* relied on findings that the plaintiff's had failed to request any real accommodation, see *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir.1999) …. None of these circumstances is found here. In particular, GW points to no major commitment of resources that would be wasted as a result of its having to consider Singh's accommodation claim at the time she raised it.

*Singh*, 508 F.3d at 1105. *See also Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 157 (D.D.C. 2015) (Holding, in the employment context, that "an employee for whom removal has been proposed has the right to provide a written response, and as part

24

of this response, the employee may provide medical records, which the employer must consider before issuing a final decision on the proposed employment action").

The District Court therefore also erred in granting summary judgment in favor of RUSM on the ADA and Rehabilitation Act claims, as this case involves another domestic application of the statutes—RUSM administrators within the United States continued to fail to accommodate Plaintiff. The District Court's decision must therefore be reversed.

## C.    The District Court Erred in Dismissing Plaintiff's Fraudulent Misrepresentation Claims.

### i.    The Elements of Fraud in the Inducement

Under Florida law, "[t]he requirements for a claim of fraud or fraudulent inducement are: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007).

With respect to the first prong, "Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully." *ZC Insurance Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003) (Holding that "providing [plaintiff] with documents that define coverage while failing to provide documents that set forth the exclusions to that coverage is tantamount to fraud by omission."); *see also Woods v.*

25

*On Baldwin Pond, LLC*, No. 15-13082, at *4 (11th Cir. 2015) ("Florida law does not recognize a stark distinction between fraud by commission and fraud by omission.").

"[W]here fraudulent conduct involves omitted or concealed information and 'the use of an artifice to throw the other party off his guard and lull him into a false sense of security,' the link between the defendant's conduct and the plaintiff's misapprehension is less direct and does not necessarily depend upon reliance on a statement." *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1107 (11th Cir. 2018) (citing *Philip Morris USA, Inc. v. Duignan*, 243 So. 3d 426, 440 (Fla. Dist. Ct. App. 2017)). The court in *Duignan*, explained:

> Although the seller's statement was true, the plaintiff might still claim fraud on the theory that having chosen to speak about the condition of the transmission, the seller had a duty to disclose the transmission defect that had not yet manifested itself to the buyer…. The buyer here was not misled by the content of a statement; he was misled regarding an unstated truth **the seller became obligated to disclose by virtue of having decided to speak**.

*Duignan*, 243 So. 3d at 440 (emphasis added).

With respect to the second prong, "[m]aking a statement that is false when one does not have sufficient information to know whether the statement is either true or false amounts to a knowing misrepresentation that rises to the level of fraudulent conduct." *Jack Eckerd Corp. v. Smith*, 558 So. 2d 1060, 1065 (Fla. Dist. Ct. App. 1990), *review denied*, 577 So. 2d 1321 (Fla. 1991).

26

With respect to the fourth prong, "to maintain a fraudulent-inducement claim" "in the context of fraud, demonstrating 'justifiable reliance' is not necessary." *Dem. Rep. Congo v. Air Capital Grp., LLC*, CASE NO. 12-20607-CIV-ROSENBAUM/SELTZER, at *10 (S.D. Fla. Jun. 24, 2013) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)); *accord Bank of Am., N.A. v. Grec Homes IX, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton, at *11 (S.D. Fla. Jan. 23, 2014) (Noting that *Butler* clarified justifiable reliance, "a claim for fraudulent inducement pursuant to Florida law" only requires "consequent injury to the party acting in reliance."); *G Barrett LLC v. Ginn Co.*, Case No. 5:09-cv-374-Oc-10TBS, at *8–9 (M.D. Fla. Dec. 23, 2011) (applying *Butler*, "for a claim of fraudulent misrepresentation/inducement … consequent injury by the party acting in reliance").

### ii.   The District Court Misconstrued Plaintiff's Claims

Continuously between 2012 and 2018, RUSM advertised a statement in the Admissions Requirements section of its website that stated: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." *See* Plaintiff's Requests for Admission No. 28, Doc. 195 at 8; *Compare* Doc. 58 ¶ 107, *with* Doc. 47 ¶ 106. RUSM published the advertised statement "for prospective students." Doc. 58 ¶ 106.

Before this case was reassigned to Judge Roy K. Altman, Doc. 176, the District Court reasonably construed Plaintiff's fraud in the inducement claims,

stating: "Plaintiff argues that Defendant did not, in fact, have a policy and practice to comply with the ADA," Doc. 154 at 19, and correctly ruled that "there is a dispute as to whether RUSM in fact had a policy or practice of complying with the ADA," *Id.*

Now, after this case was reassigned to Judge Roy K. Altman, the District Court rules that there is "no evidence to support [Plaintiff's] assertions that RUSM summarily denies requests for accommodations, or that, at the time it posted the compliance statement on its website, RUSM never intended to comply with the ADA." Doc. 210 at 13. As a threshold matter, this latter ruling misconstrues Plaintiff's allegations as well as the applicable law. Moreover, the District Court now overlooks record evidence that, at the very least, established disputed facts.

Plaintiff made two claims under fraud in the inducement: (1) for fraud by commission of a false statement regarding a material fact; and (2) for fraud by omission of a material fact. Doc. 47 ¶¶ 108–109.

The heart of Plaintiff's claims, and the "material fact" at issue, is whether RUSM had a "policy" in place regarding how and when the university faculty is to comply with the ADA in Dominica; and if not, whether RUSM omitted the material fact that no such "policy" existed. RUSM contends that the advertised statement "cannot be false as a matter of law" because, according to RUSM, the ADA is allegedly never "applicable" in Dominica with respect to students. Doc. 210 at 12.

28

The ADA prohibits many forms of discrimination. *See* 42 U.S.C. §§ 12182, 12189. "The statute also recognizes that an intangible barrier may result as a consequence of a defendant entity's failure to act, that is, when it refuses to provide a reasonable auxiliary service that would permit the disabled to gain access to or use its goods and services." *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1284 n.7 (11th Cir. 2002) (citing 42 U.S.C. § 12182(b)(2)(A)(iii)). "Where a plaintiff is not seeking compensatory damages [under the ADA], discriminatory intent is not required." *McCullum*, 768 F.3d at 1147 n.8. The existence, or nonexistence, of an entity's policy or rule directing faculty on how to comply with the ADA and the many forms of discrimination, is of value to assure that faculty and administrators do not—with or without discriminatory intent—fail to act on or mishandle a disabled person's requests or obvious need for an accommodation.

Deposed by Plaintiff, Mr. Stewart-Fulton, one of the accommodation coordinators at RUSM, testified: "In reference to when you were enrolled and the campus was located on Dominica, we were not required to comply with the ADA." Stewart-Fulton Dep. 32:1–4, Doc. 138 at 52. He further testified that "there is no policy that requires faculty to comply" with the ADA. *Id.* 32:12–19. Mr. Stewart-Fulton also testified that no one at RUSM ever told him that he needs to comply with the ADA. *Id.* 34:5–9. He further testified that there was no policy on how to handle requests for academic accommodations. *Id.* 34:20–35:1.

29

Dr. Hayse, an RUSM administrator that oversees the accommodations process, testified that the university does not require its employees and faculties to comply with the ADA and the Rehabilitation Act. Hayse Dep. 14:11–18, Doc. 138 at 64. Dr. Hayse further testified that RUSM faculty was not provided with "any policy," "any guidance," or "any rules" on how to comply with requests for accommodations. Hayse Dep. 33:11–16, Doc. 138 at 68.

Regardless of the fact that the District Court construed the advertised statement as a "promise," Doc. 210 at 12, reasonable minds can conclude that RUSM's omission and failure to disclose that no policy actually existed, was material to the advertised statement. The District Court erred in refusing to construe Plaintiff's claims in this way. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

Because the advertised statement is not a "promise," but rather, a straightforward omission of fact regarding a nonexistent "policy," Plaintiff was not required to prove that RUSM "had a specific intent not to fulfill [its] promise at the time the promise was made." Doc. 210 at 12.

## VII. CONCLUSION

This Court should reverse and vacate the District Court's decision and remand the case for further proceedings.

DATED this 22nd day of August, 2019:

Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

31

## CERTIFICATE OF SERVICE

I do hereby certify that on this 22nd day of August, 2019, I have caused a true

and correct copy of the foregoing by emailing a copy to the counsel of record.

_____

By: Oluwamuyiwa Awodiya, *pro se* litigant