U.S. COURT OF APPEALS
RECEIVED
CLERK

AUG 2 8 2019

ATLANTA, GA

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

OLUWAMUYIWA AWODIYA,

*Plaintiff-Appellant,*

-v-

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF
VETERINARY MEDICINE
LIMITED,

*Defendant-Appellee.*

)
)
)
)
)
)
)
)
)
)
)
)

Appeal No.  19-12832-DD

On Appeal from the United States
District Court for the Southern
District of Florida
Case No. 0:18-cv-60482-RKA

## **APPENDIX VOLUME I: DOCKET NOS. 47–195**

*Pro se* plaintiff-appellant Oluwamuyiwa Awodiya ("Plaintiff") hereby files

Volume I of his Appendix.

OLUWAMUYIWA AWODIYA
15005 DAHLIA DR.
BOWIE, MD 20721
PRO-SE

# INDEX

| Vol. | Tab | Description |
|------|-----|-------------|
| I | Dkt. | Civil Docket for Case #: 0:18-cv-60482-RKA |
| I | 47 | Plaintiff's Third Amended Complaint |
| I | 58 | Defendant's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint |
| I | 59 | Medical Assessment Report |
| I | 61 | Plaintiff's First Motion for Summary Judgment |
| I | 102 | Plaintiff's Second Motion for Summary Judgment |
| I | 102-1 | Declaration of Oluwamuyiwa Awodiya |
| I | 113 | Deposition Transcript of William Owen |
| I | 119-20 | RUSM Student Handbook |
| I | 119-22 | RUSM Academic Catalog |
| I | 119-28 | Dismissal Letter |
| I | 120 | Defendant's Motion for Summary Judgment |
| I | 138 | Deposition Transcript of Matthew Stewart-Fulton; and Deposition Transcript of Bryan Hayse |
| I | 154 | Omnibus Order on Motions for Summary Judgment |
| I | 176 | Order of Reassignment |
| I | 191 | Order |
| I | 195 | Defendant's Reponses to Plaintiff's Requests for Admission; and "Exhibit 10" to Plaintiff's Requests for Admission No. 18 |

2

| II | 210 | Order Closing Case |
|---|---|---|
| II | 211 | Final Judgment |
| II | 212 | Plaintiff's Motion for Amended and Additional Findings |
| II | 213 | Exhibits to Declaration of Oluwamuyiwa Awodiya |
| II | 217 | Order |
| II | 218 | Notice of Appeal |

# Dkt.

AOV,APPEAL,CLOSED,MEDIATION

## U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CIVIL DOCKET FOR CASE #: 0:18-cv-60482-RKA

Awodiya v. Ross University School of Medicine
Assigned to: Judge Roy K. Altman
Referred to: Magistrate Judge Alicia O. Valle
Case in other court: USCA, 19-12832-D
Cause: 42:12182 Americans with Disabilities Act

Date Filed: 03/06/2018
Date Terminated: 06/18/2019
Jury Demand: Plaintiff
Nature of Suit: 446 Civil Rights: Americans
with Disabilities - Other
Jurisdiction: Diversity

### Plaintiff

**Oluwamuyiwa Awodiya**

represented by **Oluwamuyiwa Awodiya**
15005 Dahlia Dr.
Bowie, MD 20721
240-602-1836
Email: DRmuyiwa.a@gmail.com
PRO SE

V.

### Defendant

**Ross University School of Medicine**
*School of Veterinary Medicine Limited*

represented by **Christina Meddin**
Seyfarth Shaw LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309
404-888-1886
Email: cmeddin@seyfarth.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian M. Stolzenbach**
Seyfarth, Shaw, LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60601
312-460-5000
Email: bstolzenbach@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donnie Marcel King**
Akerman LLP
98 SE 7th St, Suite 1100
Miami, FL 33131
3053745600
Fax: 3053745600
Email: donnie.king@akerman.com
*ATTORNEY TO BE NOTICED*

**Octavia Monique Green**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
(305) 982-5670
Email: octavia.green@akerman.com
*ATTORNEY TO BE NOTICED*

**Ryan Roman**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095
Email: ryan.roman@akerman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/06/2018 | 1 | COMPLAINT against Ross University School of Medicine. Filing fees $ 400.00. IFP Filed, filed by Oluwamuyiwa Awodiya. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s))(kpe) (Entered: 03/06/2018) |
| 03/06/2018 | 2 | Clerks Notice of Judge Assignment to Chief Judge K. Michael Moore. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Lurana S. Snow is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (kpe) (Entered: 03/06/2018) |
| 03/06/2018 | 3 | MOTION for Leave to Proceed in forma pauperis by Oluwamuyiwa Awodiya. (kpe) (Entered: 03/06/2018) |
| 03/06/2018 | 4 | Consent by Pro Se Litigant (Non-Prisoner) Oluwamuyiwa Awodiya to receive Notices of Electronic Filing at email address: DRmuyiwa.a@gmail.com (kpe) (Entered: 03/06/2018) |
| 03/07/2018 | 5 | PAPERLESS PRETRIAL ORDER. This order has been entered upon the filing of the complaint. Plaintiff's counsel is hereby ORDERED to forward to all defendants, upon receipt of a responsive pleading, a copy of this Order. It is further ORDERED that S.D. Fla. L.R. 16.1 shall apply to this case and the parties shall hold a scheduling conference no later than twenty (20) days after the filing of the first responsive pleading by the last responding defendant, or within sixty (60) days after the filing of the complaint, whichever occurs first. However, if all defendants have not been served by the expiration of this deadline, Plaintiff shall move for an enlargement of time to hold the scheduling conference, not to exceed 90 days from the filing of the Complaint. Within ten (10) days |

of the scheduling conference, counsel shall file a joint scheduling report. Failure of counsel to file a joint scheduling report within the deadlines set forth above may result in dismissal, default, and the imposition of other sanctions including attorney's fees and costs. The parties should note that the time period for filing a joint scheduling report is not tolled by the filing of any other pleading, such as an amended complaint or Rule 12 motion. The scheduling conference may be held via telephone. At the conference, the parties shall comply with the following agenda that the Court adopts from S.D. Fla. L.R. 16.1: (1) Documents (S.D. Fla. L.R. 16.1.B.1 and 2) - The parties shall determine the procedure for exchanging a copy of, or a description by category and location of, all documents and other evidence that is reasonably available and that a party expects to offer or may offer if the need arises. Fed. R. Civ. P. 26(a)(1)(B). (a) Documents include computations of the nature and extent of any category of damages claimed by the disclosing party unless the computations are privileged or otherwise protected from disclosure. Fed. R. Civ. P. 26(a)(1)(C). (b) Documents include insurance agreements which may be at issue with the satisfaction of the judgment. Fed. R. Civ. P. 26(a)(1)(D). (2) List of Witnesses - The parties shall exchange the name, address and telephone number of each individual known to have knowledge of the facts supporting the material allegations of the pleading filed by the party. Fed. R. Civ. P. 26(a)(1)(A). The parties have a continuing obligation to disclose this information. (3) Discussions and Deadlines (S.D. Fla. L.R. 16.1.B.2) - The parties shall discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case. Failure to comply with this Order or to exchange the information listed above may result in sanctions and/or the exclusion of documents or witnesses at the time of trial. S.D. Fla. L.R. 16.1.I.

Pursuant to Administrative Order 2016-70 of the Southern District of Florida and consistent with the Court of Appeals for the Eleventh Circuits Local Rules and Internal Operating Procedures, within three days of the conclusion of a trial or other proceeding, parties must file via CM/ECF electronic versions of documentary exhibits admitted into evidence, including photographs of non-documentary physical exhibits. The Parties are directed to comply with each of the requirements set forth in Administrative Order 2016-70 unless directed otherwise by the Court.

Telephonic appearances are not permitted for any purpose. Upon reaching a settlement in this matter the parties are instructed to notify the Court by telephone and to file a Notice of Settlement within twenty-four (24) hours. Signed by Chief Judge K. Michael Moore on 3/7/2018. (jm01) (Entered: 03/07/2018)

| | | |
|---|---|---|
| 03/07/2018 | 6 | PAPERLESS ORDER REFERRING PRETRIAL DISCOVERY MATTERS TO MAGISTRATE JUDGE LURANA S. SNOW. PURSUANT to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned Cause is referred to United States Magistrate Judge Lurana S. Snow to take all necessary and proper action as required by law with respect to any and all pretrial discovery matters. Any motion affecting deadlines set by the Court's Scheduling Order is excluded from this referral, unless specifically referred by separate Order. It is FURTHER ORDERED that the parties shall comply with Magistrate Judge Lurana S. Snow's discovery procedures, which the parties shall be advised of by the entry of an Order. Signed by Chief Judge K. Michael Moore on 3/7/2018. (jm01) (Entered: 03/07/2018) |
| 03/07/2018 | 7 | CASE REFERRED to Magistrate Judge Lurana S. Snow per 6 Order. (asl) (Entered: 03/07/2018) |
| 03/07/2018 | 8 | PAPERLESS ORDER REFERRING Plaintiff's Motion for Leave to Proceed in forma pauperis 3 . PURSUANT to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules |

| | | of the Southern District of Florida, the above-captioned cause is referred to Magistrate Judge Lurana S. Snow to take all necessary and proper action as required by law regarding Plaintiff's motion 3 . Signed by Chief Judge K. Michael Moore on 3/7/2018. (jm01) (Entered: 03/07/2018) |
|---|---|---|
| 03/07/2018 | 9 | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES. Signed by Magistrate Judge Lurana S. Snow on 3/7/2018. (kpe) (Entered: 03/07/2018) |
| 03/08/2018 | 10 | ORDER granting 3 Motion for Leave to Proceed in forma pauperis. **USM Service ordered . Summonses provided for issuance by Clerk for USM Service** Re: 1 Complaint filed by Oluwamuyiwa Awodiya. Signed by Magistrate Judge Lurana S. Snow on 3/8/2018. (kpe) (Entered: 03/08/2018) |
| 03/08/2018 | 11 | Summons Issued as to Ross University School of Medicine. (kpe) (Entered: 03/08/2018) |
| 03/08/2018 | 12 | NOTICE of Compliance by Oluwamuyiwa Awodiya re 10 Order on Motion for Leave to Proceed in forma pauperis. Summonses and Copy of Complaint provided to US Marshal for service. (kpe) (Entered: 03/08/2018) |
| 03/21/2018 | 15 | SUMMONS (Affidavit) Returned Executed on 1 Complaint (Served Kelly Tesselar Director of Student Services) with a 21 day response/answer filing deadline Ross University School of Medicine served on 3/21/2018, answer due 4/11/2018. (ebz) (Entered: 03/29/2018) |
| 03/26/2018 | 13 | MOTION for Permission for Electronic Case Filing by Oluwamuyiwa Awodiya. (Attachments: # 1 Proposed Order)(kpe) (Entered: 03/26/2018) |
| 03/26/2018 | 14 | PAPERLESS ORDER. THIS CAUSE came before the Court upon pro se Plaintiff Oluwamuyiwa Awodiya's Motion for Permission for Electronic Case Filing. 13 . Pursuant to Section 2C of the Southern District of Florida CM/ECF Administrative Procedures, "Pro se litigants will not be permitted to register as Users at this time. Pro se litigants must tile their documents in the conventional manner." Therefore, it is ORDERED AND ADJUDGED that the Motion for Permission for Electronic Case Filing 13 is DENIED. Signed by Chief Judge K. Michael Moore on 3/26/2018. (jm01) (Entered: 03/26/2018) |
| 04/06/2018 | 16 | SUMMONS (Affidavit) Returned Executed on 1 Complaint with a 21 day response/answer filing deadline by Oluwamuyiwa Awodiya. Ross University School of Medicine served on 3/23/2018, answer due 4/13/2018. (mee) (Entered: 04/06/2018) |
| 04/06/2018 | 17 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 1 Complaint by Ross University School of Medicine. Attorney Christina Meddin added to party Ross University School of Medicine(pty:dft). (Attachments: # 1 Text of Proposed Order)(Meddin, Christina) (Entered: 04/06/2018) |
| 04/06/2018 | 18 | Corporate Disclosure Statement by Ross University School of Medicine identifying Corporate Parent Adtalem Global Education Inc., Other Affiliate BlackRock, Inc. for Ross University School of Medicine (Meddin, Christina) (Entered: 04/06/2018) |
| 04/09/2018 | 19 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Unopposed Motion for an Extension of Time to Respond to the Complaint. 17 . UPON CONSIDERATION of the Motion 17 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 17 is GRANTED. Defendant shall respond to the Complaint on or before April 27, 2018. Signed by Chief Judge K. Michael Moore on 4/9/2018. (jm01) (Entered: 04/09/2018) |
| 04/09/2018 | | Reset Answer Due Deadline per 19 Order: Ross University School of Medicine response due 4/27/2018. (asl) (Entered: 04/09/2018) |

| 04/09/2018 | 20 | ORDER/NOTICE OF RECUSAL signed by Magistrate Judge Lurana S. Snow on 4/9/2018. Magistrate Judge Lurana S. Snow recused. Case randomly reassigned by Clerk to Magistrate Judge Barry S. Seltzer for all further proceedings. (ane) (Entered: 04/09/2018) |
| --- | --- | --- |
| 04/09/2018 | 21 | AMENDED COMPLAINT against Ross University School of Medicine, filed by Oluwamuyiwa Awodiya.(kpe) (Entered: 04/10/2018) |
| 04/11/2018 | 22 | ORDER Setting Discovery Procedure. Please see Order for details. Signed by Magistrate Judge Barry S. Seltzer on 4/10/2018. (pb00) (Entered: 04/11/2018) |
| 04/12/2018 | 23 | Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 21 Amended Complaint by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order)(Meddin, Christina) (Entered: 04/12/2018) |
| 04/13/2018 | 24 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Motion for an Extension of Time to Respond to the Complaint. 23 . UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 23 is GRANTED. Defendant shall respond to the Complaint on or before May 18, 2018. Signed by Chief Judge K. Michael Moore on 4/13/2018. (jm01) (Entered: 04/13/2018) |
| 04/18/2018 | 25 | RESPONSE to 23 Defendant's Partially Unopposed MOTION for Extension of Time to Answer or Otherwise Respond to Plainitiff's Amended Complaint filed by Oluwamuyiwa Awodiya. Replies due by 4/25/2018. (kpe) (Entered: 04/18/2018) |
| 04/19/2018 | 26 | Plaintiff's Request for Judicial Notice by Oluwamuyiwa Awodiya. (Attachments: # 1 Proposed Order)(kpe) (Entered: 04/19/2018) |
| 04/19/2018 | 27 | Declaration in Support of 26 Plaintiff's Request for Judicial Notice filed by Oluwamuyiwa Awodiya. (kpe) (Main Document 27 replaced for clearer image on 4/23/2018) (yha). Modified text on 4/23/2018 (yha). (Entered: 04/19/2018) |
| 04/24/2018 | 28 | Consent MOTION to Stay *Deadlines and Referral to Mediation* by Ross University School of Medicine. Responses due by 5/8/2018 (Attachments: # 1 Supplement)(Meddin, Christina) (Entered: 04/24/2018) |
| 04/24/2018 | 29 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Consent Motion to Stay Deadlines and Referral to Mediation. 28 . Therein, Defendant states that mediation would be particularly likely to help resolve the matter and requests that the Court stay all deadlines pending the outcome of mediation. 28 at 2. The Court shall enter a Referral to Mediation following the Parties' submission of a joint scheduling report, as required by the Court's Pretrial Order 5 . The Parties may file the joint scheduling report prior to the expiration of the deadline in which to do so. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Stay Deadlines and Referral to Mediation is DENIED. Signed by Chief Judge K. Michael Moore on 4/24/2018. (jm01) (Entered: 04/24/2018) |
| 05/03/2018 | 30 | RESPONSE to Motion re 26 MOTION Judicial Notice *and Defendant's Request to be Heard* filed by Ross University School of Medicine. Replies due by 5/10/2018. (Meddin, Christina) (Entered: 05/03/2018) |
| 05/07/2018 | 31 | REPLY to 30 Defendant's Request to be Heard and Response to Plaintiff's Request for Judicial Notice by Oluwamuyiwa Awodiya. (kpe) (Entered: 05/07/2018) |
| 05/08/2018 | 32 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Brian M. Stolzenbach. Filing Fee $ 75.00 Receipt # 113C-10633946 by Ross University School of Medicine. Responses due by |

| | | 5/22/2018 (Attachments: # 1 Text of Proposed Order)(Meddin, Christina) (Entered: 05/08/2018) |
|---|---|---|
| 05/08/2018 | 33 | PAPERLESS ORDER. THIS CAUSE came before the Court upon a Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filings 32 . UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED that the Motion is GRANTED. Brian M. Stolzenbach may appear Pro Hac Vice in this matter. The Clerk of the Court shall provide electronic notification of all electronic filings to bstolzenbach@seyfarth.com. Signed by Chief Judge K. Michael Moore on 5/8/2018. (jm01) (Entered: 05/08/2018) |
| 05/09/2018 | 34 | MOTION for Leave to File Second Amended Complaint re 21 Amended Complaint by Oluwamuyiwa Awodiya. Responses due by 5/23/2018 (Attachments: # 1 Second Amended Complaint)(kpe) (Entered: 05/09/2018) |
| 05/10/2018 | 35 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Leave to File Second Amended Complaint. 34 . Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleadings by leave of court or by written consent of the adverse party. The decision to grant or deny a motion to amend pleadings is within the sound discretion of the trial court. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981). The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Id. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Id. A substantial reason could include "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." Grayson v. Kmart Corp., 79 F.3d 1086, 1110 (11th Cir. 1996). The Court does not find a substantial reason to deny Plaintiff's motion for leave to amend. Accordingly, UPON CONSIDERATION of the Motion 34 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File Second Amended Complaint is GRANTED. Plaintiff is instructed to file its Second Amended Complaint on the docket.<br><br>Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge. Signed by Chief Judge K. Michael Moore on 5/10/2018. (jm01) (Entered: 05/10/2018) |
| 05/14/2018 | 36 | Joint SCHEDULING REPORT - **Rule 26(f)** by Ross University School of Medicine (Attachments: # 1 Exhibit)(Meddin, Christina) (Entered: 05/14/2018) |
| 05/14/2018 | 37 | PAPERLESS ORDER SCHEDULING TRIAL IN FORT LAUDERDALE. This case is now set for trial commencing the two week trial period of March 18, 2019, at 9 a.m. in the United States District Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida. The assigned courtroom will be announced at the calendar call. All parties are directed to report to the calendar call on March 14, 2019, at 2 p.m., at which time all matters relating to the scheduled trial date may be brought to the attention of the Court. A final pretrial conference as provided for by Rule 16, Fed. R. Civ. P., and Rule 16.1(C), S.D. Fla. L.R., is scheduled for March 5, 2019, at 11 a.m. The calendar call and the final pretrial conference will take place in Courtroom 13-1 (thirteenth floor), United States District Courthouse, 400 North Miami Avenue, Miami, Florida. A bilateral pretrial stipulation and all other pretrial preparations shall be completed NO LATER THAN FIVE DAYS PRIOR TO THE PRETRIAL CONFERENCE. All motions to amend the pleadings or to join additional parties must be filed by the later of forty-five (45) days after the date of entry of this Order, or forty-five (45) days after the first responsive |

pleading by the last responding defendant. Any and all pretrial motions, including motions for summary judgment, Daubert motions, and motions in limine must be filed no later than eighty (80) days prior to the trial date. Responses to summary judgment motions must be filed no later than fourteen (14) days after service of the motion, and replies in support of the motion must be filed no later than seven (7) days after service of the response, with both deadlines computed as specified in Rule 6, Fed. R. Civ. P. Each party is limited to one Daubert motion. If all evidentiary issues cannot be addressed in a 20-page memorandum, the parties must file for leave to exceed the page limit. Each party is also limited to one motion in limine (other than Daubert motions). If all evidentiary issues cannot be addressed in a 20-page memorandum, the parties must file for leave to exceed the page limit. All discovery, including expert discovery, shall be completed one hundred (100) days prior to the date of trial. The failure to engage in discovery pending settlement negotiations shall not be grounds for continuance of the trial date. All exhibits must be pre-marked, and a typewritten exhibit list setting forth the number and description of each exhibit must be submitted at the time of trial. Plaintiff's exhibits shall be marked numerically with the letter "P" as a prefix. Defendant's exhibits shall be marked numerically with the letter "D" as a prefix. For a jury trial, counsel shall prepare and submit proposed jury instructions to the Court. The Parties shall submit their proposed jury instructions and verdict form jointly, although they do not need to agree on each proposed instruction. Where the parties do not agree on a proposed instruction, that instruction shall be set forth in bold type. Instructions proposed only by a plaintiff should be underlined. Instructions proposed only by a defendant should be italicized. Every instruction must be supported by citation to authority. The parties should use the Eleventh Circuit Pattern Jury Instructions for Civil Cases as a guide, including the directions to counsel contained therein. The parties shall jointly file their proposed jury instructions via CM/ECF, and shall also submit their proposed jury instructions to the Court via e-mail at moore@flsd.uscourts.gov in WordPerfect or Word format. For a non-jury trial, the parties shall prepare and submit to the Court proposed findings of fact and conclusions of law fully supported by the evidence, which counsel expects the trial to develop, and fully supported by citations to law. The proposed jury instructions or the proposed findings of fact and conclusions of law shall be submitted to the Court no later than five (5) business days prior to the scheduled trial date. Pursuant to Administrative Order 2016-70 of the Southern District of Florida and consistent with the Court of Appeals for the Eleventh Circuits Local Rules and Internal Operating Procedures, within three days of the conclusion of a trial or other proceeding, parties must file via CM/ECF electronic versions of documentary exhibits admitted into evidence, including photographs of non-documentary physical exhibits. The Parties are directed to comply with each of the requirements set forth in Administrative Order 2016-70 unless directed otherwise by the Court.

THE FILING BY COUNSEL OF A NOTICE OF UNAVAILABILITY BY MOTION OR OTHERWISE IS NOT PROVIDED FOR UNDER THE LOCAL RULES AND SHALL NOT BE PRESUMED TO ALTER OR MODIFY THE COURT'S SCHEDULING ORDER. Signed by Chief Judge K. Michael Moore on 5/14/2018. (jm01)

**Pattern Jury Instruction Builder** - To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 05/14/2018)

| 05/14/2018 | 38 | PAPERLESS ORDER OF REFERRAL TO MEDIATION. Trial having been set in this matter for the two week trial period beginning March 18, 2019, at 9:00 a.m. pursuant to Rule 16 of the Federal Rule of Civil Procedure and Rule 16.2 of the Local Rules of the United States District Court for the Southern District of Florida, it is hereby ORDERED AND ADJUDGED as follows: 1. All parties are required to participate in mediation. The |
|---|---|---|

mediation shall be completed no later than eighty (80) days before the scheduled trial date. 2. Plaintiff's counsel, or another attorney agreed upon by all counsel of record and any unrepresented parties, shall be responsible for scheduling the mediation conference. The parties are encouraged to avail themselves of the services of any mediator on the List of Certified Mediators, maintained in the office of the Clerk of this Court, but may select any other mediator. The parties shall agree upon a mediator and file a Notice of Mediator Selection within fifteen (15) days from the date of this Order. If there is no agreement, lead counsel shall file a request for the Clerk of Court to appoint a mediator in writing within fifteen (15) days from the date of this Order, and the Clerk shall designate a mediator from the List of Certified Mediators. Designation shall be made on a blind rotation basis. 3. A place, date, and time for mediation convenient to the mediator, counsel of record, and unrepresented parties shall be established. If the parties cannot agree to a place, date, and time for the mediation, they may motion the Court for an order dictating the place, date, and time. 4. The physical presence of counsel and each party or representatives of each party with full authority to enter in a full and complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits or the most recent demand, whichever is lower, shall attend. 5. All discussions, representations and statements made at the mediation conference shall be confidential and privileged. 6. At least ten (10) days prior to the mediation date, all parties shall present to the mediator a brief written summary of the case identifying issues to be resolved. Copies of those summaries shall be served on all other parties. 7. The Court may impose sanctions against parties and/or counsel who do not comply with the attendance or settlement authority requirements herein, or who otherwise violate the terms of this Order. The mediator shall report non-attendance and may recommend imposition of sanctions by the Court for non-attendance. 8. The mediator shall be compensated in accordance with the standing order of the Court entered pursuant to Rule 16.2.B.6, or on such basis as may be agreed to in writing by the parties and the mediator selected by the parties. The cost of mediation shall be shared equally by the parties unless otherwise ordered by the Court. All payments shall be remitted to the mediator within 30 days of the date of the bill. Notice to the mediator of cancellation or settlement prior to the scheduled mediation conference must be given at least two (2) full business days in advance. Failure to do so will result in imposition of a fee for one hour. 9. If a full or partial settlement is reached in this case, counsel shall promptly notify the Court of the settlement in accordance with Local Rule 16.2.F, by filing a notice of settlement signed by the counsel of record within ten (10) days of the mediation conference. Thereafter, the parties shall forthwith submit an appropriate pleading concluding the case. 10. Within five (5) days following the mediation conference, the mediator shall file a Mediation Report indicating whether all required parties were present. The report shall also indicate whether the case settled (in full or in part), was continued with the consent of the parties, or whether the mediator declared an impasse. 11. If mediation is not conducted, the case may be stricken from the trial calendar, and other sanctions may be imposed. Signed by Chief Judge K. Michael Moore on 5/14/2018. (jm01) (Entered: 05/14/2018)

| 05/14/2018 | 39 | Second AMENDED COMPLAINT against Ross University School of Medicine filed in response to Order Granting Motion for Leave, filed by Oluwamuyiwa Awodiya.(kpe) Modified on 5/15/2018 (kpe). (Entered: 05/15/2018) |
| 05/29/2018 | 40 | ANSWER and Affirmative Defenses to Amended Complaint *(SECONDED AMENDED)* by Ross University School of Medicine. (Meddin, Christina) (Entered: 05/29/2018) |
| 05/29/2018 | 41 | NOTICE of Mediator Selection. Added Ross University School of Medicine. (Meddin, Christina) (Entered: 05/29/2018) |
| 05/30/2018 | 42 | Clerks Notice to Filer re 41 Notice of Mediator Selection and/or Hearing. **Mediator Not** |

| | | Added; ERROR - The Filer failed to add all mediator. Filer is instructed to file a Notice of Entry of Parties/Mediator and add the additional mediator. (kpe) (Entered: 05/30/2018) |
|---|---|---|
| 05/31/2018 | 43 | NOTICE of Mediator Selection. Added Leslie W. Langbein. (Meddin, Christina) (Entered: 05/31/2018) |
| 06/22/2018 | 44 | ORDER denying 26 Request for Judicial Notice. Signed by Chief Judge K. Michael Moore on 6/22/2018. (jm01) (Entered: 06/22/2018) |
| 07/11/2018 | 45 | Consent Motion for Leave to File Third Amended Complaint 39 Amended Complaint by Oluwamuyiwa Awodiya. Responses due by 7/25/2018. (Attachments: # 1 Proposed Third Amended Complaint, # 2 Third Amended Complaint)(kpe) (Entered: 07/11/2018) |
| 07/11/2018 | 46 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Leave to File a Third Amended Complaint. 45 . Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleadings by leave of court or by written consent of the adverse party. The decision to grant or deny a motion to amend pleadings is within the sound discretion of the trial court. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981). The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Id. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Id. A substantial reason could include "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." Grayson v. Kmart Corp., 79 F.3d 1086, 1110 (11th Cir. 1996). The Court does not find a substantial reason to deny Plaintiff's motion for leave to amend. Accordingly, UPON CONSIDERATION of the Motion 45 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File a Third Amended Complaint is GRANTED. Plaintiff is instructed to file the Third Amended Complaint on the docket on or before July 16, 2018.<br><br>Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge. Signed by Chief Judge K. Michael Moore on 7/11/2018. (jm01) (Entered: 07/11/2018) |
| 07/11/2018 | | Set Deadlines per 46 Order. Amended Complaint due by 7/16/2018. (asl) (Entered: 07/12/2018) |
| 07/16/2018 | 47 | THIRD AMENDED COMPLAINT against Ross University School of Medicine filed in response to Order Granting Motion for Leave, filed by Oluwamuyiwa Awodiya.(kpe) (Entered: 07/17/2018) |
| 07/30/2018 | 48 | NOTICE/STIPULATION of Substitution of Counsel by Ryan Roman on behalf of Ross University School of Medicine instead of prior counsel of record Seyfarth Shaw LLP. . Attorney Ryan Roman added to party Ross University School of Medicine(pty:dft). (Attachments: # 1 Text of Proposed Order Granting Substitution of Counsel) (Roman, Ryan) (Entered: 07/30/2018) |
| 07/30/2018 | 49 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 47 Amended Complaint by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order Granting Unopposed Motion)(Roman, Ryan) (Entered: 07/30/2018) |
| 07/31/2018 | 50 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Unopposed Motion for an Extension of Time to Respond to the Complaint. 49 . UPON CONSIDERATION of the Motion 49 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that |

| | | the Motion is GRANTED. Defendant shall respond to the Complaint on or before August 13, 2018. Signed by Chief Judge K. Michael Moore on 7/31/2018. (jm01) (Entered: 07/31/2018) |
|---|---|---|
| 07/31/2018 | | Reset Answer Due Deadline per 50 Order: Ross University School of Medicine response due 8/13/2018. (asl) (Entered: 07/31/2018) |
| 08/07/2018 | 51 | Joint MOTION for Settlement Conference in Lieu of Private Mediation re 38 Order Referring Case to Mediation,,,,,,,,,,,,,,,,, by Ross University School of Medicine. (Roman, Ryan) (Entered: 08/07/2018) |
| 08/09/2018 | 52 | PAPERLESS ORDER REFERRING CASE TO MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE. THIS CAUSE came before the Court upon the Parties' Joint Motion for Referral to Settlement Conference. 51 . Therein, the Parties request that they be permitted to attend a settlement conference before a Magistrate Judge of this Court in lieu of attendance at mediation before a private mediator and request that this Court enter an order striking the prior notice of mediator selection. 51 at 2. Pursuant to the Local Rules, a Magistrate Judge is authorized to "conduct pretrial conferences, settlement conferences, omnibus hearings, and related pretrial proceedings in civil and criminal cases." Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion is GRANTED IN PART and DENIED IN PART. This matter is referred to United States Magistrate Judge Lurana S. Snow for the purpose of conducting a settlement conference. The Parties shall contact Judge Snow's chambers to arrange to complete the settlement conference and the Parties shall submit a status report to the Court within five (5) days of the conclusion of the settlement conference. However, the Court's Order of Referral to Mediation 38 remains in effect. If the Parties do not reach a settlement agreement during the settlement conference, the Parties must comply with the Court's Order of Referral to Mediation. Signed by Chief Judge K. Michael Moore on 8/9/2018. (jm01) (Entered: 08/09/2018) |
| 08/09/2018 | 53 | ORDER REFERRING CASE to Magistrate Judge Lurana S. Snow for for Settlement per 52 Order. Signed by Chief Judge K. Michael Moore on 8/9/2018. (asl) Modified to remove docket text on 8/9/2018 (asl). (Entered: 08/09/2018) |
| 08/10/2018 | 54 | PAPERLESS ORDER REFERRING CASE TO MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE. THIS CAUSE came before the Court upon the Parties' Joint Motion for Referral to Settlement Conference. 51 . The Court entered an order referring the Parties to Magistrate Judge Lurana S. Snow for the purpose of conducting a settlement conference. 52 . However, Judge Snow recused herself from the case and the case was reassigned to Magistrate Judge Barry S. Seltzer. 20 . Accordingly, the matter is referred to United States Magistrate Judge Barry S. Seltzer for the purpose of conducting a settlement conference. The Parties shall contact Judge Seltzer's chambers to arrange to complete the settlement conference and the Parties shall submit a status report to the Court within five (5) days of the conclusion of the settlement conference. However, as stated in the Court's previous order 52 , the Court's Order of Referral to Mediation 38 remains in effect. If the Parties do not reach a settlement agreement during the settlement conference, the Parties must comply with the Court's Order of Referral to Mediation. Signed by Chief Judge K. Michael Moore on 8/10/2018. (jm01) (Entered: 08/10/2018) |
| 08/10/2018 | 55 | PAPERLESS ORDER of Instructions for Setting a Settlement Conference. The District Court has entered an Order [DE 54] referring the case to the undersigned for a settlement conference. Accordingly, Counsel and Pro Se Plaintiff are ORDERED to meet and confer, either telephonically or in person, for the purpose of determining a date on which to conduct the settlement conference. No later than August 17, 2018, Defendant's counsel shall telephone Chambers with no fewer than three dates (for the full business day) on |

| | | which the parties and their counsel will be available for the settlement conference. All parties must attend the settlement conference in person. Following the submission of proposed dates, the undersigned will enter an order setting the settlement conference with further instructions. Signed by Magistrate Judge Barry S. Seltzer on 8/10/2018. (pb00) (Entered: 08/10/2018) |
|---|---|---|
| 08/10/2018 | 56 | Unopposed MOTION for Leave to File Excess Page limits for Summary Judgment and Statement of Material Facts by Oluwamuyiwa Awodiya. (ebz) (Entered: 08/10/2018) |
| 08/13/2018 | 57 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion to File Excess pages for Summary Judgment and Statement of Material Facts. 56 . Therein, Plaintiff requests that the Court permit Plaintiff to file a summary judgment motion and accompanying statement of material facts in excess of the page limits imposed by the Local Rules for the Southern District of Florida. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, Plaintiff's Motion to File Excess Pages 56 is DENIED. All submissions must comply with the Local Rules of the Southern District of Florida and the Federal Rules of Civil Procedure. Failure to do so will result in the striking of non-compliant submissions. Signed by Chief Judge K. Michael Moore on 8/13/2018. (jm01) (Entered: 08/13/2018) |
| 08/13/2018 | 58 | ANSWER and Affirmative Defenses to Amended Complaint by Ross University School of Medicine. (Roman, Ryan) (Entered: 08/13/2018) |
| 08/16/2018 | 59 | Declaration in Support of Plaintiff's Motion for Partial Summary Judgment re 61 Motion for Partial Summary Judgment by Oluwamuyiwa Awodiya. (kpe) Modified on 8/17/2018 (kpe). (Main Document 59 replaced due to missing pages on 8/20/2018) (nc). Modified docket text on 8/20/2018 (nc). (Entered: 08/16/2018) |
| 08/16/2018 | 61 | MOTION for Partial Summary Judgment by Oluwamuyiwa Awodiya. Responses due by 8/30/2018 (Attachments: # 1 Statement of Material Facts In Support)(kpe) (Entered: 08/17/2018) |
| 08/17/2018 | 60 | ORDER Setting Settlement Conference for 10/1/2018 at 09:30 AM in Fort Lauderdale Division before Magistrate Judge Barry S. Seltzer. Signed by Magistrate Judge Barry S. Seltzer on 8/17/2018. *See attached document for full details.* (pb00) (Entered: 08/17/2018) |
| 08/20/2018 | 62 | Clerks Notice of Docket Correction re 59 Declaration in Support of Plaintiff's Motion for Partial Summary Judgment re 61 Motion for Partial Summary Judgment. **Correction Document replaced due to missing pages. The corrected image is attached to this notice.** (nc) (Entered: 08/20/2018) |
| 08/23/2018 | 63 | Defendant's MOTION for Relief Under Rule 56(d) of the Federal Rules of Civil Procedure or, Alternatively, Motion for Extension of Time to Respond to Summary Judgment re 61 MOTION for Partial Summary Judgment , MOTION for Extension of Time to File Response/Reply/Answer by Ross University School of Medicine. (Attachments: # 1 Affidavit (Declaration of Ryan Roman in Support of Defendant's Motion), # 2 Exhibit A to Declaration (First Request for Production of Documents), # 3 Exhibit B (First Set of Interrogatories))(Roman, Ryan) (Entered: 08/23/2018) |
| 08/27/2018 | 64 | RESPONSE to Motion re 63 Defendant's MOTION for Relief Under Rule 56(d) of the Federal Rules of Civil Procedure or, Alternatively, Motion for Extension of Time to Respond to Summary Judgment filed by Oluwamuyiwa Awodiya. Replies due by 9/4/2018. (kpe) (Entered: 08/27/2018) |
| 08/27/2018 | 65 | Declaration in Support re 64 Response to Motion, by Oluwamuyiwa Awodiya. (kpe) (Entered: 08/27/2018) |

| 08/29/2018 | 66 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's MOTION for Relief Under Rule 56(d) of the Federal Rules of Civil Procedure or, alternatively, Motion for Extension of Time to Respond to Plaintiff's Motion for Partial Summary Judgment. 63 . Therein, Defendant requests that the Court deny or defer ruling on Plaintiff's Motion for Partial Summary Judgment 61 or alternatively, requests that the Court grant Defendant a thirty (30) day extension of time to respond to Plaintiff's Motion for Summary Judgment. Plaintiff responded in opposition arguing that the Court should deny Defendant's request. 64 . |
|---|---|---|
| | | Federal Rule of Civil Procedure 56(d) authorizes a party opposing a summary judgment motion to file a motion for additional time to conduct discovery so that it may appropriately oppose the motion. See Fed. R. Civ. P. 56(d); Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 843 (11th Cir. 1989). Specifically, the Rule permits a court to (1) defer consideration of a summary judgment motion or deny it, (2) allow additional time for the nonmovant to obtain affidavits, declarations, or take additional discovery, and (3) issue any other appropriate order upon a showing by the nonmovant that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The protection afforded by Rule 56(d) is designed to safeguard against a premature grant of summary judgment. Smith v. Florida Dep't of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013). It is widely recognized that courts should grant a Rule 56(d) motion when the discovery sought is "relevant to the issues presented by the motion for summary judgment." Snook v. Trust Co. of Ga. Bank of Savannah, 859 F.2d 865, 870 (11th Cir. 1988); see also Baron Servs., Inc. v. Media Weather Innovations LLC, 717 F.3d 907, 912 (Fed. Cir. 2013). On the other hand, Rule 56(d) is not designed to save a case from summary judgment for a party who is merely seeking to embark on an evidentiary fishing expedition. See e.g., Ellis v. J.R.'s Country Stores, Inc., 779 F.3d 1184, 1208 (10th Cir. 2015). |
| | | Plaintiff initiated the instant action on March 6, 2018 alleging five counts against Defendant. 1 . On April 9, 2018, Plaintiff filed an Amended Complaint. 21 . Then, with leave of the Court, Plaintiff filed a Second Amended Complaint on May 14, 2018. 39 . Finally, on July 16, 2018, Plaintiff filed a Third Amended Complaint alleging ten counts against Defendant. 47 . On August 13, 2018, Defendant filed its answers and affirmative defenses 59 , and three days later, on August 16, 2018, Plaintiff filed a Motion for Partial Summary Judgment. 63 . Defendant recently served its first set of discovery requests and argues that there are a number of key areas for which discovery is necessary in this action, including, discovery into Plaintiff's alleged disabilities, requests for accommodations, treatments sought and diagnoses made by third parties. 63 . UPON CONSIDERATION of the Motion, the Response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion 63 is GRANTED IN PART and DENIED IN PART. Defendant's Request for Relief Under Rule 56(d) is GRANTED and thus, Defendant's Motion for an Extension of Time is DENIED AS MOOT. It is further ORDERED that Plaintiffs Motion for Partial Summary Judgment is DENIED WITHOUT PREJUDICE as premature. Signed by Chief Judge K. Michael Moore on 8/29/2018. (jm01) (Entered: 08/29/2018) |
| 09/04/2018 | 67 | MOTION for Partial Judgment on the Pleadings by Oluwamuyiwa Awodiya. (Attachments: # 1 Declaration in Support)(kpe) (Entered: 09/05/2018) |
| 09/07/2018 | 68 | Unopposed MOTION for Insurance Claims Adjuster to Appear Telephonically at Settlement Conference re 60 Order,, Set/Reset Hearings, by Ross University School of Medicine. (Roman, Ryan) (Entered: 09/07/2018) |
| 09/07/2018 | 69 | PAPERLESS ORDER denying 68 Motion for Insurance Claims Adjuster to Appear |

| | | |
|---|---|---|
| | | Telephonically at Settlement Conference. Signed by Magistrate Judge Barry S. Seltzer on 9/7/2018. (pb00) (Entered: 09/07/2018) |
| 09/18/2018 | 70 | RESPONSE in Opposition re 67 MOTION for Judgment on the Pleadings filed by Ross University School of Medicine. Replies due by 9/25/2018. (Roman, Ryan) (Entered: 09/18/2018) |
| 09/24/2018 | 71 | REPLY to 70 Response in Opposition to Motion by Oluwamuyiwa Awodiya. (kpe) (Entered: 09/24/2018) |
| 10/01/2018 | 72 | REPORT on Settlement Conference. (Case did not settle) Signed by Magistrate Judge Barry S. Seltzer on 10/1/2018. *See attached document for full details.* (pb00) Text Modified on 10/1/2018 (cqs). (Entered: 10/01/2018) |
| 10/01/2018 | 73 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Barry S. Seltzer: Settlement Conference held on 10/1/2018. Case reached an Impasse. Attorney Appearance(s): Ryan Roman for the Defendant, Oluwamuyiwa Awodiya (Plaintiff Pro Se) (Digital 9:33:22-9:38:50) (at) (Entered: 10/01/2018) |
| 10/02/2018 | 74 | ORDER OF RECUSAL signed by Magistrate Judge Barry S. Seltzer on 10/1/2018. Magistrate Judge Barry S. Seltzer recused. Case randomly reassigned by Clerk to Magistrate Judge Alicia O. Valle for all further proceedings. *See attached document for full details.* (ane) (Entered: 10/02/2018) |
| 10/30/2018 | 75 | Unopposed MOTION to Seal *Exhibit to Motion to Compel* per Local Rule 5.4 by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order Granting Unopposed Motion) (Roman, Ryan) (Entered: 10/30/2018) |
| 10/30/2018 | 76 | Defendant's MOTION to Compel *Plaintiff's Production of Documents and Better Responses to Interrogatories* by Ross University School of Medicine. Responses due by 11/13/2018 (Attachments: # 1 Exhibit A (First Set of Interrogatories), # 2 Exhibit B (First Request for Production), # 3 Exhibit C (Responses to Interrogatories), # 4 Exhibit D (Responses to Request for Production), # 5 Exhibit E (Stipulated Protective Order), # 6 Exhibit F (Amended Responses to Interrogatories), # 7 Exhibit G (Amended Responses to Request for Production), # 8 Exhibit H (Filed Under Seal))(Roman, Ryan) (Entered: 10/30/2018) |
| 10/31/2018 | 77 | PAPERLESS ORDER granting 75 Defendant's Unopposed Motion for Leave to File Exhibit to Motion to Compel Under Seal. Signed by Magistrate Judge Alicia O. Valle on 10/31/2018. (sd01) (Entered: 10/31/2018) |
| 10/31/2018 | 78 | ORDER Setting Hearing on Motion 76 Defendant's Motion to Compel Plaintiff's Production of Documents and Better Responses to Interrogatories. Hearing set for **11/16/2018 at 10:30 AM** in Fort Lauderdale Division before Magistrate Judge Alicia O. Valle. Signed by Magistrate Judge Alicia O. Valle on 10/31/2018. *See attached document for full details.* (sd01) (Entered: 10/31/2018) |
| 10/31/2018 | | SYSTEM ENTRY - Docket Entry 79 [misc] restricted/sealed until further notice. (1029398) (Entered: 10/31/2018) |
| 10/31/2018 | 80 | Clerks Notice to Filer re 79 Sealed Document. **Document Not Captioned;** In the future when filing a Sealed Document the Filer must File a Notice of Filing with the Exhibit attached with the proper caption pursuant to Local Rules. It is not necessary to refile this document. (nc) (Entered: 11/01/2018) |
| 11/02/2018 | 81 | MOTION to Continue *Hearing on Defendant's Motion to Compel* by Ross University School of Medicine. Attorney Octavia Monique Green added to party Ross University School of Medicine(pty:dft). Responses due by 11/16/2018 (Green, Octavia) (Entered: 11/02/2018) |

| 11/02/2018 | 82 | PAPERLESS ORDER granting 81 Joint Motion to Continue Hearing on Defendant's Motion to Compel. Hearing set for **11/21/2018 at 1:30 PM** in Fort Lauderdale Division before Magistrate Judge Alicia O. Valle. Signed by Magistrate Judge Alicia O. Valle on 11/2/2018. (sd01) (Entered: 11/02/2018) |
|---|---|---|
| 11/06/2018 | 83 | MOTION for Protective Order by Oluwamuyiwa Awodiya. (kpe) (Entered: 11/07/2018) |
| 11/06/2018 | 84 | RESPONSE in Opposition to 76 Defendant's MOTION to Compel *Plaintiff's Production of Documents and Better Responses to Interrogatories* filed by Oluwamuyiwa Awodiya. See DE 83 for image. Replies due by 11/13/2018. (kpe) (Entered: 11/07/2018) |
| 11/08/2018 | 85 | PAPERLESS ORDER Setting Hearing on 83 Plaintiff's Motion for Protective Order (the "Motion"). Hearing set for **11/21/2018 at 1:30 PM** in Fort Lauderdale Division before Magistrate Judge Alicia O. Valle. The parties are to include the Motion in the Joint Status Report required by ECF No. 78 . The deadline for filing the Joint Status Report is extended to **Friday, November 16, 2018**. Signed by Magistrate Judge Alicia O. Valle on 11/8/2018. (sd01) (Entered: 11/08/2018) |
| 11/12/2018 | 86 | RESPONSE in Opposition re 83 MOTION for Protective Order filed by Ross University School of Medicine. Replies due by 11/19/2018. (Green, Octavia) (Entered: 11/12/2018) |
| 11/16/2018 | 87 | NOTICE by Ross University School of Medicine re 85 Order Setting Hearing on Motion, *Notice of Filing Joint Status Report* (Green, Octavia) (Entered: 11/16/2018) |
| 11/19/2018 | 88 | REPLY to Response in Opposition to Plaintiff's 83 MOTION for Protective Order filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 11/20/2018) |
| 11/19/2018 | 89 | Second MOTION for Judicial Notice by Oluwamuyiwa Awodiya. (Attachments: # 1 Declaration in Support)(kpe) (Entered: 11/20/2018) |
| 11/20/2018 | 90 | NOTICE of Courtroom Assignment. The Motion Hearing scheduled on 11/21/2018 at 1:30pm before US Magistrate Judge Alicia O. Valle will be held in Courtroom 207 at the Federal Courthouse in Fort Lauderdale FL. (tpl) (Entered: 11/20/2018) |
| 11/21/2018 | 91 | PAPERLESS ORDER GRANTING ACCESS TO ELECTRONIC DEVICES IN THE COURTROOM FOR DISCOVERY HEARING. This cause comes before the Court upon Plaintiff's appearance at the Courthouse on November 21, 2018 with a cell phone and laptop in advance of the discovery hearing scheduled for this afternoon. Given Plaintiff's pro se status, the Court will consider his presentation at the Courthouse as an ore tenus request for electronic devices to be allowed into the Courthouse for use during the hearing. Plaintiff's ore tenus request is GRANTED. Consequently, Plaintiff and Defense counsel may bring cell phones and laptops into the discovery hearing before the undersigned. Signed by Magistrate Judge Alicia O. Valle on 11/21/2018. (sd01) (Entered: 11/21/2018) |
| 11/21/2018 | 92 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Motion Hearing held on 11/21/2018 re 76 Defendant's MOTION to Compel *Plaintiff's Production of Documents and Better Responses to Interrogatories* filed by Ross University School of Medicine, 83 MOTION for Protective Order filed by Oluwamuyiwa Awodiya. Oral argument heard from both sides. Order to follow. Total time in court: 2 hour(s). Attorney Appearance(s): Ryan Roman, Octavia Monique Green, Oluwamuyiwa Awodiya. (Digital 13:41:23) (tpl) (Entered: 11/21/2018) |
| 11/21/2018 | 93 | PAPERLESS ORDER ON DISCOVERY MOTIONS. For the reasons stated on the record at the hearing held on November 21, 2018, 76 Defendant's Motion to Compel Plaintiff's Production of Documents and Better Responses to Interrogatories is GRANTED IN PART AND DENIED IN PART. Additionally, 83 Plaintiff's Motion for |

| | | Protective Order is DENIED. Signed by Magistrate Judge Alicia O. Valle on 11/21/2018. (sd01) (Entered: 11/21/2018) |
|---|---|---|
| 11/28/2018 | 94 | NOTICE by Ross University School of Medicine *of Filing the Parties' Proposed Stipulated Protective Order* (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order) (Green, Octavia) (Entered: 11/28/2018) |
| 11/30/2018 | 95 | PAPERLESS ORDER REGARDING 94 Notice of Filing the Parties' Proposed Stipulated Protective Order Governing Discovery Material (the "Notice"). The Notice contains two competing versions of a proposed Stipulated Protective Order and advises that the "Parties were unable to agree on the language in paragraph 8 and paragraph 11" of the proposed orders. (ECF No. 94 ). Upon review of the Notice, the proposed orders, and being fully advised in the matter, the Court approves the version of the Stipulated Protective Order at ECF No. [94-2] as appropriate for this case. Consequently, the parties are to execute [94-2] the Stipulated Protective Order and file the same with the Court for final execution. The Court finds that a hearing is unnecessary and DENIES Plaintiff's request for a hearing. Signed by Magistrate Judge Alicia O. Valle on 11/30/2018. (sd01) (Entered: 11/30/2018) |
| 11/30/2018 | 96 | MOTION for Extension of Time to File Response/Reply/Answer as to 89 MOTION Judicial Notice by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order)(Green, Octavia) (Entered: 11/30/2018) |
| 12/03/2018 | 97 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Second Motion for Judicial Notice 96 . UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 96 is GRANTED. Defendants shall respond to Plaintiff's Second Motion for Judicial Notice 89 on or before December 10, 2018. Signed by Chief Judge K. Michael Moore on 12/3/2018. (ah03) (Entered: 12/03/2018) |
| 12/03/2018 | 98 | NOTICE by Ross University School of Medicine re 95 Order,,, *(Notice of Filing the Parties' Stipulated Protective Order Governing Discovery Material)* (Attachments: # 1 Exhibit 1 (Stipulated Protective Order Executed by the Parties)) (Roman, Ryan) (Entered: 12/03/2018) |
| 12/03/2018 | 99 | STIPULATED PROTECTIVE ORDER GOVERNING DISCOVERY MATERIAL. Signed by Magistrate Judge Alicia O. Valle on 12/3/2018. *See attached document for full details.* (sd01) (Entered: 12/03/2018) |
| 12/10/2018 | 100 | RESPONSE in Opposition re 89 MOTION Judicial Notice filed by Ross University School of Medicine. Replies due by 12/17/2018. (Green, Octavia) (Entered: 12/10/2018) |
| 12/10/2018 | 101 | Plaintiff's Statement of Material Facts in Support of Plaintiff's Second 102 MOTION for Partial Summary Judgment by Oluwamuyiwa Awodiya. (kpe) (Entered: 12/11/2018) |
| 12/10/2018 | 102 | Plaintiff's Second MOTION for Partial Summary Judgment by Oluwamuyiwa Awodiya. Responses due by 12/26/2018. (Attachments: # 1 Declaration In Support)(kpe) (Entered: 12/11/2018) |
| 12/12/2018 | 103 | MOTION for Extension of Time To Continue Pretrial Deadlines by Ross University School of Medicine. Responses due by 12/26/2018 (Attachments: # 1 Text of Proposed Order)(Green, Octavia) (Entered: 12/12/2018) |
| 12/13/2018 | 104 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Motion to Continue Pretrial Deadlines 103 . Therein, Defendant seeks a thirty (30) day extension of the discovery deadline for the purpose of allowing Defendant to supplement and/or amend its expert report in light of Plaintiff's Third Amended Calculation of Damages, |

| | | which was served on the last day of discovery. 103 at 1. Defendant also seeks an extension of the deadline to file pretrial motions in order to incorporate information related to damages. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDER AND ADJUDGED that the Motion 103 is GRANTED IN PART and DENIED IN PART. The deadline for discovery is extended through December 28, 2018 for the limited purpose of allowing Defendant to supplement and/or amend its expert report in light of Plaintiff's Third Amended Calculation of Damages. It is further ORDERED that Defendant shall file any pretrial motions on or before January 4, 2019. Signed by Chief Judge K. Michael Moore on 12/13/2018. (ah03) (Entered: 12/13/2018) |
|---|---|---|
| 12/13/2018 | 105 | ORDER denying 67 Motion for Judgment on the Pleadings. Signed by Chief Judge K. Michael Moore on 12/13/2018. *See attached document for full details.* (jm01) (Entered: 12/13/2018) |
| 12/17/2018 | 106 | REPLY to Response In Opposition to Second 89 MOTION for Judicial Notice filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 12/18/2018) |
| 12/21/2018 | 107 | RESPONSE in Opposition re 102 MOTION for Partial Summary Judgment filed by Ross University School of Medicine. Replies due by 12/28/2018. (Attachments: # 1 Statement of Material Facts in Opposition to 2nd Motion for Partial Summary Judgment, # 2 Declaration of Ryan Roman in Support of Opposition to Second Motion for Partial Summary Judgment)(Roman, Ryan) (Entered: 12/21/2018) |
| 12/26/2018 | 108 | Unopposed MOTION for Clarification of the Court's Order on Defendant's Motion to Continue Pretrial Deadlines re 104 Order, by Oluwamuyiwa Awodiya. Responses due by 1/9/2019. (kpe) (Entered: 12/27/2018) |
| 12/27/2018 | 109 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Clarification 108 . Therein, Plaintiff requests clarification of the Court's Order granting Defendant an extension of time to file pretrial motions 104 because the Order did not address an extension of time for Plaintiff as well. Plaintiff has already filed a Motion for Summary Judgment 102 but has not filed any other pretrial motions and requests an extension of time to do so. UPON CONSIDERATION of the Motion 108 , the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff shall have until on or before January 4, 2019 to file any additional pretrial motions, motions in limine, or Daubert motions. All other deadlines, including the deadline to conduct mediation, remain in effect. Signed by Chief Judge K. Michael Moore on 12/27/2018. (ah03) (Entered: 12/27/2018) |
| 12/27/2018 | 110 | NOTICE by Ross University School of Medicine re 107 Response in Opposition to Motion, *Filing Corrected Exhibit* (Attachments: # 1 Exhibit) (Green, Octavia) (Entered: 12/27/2018) |
| 12/27/2018 | 111 | Joint MOTION to Set Aside *Mediation or, Alternatively, To Extend Deadline to Conduct Mediation* by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order)(Green, Octavia) (Entered: 12/27/2018) |
| 12/28/2018 | 112 | PAPERLESS ORDER. THIS CAUSE came before the Court upon a Joint Motion to Excuse Mediation or, Alternatively, for an Extension of Time to Conduct Mediation 111 . Therein, the Parties state that they attended a settlement conference in October, which ended in an impasse, and that the Parties believe that any further efforts to mediate this case would be fruitless. On May 14, 2018, the Court entered a Paperless Order of Referral to Mediation 38 requiring all parties to participate in mediation no later than eighty (80) days before the scheduled trial date. On August 9, 2018, the Court referred the case to a Magistrate Judge for Settlement Conference 52 and specifically noted that "The Court's Order of Referral to Mediation 38 remains in effect. If the Parties do not |

| | | reach a settlement agreement during the settlement conference, the Parties must comply with the Court's Order of Referral to Mediation." 52 . This was reiterated again in the Court's second Order Referring the Case for Settlement Conference. 54 . Now, the day before the Parties' deadline to conduct mediation, the Parties request that the Court excuse them from their mediation obligations. Accordingly, UPON CONSIDERATION of the Joint Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Joint Motion 111 is GRANTED IN PART and DENIED IN PART. The Parties are not excused from mediation. The Parties shall conduct mediation on or before January 4, 2019. The physical presence of counsel and each party or representatives of each party with full authority to enter in a full and complete compromise and settlement is mandatory. Within one (1) day following the mediation conference, the mediator shall file a Mediation Report indicating whether all required parties were present. The report shall also indicate whether the case settled (in full or in part) or whether the mediator declared an impasse. Signed by Chief Judge K. Michael Moore on 12/28/2018. (ah03) (Entered: 12/28/2018) |
|---|---|---|
| 01/03/2019 | 113 | Reply Declaration In Support of 102 Second MOTION for Partial Summary Judgment filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 01/04/2019) |
| 01/03/2019 | 114 | Reply In Support of 102 Second MOTION for Partial Summary Judgment filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 01/04/2019) |
| 01/03/2019 | 115 | REPLY Statement of Material Facts In Support of 102 Second MOTION for Partial Summary Judgment by Oluwamuyiwa Awodiya. (kpe) (Entered: 01/04/2019) |
| 01/04/2019 | 116 | MOTION in Limine *To Exclude Reference to Adtalem Global Education Inc. and Its Net Worth* by Ross University School of Medicine. (Attachments: # 1 Exhibit)(Green, Octavia) (Entered: 01/04/2019) |
| 01/04/2019 | 117 | MOTION to Strike *and Preclude Plaintiff From Testifying to Improper Lay Opinions* by Ross University School of Medicine. Responses due by 1/18/2019 (Attachments: # 1 Exhibit)(Green, Octavia) (Entered: 01/04/2019) |
| 01/04/2019 | 118 | NOTICE by Laurie L. Riemer . Attorney Laurie L. Riemer added to party Laurie L. Riemer(pty:med). (Riemer, Laurie) (Entered: 01/04/2019) |
| 01/04/2019 | 119 | Statement of: Statement of Material Facts in Support of Motion for Summary Judgment by Ross University School of Medicine (Attachments: # 1 Exhibit Declaration of R. Roman, # 2 Exhibit 1 to Declaration of R. Roman, # 3 Exhibit 2 to Declaration of R. Roman, # 4 Exhibit 3 to Declaration of R. Roman, # 5 Exhibit 4 to Declaration of R. Roman, # 6 SEALED - Exhibit 5 to Declaration of R. Roman, # 7 Exhibit 6 to Declaration of R. Roman, # 8 Exhibit 7 to Declaration of R. Roman, # 9 Exhibit 8 to Declaration of R. Roman, # 10 Exhibit 9 to Declaration of R. Roman, # 11 Exhibit 10 to Declaration of R. Roman, # 12 Exhibit 11 to Declaration of R. Roman, # 13 Exhibit 12 to Declaration of R. Roman, # 14 Exhibit 13 to Declaration of R. Roman, # 15 Exhibit 14 to Declaration of R. Roman, # 16 Exhibit 15 to Declaration of R. Roman, # 17 Exhibit 16 to Declaration of R. Roman, # 18 SEALED - Exhibit 17 to Declaration of R. Roman, # 19 Exhibit 18 to Declaration of R. Roman, # 20 Exhibit 19 to Declaration of R. Roman, # 21 Exhibit 20 to Declaration of R. Roman, # 22 Exhibit 21 to Declaration of R. Roman, # 23 Exhibit 22 to Declaration of R. Roman, # 24 Exhibit 23 to Declaration of R. Roman, # 25 Exhibit 24 to Declaration of R. Roman, # 26 Exhibit 25 to Declaration of R. Roman, # SEALED - (27) Exhibit 26 to Declaration of R. Roman, # 28 Exhibit 27 to Declaration of R. Roman)(Green, Octavia) -Modified/Sealed Exhibits per (129) Order on 1/11/2019 (gp).- (Entered: 01/04/2019) |
| 01/04/2019 | 120 | MOTION for Summary Judgment by Ross University School of Medicine. Responses due by 1/18/2019 (Attachments: # 1 Exhibit A)(Green, Octavia) (Entered: 01/04/2019) |

| 01/08/2019 | 121 | ORDER granting in part and denying in part 89 Motion for Judicial Notice. Signed by Chief Judge K. Michael Moore on 1/8/2019. *See attached document for full details.* (ah03) (Entered: 01/08/2019) |
|---|---|---|
| 01/08/2019 | 122 | PAPERLESS ORDER TO SHOW CAUSE. THIS CAUSE came before the Court upon a sua sponte review of the record. On May 14, 2018, the Court entered a Paperless Order of Referral to Mediation 38 requiring all parties to participate in mediation no later than eighty (80) days before the scheduled trial date. On December 28, 2018, the Court entered a Paperless Order denying the Parties request to be excused from mediation and ordering the Parties to conduct mediation on or before January 4, 2019. 112. The Order also stated that "Within one (1) day following the mediation conference, the mediator shall file a Mediation Report indicating whether all required parties were present. The report shall also indicate whether the case settled (in full or in part) or whether the mediator declared an impasse." The Parties are hereby ORDERED to show cause by January 10, 2019 as to why no Mediation Report has been filed and also to provide a status report to the Court. Failure to do so may result in the imposition of sanctions. Signed by Chief Judge K. Michael Moore on 1/8/2019. (ah03) (Entered: 01/08/2019) |
| 01/09/2019 | 123 | FINAL MEDIATION REPORT by Laurie Riemer. Disposition: Case did not settle. (Green, Octavia) (Entered: 01/09/2019) |
| 01/09/2019 | 124 | RESPONSE TO ORDER TO SHOW CAUSE re 122 Order to Show Cause,,,, by Ross University School of Medicine. (Green, Octavia) (Entered: 01/09/2019) |
| 01/09/2019 | 125 | MOTION in Limine to Exclude Evidence Regarding Uncertainty of Damages, Ex-girlfriend, Counseling Notes, and Judicial Admissions by Oluwamuyiwa Awodiya. (kpe) Modified to restrict document due to error on 1/9/2019. See DE 127 for image (cbr). (Entered: 01/09/2019) |
| 01/09/2019 | 126 | MOTION to Exclude the Expert Testimony of Ronald Quintero by Oluwamuyiwa Awodiya. (kpe) (Entered: 01/09/2019) |
| 01/09/2019 | 127 | Clerks Notice of Docket Correction re 125 MOTION in Limine. **Document Restricted Due to Error**; The correct document has been attached to this notice. Original filing missing pages. (cbr) (Entered: 01/09/2019) |
| 01/11/2019 | 128 | MOTION to Seal per Local Rule 5.4 by Ross University School of Medicine. (Attachments: # 1 Text of Proposed Order Proposed Order) (Green, Octavia) (Entered: 01/11/2019) |
| 01/11/2019 | 129 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Motion to Seal 128. Having reviewed the Motion to Seal, the Court finds good cause to seal the materials requested. Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 128 is GRANTED. The Clerk of Court is DIRECTED to maintain under SEAL Exhibits 5, 17, and 26 to the Declaration of Ryan Roman, [119-6], [119-18] and [119-27], until further order of this Court, or upon the conclusion of this litigation, including any appeals. Signed by Chief Judge K. Michael Moore on 1/11/2019. (ah03) (Entered: 01/11/2019) |
| 01/11/2019 | 130 | CLERK'S NOTICE OF COMPLIANCE with 129 PAPERLESS ORDER. DIRECTING The Clerk of Court to maintain under SEAL Exhibits 5, 17, and 26 to the Declaration of Ryan Roman, [119-6], [119-18] and [119-27], until further order of this Court, or upon the conclusion of this litigation, including any appeals. (gp) (Entered: 01/11/2019) |
| 01/22/2019 | 131 | RESPONSE in Opposition re 125 MOTION in Limine *to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes, and Judicial Admissions* filed by Ross University School of Medicine. Replies due by 1/29/2019. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Green, Octavia) (Entered: 01/22/2019) |
| 01/22/2019 | 132 | STRICKEN RESPONSE in Opposition re 126 MOTION in Limine *to Exclude Evidence Regarding Uncertainty of Damages, Ex-Girlfriend, Counseling Notes, and Judicial Admissions* filed by Ross University School of Medicine. Replies due by 1/29/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Green, Octavia) Modified on 1/23/2019 per DE 134 Notice of Striking (kpe). (Entered: 01/22/2019) |
| 01/22/2019 | 133 | RESPONSE in Opposition re 126 MOTION in Limine / *Daubert Motion to Exclude the Expert Testimony of Ronald Quintero and Incorporated Memorandum of Law* filed by Ross University School of Medicine. Replies due by 1/29/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Green, Octavia) (Entered: 01/22/2019) |
| 01/22/2019 | 134 | NOTICE by Ross University School of Medicine re 132 Response in Opposition to Motion, *(Request to Strike DE 132)* (Green, Octavia) (Entered: 01/22/2019) |
| 01/23/2019 | 135 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Notice to Strike 134 the Response In Opposition to Plaintiff's Daubert Motion 132 . Defendant timely filed a corrected Response at 133 . UPON CONSIDERATION of the Notice, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Response In Opposition to Plaintiff's Daubert Motion at 132 is STRICKEN. The Clerk of the Court is instructed to STRIKE the Response In Opposition to Plaintiff's Daubert Motion 132 . Signed by Chief Judge K. Michael Moore on 1/23/2019. (ah03) (Entered: 01/23/2019) |
| 01/28/2019 | 136 | RESPONSE in Opposition re 117 MOTION to Strike *and Preclude Plaintiff From Testifying to Improper Lay Opinions* filed by Oluwamuyiwa Awodiya. Replies due by 2/4/2019. (ls) (Entered: 01/29/2019) |
| 01/28/2019 | 137 | RESPONSE in Opposition re 120 MOTION for Summary Judgment filed by Oluwamuyiwa Awodiya. Replies due by 2/4/2019. (ls) (Entered: 01/29/2019) |
| 01/28/2019 | 138 | AFFIDAVIT/DECLARATION re 137 Response in Opposition to Motion by Oluwamuyiwa Awodiya (ls) (Entered: 01/29/2019) |
| 01/28/2019 | 139 | Statement of: Material Facts in Opposition by Oluwamuyiwa Awodiya re 120 MOTION for Summary Judgment (ls) (Entered: 01/29/2019) |
| 01/28/2019 | 140 | MOTION for Judicial Notice re 137 Response in Opposition to Motion by Oluwamuyiwa Awodiya. (ls) (Entered: 01/29/2019) |
| 02/04/2019 | 141 | REPLY to Response to Motion re 117 MOTION to Strike *and Preclude Plaintiff From Testifying to Improper Lay Opinions* filed by Ross University School of Medicine. (Green, Octavia) (Entered: 02/04/2019) |
| 02/04/2019 | 142 | RESPONSE in Support re 120 MOTION for Summary Judgment filed by Ross University School of Medicine. (Green, Octavia) (Entered: 02/04/2019) |
| 02/04/2019 | 143 | RESPONSE to 139 Statement of Material Facts , filed by Ross University School of Medicine. (Attachments: # 1 Affidavit Supporting Declaration of Ryan Roman)(Green, Octavia) Modified on 2/5/2019 (kpe). (Entered: 02/04/2019) |
| 02/05/2019 | 144 | Clerks Notice to Filer re 143 Reply to Response to Motion. **Incorrect Document Link;** ERROR - The filed document was not correctly linked to the related docket entry. The correction was made by the Clerk. It is not necessary to refile this document but future |

|  |  | filings must comply with the instructions in the CM/ECF Attorney User's Manual. (kpe) (Entered: 02/05/2019) |
|---|---|---|
| 02/05/2019 | 145 | REPLY in Support of Plaintiff's 125 MOTION in Limine filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 02/05/2019) |
| 02/05/2019 | 146 | REPLY in Support of Plaintiff's 126 MOTION to Exclude filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 02/05/2019) |
| 02/12/2019 | 147 | RESPONSE in Opposition re 140 MOTION for Judicial Notice re 137 Response in Opposition to Motion filed by Ross University School of Medicine. Replies due by 2/19/2019. (Attachments: # 1 Exhibit A)(Green, Octavia) (Entered: 02/12/2019) |
| 02/19/2019 | 148 | REPLY to Plaintiff's Request for 140 Judicial Notice in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 02/19/2019) |
| 02/28/2019 | 149 | PRETRIAL STIPULATION by Ross University School of Medicine (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Roman, Ryan) (Entered: 02/28/2019) |
| 02/28/2019 | 150 | Proposed Voir Dire Questions by Ross University School of Medicine. (Green, Octavia) (Entered: 02/28/2019) |
| 03/01/2019 | 151 | NOTICE by Ross University School of Medicine re 149 Pretrial Stipulation - *NOTICE OF FILING PLAINTIFF'S STATEMENT OF THE CASE* (Attachments: # 1 Exhibit A) (Green, Octavia) (Entered: 03/01/2019) |
| 03/01/2019 | 152 | NOTICE by Ross University School of Medicine re 149 Pretrial Stipulation - *NOTICE OF FILING PLAINTIFFS OBJECTIONS TO DEFENDANTS EXHIBIT LIST* (Attachments: # 1 Exhibit A) (Green, Octavia) (Entered: 03/01/2019) |
| 03/01/2019 | 153 | MOTION to Bring Electronic Equipment into the courtroom by Ross University School of Medicine. Responses due by 3/15/2019 (Attachments: # 1 Text of Proposed Order) (Green, Octavia) (Entered: 03/01/2019) |
| 03/02/2019 | 154 | ORDER denying 102 Motion for Partial Summary Judgment; granting in part and denying in part 120 Motion for Summary Judgment. Signed by Chief Judge K. Michael Moore on 3/2/2019. *See attached document for full details.* (jm01) (Entered: 03/02/2019) |
| 03/02/2019 | 155 | ORDER granting 116 Motion in Limine; granting in part and denying in part 117 Motion to Strike ; denying 125 Motion in Limine; denying 126 Motion in Limine. Signed by Chief Judge K. Michael Moore on 3/2/2019. *See attached document for full details.* (jm01) (Entered: 03/02/2019) |
| 03/04/2019 | 156 | ORDER granting 153 Motion to Bring Electronic Equipment into the courtroom. Signed by Chief Judge K. Michael Moore on 3/4/2019. *See attached document for full details.* (ah03) (Entered: 03/04/2019) |
| 03/04/2019 | 157 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's Motion for Judicial Notice 140 . On December 27, 2018, the Court entered a Paperless Order granting Plaintiff an extension of time until January 4, 2019 to file any additional pretrial motions. 109 . On January 28, 2019 Plaintiff filed a Motion for Judicial Notice 140 . A district court has discretion in deciding how best to manage the cases before them, and that discretion extends to whether to consider untimely motions. See Enwonwu v. Fulton-Dekalb Hosp. Auth., 286 F. App'x 586, 595 (11th Cir. 2008). Here, Plaintiff filed his motion over three weeks after the Court's deadline for pretrial motions. Accordingly, UPON CONSIDERATION of the Motion, the pertinent portion of the records, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that |

|  |  | Plaintiff's Motion 140 is DENIED WITHOUT PREJUDICE. Signed by Chief Judge K. Michael Moore on 3/4/2019. (ah03) (Entered: 03/04/2019) |
|---|---|---|
| 03/05/2019 | 158 | PAPERLESS Minute Entry for proceedings held before Chief Judge K. Michael Moore: Final Pretrial Conference held on 3/5/2019. Issues addressed. Defense estimates approximately 2-3 days for trial; trial to be held in Miami; parties to attend calendar call on 3/14/2019 at 2:00 PM. Attorney Appearance(s): Ryan Roman, Octavia Monique Green, Other appearances: Pro Se Plaintiff, Mr. Awodiya. Court Reporter: William Romanishin, 305-523-5558 / Bill_Romanishin@flsd.uscourts.gov. (rg1) (Entered: 03/05/2019) |
| 03/06/2019 | 159 | NOTICE of Filing Discovery: Deposition Designations by Ross University School of Medicine. (Attachments: # 1 Exhibit A)(Green, Octavia) (Entered: 03/06/2019) |
| 03/08/2019 | 160 | MOTION in Limine *to Exclude New Theories of Liability* by Ross University School of Medicine. (Green, Octavia) (Entered: 03/08/2019) |
| 03/08/2019 | 161 | MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence* by Ross University School of Medicine. (Attachments: # 1 Exhibit RUSM's Request for Production to Plaintiff, # 2 Exhibit Email Correspondence)(Green, Octavia) (Entered: 03/08/2019) |
| 03/12/2019 | 162 | Proposed Jury Instructions by Ross University School of Medicine. (Green, Octavia) (Entered: 03/12/2019) |
| 03/12/2019 | 163 | NOTICE by Ross University School of Medicine *of Filing Proposed Verdict Form* (Green, Octavia) (Entered: 03/12/2019) |
| 03/14/2019 | 164 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Plaintiff's telephonic notification that he cannot make the scheduled calendar call due to a flight cancellation. The Court finds good cause to continue the calendar call and trial. Accordingly, UPON CONSIDERATION of the notification, the pertinent portions of the record, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED that the calendar call scheduled for today, March 14, 2019 at 2:00 p.m. is hereby CANCELLED. It is further ORDERED that the currently scheduled trial is continued to the the two-week trial period commencing May 28, 2019at 9 a.m. in Courtroom 13-1, (thirteenth floor) United States District Courthouse, 400 North Miami Avenue, Miami, Florida. All parties are directed to report to the newly scheduled calendar call on May 23, 2019, at 2 p.m., at which time all matters relating to the scheduled trial date may be brought to the attention of the Court. The calendar call will take place in Courtroom 13-1 (thirteenth floor), United States District Courthouse, 400 North Miami Avenue, Miami, Florida. All other deadlines not addressed herein are unaffected by this Order. Signed by Chief Judge K. Michael Moore on 3/14/2019. (ah03) (Entered: 03/14/2019) |
| 03/26/2019 | 165 | MOTION for Order to Designate Method of Damage Calculations by Oluwamuyiwa Awodiya. (kpe) (Entered: 03/27/2019) |
| 03/26/2019 | 166 | RESPONSE to Defendant's 160 MOTION in Limine *to Exclude New Theories of Liability* filed by Oluwamuyiwa Awodiya. Replies due by 4/2/2019. (kpe) (Entered: 03/27/2019) |
| 03/26/2019 | 167 | RESPONSE to Defendant's 161 MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence* filed by Oluwamuyiwa Awodiya. Replies due by 4/2/2019. (kpe) (Entered: 03/27/2019) |
| 04/01/2019 | 168 | MOTION to Continue *Trial* by Ross University School of Medicine. Responses due by 4/15/2019 (Attachments: # 1 Text of Proposed Order Proposed Order Granting Defendant's Motion to Continue Trial)(Green, Octavia) (Entered: 04/01/2019) |

| 04/03/2019 | 169 | RESPONSE in Opposition re 165 MOTION Order *to Designate Method of Damage Calculations* filed by Ross University School of Medicine. Attorney Donnie Marcel King added to party Ross University School of Medicine(pty:dft). Replies due by 4/10/2019. (King, Donnie) (Entered: 04/03/2019) |
|---|---|---|
| 04/03/2019 | 170 | REPLY to Response to Motion re 161 MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence* filed by Ross University School of Medicine. (King, Donnie) (Entered: 04/03/2019) |
| 04/03/2019 | 171 | REPLY to Response to Motion re 160 MOTION in Limine *to Exclude New Theories of Liability* filed by Ross University School of Medicine. (King, Donnie) (Entered: 04/03/2019) |
| 04/08/2019 | 172 | PAPERLESS ORDER REFERRING MOTIONS. PURSUANT to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned cause is hereby referred to United States Magistrate Judge Alicia O. Valle to take all necessary and proper action as required by law regarding Defendant's Motions in Limine 160 and 161 . Signed by Chief Judge K. Michael Moore on 4/8/2019. (ah03) (Entered: 04/08/2019) |
| 04/08/2019 | 173 | PAPERLESS ORDER. THIS CAUSE came before the Court upon Defendant's Motion to Continue Trial 168 . Therein, Defendant request the Court continue trial until the second week of the two-week trial period commencing May 28, 2019 because the first week conflicts with counsel's son's end of school year award ceremony in Chicago, Illinois. The Court finds good cause to hold trial during the second week of the two-week trial period. UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion 168 is GRANTED. Signed by Chief Judge K. Michael Moore on 4/8/2019. (ah03) (Entered: 04/08/2019) |
| 04/08/2019 | 174 | PAPERLESS ORDER REFERRING MOTION. PURSUANT to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned cause is hereby referred to United States Magistrate Judge Alicia O. Valle to take all necessary and proper action as required by law regarding Plaintiff's Motion to Designate Method of Damage Calculations 165 . Signed by Chief Judge K. Michael Moore on 4/8/2019. (ah03) (Entered: 04/08/2019) |
| 04/11/2019 | 175 | MOTION for Leave to File *Partial Motion for Summary Judgment* by Ross University School of Medicine. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Roman, Ryan) (Entered: 04/11/2019) |
| 04/11/2019 | 176 | ORDER OF REASSIGNMENT to Judge Roy Altman for all further proceedings, Chief Judge K. Michael Moore no longer assigned to case. Signed by Chief Judge K. Michael Moore on 4/11/2019. *See attached document for full details.* (yar) (Entered: 04/11/2019) |
| 04/11/2019 | 177 | REPLY to Plaintiff's 165 MOTION for Order to Designate Method Damage Calculations, filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 04/12/2019) |
| 04/17/2019 | 178 | MOTION for Reconsideration and Alteration of Omnibus Order ( Responses due by 5/1/2019) by Oluwamuyiwa Awodiya. (kpe) (Entered: 04/17/2019) |
| 04/18/2019 | 179 | CLERK'S PAPERLESS NOTICE terminating previously scheduled hearing dates. This case has been transferred to the Honorable Roy K. Altman. The parties are hereby notified that any hearing dates scheduled before Chief Judge K. Michael Moore are hereby TERMINATED and will be rescheduled by Judge Roy K. Altman. (rg1) (Entered: 04/18/2019) |
| 04/22/2019 | 180 | AMENDED SCHEDULING ORDER: In Limine Motions due by 6/11/2019. Pretrial |

| | | Stipulation due by 6/11/2019. Jury Trial set for 6/24/2019 in Fort Lauderdale Division before Judge Roy K. Altman. Calendar Call set for 6/18/2019 01:45 PM in Fort Lauderdale Division before Judge Roy K. Altman. Signed by Judge Roy K. Altman on 4/19/2019. *See attached document for full details.* (kpe)<br><br>**Pattern Jury Instruction Builder** - To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 04/22/2019) |
|---|---|---|
| 04/25/2019 | 181 | RESPONSE to Defendant's 175 MOTION for Leave to File Partial Motion for Summary Judgment, filed by Oluwamuyiwa Awodiya. Replies due by 5/2/2019. (kpe) (Entered: 04/25/2019) |
| 04/26/2019 | 182 | MOTION to Continue *Trial* re 180 Scheduling Order,, by Ross University School of Medicine. Responses due by 5/10/2019 (Attachments: # 1 Text of Proposed Order Granting Motion)(Roman, Ryan) (Entered: 04/26/2019) |
| 04/26/2019 | 183 | PAPERLESS Order Calendar Call reset for 6/11/2019 01:45 PM in Fort Lauderdale Division before Judge Roy K. Altman. Signed by Judge Roy K. Altman on 4/26/2019. (jz00) (Entered: 04/26/2019) |
| 04/30/2019 | 184 | ORDER granting 182 Motion to Continue. Calendar Call reset for 6/11/2019 01:45 PM in Fort Lauderdale Division before Judge Roy K. Altman, Jury Trial set for 7/8/2019 before Judge Roy K. Altman. Signed by Judge Roy K. Altman on 4/30/2019. *See attached document for full details.* (vmz) (Entered: 04/30/2019) |
| 05/01/2019 | 185 | RESPONSE in Opposition re 178 MOTION for Reconsideration re 154 Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment MOTION to Alter Judgment filed by Ross University School of Medicine. Replies due by 5/8/2019. (Green, Octavia) (Entered: 05/01/2019) |
| 05/03/2019 | 186 | PAPERLESS ORDER Setting Oral Argument on 178 the Plaintiff's MOTION for Reconsideration re 154 Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment MOTION to Alter Judgment; 165 the Plaintiff's MOTION for Order to Designate Method of Damage Calculations; 160 the Defendant's MOTION in Limine *to Exclude New Theories of Liability*; 175 the Defendant's MOTION for Leave to File *Partial Motion for Summary Judgment*; 161 The Defendant's MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence*. Motion Hearing set for Wednesday, 5/8/2019 at 02:30 PM in Fort Lauderdale Division, Courtroom 207A before Judge Roy K. Altman. The parties should be prepared to discuss the substance of any outstanding motions pending before the Court. Signed by Judge Roy K. Altman on 5/3/19. (tas) (Entered: 05/03/2019) |
| 05/06/2019 | 187 | REPLY to Plaintiff's 178 MOTION for Reconsideration and Alteration of Omnibus Order, filed by Oluwamuyiwa Awodiya. (kpe) (Entered: 05/06/2019) |
| 05/07/2019 | 188 | Unopposed MOTION to Continue *(filed by Defendant as a courtesy for Plaintiff who does not have access to CM/ECF)* re 186 Order Setting Hearing on Motion,,, by Ross University School of Medicine. Responses due by 5/21/2019 (Roman, Ryan) (Entered: 05/07/2019) |
| 05/07/2019 | 189 | PAPERLESS ORDER denying as moot 188 Motion to Continue in light of the Court's forthcoming order resetting all motions hearings for the Calendar Call, which will be held on June 11, 2019 at 1:45 p.m. Signed by Judge Roy K. Altman on 5/7/2019. (RKA) (Entered: 05/07/2019) |
| 05/07/2019 | 190 | PAPERLESS ORDER Setting Oral Arguments re 178 the Plaintiff's MOTION for Reconsideration re 154 Order on Motion for Partial Summary Judgment, Order on |

| | | Motion for Summary Judgment, Motion to Alter Judgment; <u>165</u> the Plaintiff's MOTION for Order to Designate Method of Damage Calculations; <u>160</u> the Defendant's MOTION in Limine *to Exclude New Theories of Liability*, <u>175</u> the Defendant's MOTION for Leave to File *Partial Motion for Summary Judgment*; <u>161</u> the Defendant's MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence* : Motion Hearing RESET for 6/11/2019 at 01:45 PM in the Fort Lauderdale Division, Courtroom 207A before Judge Roy K. Altman. The parties should be prepared to discuss the substance of any outstanding motions pending before the Court. Signed by Judge Roy K. Altman on 5/7/19. (tas) (Entered: 05/07/2019) |
|---|---|---|
| 05/15/2019 | <u>191</u> | ORDER denying <u>175</u> Motion for Leave to File ; denying <u>178</u> Motion for Reconsideration ; denying <u>178</u> Motion to Alter Judgment. Signed by Judge Roy K. Altman on 5/14/2019. *See attached document for full details.* (cqs) Modified on 6/20/2019 (ch1)to change to opinion per chambers. (Entered: 05/16/2019) |
| 05/22/2019 | <u>192</u> | RESPONSE to the Court's May 16, 2019 Order EFC No. <u>191</u> , by Oluwamuyiwa Awodiya. (kpe) (Entered: 05/22/2019) |
| 05/29/2019 | <u>193</u> | Defendant's Brief on Extraterritorial Application of the Americans with Disabilities Act and the Rehabilitation Act in response to <u>191</u> Order on Motion for Leave to File, Order on Motion for Reconsideration, Order on Motion to Alter Judgment by Ross University School of Medicine. (Roman, Ryan) (Entered: 05/29/2019) |
| 06/03/2019 | <u>194</u> | MOTION in Limine to Preclude Prejudicial Evidence and Theories by Oluwamuyiwa Awodiya. (ls) (Entered: 06/03/2019) |
| 06/03/2019 | <u>195</u> | AFFIDAVIT/DECLARATION in Support re <u>194</u> MOTION in Limine filed by Oluwamuyiwa Awodiya. (ls) (Entered: 06/03/2019) |
| 06/04/2019 | <u>196</u> | NOTICE OF WITHDRAWAL OF MOTION by Ross University School of Medicine re <u>161</u> MOTION in Limine *to Preclude Plaintiff From Introducing Documents Produced After the Discovery Deadline Into Evidence* filed by Ross University School of Medicine (Roman, Ryan) (Entered: 06/04/2019) |
| 06/10/2019 | <u>197</u> | Unopposed MOTION to Bring Electronic Equipment into the courtroom *(filed by Defendant as a courtesy for Plaintiff who does not have access to CM/ECF)* by Ross University School of Medicine. Responses due by 6/24/2019 (Roman, Ryan) (Entered: 06/10/2019) |
| 06/10/2019 | <u>198</u> | NOTICE by Ross University School of Medicine *of Filing Deposition Designations and Counter-Designations* (Attachments: # <u>1</u> Exhibit A (Plaintiff's Deposition Designations), # <u>2</u> Exhibit B (Defendant's Deposition Designations)) (Roman, Ryan) (Entered: 06/10/2019) |
| 06/10/2019 | <u>199</u> | PRETRIAL STIPULATION by Ross University School of Medicine (Attachments: # <u>1</u> Exhibit Joint Pretrial Stipulation, # <u>2</u> Exhibit 1 - Plaintiff's Exhibit List, # <u>3</u> Exhibit 2 - Defendant's Exhibit List, # <u>4</u> Exhibit 3 - Plaintiff's Witness List, # <u>5</u> Exhibit 4 - Defendant's Witness List)(Roman, Ryan) (Entered: 06/10/2019) |
| 06/10/2019 | <u>200</u> | Proposed Voir Dire Questions by Ross University School of Medicine. (Roman, Ryan) (Entered: 06/10/2019) |
| 06/10/2019 | <u>201</u> | Proposed Jury Instructions by Ross University School of Medicine. (Attachments: # <u>1</u> Exhibit A - Joint Jury Instructions, # <u>2</u> Exhibit B - Redline, # <u>3</u> Exhibit C - Plaintiff's Proposed Verdict Form, # <u>4</u> Exhibit D - Defendant's Proposed Verdict Form)(Roman, Ryan) (Entered: 06/10/2019) |
| 06/11/2019 | 202 | PAPERLESS NOTICE RESETTING CALENDAR CALL AND MOTION HEARINGS (TIME ONLY) to 2:00 p.m. on June 11, 2019. (tas) (Entered: 06/11/2019) |

| 06/11/2019 | 203 | PAPERLESS ORDER granting 197 the Plaintiff's Unopposed Motion for Permission to Bring Electronic Devices into the Courthouse. The Plaintiff may bring his cellular telephone and laptop computer into the U.S. Federal Building and Courthouse in Fort Lauderdale, Florida for the calendar call scheduled on June 11, 2019. Signed by Judge Roy K. Altman on 6/11/2019. (jz00) (Entered: 06/11/2019) |
| --- | --- | --- |
| 06/11/2019 | 204 | NOTICE by Ross University School of Medicine *of Filing Record Evidence* (Green, Octavia) (Entered: 06/11/2019) |
| 06/12/2019 | 205 | PAPERLESS ORDER notifying the Plaintiff that the Court will provide, free of charge, real-time transcription services during the pendency of the trial currently set for the two-week trial period beginning July 8, 2019. Signed by Judge Roy K. Altman on 6/12/2019. (jz00) (Entered: 06/12/2019) |
| 06/13/2019 | 206 | RESPONSE in Opposition re 194 MOTION in Limine *to Exclude Prejudicial Evidence and Theories* filed by Ross University School of Medicine. Replies due by 6/20/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(King, Donnie) (Entered: 06/13/2019) |
| 06/14/2019 | 207 | Proposed Voir Dire Questions by Ross University School of Medicine. (Roman, Ryan) (Entered: 06/14/2019) |
| 06/14/2019 | 208 | PRETRIAL STIPULATION by Ross University School of Medicine (Attachments: # 1 Exhibit A - Joint Pretrial Stipulation, # 2 Exhibit 1 - Plaintiff's Exhibit List, # 3 Exhibit 2 - Defendant's Exhibit List, # 4 Exhibit 3 - Plaintiff's Witness List, # 5 Exhibit 4 - Defendant's Witness List)(Roman, Ryan) (Entered: 06/14/2019) |
| 06/14/2019 | 209 | Proposed Jury Instructions by Ross University School of Medicine. (Attachments: # 1 Exhibit Exhibit A - Joint Proposed Jury Instructions, # 2 Exhibit Exhibit B - Proposed Verdict Forms)(Roman, Ryan) (Entered: 06/14/2019) |
| 06/18/2019 | 210 | ORDER Closing Case. Counts I, II, VIII, and IX of the Plaintiff's Third Amended Complaint [ECF No. 47] are DISMISSED with prejudice. All pending motions are DENIED as moot. The Clerk of Court is instructed to CLOSE this case. Signed by Judge Roy K. Altman on 6/17/2019. *See attached document for full details.* (kpe) Modified on 6/20/2019 (ch1)to change to opinion per chambers. (Entered: 06/18/2019) |
| 06/20/2019 | 211 | FINAL JUDGMENT. This action is DISMISSED on the merits. The Clerk is directed to CLOSE this case, all pending hearings and deadlines are CANCELLED, and any pending motions are DENIED as moot. Signed by Judge Roy K. Altman on 6/19/2019. *See attached document for full details.* (kpe) (Entered: 06/20/2019) |
| 06/26/2019 | 212 | MOTION for Amended and Additional Findings in the Court's Order Closing Case re 210 Order Dismissing Case, by Oluwamuyiwa Awodiya. Responses due by 7/10/2019 (jao) (Entered: 06/26/2019) |
| 06/26/2019 | 213 | AFFIDAVIT/Declaration in Support of Motion for Amended and Additional Findings in the Court's Order Closing the Case re DE 212 MOTION to Amend/Correct 210 Order Dismissing Case, filed by Oluwamuyiwa Awodiya. (jao) (Entered: 06/26/2019) |
| 06/26/2019 | 214 | Document filed in wrong case and has been correctly filed in the right case. Modified on 6/26/2019 (jao). Modified text on 6/26/2019 (asl). (Entered: 06/26/2019) |
| 06/26/2019 | 215 | Clerks Notice of Docket Correction re 214 Notice of Mediator Selection and/or Hearing. **Document Filed in Wrong Case**; Document restricted and docket text modified. Document refiled in correct case # 19-cv-60382. (jao) (Entered: 06/26/2019) |
| 07/02/2019 | 216 | TRANSCRIPT of Calendar Call and Motion Hearing held on 6-11-19 before Judge Roy K. Altman, Volume Number 1 of 1, 1-90 pages, Court Reporter: Francine Salopek, 954- |

| | | 769-5657 / Francine_Salopek@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter Francine Salopek before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter Francine Salopek and PACER. Redaction Request due 7/23/2019. Redacted Transcript Deadline set for 8/2/2019. Release of Transcript Restriction set for 9/30/2019. (fs) (Entered: 07/02/2019) |
|---|---|---|
| 07/09/2019 | 217 | ORDER denying 212 Motion for Amended and Additional Findings in the Courts Order Closing Case. Signed by Judge Roy K. Altman on 7/9/2019. *See attached document for full details.* (kpe) (Entered: 07/10/2019) |
| 07/17/2019 | 218 | Notice of Appeal as to 211 Judgment, 210 Order Dismissing Case, by Oluwamuyiwa Awodiya. FILING FEE: (NOT PAID). Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under Transcript Information. (apz) (Entered: 07/18/2019) |
| 07/18/2019 | | Transmission of Notice of Appeal, Order/Judgment under appeal and Docket Sheet to US Court of Appeals re 218 Notice of Appeal, Notice has been electronically mailed. (apz) (Entered: 07/18/2019) |
| 07/29/2019 | 219 | Acknowledgment of Receipt of NOA from USCA re 218 Notice of Appeal, filed by Oluwamuyiwa Awodiya. Date received by USCA: 7/18/2019. USCA Case Number: 19-12832-D. (apz) (Entered: 07/29/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/19/2019 13:26:53 | | | |
| **PACER Login:** | muyiwafly:5497265:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:18-cv-60482-RKA |
| **Billable Pages:** | 24 | **Cost:** | 2.40 |

Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person



FILED by _____ D.C.

JUL 1 6 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

# UNITED STATES DISTRICT COURT

for the
Southern District of Florida

---

|  |  |
|---|---|
| Oluwamuyiwa Awodiya ) | Case No.   0:18-cv-60482-KMM |
| *Plaintiff* ) |  |
| ) | Jury Trial:   ☒ Yes ☐ No |
| -v- ) | |
| ) | Hon. Chief Judge: K. Michael Moore |
| ) | Magistrate Judge: Barry S. Seltzer |
| Ross University School of Medicine, School ) | |
| of Veterinary Medicine Limited ) | |
| *Defendant* ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, OLUWAMUYIWA AWODIYA, in proper person, complains against

Defendant, ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY

MEDICINE LIMITED (hereinafter, referred to as "Defendant" or "RUSM").

## PARTIES

1.     Plaintiff, Oluwamuyiwa Awodiya is currently a resident of the State of Maryland

and, at all relevant times, was a student at Ross University School of Medicine.

1

2.     Defendant, RUSM is a private for-profit medical school. Adtalem Global Education is registered with the Florida Department of State to do business in Florida as Ross University School of Medicine. According to public records, RUSM's principal place of business is in Broward county of the State of Florida. RUSM is also registered to do business in Tennessee, which documents that RUSM's "principal address" is located in Broward county of the State of Florida. RUSM has administrative offices in Florida, has 5 classrooms in Florida, and gives programs of instruction in Florida. RUSM institution is licensed by Florida Department of Education, under the provision of Chapter 1005 of Florida Statues also under the provision Chapter 6E of the Florida Administrative Code.

## JURISDICTION AND VENUE

3.     This court has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

4.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (questions of federal law) based upon Section 504 of the Rehabilitation Act of 1973 (hereinafter, referred to as "Section 504") and Title III of the Americans with Disabilities Act (hereinafter, referred to as the "ADA").

5.     This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims are so related to his federal claims that both form a part of the same case or controversy.

6.     Venue is appropriate in this Court under 28 U.S.C. § 1391 as Defendant's administrative offices, its principal place of business, and its principal address are located in this judicial district.

2

## FACTS FOR NBME CBSE EXAM TAKEN IN THE UNITED STATES

7.     Plaintiff suffers from mental impairments; he has an attention impairment later diagnosed as Attention Deficit Disorder Without Mention of Hyperactivity (hereinafter, referred to as "ADHD") and has an anxiety disorder later diagnosed as "Anxiety State, Unspecified" (hereinafter, referred to as "Anxiety Disorder") which resembles the anxiety caused by Plaintiff's later diagnosed Obsessive Compulsive Disorder (hereinafter, referred to as "OCD").

8.     In December 2015, Plaintiff requested test accommodations from the Associate Dean of RUSM, Dr. Bryan Hayse ("Dr. Hayse").

9.     After Plaintiff failed his 5th semester by one percent, he went to Dr. Hayse and asked if he could retake any of his exams because he needed more time to answer the questions; Plaintiff also told Dr. Hayse that he had extreme difficulty paying attention during his exams. Dr. Hayse partially denied the request, responding that he could only accommodate Plaintiff for future exams but not for exams that Plaintiff had already taken.

10.     Dr. Hayse then told Plaintiff that he would call McMillan Cuffy ("Mr. Cuffy") to get accommodations for the Plaintiff.

11.     In January 2016, Plaintiff gave the RUSM counseling center his CONNERS CPT3 assessment results of his ADHD assessed by his primary health care provider in the United States of America. At the same time, he requested accommodations for his ADHD which included additional time to complete exams, extended testing time and extra time to study for and between the National Board of Medical Examiners (NBME) Comprehensive Basic Sciences examination (CBSE) (hereinafter, referred to as "NBME CBSE" or "COMP") attempts, as well as assistance and guidance to process requests with NBME for extended test time.

12.     After Plaintiff requested accommodations again, Dr. Davendra Sharma and

3

McMillan Cuffy wanted to do their own evaluation and diagnostic assessments for Plaintiff's attention problem.

13.     In addition to Plaintiff's CONNERS CPT3 assessment already provided to RUSM, Plaintiff took RUSM's CAARS assessment for the second time which indicated ADHD and took the Test of Variables of Attention (T.O.V.A.) assessment which also indicated ADHD.

14.     RUSM later confirmed Plaintiff's diagnosis of ADHD and the need for test accommodations.

15.     RUSM also diagnosed Plaintiff with an Anxiety Disorder.

16.     RUSM knew that Plaintiff had difficulty completing his exams on time.

17.     With an already signed 'Release of Information Consent' form addressed to RUSM administration, Plaintiff allowed RUSM psychiatrist and counseling center to confirm the ADHD diagnoses with the Accommodations Coordinator. Mr. Cuffy then scheduled Plaintiff to see the Accommodations Coordinator, Matthew J. Stewart-Fulton.

18.     During the Plaintiff's meeting with the Accommodations Coordinator, he again requested the same test accommodations.

19.     RUSM denied and failed to provide Plaintiff with any accommodations for his mental impairments.

20.     Due to RUSM denial of accommodations for Plaintiff's disability, RUSM caused a hostile and discriminative academic environment.

21.     The Plaintiff's disabilities worsened because of the discriminative academic environment created by RUSM. Over numerous documented visits to the counseling center of RUSM, Plaintiff continued to express his concern for his mental impairments and the need for extended testing time.

4

22.     In February and March 2016, Plaintiff again requested RUSM's assistance and guidance to process requests for accommodations on NBME exams. RUSM refused again.

·23.     Majority of the Plaintiff's attempts to pass the NBME CBSE took place in the United States of America. He again requested for reasonable accommodations from RUSM administration located in Florida, including to postpone his NBME CBSE until the next testable window. RUSM denied the request also saying that if Plaintiff does not sit for the exam, he will be withdrawn from the school.

24.     When Plaintiff enrolled into RUSM, the student handbook stated that students are subject to administrative withdrawal if they do not "pass" the NBME CBSE within three consecutive attempts. RUSM changed this policy to state that students are subject to administrative withdrawal if they do not "sit" the NBME CBSE within three consecutive attempts. RUSM essentially forced students to sit for the exam even when they are not ready to do so, by penalizing them with an Academic Withdrawal. RUSM decision to change the policy in order to make students sit for the NBME CBSE was arbitrary, capricious, and lacking any discernable rational basis. Furthermore, RUSM did not make any attempt to notify students in advance of this significant change in policy. And lastly, this significant change in policy put students with learning disabilities at a substantial disadvantage to other students.

25.     While Plaintiff was seeking assistance from RUSM, RUSM failed to provide Plaintiff any information regarding disability support services provided by the university, accommodations, or his rights under Section 504 and the ADA. ·

26.     RUSM took no action pursuant to Plaintiff's requests for assistance, and RUSM, refused to acknowledge his disabilities, let alone provide disability accommodations.

27.     RUSM eventually dismissed Plaintiff for failure to pass any of his NBME CBSE

5

attempts.

28.     Despite RUSM's knowledge of Plaintiff disability, RUSM failed to address his disability and dismissed him.

29.     RUSM was aware that Plaintiff's disabilities qualified him under Section 504, which dictates that he is entitled to various "academic adjustments" to ensure that he is not discriminated against, based upon his disabilities. These adjustments can include substitution of specific courses required to complete a degree program and modification "of the manner in which specific courses are conducted." Section 504 also requires that a college or university modify how they evaluate academic achievement of a student with disabilities.

30.     Had RUSM provided the reasonable accommodations Plaintiff requested, which did not materially alter the program and could have been provided by RUSM for minimal (if any) expense, Plaintiff would have had the same opportunity as students without his disabilities. But, RUSM provided no such accommodations.

31.     As a result of not being provided reasonable accommodations, Plaintiff was put at a substantial disadvantage to other students ultimately leading to his dismissal from the program.

32.     RUSM's failures to provide Plaintiff with minimal accommodations and to modify its evaluation of his academic performance in light of his disability, despite RUSM's knowledge of his disability and despite Plaintiff's repeated requests, are in direct violation of law.

33.     In August 2016, Plaintiff scored a 67 on the NBME Comprehensive exam. At the time of this score, the academic catalog stated that a score of 66 or higher is a passing score. The academic catalog also states that "this catalog supersedes all previous editions and is in effect until a subsequent version is published either in print or online. The latest version published at

6

the time was the 2015-2016, vol. 7 Ross University Academic Catalog. The next version of the academic catalog was not published until November 2016 in which it changes the passing score from 66 to 68. This publication was months after the Plaintiff had already attained a score of 67. RUSM claims that the 67 score was not a passing score leading to the dismissal of the Plaintiff.

34.     The Plaintiff appealed his dismissal to the Dean. The Dean did not make his final decision to permanently dismiss Plaintiff within 15 calendar days of receipt of the appeal. The student handbook clearly states that on a student's second appeal, the Dean will respond within 15 calendar days of receipt of the appeal.

## FACTS FOR NBME CBSE EXAM TAKEN IN DOMINICA
## (FACTS FOR FRAUDULENT INDUCEMENT)

35.     In early 2014, Plaintiff was a prospective student who had applied to RUSM for its medical degree program.

36.     While Plaintiff was searching for medical schools that he could apply to, he would go to their websites and read their admission requirements. Plaintiff used RUSM's website to make an important life decision to apply and attend its medical degree program.

37.     During his search and before Plaintiff enrolled into RUSM, RUSM put this exact statement, word for word, in the Admission Requirements section of its website:

> It is the policy and practice of the University to **comply** with the
> Americans with Disabilities Act as **applicable** and practical **in**
> **Dominica**. No qualified individual with a disability will be denied
> access to or participation in services, programs, or activities of
> Ross University.

(Emphasis added). This statement is falsely represented because there is no applicable

7

Americans with Disability ("ADA") law for **students** in Dominica.

38.   RUSM had knowledge that students did not have a protected right under the laws of the ADA in Dominica and did not disclose this to prospective students.

39.   When Plaintiff enrolled into RUSM, he fully relied and depended on RUSM's statement about ADA applicability and compliance that they advertised to prospective students. Plaintiff felt that it was safe to attend the school because he knew that he would still have the protection of the Americans with Disability Act in any event that he becomes disabled or if any disabilities are discovered during his enrollment in Dominica.

40.   RUSM published this statement in its admission requirements with the intentions of persuading U.S. prospective students to apply to its medical degree program in Dominica.

41.   When Plaintiff was enrolled in RUSM, he requested accommodations to address his mental impairments for the NBME CBSE exam that he first attempted in Dominica. Plaintiff believed that he would get those accommodations if RUSM determined the requested accommodations were appropriate, because of RUSM's stated compliance with the ADA in Dominica.

42.   RUSM did not provide any test accommodations for Plaintiff's mental disabilities, despite providing them with his ADHD assessment from his private health provider in the U.S. and despite the multiple ADHD diagnostic assessments that RUSM administered to the Plaintiff in Dominica.

43.   The same NBME CBSE exam that Plaintiff requested accommodations for, he did not pass and RUSM dismissed him for not passing that exam. Due to his dismissal from the program, Plaintiff suffered direct and proximate damages.

44.   It is recently learned that RUSM knew that its statements of ADA compliance and

8

applicability in Dominica were false. Also, from previous lawsuits against RUSM and its veterinary sister school, it is easily apparent that RUSM knew that its statements on its website, used to induce prospective students to enroll into their school, were false.

### FIRST CAUSE OF ACTION

### *VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973*
### *("SECTION 504"), 29 U.S.C. § 794*

45.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

46.     Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20). Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

47.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with or without accommodations, but was discriminated against because of his disability.

48.     Defendants receive federal financial assistance, as defined by 29 U.S.C. §794, and, as such, may not discriminate against a person because of his disability.

49.     Despite Plaintiff's requests for reasonable accommodations; including allowing

9

him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendants refused to provide them.

50. Solely by reason of his disabilities, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating Section 504. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to address these disabilities. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

51. Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of Section 504.

52. Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

53. Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to Section 504, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SECOND CAUSE OF ACTION

### *VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. §12101, et seq.*

10

54.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

55.     Plaintiff is a qualified individual with a disability, as defined in the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.* Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

56.     Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

57.     RUSM is considered to be a "place of public accommodation," as defined in 42 U.S.C. § 12181(7), as it is a private school, so as to be covered by the mandate of the ADA.

58.     RUSM is a facility, the operation of which constitutes a program and services for ADA purposes.

59.     RUSM failed and refused to reasonably accommodate Plaintiff in violation of Title III of the ADA. Plaintiff required additional time in which to complete his NBME CBSE as a result of his disabilities, which was a reasonable accommodation he requested and RUSM refused to provide.

60.     Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to

11

65.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

66.     Plaintiff is a qualified individual with a handicap, as defined by 34 CFR § 104.3. Plaintiff suffers from mental impairments which qualifies him as an individual with a handicap. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These handicaps substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

67.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place.

68.     Defendant is a recipient that receives federal financial assistance, as defined by 34 CFR § 104.3, and, as such, may not discriminate against a person because of his handicap.

69.     Despite Plaintiff's requests for reasonable accommodations; including allowing him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendant refused to provide them.

70.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 34 C.F.R. § 104.4. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disabilities and RUSM's failure to provide the reasonable accommodations he required to address these disabilities. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

71.     Defendant exercised bad faith in failing to provide appropriate and necessary

13

accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of 34 C.F.R. § 104.4.

72.     Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

73.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 34 C.F.R. § 104.4, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## FOURTH CAUSE OF ACTION

### *VIOLATION OF 34 C.F.R. § 104.44, et seq.*

74.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

75.     Plaintiff is a qualified individual with a handicap, as defined by 34 CFR § 104.3. Plaintiff suffers from mental impairments which qualifies him as an individual with a handicap. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These handicaps substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

76.     Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to

14

participate in said program with reasonable accommodations in place.

77.   Defendant is a recipient that receives federal financial assistance, as defined by 34 CFR § 104.3, and, as such, may not discriminate against a person because of his handicap.

78.   RUSM changed the handbook to make students "sit" for the NBME CBSE exam within 3 consecutive attempts or be removed from the school. This rule change is a discrimination against ADHD students. ADHD students need more time to study therefore need the ability to space out their attempts instead of doing them without an option to take more time to study for an attempt.

79.   Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 34 C.F.R. § 104.44. Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disability and RUSM's unlawful rule imposed upon handicapped students that had the effect of limiting the participation of handicapped students. As a result, RUSM dismissed Plaintiff on the basis of his known disability.

80.   Defendant exercised bad faith when RUSM imposed an unlawful rule upon handicapped students that had the effect of limiting the participation of handicapped students, which is a violation of 34 C.F.R. § 104.44.

81.   Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

82.   Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 34 C.F.R. § 104.44, depriving him of the opportunity to complete his education

15

and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## FIFTH CAUSE OF ACTION

### *VIOLATION OF FLORIDA ADMINISTRATIVE CODE 6E-2.004(5)(c)(4);*
### *VIOLATION OF § 760.08, Fla. Stat. (2018) (in the alternative)*

83.    Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

84.    Plaintiff is a qualified individual with a disability. Plaintiff suffers from mental impairments which qualifies him as an individual with a disability. His mental impairments include his attention impairment with ADHD and his clinical anxiety caused by his Anxiety Disorder and his OCD. These disabilities substantially limit major life activities; including learning and working, because it substantially limits his ability to complete examinations and assignments on a timely basis and limits his ability to organize and stay on task, limits his ability to take notes in class, and requires him to take medication.

85.    Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

86.    Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place.

87.    RUSM institution is licensed by Florida Department of Education, under the provision of Chapter 1005 of Florida Statues also under the provision Chapter 6E of the Florida

Administrative Code.

88.     Despite Plaintiff's requests for reasonable accommodations; including allowing him the additional time he required to complete the NBME CSBE, as a result of his disabilities, Defendants refused to provide them.

89.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, exploitation and a hostile educational environment at RUSM, such acts and omissions violating 6E-2.004(5)(c)(4). Plaintiff's inability to pass the NBME CBSE was a direct manifestation of his disability and RUSM's failure to provide the reasonable accommodations he required to address this disability. As a result, RUSM dismissed Plaintiff on the basis of his known disabilities.

90.     Defendant exercised bad faith in failing to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program, which is a violation of 6E-2.004(5)(c)(4).

91.     Such acts, omissions and failures by RUSM proximately caused injuries to Plaintiff.

92.     Defendant has wrongly caused Plaintiff to be discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, all in violation of his rights pursuant to 6E-2.004(5)(c)(4), depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SIXTH CAUSE OF ACTION

17

## *BREACH OF CONTRACT*

93.     Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

94.     By admitting Plaintiff and accepting his tuition payments, and by Florida law, RUSM has an express and implied contract with Plaintiff in connection with rights explicitly guaranteed him by RUSM pursuant to the RUSM Student Handbook and RUSM Academic Catalog.

95.     Defendant's actions constitute a material and substantial breach of the express and implied contract by:

*(SUBCOUNT 1)* denying Plaintiff his right to equal opportunity and denying Plaintiff, a "qualified person with a disability," "reasonable accommodations" as is set forth in the RUSM Academic Catalog.

*(SUBCOUNT 2)* denying Plaintiff his right to a productive learning environment free from discrimination as is set forth in the RUSM Academic Catalog.

*(SUBCOUNT 3)* Refusing Plaintiffs request for assistance and guidance to process requests for accommodations on USLME exams as is set forth in the RUSM Academic Catalog - Accommodations and USMLE/NBME Testing.

*(SUBCOUNT 4)* Making Plaintiff sit the NBME CBSE within three consecutive attempts which had not existed in the RUSM Student Handbook when Plaintiff had enrolled in 2014 and has no basis in academic or professional requirements. Defendant's decision to change the policy in order to make students sit for the NBME CBSE within three consecutive attempts was arbitrary, capricious, and lacking any discernable rational basis which also put students with learning disabilities at a substantial disadvantage to

18

other students. Even if the Defendant's reserved the right to change the university's academic degree requirements, it cannot if such changes are arbitrary or capricious.

*(SUBCOUNT 5)* Dismissing Plaintiff when he obtained a score of 67 on the NBME CBSE. The latest version of the Ross University Academic Catalog published at that time was the 2015-2016, vol. 7 which stated that the passing score for NBME CBSE was a 66. This version was in effect until a subsequent version is published online.

*(SUBCOUNT 6)* The Dean's failure to respond to the Plaintiff within 15 calendar days of receipt of the second appeal as is set forth in the RUSM Student Handbook.

96.     At all times relevant, Plaintiff abided by and governed his conduct by the terms of the aforementioned contract and met all financial obligations.

97.     As a direct and proximate result of Defendants' actions, Plaintiff has lost the difference in value over a lifetime of earnings expected to be earned by an individual who graduated from RUSM and Plaintiff's earning capacity without a medical degree from RUSM.

98.     As a direct and proximate result of Defendants' actions, Plaintiff has lost tuition he paid to RUSM.

99.     As a result of the breach committed against Plaintiff, he has suffered loss, damage and detriment; including incidental and consequential damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## SEVENTH CAUSE OF ACTION

### *BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING*

100.    Plaintiff reincorporates by reference each and every preceding paragraph as if

19

fully restated herein.

101.    The aforementioned contract between the parties contained an implied covenant of good faith and fair dealing, which precludes Defendants from evading the spirit of the contract, willfully rendering imperfect performance, interfering with Plaintiff's ability to benefit from its terms, acting in contravention of Plaintiff's reasonable expectations, failing to abide by the standards and policies promulgated by Defendants, or otherwise acting in an arbitrary and capricious manner with respect to Plaintiff.

102.    Defendants breached this implied covenant of good faith and fair dealing by making it impossible for Plaintiff to realize the benefit of his contract and by permitting its agents to act in bad faith and in a manner which interfered with Plaintiff's contractual expectations.

103.    As a result of the breach committed against Plaintiff, he has suffered loss, damage and detriment; including incidental and consequential damages in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

## EIGHTH CAUSE OF ACTION

### *FRAUDULENT INDUCEMENT (both false statement and omission of fact)*

104.    Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

105.    RUSM publishes important information to prospective students on its website. This information includes statements made in its admission requirements section of its website. The statement quoted in ¶106 has not changed since 2012 and is currently (as of 2018) still on RUSM's website advertised to prospective students looking to gain admission into the medical

20

degree program.

106.    Continuously between 2012 and 2018, and before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website stating "It is the policy and practice of the University to **comply** with the Americans with Disabilities Act as **applicable** and practical **in Dominica**. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine." (Emphasis added).

107.    The quoted statement in ¶106, published by RUSM, intended to induce and persuade prospective students to apply and enroll into RUSM's medical degree program.

108.    RUSM was fully aware that the statement in ¶106 was false. This statement is falsely represented because there is no applicable Americans with Disability law for <u>students</u> in Dominica. Even after the numerous students filed ADA lawsuits against RUSM, they continued to advertise the false statement to prospective students on its Admission Requirements website. Previous lawsuits reveal that RUSM knew that the statement was false for almost 10 years.

109.    In addition to making a false statement, RUSM also committed fraud by omission when it failed to disclose that <u>students</u> did not have a protected right under the laws of the ADA in Dominica.

110.    Plaintiff relied on RUSM's fraudulent ADA statement when he chose to enroll at RUSM for its medical degree program in Dominica.

111.    RUSM did not take the reasonable steps, and was deliberately indifferent, to ensure that Plaintiff was reasonably accommodated for his mental impairments because RUSM believed that it had no legal obligations to provide those reasonable accommodations in Dominica.

112.    As a result of RUSM's fraudulent ADA statement, Plaintiff was induced into leaving the United States of America to enroll at RUSM in Dominica, was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

113.    Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the compensatory damages.

## NINTH CAUSE OF ACTION

### *NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT*

114.    Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

115.    Continuously between 2012 and 2018, and before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website stating "It is the policy and practice of the University to **comply** with the Americans with Disabilities Act as **applicable** and practical **in Dominica**. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine." (Emphasis added).

116.    RUSM misrepresented the statement in ¶115 by misleading prospective students into believing that they still had their protected rights under the ADA while enrolled at RUSM in Dominica.

117.    RUSM should have been aware that the statement in ¶115 was false. Especially

after numerous students had filed ADA lawsuits against RUSM and its sister school. RUSM continued to advertise the false statement to prospective students on its Admission Requirements website. Previous lawsuits reveal that RUSM should have known that the statement was false for almost 10 years.

118.    By RUSM placing the statement of ¶115 in its Admission Requirements section of it website, RUSM intended to use the statement to induce prospective students to enroll into its medical degree program in Dominica.

119.    Plaintiff was one of the many prospective students that relied on all the important information that RUSM posted in its Admissions Requirements section of it website, including the statement quoted in ¶115. Plaintiff used this information to decide if he should enroll at RUSM.

120.    RUSM did not take the reasonable steps, and was deliberately indifferent, to ensure that Plaintiff was reasonably accommodated for his mental impairments because RUSM believed that it had no legal obligations to provide those reasonable accommodations in Dominica.

121.    As a result of RUSM's negligently misrepresented ADA statement, Plaintiff was induced into leaving the United States of America to enroll at RUSM in Dominica, was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of the lost degree with respect to future earnings, and inflicting emotional distress and physical injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

122.    Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the

compensatory damages.

# TENTH CAUSE OF ACTION

## *BREACH OF FIDUCIARY DUTY*

123.  Plaintiff reincorporates by reference each and every preceding paragraph as if fully restated herein.

124.  RUSM created a fiduciary duty when it assured Plaintiff that "RUSM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations."

125.  The RUSM Academic Catalog states "RUSM is committed to ensuring that qualified students with disabilities are afforded reasonable accommodations."

126.  RUSM exercised overwhelming influence over Plaintiff in ensuring the he received reasonable accommodations for his mental impairments known to the school. It is impossible for Plaintiff to go directly to NBME to receive extended testing time for the NBME CBSE; only RUSM has the ability and the duty to inform NBME about which students need extended testing time for the NBME CBSE.

127.  Plaintiff trusted RUSM to ensure that he was reasonably accommodated for his mental impairments on his NBME CBSE.

128.  After RUSM had knowledge of Plaintiff's mental impairments, they did not ensure that he was reasonably accommodated as RUSM claimed it was committed to do.

129.  As a result of RUSM's breach of fiduciary duty, Plaintiff was discriminated against, denied reasonable accommodations, forcibly dismissed him from the program, depriving him of the opportunity to complete his education and further his career, including the value of

the lost degree with respect to future earnings, and inflicting emotional distress and physical

injury, all to his damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

130.    Plaintiff is also entitled to punitive damages at a 2:1 or 3:1 ratio of the

compensatory damages.

## JURY DEMAND

Plaintiff respectfully prays a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment in Plaintiff's favor,

and against Defendant, for:

(1) Compensatory damages in the amount excess of $9,000,000, including the loss of

future earning capacity expected to be earned by an individual who graduated from RUSM.

(2) Compensatory damages for the student load debt and interest caused by RUSM in the

amount excess of $200,000.

(3) Injunctive reliefs as described in paragraph 64.

(4) Punitive damages at a 2:1 or 3:1 ratio of compensatory damages; estimated in the

amount excess of $20,000,000.

(5) The costs and disbursements of this action, for interest, and such other court or

attorney's fees and further relief as justice requires.

DATED this 8th day of July, 2018:

**Oluwamuyiwa Awodiya** (I consent this
to be my electronic signature)
By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

# CERTIFICATE OF SERVICE

I do hereby certify that on this 12th day of July, 2018, I have caused a true and correct

copy of the Third Amended Complaint by mailing a copy to the Court, where the Court's

CM/ECF system will send notification to the following:

Christina Meddin
Seyfarth Shaw LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309
404-888-1886
Email: cmeddin@seyfarth.com

Brian M. Stolzenbach
Seyfarth, Shaw, LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60601
312-460-5000
Email: bstolzenbach@seyfarth.com

By: Oluwamuyiwa Awodiya, *pro se* litigant

PRES— **UNITED STATES POSTAL SERVICE** *Retail*  PRESS FIRMLY TO SEAL

**PRIORITY MAIL
POSTAGE REQUIRED**

P | **P**

## US POSTAGE PAID
# $6.70

Origin: 20715
Destination: 33128
0 Lb 6.80 Oz
Jul 12, 18          1006
230937076-05



**PRIORITY MAIL 2-Day ®**

Expected Delivery Day: 07/14/2018    [C075]

### USPS TRACKING NUMBER



9505 5105 6956 8193 2497 81

WHEN US
A CUST
LABEL MAY BE REQUIRED.

**PRIORITY**
★ **MAIL** ★

**UNITED STATES POSTAL SERVICE**
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

FROM:
Oluwamuyiwa Awodiya
15005 Dahlia Dr.
Bowie, MD 20721

USPS INSPECTED

**TO:**
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue, Room 8N09
Miami, FL 33128

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

PS00001000014          EP14F July 2013
OD: 12.5 x 9.5

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:18-cv-60482-MOORE/SELTZER

OLUWAMUYIWA AWODIYA,

     Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF
VETERINARY MEDICINE LIMITED,

     Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
## PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited

("RUSM") hereby files its answer and affirmative defenses to the Third Amended Complaint [ECF

No. 47] ("Complaint") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

### PARTIES

1.     In response to paragraph 1, RUSM is without knowledge or information to admit

or deny that Plaintiff is currently a resident of the State of Maryland and therefore denies same.

RUSM admits that Plaintiff was a student at Ross University School of Medicine but is without

knowledge or information to admit or deny that he was a student there at "all relevant times" and

therefore denies same.

2.     In response to paragraph 2, RUSM admits that it is a corporate entity that operates

a private, for-profit medical school.  RUSM denies that its principal place of business is in the

State of Florida.  RUSM further states that it has conditional approval for a temporary location in

Tennessee while Dominica is recovering from a hurricane that severely damaged the island in

2017. Further, the Florida Department of Education's Commission on Independent Education approves RUSM's clinical clerkship program in the state of Florida. RUSM admits that Adtalem Global Education is registered with the Florida Department of State to do business in Florida as Ross University School of Medicine. RUSM admits that it has five classrooms for activities associated with its clinical clerkship program. RUSM denies any remaining allegations in paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3.     In response to paragraph 3, RUSM admits that the Court possesses subject matter jurisdiction over this matter but denies any remaining allegations in this paragraph and denies that Plaintiff is entitled to any relief whatsoever.

4.     In response to paragraph 4, RUSM admits that the Court possesses subject matter jurisdiction over this matter but denies any remaining allegations in this paragraph and denies that Plaintiff is entitled to any relief whatsoever.

5.     In response to paragraph 5, RUSM admits that the Court possesses subject matter jurisdiction over this matter but denies any remaining allegations in this paragraph and denies that Plaintiff is entitled to any relief whatsoever.

6.     In response to paragraph 6, RUSM admits that venue is proper pursuant to 28 U.S.C. § 1391(b)(2) but denies any remaining allegations in this paragraph and denies that Plaintiff is entitled to any relief whatsoever.

## FACTS FOR NBME CBSE EXAM TAKEN IN THE UNITED STATES

7.     In response to paragraph 7, RUSM admits that the Ross University School of Medicine Counseling Center made certain diagnoses regarding Plaintiff which are documented in

written records, the content of which speak for themselves. RUSM denies any allegations inconsistent therewith.

8.      In response to paragraph 8, RUSM denies the allegations.

9.      In response to paragraph 9, RUSM denies the allegations.

10.     In response to paragraph 10, RUSM denies the allegations.

11.     In response to paragraph 11, RUSM admits that Ross University School of Medicine Counseling Center came into possession of a copy of Plaintiff's Conners CPT Assessment Report at some time on or after December 31, 2015 (the date on which the Assessment appears to have been administered). At this time, RUSM is without sufficient information to admit or deny the truth of the allegation that this Report was furnished by Plaintiff to the Counseling Center in January 2016. RUSM denies the remaining allegations.

12.     In response to paragraph 12, RUSM denies the allegations.

13.     In response to paragraph 13, RUSM admits that the Ross University School of Medicine Counseling Center came into possession of a copy of Plaintiff's Conners CPT3 Assessment Report at some time on or after December 31, 2015 (the date on which the Assessment appears to have been administered). RUSM admits that the Ross University School of Medicine Counseling Center administered the TOVA and the CAARS on or about January 18, 2016. RUSM admits that the Counseling Center concluded that the results of the TOVA "suggest[ed] an attention problem, including ADHD" and concluded that the results of the CAARS "indicated ADHD predominantly Inattentive presentation." RUSM denies the remaining allegations.

14.     In response to paragraph 14, RUSM admits that McMillan Cuffy of the Ross University School of Medicine Counseling Center made the following assessment of Plaintiff:

3

"Attention Deficit Disorder Without Mention of Hyperactivity – F90.9, 314.00." RUSM denies the remaining allegations.

15.     In response to paragraph 15, RUSM admits that McMillian Cuffy of the Ross University School of Medicine Counseling Center made the following assessment of Plaintiff: "Anxiety State, Unspecified – F41.9, 300.00." RUSM denies the remaining allegations.

16.     In response to paragraph 16, RUSM admits that the Ross University School of Medicine Counseling Center made certain diagnoses regarding Plaintiff which are documented in written records, the content of which speak for themselves. RUSM denies any allegations inconsistent therewith.

17.     In response to paragraph 17, RUSM admits that Plaintiff executed a Consent to Release Confidential Information, authorizing the Counseling Center to discuss otherwise confidential information pertaining to his treatment with "RUSM Administration" to facilitate treatment planning and to provide information relevant to academic accommodations. RUSM admits that this would have permitted the Counseling Center, including the psychiatrist treating Plaintiff, to discuss his ADHD with the school's Accommodations Coordinator, Matthew Stewart-Fulton. At this time, RUSM lacks knowledge or information sufficient to form a belief as to the truth of the allegation that McMillan Cuffy scheduled Plaintiff to see the Accommodations Coordinator.

18.     In response to paragraph 18, RUSM denies the allegations.

19.     In response to paragraph 19, RUSM denies the allegations.

20.     In response to paragraph 20, RUSM denies the allegations.

21.     In response to paragraph 21, RUSM admits that the Ross University School of Medicine Counseling Center made certain diagnoses regarding Plaintiff which are documented in written records, the content of which speak for themselves. RUSM denies any allegations

4

inconsistent therewith and specifically denies the allegation that a discriminative academic environment was created by RUSM.

22.     In response to paragraph 22, RUSM denies the allegations.

23.     In response to paragraph 23, RUSM admits that Plaintiff's first attempt to pass the NBME CBSE took place in Dominica and that his second through fifth attempts took place at Prometric Test Centers in the United States of America. RUSM denies the remaining allegations.

24.     In response to paragraph 24, RUSM admits that, when Plaintiff enrolled, the Student Handbook stated that students are subject to Administrative Withdrawal if they do not pass the NBME CBSE within three consecutive attempts. RUSM denies the remaining allegations.

25.     In response to paragraph 25, RUSM denies the allegations.

26.     In response to paragraph 26, RUSM denies the allegations.

27.     In response to paragraph 27, RUSM admits that it dismissed Plaintiff for failure to achieve the minimum passing score on the NBME CBSE after five attempts but denies the remaining allegations.

28.     In response to paragraph 28, RUSM admits that it dismissed Plaintiff for failure to achieve the minimum passing score on the NBME CBSE after five attempts but denies the remaining allegations.

29.     In response to paragraph 29, RUSM is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff suffered disabilities, as that term is defined under the Rehabilitation Act, during his time at RUSM. The remaining allegations in this paragraph call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 29 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

46027911;4

30.     In response to paragraph 30, RUSM denies the allegations.

31.     In response to paragraph 31, RUSM denies the allegations.

32.     In response to paragraph 32, RUSM denies the allegations.

33.     In response to paragraph 33, RUSM admits that Plaintiff scored a 67 on the NBME

CBSE (Comprehensive Basic Science Exam) in August 2016 and admits that the last published

Academic Catalog prior to that date was the ROSS UNIVERSITY SCHOOL OF MEDICINE

ACADEMIC CATALOG 2015-2016, VOL. 7, and that it stated that the minimum passing score on

the NBME CBSE was 66. RUSM also admits that this version of the Academic Catalog stated:

> This catalog supersedes all previous editions and is in effect until a
> subsequent version is published either in print or online. All
> information in this catalog is current at the time of printing.
> **Statements regarding** tuition and fees, curriculum, course
> offerings, admissions, and **graduation requirements are subject
> to change at any time and are applicable to all enrolled students**
> unless otherwise stated.

(Emphasis added). RUSM admits that the 2016-2017 version of the Academic Catalog was not

published until November 2016, months after Plaintiff scored a 67, and that this version states that

68 is the minimum passing score on the exam.

By way of further answer, RUSM states that it sent an e-mail communication to all students,

including Plaintiff, in August 2015, advising them that the minimum passing score on the exam

would be a 68 as of mid-November 2015, more than five months before Plaintiff's first attempt at

the exam in April 2015, when he scored a 58, and more than nine months before the only time he

scored above a 64, when he scored a 67 on his third attempt. RUSM admits that Plaintiff's score of

67 in August 2016 was not a passing score and that his failure to pass the exam, despite being allowed

five attempts (one more than ordinarily permitted by school policy), resulted in his dismissal from

school. RUSM denies any remaining allegations.

6

34.     In response to paragraph 34, RUSM admits that Plaintiff appealed his dismissal to the Dean. RUSM admits that the Student Handbook in effect at the time stated that "[t]he Dean will respond within 15 calendar days of receipt of the appeal." RUSM admits that the Dean responded 16 days after receipt of Plaintiff's appeal. The remaining allegations are denied.

## FACTS FOR NBME CBSE EXAM TAKEN IN DOMINICA

35.     In response to paragraph 35, RUSM admits the allegations.

36.     In response to paragraph 36, RUSM is without knowledge or information to admit or deny the allegations and therefore denies same.

37.     In response to paragraph 37, RUSM states that its website speaks for itself and RUSM denies any allegations inconsistent therewith. The remaining allegations in this paragraph call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent the remaining allegations in paragraph 37 allege any fact to which RUSM is required to respond, the allegations are denied.

38.     In response to paragraph 38, RUSM denies the allegations.

39.     In response to paragraph 39, RUSM is without knowledge or information to admit or deny the allegations and therefore denies same.

40.     In response to paragraph 40, RUSM denies the allegations.

41.     In response to paragraph 41, RUSM denies that, while enrolled, Plaintiff requested accommodations to address his mental impairments for the NBME CBSE exam that he first attempted in Dominica. RUSM is without knowledge or information to admit or deny the remaining allegations in paragraph 41 and there denies same.

42.     RUSM is without knowledge or information to admit or deny the allegations and therefore denies same.

7

43. In response to paragraph 42, RUSM denies the allegations.

44. In response to paragraph 43, RUSM denies the allegations.

45. In response to paragraph 44, RUSM denies the allegations.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 ("SECTION 504"), 29 U.S.C. § 794

46. RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

47. In response to paragraph 46, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 46 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

48. In response to paragraph 47, RUSM denies the allegations.

49. In response to paragraph 48, RUSM admits that it receives federal financial assistance. The remaining allegations in paragraph 48 call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent the remaining allegations allege any facts to which RUSM is required to respond, RUSM denies the allegations.

50. In response to paragraph 49, RUSM denies the allegations.

51. In response to paragraph 50, RUSM denies the allegations.

52. In response to paragraph 51, RUSM denies the allegations.

53. In response to paragraph 52, RUSM denies the allegations.

54. In response to paragraph 53, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## SECOND CAUSE OF ACTION

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT (ADA), 42 U.S.C. § 12101, *et. seq.*

55.     RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

56.     In response to paragraph 55, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM.  To the extent paragraph 55 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

57.     In response to paragraph 56, RUSM denies the allegations.

58.     In response to paragraph 57, RUSM denies the allegations.

59.     In response to paragraph 58, RUSM denies the allegations.

60.     In response to paragraph 59, RUSM denies the allegations.

61.     In response to paragraph 60, RUSM denies the allegations.

62.     In response to paragraph 61, RUSM denies the allegations.

63.     In response to paragraph 62, RUSM denies the allegations.

64.     In response to paragraph 63, RUSM denies the allegations.

65.     In response to paragraph 64, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## THIRD CAUSE OF ACTION

## VIOLATION OF 34 C.F.R. §104.4, *et. seq.*

66.     RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

9

67.     In response to paragraph 66, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 66 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

68.     In response to paragraph 67, RUSM denies the allegations.

69.     In response to paragraph 68, RUSM admits that it receives federal financial assistance. The remaining allegations in paragraph 68 call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent the remaining allegations allege any facts to which RUSM is required to respond, RUSM denies the allegations.

70.     In response to paragraph 69, RUSM denies the allegations.

71.     In response to paragraph 70, RUSM denies the allegations.

72.     In response to paragraph 71, RUSM denies the allegations.

73.     In response to paragraph 72, RUSM denies the allegations.

74.     In response to paragraph 73, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## FOURTH CAUSE OF ACTION

### VIOLATION OF 34 C.F.R. § 104.44, *et. seq.*

75.     RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

76.     In response to paragraph 75, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM. To the extent paragraph 75 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

77.     In response to paragraph 76, RUSM denies the allegations.

10

46027911;4

78.     In response to paragraph 77, RUSM admits that it receives federal financial assistance.  The remaining allegations in paragraph 77 call for a legal conclusion and do not state any facts requiring a response from RUSM.  To the extent the remaining allegations allege any facts to which RUSM is required to respond, RUSM denies the allegations.

79.     In response to paragraph 78, RUSM denies the allegations.

80.     In response to paragraph 79, RUSM denies the allegations.

81.     In response to paragraph 80, RUSM denies the allegations.

82.     In response to paragraph 81, RUSM denies the allegations.

83.     In response to paragraph 82, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

### FIFTH CAUSE OF ACTION

### VIOLATION OF FLORIDA ADMINISTRATIVE CODE 6E-2.004(5)(c)(4); VIOLATION OF §760.08, FLA. STAT. (2018) (IN THE ALTERNATIVE)

84.     RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

85.     In response to paragraph 84, RUSM neither admits nor denies the allegations contained therein because such allegations call for a legal conclusion and do not state any facts requiring a response from RUSM.  To the extent paragraph 84 alleges any fact to which RUSM is required to respond, RUSM denies the allegations.

86.     In response to paragraph 85, RUSM denies the allegations.

87.     In response to paragraph 86, RUSM admits the allegations.

88.     In response to paragraph 87, RUSM admits the allegations.

89.     In response to paragraph 88, RUSM denies the allegations.

90.     In response to paragraph 89, RUSM denies the allegations.

11

91.     In response to paragraph 90, RUSM denies the allegations.

92.     In response to paragraph 91, RUSM denies the allegations.

93.     In response to paragraph 92, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## SIXTH CAUSE OF ACTION

## BREACH OF CONTRACT

94.     RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

95.     In response to paragraph 94, RUSM denies the allegations.

96.     In response to paragraph 95, RUSM denies the allegations, including all subparts.

97.     In response to paragraph 96, RUSM denies the allegations.

98.     In response to paragraph 97, RUSM denies the allegations.

99.     In response to paragraph 98, RUSM denies the allegations.

100.    In response to paragraph 99, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## SEVENTH CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

101.    RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

102.    In response to paragraph 101, RUSM denies the allegations.

103.    In response to paragraph 102, RUSM denies the allegations.

104.    In response to paragraph 103, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

12

## EIGHTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT
### (BOTH FALSE STATEMENT AND OMISSION OF FACT)

105.    RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

106.    In response to paragraph 105, RUSM admits that it published information for prospective students on its website, including in the Admissions Requirements section. RUSM is without knowledge of information to admit or deny the remaining allegations in paragraph 105 of the Complaint and therefore denies same.

107.    In response to paragraph 106, RUSM states that the website speaks for itself and RUSM denies any allegations inconsistent therewith.

108.    In response to paragraph 107, RUSM denies the allegations.

109.    In response to paragraph 108, RUSM denies the allegations.

110.    In response to paragraph 109, RUSM denies the allegations.

111.    In response to paragraph 110, RUSM is without sufficient information to admit or deny the allegations and therefore denies the same.

112.    In response to paragraph 111, RUSM denies the allegations.

113.    In response to paragraph 112, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

114.    In response to paragraph 113, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

46027911;4

## NINTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION IN THE INDUCEMENT

115.    RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

116.    In response to paragraph 115, RUSM states that the website speaks for itself and RUSM denies any allegations inconsistent therewith.

117.    In response to paragraph 116, RUSM denies the allegations.

118.    In response to paragraph 117, RUSM denies the allegations.

119.    In response to paragraph 118, RUSM denies the allegations.

120.    In response to paragraph 119, RUSM is without sufficient information to admit or deny the allegations and therefore denies the same.

121.    In response to paragraph 120, RUSM denies the allegations.

122.    In response to paragraph 121, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

123.    In response to paragraph 122, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

## TENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

124.    RUSM restates, re-alleges, and incorporates by reference its responses to each and every preceding paragraph of the Complaint as if fully set forth herein.

125.    In response to paragraph 124, RUSM denies the allegations.

126.    In response to paragraph 125, RUSM states that the Academic Catalog speaks for itself and RUSM denies any allegations inconsistent therewith.

127.    In response to paragraph 126, RUSM denies the allegations.

14

128.     In response to paragraph 127, RUSM is without sufficient information to admit or deny the allegations and therefore denies the same.

129.     In response to paragraph 128, RUSM denies the allegations.

130.     In response to paragraph 129, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

131.     In response to paragraph 130, RUSM denies the allegations and denies that Plaintiff is entitled to any relief.

RUSM further denies (i) any allegation of Plaintiff's Complaint not specifically responded to above and (ii) that Plaintiff is entitled to any relief whatsoever.

**WHEREFORE,** defendant Ross University School of Medicine, School of Veterinary Medicine Limited respectfully requests that the Court (i) dismiss plaintiff Oluwamuyiwa Awodiya's Complaint with prejudice, (ii) award RUSM its reasonable attorneys' fees and costs, and (iii) grant such other and further relief to RUSM as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

RUSM asserts the following affirmative defenses without assuming the burden of proof on such defenses that otherwise would rest on Plaintiff.

### First Affirmative Defense

The Third Amended Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

There is no private right of action for alleged violations of the Administrative Code or statutory sections referenced in Plaintiff's Fifth Cause of Action, so the entire cause of action should be dismissed.

15

### Third Affirmative Defense

Neither the Student Handbook nor the Academic Catalog constitutes a contract between Plaintiff and RUSM and, to the extent either could be said to constitute a contract in whole or in part, Plaintiff has not alleged, nor could he prove, a material breach of said contract.

### Fourth Affirmative Defense

Any monetary recovery by Plaintiff should be reduced by his mitigation of and/or failure to mitigate damages.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part, because RUSM promulgated firm policies against discrimination and otherwise exercised reasonable care to prevent and promptly correct any alleged discrimination, and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided or to avoid harm otherwise.

### Sixth Affirmative Defense

Plaintiff's claims are barred by the doctrine of accord and satisfaction.

### Seventh Affirmative Defense

To the extent Plaintiff alleges that any of RUSM's employees acted in an unlawful manner, such conduct, if it occurred, was outside of the course and scope of that individual's employment, was not authorized or condoned by RUSM, and was undertaken without the knowledge or consent of RUSM. Thus, RUSM is not liable for any such conduct, if it occurred.

### Eighth Affirmative Defense

If Plaintiff sustained any injury, damage or loss by reason of any act, error or omission on the part of RUSM, said injury, damage, or loss must be reduced to the extent that he failed to exercise reasonable care to avoid or limit the alleged harm.

46027911;4

### Ninth Affirmative Defense

Plaintiff is barred from seeking punitive damages because RUSM cannot be vicariously liable for discriminatory decisions of managerial agents, as those decisions, if any, were contrary to RUSM's good faith efforts to comply with applicable laws and regulations prohibiting discrimination.

### Tenth Affirmative Defense

Plaintiff's request for punitive damages is barred because RUSM engaged in good faith efforts to comply with the law and had reasonable grounds to believe that any act or omission taken was not a violation of the law.

### Eleventh Affirmative Defense

Plaintiff's claims are barred to the extent they are based upon any act or omission occurring outside the applicable limitations period.

### Twelfth Affirmative Defense

Plaintiff's claim for breach of fiduciary duty is barred because RUSM is not a fiduciary, does not act as a fiduciary and does not owe a fiduciary duty to Plaintiff.

17

Dated: August 13, 2018

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: *s/ Michael C. Marsh*
Michael C. Marsh
Florida Bar No. 0072796
michael.marsh@akerman.com
simone.tobie@akerman.com
Ryan Roman
Florida Bar. No. 0025509
ryan.roman@akerman.com
dorothy.matheis@akerman.com
Octavia M. Green
Florida Bar No. 119179
octavia.green@akerman.com
simone.tobie@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 13, 2018, a true and correct copy of the foregoing

document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

*s/Michael C. Marsh*
Michael C. Marsh

18

46027911;4

# 59



# CONNERS CPT3

## Continuous Performance Test 3rd Edition

C. Keith Conners, Ph.D.

# Assessment Report

| | |
|---|---|
| **Name/ID:** | Oluwemuyiw Awodiya / ██████ |
| **Age:** | 23 |
| **Gender:** | Male |
| **Birth Date:** | ██████ |
| **Administration Date:** | December 31, 2015 |
| **Normative Option:** | Gender Specific norms |
| **Input Device:** | Keyboard |
| **Assessor's Name:** | DR Mauricio |
| **Medication/Notes:** | |

This Assessment Report is intended for use by qualified assessors only, and is not to be shown or presented to the respondent or any other unqualified individuals or used as the sole basis for clinical diagnosis or intervention. Administrators are cautioned against drawing unsupported interpretations. To obtain a comprehensive view of the individual, information from this report should be combined with information gathered from other psychometric measures, interviews, observations, and available records. This report is based on an algorithm that produces the most common interpretations of the obtained scores. Additional interpretive information is found in the *Conners CPT 3 Manual* (published by MHS).

 Copyright © 2014 Multi-Health Systems Inc. All rights reserved.
P.O. Box 950, North Tonawanda, NY 14120-0950
3770 Victoria Park Ave., Toronto, ON M2H 3M6

# Exhibit
# P-08

RUSM 000121



This section provides an overview of Oluwamuyiw's Conners CPT 3 scores.



| Detectability | 70 | | Pronounced difficulty differentiating targets from non-targets. |
|---|---|---|---|
| Error Type | 66 | | High rate of missed targets. |
| | 68 | | High rate of incorrect responses to non-targets. |
| | 90 | | Very high rate of random, repetitive, or anticipatory responses. |
| Reaction Time Statistics | 42 | | Slightly Fast mean response speed. |
| | 78 | | Very high inconsistency in reaction times. |
| | 90 | | Very high variability in reaction time consistency. |
| HRT Block Change | 19 | Low | Showed a good ability to sustain or increase response speed in later blocks |
| HRT ISI Change | 49 | Average | Average change in response speed at longer ISIs. |

Summary. Relative to the normative sample, Oluwamuyiw was less able to differentiate targets from non-targets, made more omission errors, made more commission errors, made more perseverative errors, responded faster, displayed less consistency in response speed and displayed more variability in response speed.

Overall, Oluwamuyiw has a total of 7 atypical T-scores, which is associated with a very high likelihood of having a disorder characterized by attention deficits, such as ADHD. Note that other psychological and/or neurological conditions with symptoms of impaired attention can also lead to atypical scores on the Conners CPT 3.

Oluwamuyiw's profile of scores and response pattern indicates that he may have issues related to:
• Inattentiveness (Strong Indication)  • Impulsivity (Strong Indication)

Ver 1.1

Copyright © 2014 Multi-Health Systems Inc. All rights reserved.

3

12/31/2015

Conners CPT 3 Report: Oluwamuyiw Awodiya

RUSM 000122

**⯦MHS**

This section summarizes Oluwamuyiw's scores on the impulsivity measures and provides information about how he compares to the normative group. Indicators of impulsivity on the Conners CPT 3 include a faster than normal Hit Reaction Time (HRT) in addition to a higher than average rate of Commissions and/or Perseverations.



| T-score | 42 | 68 | 90 |
|---------|----|----|----|
| Guideline | | | |

HRT is the mean response speed of correct responses for the whole administration. Oluwamuyiw's T-score is 42 and falls in the A Little Fast range. This result means that his response speed was faster than the normative group's response speed. A faster than normal HRT is often related to impulsivity. This result, coupled with his elevated score(s) on Commissions and Perserverations (see below), indicates that Oluwamuyiw had trouble responding to the stimuli in a controlled manner.

Commissions are made when responses are given to non-targets. Oluwamuyiw's T-score is 68 and falls in the Elevated range. This result means that he responded to a higher percentage of non-targets when compared to the normative group. Commission errors may be related to impulsivity and/or inattentiveness. The combination of Oluwamuyiw's fast response times (see HRT, above) and high commission errors is an indicator of impulsivity.

Perseverations are random or anticipatory responses. Oluwamuyiw's T-score is 90 and falls in the Very Elevated range. This result means that be made many more perseverative errors when compared to the normative group. Because Oluwamuyiw's response speed (see HRT, above) was A Little Fast, his perseverations are likely caused by impulsivity.

Oluwamuyiw's scores on these measures strongly suggest that he may have problems with impulsivity.

Copyright © 2014 Multi-Health Systems Inc. All rights reserved
12/31/2015
Conners CPT 3 Report: Oluwamuyiw Awodiya

RUSM 000123



**⧉ MHS**

This section summarizes Oluwamuyiw's scores on the vigilance measures. Vigilance relates to the respondent's performance at varying levels of stimulus frequency (inter-stimulus intervals: ISIs), and is defined by the respondent's ability to maintain performance level even when the task rate is slow. This construct is captured by changes in the respondent's Hit Reaction Times (HRT), as indicated by the variable HRT ISI Change, as well as the observed pattern of Omissions and Commissions at various ISIs.

### Hit Reaction Time by ISI

### HRT ISI Change



| | 1-second ISI | 2-second ISI | 4-second ISI |
|---|---|---|---|
| ▦ HRT (ms) | 288 | 406 | 331 |
| ⊺ HRT SD (ms) | 115 | 335 | 69 |

| T-score | 49 |
|---|---|
| Guideline | Average |

Note: ms = milliseconds; SD = Standard Deviation.

### Omissions by ISI

### Commissions by ISI





| | 1-second ISI | 2-second ISI | 4-second ISI |
|---|---|---|---|
| ○ Omissions (%) | 5 | 8 | 3 |

| | 1-second ISI | 2-second ISI | 4-second ISI |
|---|---|---|---|
| ● Commissions (%) | 76 | 67 | 46 |

Note: No statistically significant differences were found in error rates between ISIs.

HRT ISI Change indicates the change in mean response speed at various ISIs. Oluwamuyiw's T-score is 49 and falls in the Average range. This result means that he had an average reduction in response speed at longer ISIs. There was no statistically significant increase in error rates across all three ISI levels. Oluwamuyiw's profile of scores on these measures does not indicate a problem with maintaining vigilance at varying levels of stimulus frequency.

Copyright © 2014 Multi-Health Systems Inc. All rights reserved.

12/31/2015
Conners CPT 3 Report Oluwamuyiw Awodiya

RUSM 000124

# **61**

# UNITED STATES DISTRICT COURT

for the
Southern District of Florida

|  |  |
|---|---|
| OLUWAMUYIWA AWODIYA, <br> *Plaintiff,* <br><br> -v- <br><br> ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED <br> *Defendant.* | Case No. 0:18-cv-60482-KMM <br><br> Hon. Chief Judge: K. Michael Moore <br> Magistrate Judge: Barry S. Seltzer |

FILED by _JAO_ D.C.

AUG 16 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Oluwamuyiwa

Awodiya ("Plaintiff"), in proper person, hereby submits the following Plaintiff's Motion for

Partial Summary Judgment. [1]

---

[1] Also see the accompanying, Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment ("SMF"); Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Motion for Partial Summary Judgment ("Awodiya Decl.") and Exhibits ("Ex.") P-01 through P-38 attached thereto.

In Defendant's Response to Plaintiff's First Set of Requests for Admission ("Ex. P-27"), each "Admission No." therein will be referenced as paragraphs hereinafter; In Defendant's Response to Plaintiff's Second Set of Requests for Admission ("Ex. P-28"), each "Request No." therein will be referenced as paragraphs hereinafter.

Also referenced is Defendant's Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint [ECF No. 58] ("Def. Ans.").

## INTRODUCTION

In this Motion for Partial Summary Judgment (the "Motion"), Plaintiff moves for summary judgment against Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM" or "Defendant") on parts of the following claims: discrimination by failure to reasonably accommodate his disabilities, breach of fiduciary duty, breach of contract, fraudulent inducement/omission and negligent misrepresentation. In this Motion, Plaintiff brings his failure to accommodate claims under 34 C.F.R. § 104.4, effectuating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "RA"); and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").

Plaintiff suffers from multiple mental impairments that adversely affected his academic performance at RUSM. Plaintiff's mental impairments consists of anxiety and an attention impairment. Plaintiff's diagnosed anxiety disorder, 'Anxiety State, Unspecified' ("Anxiety Disorder") and his diagnosed Obsessive-Compulsive Disorder ("OCD") manifest as anxiety, concurrently with his attention impairment, diagnosed as Attention Deficit Disorder Without Mention of Hyperactivity ("ADHD") (individually a "mental impairment" and collectively the "mental impairments").

RUSM knew of Plaintiff's mental impairments. RUSM even diagnosed Plaintiff's mental impairments themselves. At least five different employees, including the Dean, failed to accommodate Plaintiff for his exams including for his NBME Comprehensive Basic Sciences Examination ("NBME CBSE" or "COMP"). In addition to Plaintiff's multiple requests for extended testing time, RUSM knew that Plaintiff needed some type of accommodation because it was documented that he kept "running out of time" to pass exams, would circle random answers without thinking about the questions to avoid leaving them blank, and simply just "never

1

finished an exam on time" all due to his mental impairments. None of RUSM's employees took the appropriate steps to ensure that Plaintiff was reasonably accommodated for his disability.

The RUSM Counseling Center had a fiduciary duty to provide RUSM administrators with Plaintiff's confidential information relevant to getting him academic accommodations. The RUSM Counseling Center became a fiduciary when it signed a joint agreement with Plaintiff and when it made commitment to Plaintiff.

RUSM breached its contract with Plaintiff when it dismissed him after he scored a 67 on the NBME CBSE. RUSM also breached its contract with Plaintiff because the Dean did not have the contractual right to make Plaintiff's dismissal final after the contractual 15 calendar days.

RUSM misrepresented and omitted facts about the applicability of the Americans with Disabilities Act in Dominica on its website to prospective students, including to Plaintiff.

## FACTUAL BACKGROUND

### A. Parties

RUSM receives Federal financial assistance from the United States of America as it participates in Federal Student Loans under the William D. Ford Direct Loan Program. SMF at ¶ 2. RUSM is a place of public accommodations because it is a private school. *Id.* at ¶ 3.

The Florida Department of Education licenses RUSM to offer programs of instruction under the provision of Chapter 1005, Florida Statutes and Chapter 6E of the Florida Administrative Code. *Id.* at ¶ 4.

William Owen ("Dean Owen") is an employee of RUSM and he is employed as the Dean and Chancellor. *Id.* at ¶ 5. Davendra Sharma ("Dr. Sharma") is an employee of RUSM and he is employed as a professor and psychiatrist. *Id.* at ¶ 6. Bryan Hayse ("Dr. Hayse") is an employee of RUSM and he is employed as an Associate Dean. *Id.* at ¶ 7. McMillan Cuffy ("Mr. Cuffy") is an employee of RUSM and he is employed as a counselor. *Id.* at ¶ 8. Matthew Stewart-Fulton

2

# **102**

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by __PG__ D.C.

DEC 10 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

OLUWAMUYIWA AWODIYA, )
*Plaintiff*, )
)
-v- )
)
ROSS UNIVERSITY SCHOOL OF )
MEDICINE, SCHOOL OF )
VETERINARY MEDICINE LIMITED )
*Defendant.* )
)

Case No. 0:18-cv-60482-KMM

Hon. Chief Judge: K. Michael Moore
Magistrate Judge: Alicia O. Valle

## PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Oluwamuyiwa Awodiya ("Plaintiff"), in proper person, hereby submits his Second Motion for Partial Summary Judgment ("Motion").

Plaintiff brings this Motion against Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM") in whole or in part on his failure to accommodate claims (under 42 U.S.C. § 12182; 29 U.S.C. § 794; 34 C.F.R. § 104), breach of fiduciary duty claim, fraudulent misrepresentation claims (inducement and omission), and negligent misrepresentation claim.

## **Terms**

The term "ADA" refers to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182.

The term "RA" refers to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The term "ADHD" refers to Attention Deficit Disorder Without Mention of Hyperactivity.

The term "Anxiety Disorder" refers to Anxiety State, Unspecified.

The term "OCD" refers to Obsessive Compulsive Disorder.

The term "Mental Impairments" refers to (i) Attention Deficit Disorder Without Mention of Hyperactivity, (ii) Anxiety State, Unspecified, and (iii) Obsessive Compulsive Disorder.

The term "NBME CBSE" or "COMP" refers to NBME Comprehensive Basic Sciences Examination.

The term "ROI Agreement" refers to the Release of Information Consent Agreement attached as Exhibit SJ-07.

The citation term "Admis. No." refers individually to each request in RUSM's responses to Plaintiff's request for admissions attached as Exhibit SJ-08.

The citation term "Sharma Dep." refers to Davendranand Sharma's deposition transcript attached as Exhibit SJ-21.

The citation term "Hayse Dep." refers to Bryan Hayse's deposition transcript attached as Exhibit SJ-22.

The citation term "Fulton Dep." refers to Matthew Stewart-Fulton's deposition transcript attached as Exhibit SJ-23.

## Table of Contents

Introduction ........................................................................................................................... 1

Standard of Review .............................................................................................................. 1

Argument ............................................................................................................................... 1

I.     FAILURE TO ACCOMMODATE CLAIMS ................................................................ 1

     A.     Legal Framework. ................................................................................. 1

     B.     Plaintiff is Disabled .............................................................................. 2

          i.     "Concentrating" is a Major Life Activity. .................................... 3

          ii.     Plaintiff's Mental Impairments Substantially Limits Concentration. ......... 3

     C.     Plaintiff is an 'Otherwise Qualified' Individual. ...................................... 5

     D.     Plaintiff Requested an Accommodation. ................................................ 6

          i.     Months Before Plaintiff's NBME CBSE Attempts. .................................. 6

          ii.     After Plaintiff's NBME CBSE Attempts. The Grievance Process. .......... 10

     E.     In the Alternative, Plaintiff's Need for an Accommodation was Obvious. .......... 11

     F.     A Reasonable Accommodation Existed ............................................... 13

     G.     RUSM Failed to Provide a Reasonable Accommodation. ...................... 13

II.     BREACH OF FIDUCIARY DUTY CLAIM ................................................................ 13

     A.     The RUSM Counseling Center had a Fiduciary Duty to Plaintiff. .............. 13

III.     FRAUDULENT INDUCEMENT/OMISSION AND NEGLIGENT MISREPRESENTATION CLAIMS ... 14

     A.     RUSM Made a False Statement Regarding a Material Fact; and/or RUSM Misrepresented a Material Fact. ................................................................ 15

          i.     The ADA-Statement. ................................................................. 15

          ii.     The ADA-Statement is False and/or Misrepresented. ...................... 16

          iii.     The ADA-Statement is Material. ................................................. 16

     B.     RUSM had Knowledge that the ADA-Statement is False; and/or Made the Representation Without Knowledge as to its Truth or Falsity, or RUSM Ought to have Known of its Falsity. ................................................................ 18

     C.     RUSM Intended for Prospective Students in the U.S. to Rely on the ADA-Statement. ................................................................................... 19

     D.     RUSM Omitted a Material Fact that it had a Duty to Disclose to Prospective Students. ..................................................................... 19

     E.     Plaintiff was Consequently Injured Acting in Reliance on the ADA-Statement and/or Injury Resulted to Plaintiff Acting in Justifiable Reliance on the ADA-Statement. ................................................................................... 19

          i.     Plaintiff's Reliance and Consequent Injury. .................................. 20

|  | ii. | Justifiable Reliance. ............................................................................. 20 |
| **Conclusion** | | ..................................................................................................................... **20** |

## Table of Authorities

### Cases

*Adigun v. Express Scripts, Inc.*, No. 17-15225, (11th Cir. Aug. 7, 2018) ....................................... 6

*Alboniga v. Sch. Bd. of Broward Cnty.*, 87 F. Supp. 3d 1319, (S.D. Fla. 2015)............................... 2

*Bagwell v. Morgan Cnty. Comm'n*, No. 15-15274, (11th Cir. Jan. 18, 2017).............................. 13

*Bank of Am., N.A. v. Grec Homes IX, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton,

(S.D. Fla. Jan. 23, 2014) ........................................................................................................... 15

*Boudreau v. Bethesda Found. of Neb.*, Civil Action No. 1:14-cv-03451-CMA-CBS, (D. Colo. Jan.

27, 2016) .................................................................................................................................... 10

*Brady v. Wal-Mart*, 531 F.3d 127, (2d Cir. 2008) ........................................................................ 12

*Butler v. Yusem*, 44 So. 3d 102, (Fla. 2010) ................................................................................. 20

*Doe v. Evans*, 814 So. 2d 370, (Fla. 2002) ................................................................................... 14

*Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, (11th Cir. 1997) ..................................................... 3

*Gracey v. Eaker*, 837 So. 2d 348, (Fla. 2002) ............................................................................... 13

*Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, (11th Cir. 2016) .................................................... 6, 17

*J.A.M. v. Nova Se. Univ., Inc.*, Case No. 0:15-cv-60248-KMM, (S.D. Fla. Aug. 12, 2015)...... 1, 2

*McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, (11th Cir. 2014)

.................................................................................................................................................... 12

*McLean v. Abington Mem'l Hosp.*, CIVIL ACTION NO. 15-671, (E.D. Pa. Sep. 15, 2015) ...... 10

*Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, (W.D. Mich. 2009)........................................... 10

*Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, (N.D. Fla. Nov. 27, 2017)

.................................................................................................................................................... 12

*Pope v. ABF Freight Sys., Inc.*, NO. 3:17-cv-564, (W.D.N.C. Jul. 24, 2018)................................. 3

*Robertson v. Las Animas*, 500 F.3d 1185, (10th Cir. 2007) .......................................................... 12

*Sessoms v. Trs. of the Univ. of Pa.*, No. 17-2369, (3d Cir. Jun. 20, 2018) ...................................... 6

*Tsavaris v. Pfizer, Inc.*, Case No. 1:15-cv-21826-KMM, (S.D. Fla. Feb. 1, 2016) ...................... 15

*U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, (11th Cir. 2011) ..................................... 6

*Wachovia Insurance Services, Inc. v. Toomey*, 994 So. 2d 980, (Fla. 2008) ................................ 14

*ZC Insurance Co. v. Brooks*, 847 So. 2d 547, (Fla. Dist. Ct. App. 2003) ...................................... 19

### Statutes

42 U.S.C. § 12102 .................................................................................................................... 2, 3

42 U.S.C. § 12181 ...................................................................................................................... 16

42 U.S.C. § 12182 ...................................................................................................................... 18

### Other Authorities

Pattern Jury Instructions, Civil Cases, Eleventh Circuit, § 4.12, (2018 revision) ........................... 6

### Regulations

34 C.F.R. § 104 .................................................................................................................... 2, 3, 18

## INTRODUCTION

In May of 2014, Plaintiff became a medical student at RUSM. After passing his first four semesters in Dominica, he failed his fifth semester in December of 2015. When Plaintiff failed that semester, RUSM suspected, tested, and confirmed Plaintiff's concentration/attention limitations. Plaintiff informed RUSM numerous times that he needed extended testing time, but RUSM allows its faculty to be deliberately indifferent to disabled students in need of an accommodation. Contrary to what RUSM advertised to prospective students, RUSM did not have a policy—or required in any fashion—for its faculty to comply with the ADA in Dominica.

## STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief— that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## ARGUMENT

### I.      Failure to Accommodate Claims

"To state a failure to accommodate claim, it must be shown that the plaintiff (1) is disabled, (2) is an 'otherwise qualified' individual, and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *J.A.M. v. Nova Se. Univ., Inc.*, Case No. 0:15-cv-60248-KMM, at *8 (S.D. Fla. Aug. 12, 2015).

### A.      Legal Framework.

1

Since 34 C.F.R. § 104.4 effectuates the RA and because the RA and Title III of the ADA both prohibit discrimination on the basis of disability by an institution of higher education, these claims will be discussed together as a failure to accommodate claim. "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4(a). "The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance." 34 C.F.R. § 104.1.

"Both the ADA and the RA prohibit discrimination on the basis of disability by an institution of higher education. ... Because both statutes generally impose the same legal requirements, the Court will discuss the ADA and RA claims together, relying on cases construing those statutes interchangeably, unless a distinction is relevant." *J.A.M.*, Case No. 0:15-cv-60248-KMM, at *5-6. "[T]he only material difference between the rights and remedies afforded plaintiffs under Title II and Section 504 lies in their respective *causation* requirements, but that this difference was *immaterial* where the plaintiff's claims are based on a failure to make reasonable accommodations for disabled individuals." *Alboniga v. Sch. Bd. of Broward Cnty.*, 87 F. Supp. 3d 1319, 1332 (S.D. Fla. 2015) (emphasis added) (citing *Bennett–Nelson v. La. Bd. of Regents,* 431 F.3d 448, 454 (5th Cir.2005)).

**B.     Plaintiff is Disabled.**

A disabled or handicapped person is any person who (i) has a "physical or mental impairment" which "substantially limits one or more major life activities," (ii) has a "record of" such an impairment, or (iii) is "regarded as" having such an impairment. 42 U.S.C. § 12102(1); *accord* 34 C.F.R. § 104.3(j)(1).

2

"However, for a failure to accommodate claim, an individual must show that he has a disability within the 'actual disability' prong or the 'record of' prong[.]" *Pope v. ABF Freight Sys., Inc.*, NO. 3:17-cv-564, at *6-7 (W.D.N.C. Jul. 24, 2018). "Has a record of such an impairment means has a *history of*, or has been *misclassified as having*, a mental or physical impairment that substantially limits one or more major life activities." 34 C.F.R. § 104.3(j)(2)(iii) (emphasis omitted and added). Plaintiff's Mental Impairments are so well documented and detailed that he satisfies both the 'actual disability' and the 'record of' prongs.

### i. "Concentrating" is a Major Life Activity.

By statute, "major life activities include ... concentrating[1]..." 42 U.S.C. § 12102(2)(A). Since only one major life activity is required to be disabled, Plaintiff does not find it necessary to argue all other possible major life activities in this Motion.

### ii. Plaintiff's Mental Impairments Substantially Limits Concentration.

"[M]ental impairment means ... any mental or psychological disorder." 34 C.F.R. § 104.3(j)(2)(i). Plaintiff was diagnosed with the following mental disorders, ADHD, Anxiety Disorder, and OCD. Each of these Mental Impairments substantially limit the same major life activity, concentration; and consequently, his ability to complete exams in the standard time allotted. "The ADA defines 'discrimination' to include 'not making reasonable accommodations to the known physical or mental **limitations** of an otherwise qualified individual with a disability." *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir. 1997) (emphasis added) (quoting 42 U.S.C. § 12112 (b)(5)(A)).

**Diagnostic tests.** After Plaintiff took multiple diagnostic tests between December 2015 through January 2016 his treating professionals stated, (1) Plaintiff's "Conners CPT3 computer

---

[1] Plaintiff may use the term "concentration" interchangeably with "attention."

testing results [] states that the scores are 'associated with a very high likelihood of having a disorder' such as ADHD." Ex. SJ-01; (2) "The TOVA was administered. The results are not within normal limits and the overall pattern of performance suggests an attention problem, including ADHD." Ex. SJ-02; and (3) "The CAARS was also administered. The results indicated ADHD predominantly Inattentive presentation." *Id.* Plaintiff's Conners CPT3, TOVA, and CAARS all reached the same conclusion about Plaintiff's concentration problems.

**Medical record notes** by Plaintiff's treating professionals. On December 30, 2015, Dr. Mauricio's medical note about Plaintiff reads:

> The patient reports the following concerns related to attention/concentration:
>
> [F]requently fails to give close attention to details or makes careless mistakes at work or in school[.]
>
> [C]onstantly has difficulty sustaining attention to tasks at work or in school[.]
>
> [I]ntermittently doesn't seem to listen when spoken to directly[.]
>
> [F]requently does not follow through on instructions or fails to finish work or duties[.]
>
> [C]onstantly has difficulty with tasks requiring persistence or organization (schoolwork or job duties)[.]
>
> [C]onstantly Has [*sic*] problems with procrastination/avoidance of tasks.
>
> [C]onstantly distracted by noise or activity.
>
> [C]onstantly is forgetful in daily activities, e.g., difficulty remembering appointments or obligations[.]
>
> [I]ntermittently finds it hard to follow conversations, even when being spoken to directly[.]

Ex. SJ-03, at 3. On June 17, 2016, Dr. Mauricio's medical note about Plaintiff reads:

> [H]ave not been on time for anything in the last couple of months, continuous missing events, study maybe 3 hours a day or less, don't feel a "focus" effect/ don't feel anything, stupid things distract [him]

4

from main subject[]. He reports that he continues to be "always late", forgetting all his appointments...

*Id.* at 18.

Denise H. Unterman's (Plaintiff's psychotherapist) medical note reads, "[a]nxiety dating to at least [high school]." Ex. SJ-04, at 35. Ms. Unterman's medical note further reads:

[O]nset of anxious feelings in HS w/ worsening in college around exams when he started pulling out his eyelashes and chin hairs. [...] [S]truggling w/ completing exams due to compulsively checking that he has completed previous answers. [...] [H]e's very worried about undermining his score by not completing the exam in the time allowed.. He pulls his eyelashes to the point where he no longer has any.

*Id.* Ms. Unterman's goal for Plaintiff reads:

Goal I: Anxiety Reduce [*sic*] the overall leve[l], frequency and intensity of the anxiety so that daily functioning is not impaired.

*Id.* at 36.

**RUSM counseling records** indicate that Plaintiff experienced "running out of time" on his exams. Ex. SJ-05. These records also show that "towards the end" of exams, Plaintiff would "los[e] his momentum and just circle questions without really thinking of the answers." Ex. SJ-06.

**C.    Plaintiff is an 'Otherwise Qualified' Individual.**

RUSM admitted that Plaintiff is an otherwise qualified individual. Paragraph 86 of the Complaint [ECF No. 47] reads:

Plaintiff is otherwise qualified to participate in RUSM's curriculum and is able to participate in said program with reasonable accommodations in place.

Compl. ¶ 86.

RUSM admitted to the allegation in its Answer and Affirmative Defenses [ECF No. 58] ("Answer") as follows:

In response to paragraph 86, RUSM admits the allegations.

5

Answer ¶ 87.

### D. Plaintiff Requested an Accommodation.

The determination of whether a request for accommodation has been made, is a legal conclusion. "However stated, a plaintiff can be said to have made a request for accommodation when the defendant has 'enough information to know of both the disability and desire for an accommodation.'" *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir.2003) (internal quotation marks omitted)). "[A] plaintiff 'need not use magic words,' but 'should provide enough information about his or her limitations and desires to suggest at least the possibility that reasonable accommodation may be found ....'" *Adigun v. Express Scripts, Inc.*, No. 17-15225, at *4-5 (11th Cir. Aug. 7, 2018) (brackets omitted) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999)); *accord U.S. v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011). "[A]ccommodation request need not be formal, be in writing, or invoke any particular 'magic words[.]'" *Sessoms v. Trs. of the Univ. of Pa.*, No. 17-2369, at *8 (3d Cir. Jun. 20, 2018). The term "request" is a legal concept.

"Put another way, the third and fourth elements require [Plaintiff] to prove that [he] informed [RUSM] of both the substantial limitations [his] disability created and the need for an accommodation." Pattern Jury Instructions, Civil Cases, Eleventh Circuit, § 4.12, p. 7 (2018 revision).

#### i. Months Before Plaintiff's NBME CBSE Attempts.

After Plaintiff failed his fifth semester in December 2015, he executed a ROI Agreement with the RUSM Counseling Center. Ex. SJ-07; Answer ¶ 17. When Plaintiff signed the ROI Agreement, he verbally asked Dr. Sharma and Mr. Cuffy to tell RUSM administration (1) that he needed extended testing time for a suspected attention problem that needed to be diagnosed and

6

(2) that he needed an earlier flight home to help him emotionally with failing the semester. Awodiya Decl. ¶ 3.

The ROI Agreement states that Plaintiff "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "to provide information relevant to academic accommodations" and authorized them to do so with "ongoing communication." Ex. SJ-07. "RUSM admits that this would have permitted the Counseling Center, including the psychiatrist treating Plaintiff, to discuss his ADHD with the school's Accommodations Coordinator[.]" Answer ¶ 17.

**Dr. Sharma** is RUSM's "professor of behavior sciences and consultant psychiatrist for health services." Sharma Dep. 7:23-24. Dr. Sharma admitted that he has "helped other students to get test accommodations at Ross University." *Id.* 27:1-3. Although he may not make the final decision, Dr. Sharma stated that he is the one who makes the requests for accommodations for students. In Dr. Sharma's own words, he stated, "I'm the one -- or the doctors make the request for accommodation, which is time-and-a-half. You get extra time. We actually put it we want the student to get the accommodation[.]" *Id.* 37:17-21.

Dr. Sharma admitted that he noticed Plaintiff's attention/concentration symptoms, including, constantly has difficulty sustaining attention to tasks, constantly has difficulty with tasks requiring persistence or organization, constantly distracted by noise or activity, and constantly forgetful in daily activities. Sharma Dep. 12:9-21. Dr. Sharma stated, "what I saw was evidence of ADHD that required, you know, testing and confirmation." *Id.* 13:1-3. Dr. Sharma admitted that he noticed Plaintiff's symptoms in "December 2015." *Id.* 13:19-24. Dr. Sharma further admitted that he noticed Plaintiff's symptoms to the "extent" that Dr. Sharma "recommended an assessment for the ADHD," when Plaintiff signed the ROI Agreement "for the release of information relative

7

to academic accommodations." *Id.* 73:1-8. Dr. Sharma further admitted that Plaintiff's "ADHD symptoms that [he] observed in December 2015" were "relevant to academic accommodations." *Id.* 74:13-22.

Dr. Sharma admitted that he was "informed that [P]laintiff was running out of time on his exams." Sharma Dep. 23:7-9. Dr. Sharma further admitted that he believed that "[P]laintiff's ADHD, specific to him, was significantly limiting his ability to complete his exams in the time allowed." *Id.* 20:19-22. Dr. Sharma also stated that Plaintiff told him that he was continuing to "r[u]n out of time" on his exams even though he passed them in March 2016. *Id.* 18:24-19:7. Dr. Sharma further stated, "did I prescribe the stimulant [Ritalin] because the student needed extra time? That is part of the problem that ADHD has, that it causes the student to take longer. So the medication would help that. So, yes, that's correct." *Id.* 39:14-19. Then Dr. Sharma admitted that Plaintiff told him that he was still running out of time on his exams despite the medication. *Id.* 40:24-41:7.

**Dr. Hayse** has served as the Associate Dean of Student Affairs at RUSM. Ex. SJ-09. His "[a]reas of oversight include … academic accommodations." *Id.* Dr. Hayse was responsible for making the "final decision" on academic accommodations. Hayse Dep. 23:22-24:8. Plaintiff also informed Dr. Hayse of his limitations and the need for extended testing time. On the same day that Plaintiff signed the ROI Agreement in December 2015, he had a joint meeting with Dr. Sharma and Mr. Cuffy about failing the semester. Ex. SJ-10. Dr. Sharma's counseling note reads, "[f]elt he was treated unfairly because he failed by one point … [h]e wanted to speak to the Dean about changing his grade." *Id.* at 1. The same counseling note also reads, "[i]s trying to see if he can have his grade changed. EMt [*sic*] with student affairs." *Id.* at 2.

8

The next day Plaintiff met with Dr. Hayse in Student Affairs. Plaintiff asked Dr. Hayse if he could retake his exams with extended testing time because the RUSM Counseling Center suspected an attention problem that needed to be diagnosed. Awodiya Decl. ¶ 4. Dr. Hayse told Plaintiff that he could accommodate Plaintiff for future exams but not for exams that Plaintiff had already taken. *Id.* ¶ 5. Dr. Hayse told Plaintiff that he would contact Mr. Cuffy about the suspected attention problem so that Plaintiff could receive extended testing time for future exams. *Id.* ¶ 6.

**Mr. Cuffy** is a counselor at RUSM. Admis. No. 48. Mr. Cuffy's counseling note reads, "[Plaintiff] returned to office after talking to Dr. Hayes [*sic*] in Student Affairs regarding his academic situation. I subsequently received an email from Dr. Hayes [*sic*] requesting that we talk at some point re: the client. After the meeting with Dr. Hayes, [*sic*] the client was very disappointed but stable." Ex. SJ-11. Another counseling note three days later by Mr. Cuffy reads, "[a]fter exhausting all avenues of getting his grades changed, he is at the point where he is accepting to come back here in January to repeat semester 5." Ex. SJ-12.

When Plaintiff returned to Dominica to repeat his fifth semester in January 2016, Plaintiff provided the RUSM Counseling Center with an assessment of his ADHD that was performed by Dr. Mauricio in the United States. Mr. Cuffy clinically assessed Plaintiff with ADHD and Anxiety Disorder. Answer ¶¶ 14-15. Mr. Cuffy's counseling note reads, "[Plaintiff] was assessed in the U.S. for ADHD; he provided us with a copy of the results which are scanned in his file. ... Clinical assessment: Academic problems; repeating semester 5." Ex. SJ-13. *See also* diagnostic tests and medical record notes *supra* pp. 3-4. Mr. Cuffy's counseling notes also reads, "that towards the end of the exam [Plaintiff] lost his momentum and just circle questions without really thinking of the answers." Ex. SJ-06.

9

Dr. Sharma, Dr. Hayse, and Mr. Cuffy were each informed of Plaintiff's limitations and the need for an accommodation.

### ii. After Plaintiff's NBME CBSE Attempts. The Grievance Process.

In 2017, the RUSM Promotions Committee recommended Plaintiff for dismissal because of his performance on his NBME CBSE attempts. Dean Owen denied Plaintiff the opportunity to continue despite being informed by Plaintiff's mental health providers that Plaintiff suffers from a disability that adversely affects his academic performance.

"[S]omeone other than the disabled person may request an accommodation on behalf of the disabled person." *Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 629 (W.D. Mich. 2009). "[A] family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability." *Id.* at 629-630 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999)); *accord McLean v. Abington Mem'l Hosp.*, CIVIL ACTION NO. 15-671, at *15 (E.D. Pa. Sep. 15, 2015); *Boudreau v. Bethesda Found. of Neb.*, Civil Action No. 1:14-cv-03451-CMA-CBS, at *10 n.2 (D. Colo. Jan. 27, 2016).

On June 1, 2017, the RUSM Promotions Committee instructed Plaintiff to email an appeal letter to Dean Owen at PromotionAppeals@RossU.edu "[i]f additional information has become available or if you believe university procedure wasn't followed." Ex. SJ-14.

On June 12, 2017, Plaintiff's independent psychiatrist and psychotherapist informed Dean Owen that Plaintiff's mental impairment had adversely affected his academic performance in medical school, Ex. SJ-15. Plaintiff's psychiatrist and psychotherapist sent an email to Dean Owen which states:

> We are writing on behalf of [Plaintiff], a student in your program.
>
> We have been treating Mr. Awodiya for the past several months for ADHD and Obsessive Compulsive Disorder. He has had

symptoms of the latter for the past 4-6 years but did not understand the nature of the diagnosis until recently. We believe that the **anxiety and checking rituals inherent to this condition** have been **adversely affecting his academic performance** in medical school.

*Id.* (emphasis added).

On June 13, 2017, RUSM confirmed that it received Plaintiff's appeal letter to Dean Owen.

Ex. SJ-16. Plaintiff's appeal letter to Dean Owen stated:

> [M]y objective is to keep this letter relevant to how **OCD has influenced my academic performance.**
>
> ....
>
> My biggest challenge with OCD is the **extreme anxiety** and urges that overwhelm me. ... Honestly, I don't fully understand everything about my OCD yet, but sometimes there isn't a solution to sooth my anxiety. Therefore, when I can't identify why I feel the way I do, I get hopelessly overwhelmed. Sometimes the solution is not even logical, like pulling out my eyelashes.
>
> I'm the student who **never finished an exam on time.** I was **compelled to back track my answers just to make sure they didn't disappear 5 seconds after I went to the next question.** ... These are just some of the ways that OCD has influenced my academic performance.
>
> ... I cannot tell you that I can fix this overnight, but I can tell you that progress can be made.

Ex. SJ-17 (emphasis added).

On June 29, 2017, Dean Owen sent a letter to Plaintiff which states that he "carefully reviewed [Plaintiff's] academic record, [Plaintiff's] **appeal** of the Student **Promotions Committee's recommendation for dismissal,** and [Plaintiff's] pre-matriculation credentials." Ex. SJ-18 (emphasis added). Dean Owen still decided to dismiss Plaintiff. *Id.*

### E. In the Alternative, Plaintiff's Need for an Accommodation was Obvious.

Even if RUSM could somehow create a question of fact as to whether Plaintiff made a "request" for an accommodation, a request is not required when Plaintiff's need for an

11

accommodation was obvious. The same facts already set forth above, support this alternative as well.

"[T]he entity will know of the individual's need for an accommodation because it is obvious." *McCullum ex rel. DF & TF v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir.2007)). "Whether the public entity's knowledge derives from an individual's request for an accommodation or an individual's obvious need for an accommodation, the critical component of the entity's knowledge is that it is aware not just that the individual is disabled, but that the individual's disability affects his ability to receive the benefits of the entity's services." *Robertson v. Las Animas*, 500 F.3d 1185, 1197 n.10 (10th Cir. 2007).

"[A] disabled person's failure to expressly 'request' an accommodation [] is not fatal to an ADA claim where the defendant otherwise had knowledge of an individual's disability and needs but took no action. A specific demand may be unnecessary where the need for an accommodation is obvious." *Nattiel v. Fla. Dep't of Corr.*, CASE NO. 1:15-cv-00150-WTH-GRJ, at *2 (N.D. Fla. Nov. 27, 2017) (second bracket added) (quoting *McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055 at *7 (S.D. Tex 2006)).

"Application of this general rule [that a request for accommodation is a prerequisite to liability for failure to accommodate] is not warranted, however, where the disability is obvious or otherwise known to the employer without notice from the employee." *Brady v. Wal-Mart*, 531 F.3d 127, 135 (2d Cir. 2008) (brackets in original) (quoting *Felix v. New York City Transit Authority*, 154 F.Supp.2d 640 (S.D.N.Y. 2001)). "[W]hen an employer has independent knowledge of an employee's disability[,] [t]he rule requiring a request for accommodation [does not apply] in such circumstances." *Id.* (last bracket in original). "A requirement that such an

12

employee ask for accommodation would be tantamount to nullifying the statutory mandate of accommodation for one entire class of disabled (as that term is used in the ADA) employees. We therefore hold that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious — which is to say, if the employer knew or reasonably should have known that the employee was disabled." *Id.*

"Lastly, the regulations governing the ADA provide that, to determine the appropriate reasonable accommodation, an employer may need to initiate an informal, interactive process with the individual with a disability in need of an accommodation to identify the person's limitations and potential reasonable accommodations." *Bagwell v. Morgan Cnty. Comm'n*, No. 15-15274, at *7 (11th Cir. Jan. 18, 2017) (quotation marks omitted).

**F.      A Reasonable Accommodation Existed.**

RUSM admits "that extended testing time for the NBME CBSE is a reasonable accommodation for disabled students that need extended testing time." Admis. No. 58.

**G.      RUSM Failed to Provide a Reasonable Accommodation.**

RUSM admits "that RUSM did not provide Plaintiff with extended testing time for the NBME CBSE." Admis. No. 16.

**II.      Breach of Fiduciary Duty Claim**

The RUSM Counseling Center had an ongoing duty to provide RUSM administration with confidential information reposed by Plaintiff, if the information was relevant to academic accommodations.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

**A.      The RUSM Counseling Center had a Fiduciary Duty to Plaintiff.**

13

"The counselor-counselee relationship has been characterized as a fiduciary one." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). "Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties[.]" *Wachovia Insurance Services, Inc. v. Toomey*, 994 So. 2d 980, 998 n.7 (Fla. 2008) (alterations omitted).

As stated above, Plaintiff verbally asked Dr. Sharma and Mr. Cuffy, to communicate with RUSM administration on his behalf. *See supra* pp. 6-7. The RUSM Counseling Center's fiduciary duty is outlined, in *writing*, in the joint ROI Agreement. Restated here, the ROI Agreement states that Plaintiff "authorize[d] RUSM Counseling Center" to discuss his "confidential information" with "RUSM Administration" for the purpose "**to provide information relevant to academic accommodations**" and authorized them to do so with "**ongoing communication**." Ex. SJ-07 (emphasis added). "RUSM admits that this would have permitted the Counseling Center, including the psychiatrist treating Plaintiff, to discuss his ADHD with the school's Accommodations Coordinator[.]" Answer ¶ 17.

### III. Fraudulent Inducement/Omission and Negligent Misrepresentation Claims

RUSM falsely advertised to prospective students that the university required its faculty "to comply" with the Americans with Disabilities Act in Dominica. RUSM admitted that the advertisement was intended for prospective students but used the phrase "as applicable" to exclude these same students from the purported "policy" or requirement that it advertised to have.

"To state a claim for fraudulent inducement pursuant to Florida law, [Plaintiff] must allege four elements: '(1) a false statement regarding a material fact; (2) the statement maker's knowledge

that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *Bank of Am., N.A. v. Grec Homes IX, LLC*, CASE NO. 13-21718-CIV-ALTONAGA/Simonton, at *11 (S.D. Fla. Jan. 23, 2014) (quoting *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (citations omitted)).

"A plaintiff may establish negligent misrepresentation by proving (1) a misrepresentation of a material fact; (2) the representor made the representation without knowledge as to its truth or falsity, or under circumstances in which the representor ought to have known of its falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) injury resulted to the party acting in justifiable reliance on the misrepresentation." *Tsavaris v. Pfizer, Inc.*, Case No. 1:15-cv-21826-KMM, at *9 (S.D. Fla. Feb. 1, 2016) (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993) (citation omitted).

### A. RUSM Made a False Statement Regarding a Material Fact; and/or RUSM Misrepresented a Material Fact.

#### i. The ADA-Statement.

Paragraph 106 of the Complaint reads, "[c]ontinuously between 2012 and 2018, and before Plaintiff applied and enrolled into RUSM's medical degree program, RUSM published a statement in its Admission Requirements section of its website" stating:

> It is the **policy** and practice **of the University to comply** with the Americans with Disabilities Act **as applicable** and practical **in Dominica.**

Compl. ¶ 106 (emphasis added) (hereinafter referred to as the **"ADA-Statement"**); *See also* Ex. SJ-19, at 3 (the ADA-Statement as it appeared on October 31, 2012).

RUSM did not deny and therefore admitted the allegation of the ADA-Statement in its Answer, as it reads:

> In response to paragraph 106, RUSM states that the website speaks for itself and RUSM denies any allegations inconsistent therewith.

15

Answer ¶ 107.

### ii. The ADA-Statement is False and/or Misrepresented.

First, RUSM did not have a policy instructing its faculty "to comply" with the Americans with Disabilities Act in Dominica. Second, RUSM believed or took the position that Title III of the Americans with Disabilities Act was not applicable in Dominica and then used this malicious belief to elude the compliance that it advertised to prospective students.

Title I of the Americans with Disabilities Act is only applicable to employees. 42 U.S.C. § 12112(a). Title II of the Americans with Disabilities Act is only applicable to public entities. 42 U.S.C. § 12132. In contrast, Title III of the Americans with Disabilities Act is applicable to private entities including "postgraduate private school[s]." 42 U.S.C. § 12181(7)(J). RUSM is a "private, for-profit medical school." Answer ¶ 2.

Dr. Hayse—who made the final decision and oversaw the academic accommodations process—had no knowledge of any imposed compliance with the ADA nor the RA in Dominica. Hayse Dep. 14:11-18. In fact, Dr. Hayse even went as far as to say that they were not "beholden to" the ADA, rather, they just used it as a "guideline." Hayse Dep. 10:14-17. *See also* Admis. No. 29 (RUSM admitting that the school "is not required to comply with Title III of the ADA in Dominica").

### iii. The ADA-Statement is Material.

Even though RUSM's main campus location in Dominica was required to comply with Title IV, HEA statutes and regulations—including the RA—in exchange to receive Federal financial assistance, *see* Pl.'s Second Motion for Judicial Notice [ECF No. 89], RUSM also did not have a policy or requirement instructing its faculty to comply with the RA in Dominica, Hayse Dep. 14:11-18, 10:14-11:6, 11:17-21.

16

Since RUSM did not have a policy—or required in any fashion—for its faculty to comply with either Title III of the Americans with Disabilities Act or the RA, it perpetuated discrimination by providing its faculty the option to be deliberately indifferent to the *known* limitations of disabled students who needed reasonable accommodations in Dominica.

In addition to ignoring the known needs and limitations of disabled students, RUSM blindly adheres to its own formalisms[2] about the manner of requests for accommodations which are actually just administrative methods used to perpetuate discrimination of disabled students by refusing to provide reasonable accommodations for oral requests, by requiring magic words to get accommodations, and by refusing to offer (or investigate) a reasonable accommodation after someone else—other than the disabled student—informed RUSM faculty of the disabled student's limitations and need for an accommodation.

Taking depositions, Plaintiff asked Dr. Sharma if students need to expressly "say" the word "accommodations" in order to get accommodations, Dr. Sharma answered, "[y]es, they have to." Sharma Dep. 29:7-18. In this example, the magic word here is "accommodations." Dr. Sharma further stated:

> I can only send the documentation to the accommodations office, what we have, and they would receive accommodation.
>
> ... You have -- you have good documentation, in my opinion. Other students may have had one less test done, but still with a good diagnostic report of ADHD. So they would be given accommodations.

Sharma Dep. 27:13-23. In addition to requiring magic words, Dr. Sharma explained that nobody can request for accommodations on a student's behalf, stating:

---

[2] "[W]hat matters is not 'formalisms about the manner of the request,' but that the employer has notice of the employee's disability and wish to be accommodated." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999)).

> Nobody can apply for accommodation. Not the student's mother, the student's father, not the student's psychiatrist, the student's counselor. Nobody can apply for accommodations. Only the student, and it has to be done in writing. ... Nobody else, mother, faculty, the dean, the **president of the USA.**
>
> ....
>
> The dean cannot ask for the accommodation on the student's behalf. ... It doesn't matter. Nobody. Nobody can ask for the accommodation. Only the student.

Sharma Dep. 43:12-16, 43:21-24 (emphasis added), 44:4-9. *See also* Sharma Dep. 44:24-45:9.

RUSM's formalisms are at odds with the text of the ADA and RA regulations, stating:

> An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration— (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control.

42 U.S.C. § 12182(b)(D); *accord* 34 C.F.R. §§ 104.4(b)(1)(v), (b)(4).

**B.      RUSM had Knowledge that the ADA-Statement is False; and/or Made the Representation Without Knowledge as to its Truth or Falsity, or RUSM Ought to have Known of its Falsity.**

Mr. Stewart-Fulton is one of the accommodation coordinators at RUSM. Answer ¶ 17. Taking his deposition, Plaintiff asked Mr. Stewart-Fulton if "faculty at RUSM" was required "to comply" with Title III of the ADA and the RA. Fulton Dep. 31:14-21. Mr. Stewart-Fulton answered, "[i]n reference to when you were enrolled and the campus was located on Dominica, we were not required to comply with the ADA." *Id.* 32:1-4. He further answered that they simply "abided by the spirit" of the ADA and the RA. *Id.* 32:5-7. Mr. Stewart-Fulton further admitted that there was no policy "to comply" and therefore was not required to comply with the ADA and RA in Dominica. *Id.* 32:12-19. These admissions are consistent with Dr. Hayse's testimony. *See supra* p. 16.

18

**C.     RUSM Intended for Prospective Students in the U.S. to Rely on the ADA-Statement.**

RUSM distinctly wanted *prospective* students to leave the U.S. to attend its school in Dominica. RUSM "focus their marketing efforts on attracting highly qualified, primarily U.S. and Canadian applicants[.]" Ex. SJ-20, at 19 (Form 10-K SEC filing for the 2012 fiscal year). "RUSM admits that it published information **for** prospective students on its website, including in the Admissions Requirements section." Answer ¶ 106 (emphasis added). The ADA-Statement was in the Admissions Requirements section. *See supra* p. 15.

**D.     RUSM Omitted a Material Fact that it had a Duty to Disclose to Prospective Students.**

"Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully." *ZC Insurance Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003).

RUSM materially omitted that it believed or took the position that no part of the ADA was applicable to the prospective students once they became students in Dominica and/or therefore did not have any policy directing its faculty to comply with the ADA in Dominica. RUSM made deliberate efforts to attract prospective students to leave the U.S. to attend its medical school in Dominica. It advertised to these prospective students that it was the "policy" of the school "to comply" with the Americans with Disabilities Act as applicable in Dominica. But, as evidenced by Dr. Hayse's and Mr. Stewart-fulton's testimony, RUSM in fact did not have a compliance policy nor did they feel obligated to comply with the ADA in Dominica. *Supra*. RUSM had a duty to advise prospective students that its faculty was not "beholden to" the ADA, *supra* p. 16, and that they only "abided by the spirit" of the ADA, *supra* p. 18.

**E.     Plaintiff was Consequently Injured Acting in Reliance on the ADA-Statement and/or Injury Resulted to Plaintiff Acting in Justifiable Reliance on the ADA-Statement.**

19

### i. Plaintiff's Reliance and Consequent Injury.

Plaintiff had "serious concerns about attending a medical school ... located in a less developed nation than the U.S." Awodiya Decl. ¶ 9. "The ADA-Statement about RUSM's ADA compliance was one of the most important factors in [Plaintiff's] decision to leave the U.S. to become a student at RUSM in Dominica." Awodiya Decl. ¶ 14-15; *Id.* ¶ 10-12. Consequently, Plaintiff was denied the benefits and equal enjoyment of RUSM's medical program that was advertised by the ADA-Statement because RUSM refused to require its faculty to comply with the ADA in Dominica and therefore allowed compliance to be optional and for its faculty to be deliberately indifferent to Plaintiff's disability and needs.

### ii. Justifiable Reliance.[3]

Plaintiff was justified in relying on RUSM's ADA-Statement because he was a layperson with minimal knowledge of law and had no reason to suspect that the information was being misrepresented. In fact, Plaintiff "thought the ADA-Statement was only applicable to U.S. students, as opposed to non-U.S. students, because of the word 'Americans' in 'Americans with Disabilities Act.'" Awodiya Decl. ¶ 16. "[Plaintiff] didn't know that the ADA had different divisions or parts and that geographical applicability could differ among any parts of the ADA." *Id.* ¶ 18.

### CONCLUSION

Plaintiff Oluwamuyiwa Awodiya respectfully requests that the Court enter an Order (i) granting summary judgment in favor of the Plaintiff, in whole or in part on each claim herein; (ii) stating any material fact that is not genuinely in dispute and treating the fact as established in this case; and/or (iii) granting Plaintiff such other and further relief as the Court deems just and proper.

---

[3] "Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

DATED this 7th day of December, 2018:

Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I do hereby certify that on this 7th day of December, 2018, I have caused a true and

correct copy of (i) PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY

JUDGMENT, (ii) DECLARATION OF OLUWAMUYIWA AWODIYA IN SUPPORT OF

PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT, and (iii)

PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S

SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT by mailing a copy to the Court,

where the Court's CM/ECF system will send notification to the following:

**Ryan Roman**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
305-374-5600
Fax: 305-374-5095
Email:
ryan.roman@akerman.com

**Octavia Monique Green**
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
(305) 982-5670
Email:
octavia.green@akerman.com

By: Oluwamuyiwa Awodiya, *pro se* litigant

1

# Exhibit SJ-04

(Denise H. Unterman's medical notes)



**KAISER PERMANENTE**

**Oluwamuyiwa O Awodiya**
4/18/2017 3:45 PM   **Office Visit**
MRN: ▮▮▮▮

Description: **24 year old male**
Provider: **DENISE HAGLEY UNTERMAN LCSW**
Department: **Psychothe-Adlt Largo**

Encounter #: **235065077**
Center: **LARGO**

## Visit Summary

### PCP and Center

| Primary Care Provider | Phone | Center |
| --- | --- | --- |
| Enaruna Mae (M.D.) Tychus, M.D. | 301-618-5500 | LARGO |

### Registration
Non- EpicCare Patient

### Reason for Visit
**ANXIETY**

### Diagnoses

| | Codes | Comments |
| --- | --- | --- |
| **TRICHOTILLOMANIA**   - Primary | F63.3 | |
| **OBSESSIVE COMPULSIVE DISORDER** | F42.9 | |

## Progress Notes

Unterman, Denise H (L.C.S.W.), L.C.S.W. at 4/18/2017 3:45 PM
Status:  Signed
**Sensitive Note**

Psychotherapy New Evaluation - Confidential

Pt asked to be called Mee-wah.  He said good-naturedly, "I give everyone 10 free passes to get my name right!'

S:  Chief Complaint: Pt has been pulling his eyelashes out and struggles to complete exams due to compulsive checking behavior.
    Symptoms Checklist for Major Depressive Episode

This SmartLink has not been configured with any valid records.

This SmartLink has not been configured with any valid records.

**Mental Status Exam:**
appearance: attire/dress is appropriate , eye contact is good, hygiene is good
behavior: normal, collaborative, engaged

Awodiya, Oluwamuyiwa O
MRN: ▮▮▮▮

Page 34

## Progress Notes (continued)

**Unterman, Denise H (L.C.S.W.), L.C.S.W. at 4/18/2017 3:45 PM (continued)**

mood: normal, stable, w/ full affective range
speech: normal in RTV
thought content: denies suicidal ideation, plan, or intent, denies homicidal
ideation, plan, or intent
thought process: coherent, logical, relevant
delusions: negative
hallucinations: negative
insight: good
judgment: good


HPI: Pt reports onset of anxious feelings in HS w/ worsening in college around exams when he started pulling out his eyelashes and chin hairs. Initially he used his fingers but now uses tweezers for greater precision. Currently in 2nd year of medical school at Ross University where's he's doing well but struggling w/ completing exams due to compulsively checking that he has completed previous answers. Also, when he's confident that he knows an answer, he nonetheless selects one that "sounds more complicated" because he "can't believe the easy one is right". Board exams are coming up in a few months and he's very worried about undermining his score by not completing the exam in the time allowed.. He pulls his eyelashes to the point where he no longer has any. He's researched his Sxs and is his today to "find out if something's wrong w/ me and what can be done." I shared his dx, explained trichotillomania and the difference between compulsive traits and compulsive personality disorder. We explored self-esteem issues, whether he considers himself intelligent, and wondered together why he might not trust himself to know exams answers. He expressed relief at talking about his, admitting that he's always viewed himself as "stupid" because his mother frequently told him that he was growing up. His thought process is along the lines of, "If I think I know the answer, it couldn't possibly be right." I described CBT and shared some strategies that he can try between now and his next visit, which he wants to hold off on till after his exam as he's consumed w/ studying. Also, he didn't want to go to another site w/ earlier availability.

Psychiatric History: Anxiety dating to at least HS
Family Psychiatric History; Not obtained
Social History: Pt is one of 2 children of Nigerian descent. Raised by his mother. Sister is also in medical school. He'll be residing w/ his mother for the next 2 years while doing clinical rotations in Maryland.
Substance Abuse History: Denied
Tobacco Use:
History
Smoking Status
• Never Smoker
Smokeless Tobacco
• Not on file

Medical History (incl. Meds.):Patient Active Problem List:
ADHD

Awodiya, Oluwamuyiwa O
MRN: ▇▇▇▇

**Progress Notes (continued)**

Unterman, Denise H (L.C.S.W.), L.C.S.W. at 4/18/2017  3:45 PM (continued)



Current Outpatient Prescriptions:
• DEXTROAMPHETAMINE-AMPHETAMINE 15 mg Oral Tab, Take 1 tablet by mouth 2 times a day, Disp: 60, Rfl: 0
• buPROPion 300 mg Oral 24hr SR Tab, Take 1 tablet by mouth daily, Disp: 90, Rfl: 1

O:  General Appearance/Interview Behavior: Slender, friendly, good sense of humor, very bright, candid, intellectually curious
  Suicidal/Homicidal/Violent Ideation: Denied

A:  DSM IV Axis I: Trichotillomania
        Axis II: Compulsive Behaviors
        Axis III: See medical Hx
        Axis IV: compulsive Sxs
        Axis V (current/best in last year): 80

Is patient being considered for referral to Case Management Services?: no
(If yes, use current case management referral protocol).
Dual diagnosis?:  no



P:  We discussed the diagnosis, the reasonable options and following treatment plan.
Goal I: Anxiety Reduce the overall lever, frequency and intensity of the anxiety so that daily functioning is not impaired.

Anticipated achievement date: TBD

Additional Recommendation/Interventions:  CBT to begin in June.  Continue MM for ADHD.
Follow-up Appointment: 6/2/17 w/ Denise Unterman, LCSW-C

Electronically signed by Unterman, Denise H (L.C.S.W.), L.C.S.W.,4/20/2017  1:20 PM

**Medications**

**Infusion Orders**

Awodiya, Oluwamuyiwa O
MRN:

# Exhibit SJ-09

(Dr. Bryan Hayse's faculty profile)



# ROSS UNIVERSITY
SCHOOL OF MEDICINE

Alumni    Current Students    Gainful Employment    Student Consumer Info

ADMISSIONS    MD PROGRAM    STUDENT LIFE    ABOUT



🏠  MD Program    Faculty    BryanHayse

# BRYAN  HAYSE

### ASSOCIATE DEAN. MEDICAL SCIENCES

Dr. C. Bryan Hayse has served as the Associate Dean. Medical Sciences Student Affairs at Ross University School of Medicine since 2015. Areas of oversight include academic advising, student-faculty mentoring, student professionalism and integrity, academic accommodations, counseling and psychological services, campus life, new and continuing student orientation, housing, and campus level financial aid, immigration, and registrar services. Throughout his career Dr Hayse has worked in close partnership with faculty, fellow administrators, and students to establish several student centered initiatives focused on enhancing overall academic and personal development by empowering students to achieve life-long goals

Dr. Hayse earned his bachelor's and master's degrees in science from Murray State University and doctorate in higher education leadership and policy from Vanderbilt University. Prior to arriving at RUSM, Dr. Hayse served in a variety of student affairs and faculty roles at Young Harris College, GA; Belmont University, TN; Centenary College of Louisiana; and Murray State University, KY.

## CONTACT INFORMATION

**Bryan Hayse | Student Affairs**
Phone: 865-338-5719
bryanhayse@rossu.edu

  AREAS OF EXPERTISE

**Student Affairs, Academic Advising, Student Conduct and Professionalism, Student Orientation and Transition, Residence Life and Housing,**

  EDUCATION

# ROSS UNIVERSITY
SCHOOL OF MEDICINE



2300 SW 145TH AVENUE, SUITE 200, MIRAMAR, FL 32027 ADMISSIONS: +855-MD-ROSSU EMAIL: ADMISSIONS@ROSSU.EDU

f    𝕏    ⊙    ▶    𝓟    ♦

CONTACT ROSS    REQUEST INFORMATION    EMPLOYMENT    PRIVACY POLICY

Academic Catalog | Student Handbook

© 2018 Ross University School of Medicine. All rights reserved.

# Exhibit SJ-21

(Excerpts of Davendra Sharma's deposition transcript)

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA


CASE NO.: 0:18-cv-60482-KMM


OLUWAMUYIWA AWODIYA,

           Plaintiff,

vs.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

           Defendant.
_____/


                        350 E. Las Olas Blvd.
                        Fort Lauderdale, Florida
                        October 16, 2018
                        12:59 p.m.



                   THE DEPOSITION OF


              DAVENDRANAND SHARMA



          Taken on Behalf of the Plaintiff

     Pursuant to Notice of Taking Deposition

          Commencing at 12:59 p.m.

Page 22

1  can talk to. I can only treat the plaintiff and get
2  him better with his ADHD. The need for extra time
3  is not my determination. It is available, according
4  to the regulations of the university. It is the
5  student, who has the diagnosis, who needs to request
6  it, if he thinks that he needs extra time, because
7  not every student with a diagnosis of ADHD requests
8  extra time. So we can only advise a student that
9  accommodations are available, if they reach to the
10 accommodation office and request it. You
11 understand?
12     It's not for me to tell the student, who
13 has ADHD, that they must, because they need it, they
14 should go. You understand?
15     It is my duty to let the student know that
16 there is regulations that provide extra time if they
17 request it.
18     Q. So let me ask you this.
19     A. Uh-huh.
20     Q. Is it correct that you're trying to say
21 that the school would act independently in relation
22 to your own belief of the student's need?
23     A. No, it's not my belief of the student's
24 need for extra time, you know. It's the student's
25 need for, one, treatment, and need -- the student

Page 23

1  has to need the extra time. It is not for me to
2  know that they would need it, because many students
3  do not ask for extra time for one reason or the
4  other.
5      Q. What language do you think -- let me
6  rephrase.
7      You were informed that plaintiff was
8  running out of time on his exams, correct?
9      A. Yes. It's there.
10     Q. And you also noticed that -- that his
11 ADHD -- let me rephrase.
12     Connect the symptoms you saw plaintiff
13 experiencing with his ADHD with him running out of
14 time, because to me it seems like that is the
15 plaintiff informing --
16     A. Okay. Let me -- they're all connected.
17 Symptoms lead to diagnosis of ADHD. ADHD has with
18 it problems in managing time. That is why ADHD is
19 afforded extra time by the Office of Accommodations,
20 which considers it a disability, all right,
21 according to the American Disability Act.
22     It's a condition, which we support
23 students, who have ADHD, for extra time.
24     Does that help you?
25     So we have no problem with a student

Page 24

1  requesting accommodations for extra time.
2      Q. Okay. I think I understand.
3      So let me ask you this. If a student
4  doesn't request an accommodation, but the school
5  notices that he needs an accommodation, do you think
6  the school is liable?
7      MR. ROMAN: Objection to the extent it
8  calls for a legal conclusion since Dr. Sharma
9  is not a lawyer.
10 BY MR. AWODIYA:
11     Q. Let me rephrase.
12     If you notice that a student needs an
13 accommodation, but he doesn't request an
14 accommodation --
15     I'm going to come back to it. I lost my
16 train of thought a little bit.
17     A. You want a break? I could use an extra
18 cup of coffee.
19     MR. AWODIYA: Let's take a break and go
20 off the record.
21     (Whereupon, a break was taken from 1:33 to
22 1:40 p.m.)
23 BY MR. AWODIYA:
24     Q. Did plaintiff tell you that -- let me
25 rephrase.

Page 25

1      Did plaintiff tell you that Matthew
2  Stewart-Fulton denied plaintiff's request for
3  accommodation?
4      A. I don't recall that.
5      Q. Do you know why plaintiff never received
6  test accommodations from Ross University?
7      A. Our counseling center record that I have
8  in my documentation, in my notation, doesn't show
9  that the plaintiff applied for accommodation.
10     Q. So outside of the documents, you don't
11 remember any conversations with plaintiff?
12     A. I remember a conversation recently about
13 the deposition here. Prior to that, I believe there
14 was a conversation about getting the documentation
15 you wanted from the -- our counseling center, and we
16 directed you to Shannon Evans in Knoxville.
17     Q. In Dominica you don't remember any of the
18 conversations you had with plaintiff?
19     A. Like what?
20     I mean -- about applying for
21 accommodation?
22     Are you saying I don't remember any of the
23 conversations?
24     Q. Well, because a couple of times you said,
25 it's not in the document, it's not in the counseling

7  (Pages 22 to 25)

15eb13da-d2c1-4023-bda4-c358c06300af

Page 26

1  record, and therefore, you can't recall.
2      Do you recall any information that was not
3  in the documents?
4      A.  I recall a lot of -- your history, your
5  medical history, your concerns about your emotions,
6  your relationship difficulties, your problems with
7  passing the exams.  I recall a lot of those.  But
8  specific words or conversations, I don't.  I
9  certainly don't remember you specifically saying you
10  applied for accommodation.
11     Q.  Okay.  Let's go to the relationship thing.
12     Is it correct that you believe plaintiff's
13  relationship problems caused him anxiety?
14     A.  Yes.
15     Q.  Do you believe that that anxiety -- at
16  that time, in Dominica, did you believe that his
17  anxiety was also affecting his exams in addition to
18  the ADHD?
19     A.  Yes.
20     Q.  Do you think that his anxiety contributed
21  to him running out of time on his exams in Dominica?
22     A.  It could.  It's just speculation, because
23  it's one of the factors that can affect academic
24  performance.  Sure, it could have affected
25  performance.

Page 27

1      Q.  Have you helped other students to get test
2  accommodations at Ross University?
3      A.  Yes.
4      Q.  Compared to plaintiff, have other students
5  with less documentation of ADHD received
6  accommodations at Ross University?
7      A.  There have been students with the
8  diagnosis -- they may have less documentation, but
9  everyone has the diagnosis adequately diagnosed,
10  including you.
11     Q.  When you say, "may have less," less in
12  what aspect?
13     A.  Accommodation is not my portfolio.  I can
14  only send the documentation to the accommodations
15  office, what we have, and they would receive
16  accommodation.  So based on the accommodations
17  office assessment that all the documents are in
18  place.
19     So your question is relating to yourself.
20  You have -- you have good documentation, in my
21  opinion.  Other students may have had one less test
22  done, but still with a good diagnostic report of
23  ADHD.  So they would be given accommodations.
24     But they have to fulfill the accommodation
25  office's -- accommodation is not my portfolio.  We

Page 28

1  don't give it from the clinic, from the counseling
2  services.
3      Q.  But you would give information to --
4      A.  Yes.  We pass the records.
5      Q.  And so, how would you help these students?
6      Would you recommend, based on their
7  documentation and the symptoms you observed, that
8  they get testing accommodations?
9      A.  Part of the counseling intake and the
10  screening for ADHD is every student is advised that
11  accommodation is available and that they have to
12  apply for it if they want it.  We don't encourage.
13  We don't force.  We just say to the students, "It's
14  your option.  It's available."
15     Not every student wants it.  Some -- not
16  every student would want accommodation despite
17  having the diagnosis of ADHD, which can give them
18  the accommodations.
19     Q.  If a student wanted accommodations, and
20  you passed along the information to Ross University
21  administration, would you recommend in those
22  situations that they get academic accommodations?
23     A.  Absolutely, yes.
24     Q.  So if a student came to you and said he
25  was running out of time, do you think that -- if the

Page 29

1  student told the academic -- if the student told the
2  accommodation coordinator he was running out of time
3  on his exams, would that constitute informing him
4  the need of more time on his exams?
5      A.  If the student told the accommodations
6  office.
7      Q.  Yes.  The point I'm trying to express here
8  is that students don't necessarily know the specific
9  language, according to the ADA or to the
10  Rehabilitation Act, what constitutes a request.
11  They simply may say that they need help some way,
12  that I'm running out of time on exams, I'm not
13  completing exams.
14     A.  Uh-huh.  I understand.
15     Q.  Does a student need to expressly request
16  and say "accommodations" in order to get
17  accommodations?
18     A.  Yes, they have to.  It's always done by
19  the counseling service part of our process when we
20  make the diagnosis of ADHD.  It's called "standards
21  practice" or "best practices."
22     Every person who is diagnosed with ADHD is
23  guided to the student handbook that there is
24  accommodations available.  The process is very
25  straightforward.  They need to go to the

8  (Pages 26 to 29)

15eb13da-d2c1-4023-bda4-c358c06300ef

Page 34

1  plaintiff.
2      So this document was signed for that
3  purpose, so we can give information about the
4  plaintiff's emotional health and request an early
5  return. This document was not for releasing
6  information about accommodation, because there was
7  no request for accommodations from me in
8  December 2015.
9      To make it more clear, there was no
10  diagnosis at that time. It was just at the start of
11  preliminary testing, screening for ADHD. So there
12  was no way documents could have been sent to support
13  accommodations for ADHD, because the diagnosis was
14  not made. It makes no sense.
15      Q. So when the diagnosis was made and
16  plaintiff did not revoke his consent, would that not
17  be considered ongoing?
18      A. Ongoing to what?
19      Q. Well, you said the documents didn't exist
20  at that time.
21      A. The diagnosis didn't exist.
22      Q. But the diagnosis existed after the winter
23  break?
24      A. Yes. Yes.
25      Q. Why weren't those records sent?

Page 35

1      A. Because, as I said, we do not release
2  information unless we request -- we receive a
3  request either from the student, who has the
4  diagnosis, and that has to be in writing, not a
5  verbal request, or it has to come from the
6  accommodations office in writing under a protected
7  e-mail that the -- that they are going through the
8  process of supporting a request for accommodation.
9  There was no request made for accommodations. So
10  that's why I said, there's no request. We cannot
11  give out information to the accommodations office.
12  Then we would be sued for giving information beyond
13  the scope. The scope of this document was only to
14  get the plaintiff back home early.
15      Q. Give me one second. I had something and
16  it's coming back to me.
17      A. Take your time.
18      Q. Oh. You said that a request has to be in
19  writing?
20      A. Yes.
21      Q. What if it's oral?
22      A. No.
23      Q. It doesn't count?
24      A. It doesn't count to the accommodations
25  office, as far as I know, and that's their -- that's

Page 36

1  their portfolio. I can only say, from my
2  experience, a verbal request is not a request for
3  accommodations.
4      Q. Would you say that when the diagnosis was
5  made --
6      A. Uh-huh.
7      Q. -- and after you observed all the
8  symptoms, that Ross University had possession of all
9  the necessary documents of plaintiff's ADHD and the
10  symptoms of his ADHD?
11      A. Yeah, we had -- we had made a diagnosis.
12  The diagnosis was done, and we accepted, and the
13  student was -- the plaintiff was being treated.
14      Q. Earlier you said that students with less
15  documentation have received -- you said earlier
16  students with less documentation of ADHD have
17  received accommodation action compared to plaintiff.
18      A. Uh-huh.
19      Q. Do you think that is fair?
20      MR. ROMAN: I'll just object as to vague
21  as to what "fair" means.
22  BY MR. AWODIYA:
23      Q. Let me rephrase.
24      Do you think that plaintiff was treated
25  equally?

Page 37

1      A. Well, I don't think there was a question
2  of equal treatment, if the plaintiff didn't apply
3  for accommodations. If the plaintiff had applied
4  and did not get it, I would say, seems something is
5  not right. We would have to look at why that was
6  not given. And that's not my portfolio. I can only
7  say that the documentation that the plaintiff had
8  appeared to me to be adequate for accommodations.
9      Q. So you believe that plaintiff had adequate
10  documentation of his ADHD to get test
11  accommodations?
12      A. That's me. I believe that. Again, that
13  doesn't mean the plaintiff would get accommodations,
14  because the final say is the accommodations office.
15  It doesn't mean that I believe it's correct. The
16  accommodations office have their own regulations,
17  and they could override my request, because I'm the
18  one -- or the doctors make the request for
19  accommodation, which is time-and-a-half. You get
20  extra time. We actually put it we want the student
21  to get the accommodation, but that doesn't mean they
22  get it.
23      Q. So even though you think that plaintiff
24  needs extra time, it's out of your hands as to
25  whether he gets extra time for his exams?

10  (Pages 34 to 37)

# <u>102-1</u>

## UNITED STATES DISTRICT COURT

for the
Southern District of Florida

FILED by _PG_ D.C.

DEC 10 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

)
OLUWAMUYIWA AWODIYA,      )
      *Plaintiff,*      )
     )
       -v-      )
     )
ROSS UNIVERSITY SCHOOL OF      )
MEDICINE, SCHOOL OF      )
VETERINARY MEDICINE LIMITED      )
      *Defendant.*      )
)

Case No.   0:18-cv-60482-KMM

Hon. Chief Judge: K. Michael Moore
Magistrate Judge: Alicia O. Valle

## DECLARATION OF OLUWAMUYIWA AWODIYA IN SUPPORT OF

## PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      Pursuant to 28 U.S.C. § 1746, I, Oluwamuyiwa Awodiya, as plaintiff, in proper person, of the above-captioned action, make this declaration in support of Plaintiff's Second Motion for Partial Summary Judgment. I am over 18 years of age and I am competent to testify about the matters discussed herein.

2.      I was a student at Ross University School of Medicine ("RUSM"). I was admitted into RUSM in April, 2014. I started my first semester at RUSM in May 2014.

3.      When I signed the ROI Agreement, I verbally asked Dr. Sharma and Mr. Cuffy to tell RUSM administration that I needed extended testing time for a suspected attention problem that needed to be diagnosed and that I needed an earlier flight home to help me emotionally with failing that semester.

4.      On December 10, 2015, I met with Dr. Bryan Hayse ("Dr. Hayse"). I asked him if I could retake any of the exams because I need more time answering questions. I told Dr. Hayse

1

that I have extreme difficulty paying attention during exams. I also told him that the RUSM
Counseling Center suspected an attention problem that needed to be diagnosed.

     5.     Dr. Hayse responded that he could accommodate me for future exams but not for
exams that I had already taken because RUSM does not allow students to retake exams for my
semester.

     6.     Dr. Hayse then told me that he would contact Mr. Cuffy so that I could receive
extended testing time for future exams.

     7.     I am a U.S. citizen and a resident of Maryland.

     8.     While searching for medical schools, I would go to the admissions sections of
their websites to learn about each school.

     9.     Before I became a student at RUSM, I had serious concerns about attending a
medical school outside of the United States of America, especially for medical schools that were
located in a less developed nation than the U.S.

     10.     I had googled pictures of Dominica and was discouraged about attending RUSM
because the island was substantially more "nature" than what I was used to in the U.S.

     11.     A few of my many concerns about Dominica were how I would be treated there,
the safety risks of being on the island, and whether I could continue to use my Federal financial
aid to pay for my tuition.

     12.     It was very important for me to be reassured that RUSM faculty would have an
obligation to provide me an opportunity to complete the medical program in any event that I got
hurt, became disabled, or learned of a disability in Dominica.

     13.     My thoughts contained everything from less access to healthcare to falling off the
side of a mountain.

14. Before I decided to enroll at RUSM, I read "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica" (the "ADA-Statement") in the Admissions Requirements section of its website.

15. The ADA-Statement about RUSM's ADA compliance was one of the most important factors in my decision to leave the U.S. to become a student at RUSM in Dominica.

16. I of course thought the ADA-Statement was only applicable to U.S. students, as opposed to non-U.S. students, because of the word "Americans" in "Americans with Disabilities Act." Since I am a U.S. citizen, I believed it would have to be applicable to me.

17. RUSM never told me that the school believed that the ADA was not applicable to any students in Dominica, even if the students were American citizens.

18. I didn't know that the ADA had different divisions or parts and that geographical applicability could differ among any parts of the ADA. I don't even know all the laws in my state. Most of the laws that I did know at the time were just common sense because of moral reasons and tv shows.

## **EXHIBITS**

19. A true and correct copy of Dr. Earl John Mauricio's January 5, 2016 email received by Plaintiff is attached as Exhibit SJ-01.

20. A true and correct copy of McMillan Cuffy's Counseling Note dated 1-18-2016 is attached as Exhibit SJ-02.

21. A true and correct copy of excerpts from Dr. Earl John Mauricio's medical notes from Plaintiff's medical records are attached as Exhibit SJ-03.

22. A true and correct copy of excerpts from Denise H. Unterman's medical notes from Plaintiff's medical records are attached as Exhibit SJ-04.

3

23.    A true and correct copy of Davendra Sharma's Counseling Note dated 3-11-2016 is attached as Exhibit SJ-05.

24.    A true and correct copy of McMillan Cuffy's Counseling Note dated 3-11-2016 is attached as Exhibit SJ-06.

25.    A true and correct copy of the Release of Information Consent Agreement between Plaintiff and the RUSM Counseling Center is attached as Exhibit SJ-07.

26.    A true and correct copy of Defendant's Responses to Plaintiff's Requests for Admission is attached as Exhibit SJ-08.

27.    A true and correct copy of Dr. Bryan Hayse's faculty profile on RUSM's website is attached as Exhibit SJ-09.

28.    A true and correct copy of Davendra Sharma's Counseling Note dated 12-09-2015 is attached as Exhibit SJ-10.

29.    A true and correct copy of McMillan Cuffy's Counseling Note dated 12-10-2015 is attached as Exhibit SJ-11.

30.    A true and correct copy of McMillan Cuffy's Counseling Note dated 12-13-2015 is attached as Exhibit SJ-12.

31.    A true and correct copy of McMillan Cuffy's Counseling Note Dated 1-11-2016 is attached as Exhibit SJ-13.

32.    A true and correct copy of RUSM's Promotions Committee June 1, 2017 letter received by Plaintiff is attached as Exhibit SJ-14.

33.    A true and correct copy of Plaintiff's psychiatrist and psychotherapist's June 12, 2017 email to Dean Owen is attached as Exhibit SJ-15.

4

34. A true and correct copy of RUSM's June 13, 2017 email, confirming receipt of Plaintiff's Appeal Letter to Dean Owen, is attached as Exhibit SJ-16.

35. A true and correct copy of Plaintiff's June 13, 2017 Appeal Letter to Dean Owen is attached as Exhibit SJ-17.

36. A true and correct copy of Dean Owen's June 29, 2017 letter of his final grievance decision is attached as Exhibit SJ-18.

A true and correct copy of RUSM's Admissions Requirements section of its website on October 31, 2012 is attached as Exhibit SJ-19.

37. A true and correct copy of excerpts of Adtalem's (formally known as Devry) 2012 Annual Report is attached as Exhibit SJ-20.

38. A true and correct copy of excerpts of Davendra Sharma's deposition transcript is attached as Exhibit SJ-21.

39. A true and correct copy of excerpts of Bryan Hayse's deposition transcript is attached as Exhibit SJ-22.

40. A true and correct copy of excerpts of Matthew Stewart-Fulton's deposition transcript is attached as Exhibit SJ-23.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

EXECUTED ON this 7th day of December, 2018:

Respectfully submitted,

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836

5

# 113

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA


CASE NO.: 0:18-cv-60482-KMM


OLUWAMUYIWA AWODIYA,

                 Plaintiff,

vs.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

                 Defendant.
_____/


                          350 E. Las Olas Blvd.
                          Fort Lauderdale, Florida
                          December 4, 2018
                          10:56 a.m.



THE DEPOSITION OF


WILLIAM OWEN


Taken on Behalf of the Plaintiff

Pursuant to Notice of Taking Deposition

Commencing at 10:56 a.m.

Page 6

1  understand the question you're answering.
2      A.  Yes.
3      Q.  It's also very important that you answer
4  my questions through spoken word, not through facial
5  expression or gestures.  Please refrain from
6  answering questions with sounds like "uh-huh" or
7  "hmm-hmm" or words that may not get transcribed
8  accurately.  You must actually say a word.  If you
9  mean yes, say yes, not uh-huh.
10     A.  Noted.  And yes.
11     Q.  Also, please allow any questions and any
12 objections to be fully stated before you speak.  The
13 court reporter cannot take down more than one person
14 speaking at the same time; otherwise, the record
15 will be jumbled and the questions and answers will
16 be disjointed.
17         Ross lawyers may make objections to
18 questions that I ask you.  They are objections for
19 the judge to consider later.  You are still required
20 to answer the question unless you are instructed not
21 to by their lawyers.
22         Everything that is said is being taken
23 down by the court reporter verbatim.  You will have
24 an opportunity to read the deposition transcript and
25 make corrections you believe are necessary.  If you

Page 7

1  make changes in your testimony that are inconsistent
2  with the answers given during the deposition, I will
3  be entitled to comment on those discrepancies at
4  trial to question your truthfulness.
5         Do not guess when providing responses.
6  Instead, please provide your best estimate based on
7  your recollection.  If you need to take a break at
8  any time, please let me know.  All I ask is we not
9  take a break while there's a question pending.
10        Are you today under the influence of
11 any medication or suffering from any physical,
12 mental, or emotional condition that would affect
13 your ability to hear my questions or to give
14 truthful answers?
15     A.  No, I am not.
16         Excuse me.
17     Q.  When did you start working for Ross
18 University?
19     A.  As I recall, April of 2017.
20     Q.  Okay.  And which campus is your office
21 located?
22     A.  Miramar, Florida, United States.
23     Q.  What is your position at Ross University?
24     A.  I am the dean and chancellor of Ross
25 University School of Medicine.

Page 8

1      Q.  In 2017, when students appealed their
2  dismissal, what factors do you take into
3  consideration when you make a decision on that
4  appeal?
5      A.  It's important to recognize that the
6  primary appeal does not go to me.  It goes to a
7  committee that reviews the academic record,
8  interviews the student, and then, convenes a meeting
9  amongst themselves.  They will render a decision
10 either to readmit the student or to sustain the
11 appeal.
12        Those are referred to me in writing.  If
13 there is a sustaining of the dismissal, I will sign
14 off on it, looking at the summary from the
15 committee.  The student thereafter has the
16 opportunity to appeal back.  Some will come to me
17 directly; others will go to the committee.
18        If it goes to the committee, the committee
19 will then send it back to me.  I look for
20 confirmation of the components of the decision by
21 the committee once again; however, the student is
22 also clearly instructed that they are to introduce
23 at that time any mitigating factors that accounted
24 for their academic or behavioral performance that
25 were not made known to the committee.  Occasionally

Page 9

1  that occurs.  More often than not, there is not new
2  information that is introduced.
3         The other guidance that is given to the
4  student is that they are to identify if there have
5  been any procedural variances, in terms of how their
6  case was handled.  In that case, delineate those for
7  me as well.  I take a look at those as well.
8         More often than not, I will send the case
9  back to the committee, in that context, pointing out
10 why I think it merits being reviewed again.  The
11 committee will then send me another opinion.  I will
12 review it with the Dean of Students.  We'll come to
13 a decision as a group, and then, ultimately I will
14 make the final decision myself, which I own.
15     Q.  Do you, at any point, look at the
16 student's records yourself?
17     A.  I do.
18     Q.  So how -- how do you handle appeals when a
19 student informs you that a disability adversely
20 affected their performance?
21     A.  I will confirm the disability by looking
22 for written documentation of the disability, in
23 particular looking for the diagnosis, looking for
24 who made the diagnosis, looking for when the
25 diagnosis was made, and lastly, looking for what

3  (Pages 6 to 9)

Page 10

1    sort of intervention was made around that diagnosis,
2    whether it be pharmacological, behavioral, therapy,
3    or both.
4         I will also have a conversation with
5    the -- he is titled the Associate Dean of Students
6    to get his opinion about it as well. Occasionally,
7    he will be instructed to acquire source materials.
8    An example would be if someone has had external
9    testing. Give me those records so that I might look
10   at them myself.
11        I will, on occasion, either directly or
12   through the Dean of Students reach -- have them
13   reach back out to the therapist and/or psychiatrist
14   with the query being, do you think this will
15   interfere with the student's academic performance,
16   what is the prognosis of the student, and lastly,
17   how long do you think therapy will be needed.
18        Q. Do you always do that?
19        A. Sometimes. It's dependent upon the case.
20        Q. Why sometimes?
21        A. It's dependent upon the case, the
22   circumstances of the case.
23        Q. If a student tells you that they have a
24   disability that was affecting their academic
25   performance, you sometimes investigate it?

Page 11

1         A. Sometimes I investigate it with a
2    follow-up query to the psychiatrist. If I have a
3    statement from the psychiatrist and/or therapist
4    that says, we have investigated this, here is our
5    findings, here is our prognosis, I have no need to
6    go back and push back to the psychiatrist.
7         Q. So once you have that from the
8    psychiatrist, what happens next?
9         A. Depends upon the case.
10        Q. But it plays a factor in whether you will
11   allow the student back into Ross or not?
12        A. Sometimes it does. It depends upon the
13   case.
14        Q. Give me an example where it does entitle
15   the student to be reenrolled into Ross?
16        A. I would prefer not to since that is
17   disclosing medical information about a student who
18   is a patient. I can give you a hypothetical.
19        Q. Don't give me a hypothetical. Give me the
20   requirements.
21        What information do you require from a
22   student that will entitle that student to be
23   readmitted back into Ross?
24        A. It depends upon the case.
25        Q. So you have no requirements?

Page 12

1         A. I have personal requirements.
2         Q. Can you tell me those personal
3    requirements?
4         A. As I've stated to you earlier, it depends
5    upon the diagnosis. It depends upon the
6    intervention. It depends upon the prognosis, as
7    suggested by the therapist or psychiatrist. It also
8    depends upon the committee and what the committee
9    stated in their engagement with the student, and in
10   some cases the Dean of Students will engage with the
11   student directly, and, likewise, his report back to
12   me. So it is a multiplicity of factors. It is not
13   formulaic nor should it be.
14        Q. So you don't investigate every student
15   that tells you that their disability was affecting
16   their academic performance?
17        A. No.
18        MR. ROMAN: I'll just also object, because
19   I think that misstates the prior testimony, but
20   you're permitted to answer.
21        THE WITNESS: Some students are dishonest.
22   BY MR. AWODIYA:
23        Q. How could you make that statement about
24   any student without investigating every student?
25        A. Because a student has never been

Page 13

1    evaluated.
2         Q. You wouldn't know that if you didn't
3    investigate.
4         A. I would ask for documentation.
5         Q. So you always ask the student for
6    documentation after they tell you that their
7    disability is affecting their academic performance?
8         A. Yes, we do. We ask for verification --
9    external verification by someone who is formally
10   trained in the area.
11        MS. BOMAR: Excuse me.
12        THE WITNESS: May I be socially gauche,
13   because you're the furthest in? Could you grab
14   me a cup of coffee?
15        MS. BOMAR: I will. Cream as well?
16        THE WITNESS: Yes. No sugar.
17   BY MR. AWODIYA:
18        Q. So if procedure was followed, but you were
19   introduced new information, and the student informed
20   you about their disability, and it was severe enough
21   to affect their academic performance, would you
22   consider that as a factor?
23        A. Can you repeat that in a more ordered
24   sequence? I think there were three ifs there, and I
25   could not follow them all.

4 (Pages 10 to 13)

Page 18

1   Q. Do you recognize this e-mail?
2   A. I do, in the context of preparation for
3   the deposition.
4   Q. Do you remember in the context of
5   plaintiff's appeal to you?
6   A. I do not.
7   Q. But you would have received this document
8   during that time frame; is that correct?
9   A. I will not confirm that, since it says,
10  "To: promotionsappeals@ross." Secondly, I'm
11  uncertain what you mean by "that time frame."
12  I'm sorry. I'm --
13  Q. From plaintiff's appeal.
14  A. I'm relative prescriptive, in terms of
15  statements. So I will not confirm that.
16  Q. Please turn to the first page of the set
17  of documents in front of you.
18  A. I now have that page.
19  Q. Is it correct that it says that appeal
20  letters will be sent by e-mail to Dean Owen at
21  PromotionsAppeals@RossU.edu?
22  A. Yes.
23  Q. So that is the correct e-mail address
24  which you would have received information about a
25  student's appeal?

Page 19

1   A. That does not come directly into my e-mail
2   box. It may be routed.
3   Q. Let's stick to what the student was
4   directed to do.
5   The student was directed to send new
6   information to this e-mail address for you; is that
7   correct?
8   A. Yes. As is conventional practices in
9   universities, it is routed.
10  Q. So are you suggesting that you have -- you
11  could have possibly not received the document?
12  A. I'm not suggesting it. I'm stating it.
13  It is possible.
14  Q. But you must have received plaintiff's
15  actual appeal letter; is that correct?
16  A. I vaguely recall receiving the appeal
17  letter, as I stated to you earlier.
18  Q. Please turn to Exhibit P-26.
19  Did you send this letter?
20  A. Yes, I did.
21  Q. This letter says, "I have carefully
22  reviewed your academic record, your appeal of the
23  Student Promotions Committee's recommendation for
24  dismissal."
25  Is that statement correct?

Page 20

1   A. Yes, it is.
2   Q. So then, from that statement, you must
3   have reviewed plaintiff's appeal letter that's in
4   front of you labeled Exhibit P-25; is that correct?
5   A. I would suggest I would; however, I am
6   uncertain what is being described here. This is a
7   categorical description. It's not a prescriptive
8   description.
9   Q. What's categorical?
10  A. Your appeal of the promotions
11  recommendation for dismissal, pre-matriculation
12  credentials. It does not describe the individual
13  documents.
14  Q. That's -- it's fine. Because this is the
15  only thing that triggered the appeal. There was no
16  other forms. There was nothing else. It was simply
17  this e-mail and the doctor's e-mail that triggered
18  the appeal process. There was nothing else that --
19  there would be no other documents. So it's --
20  that's fine.
21  So judging from the documents we have
22  reviewed, based on your recollection, from the
23  language you used in your letter sent to plaintiff,
24  did you see plaintiff's appeal letter that was sent
25  to you?

Page 21

1   A. I recall your letter, and it's coming back
2   with greater clarity in the context of the
3   extraordinary circumstances of how many times you
4   failed the preparatory or the premonitory exam for
5   your Step 1. It is coming back. What is also
6   coming back as we're talking this through is your
7   letter from the psychiatrist or the psychotherapist.
8   Q. Tell me what you recall.
9   A. He's in CBT therapy and acquiring
10  strategies for managing his symptoms. He is
11  considering psychotropic medication.
12  What I am remembering is an attestation
13  from a therapist that describes an interventional
14  program in progress, not being executed, nor any
15  verification of it's benefits. That's what I
16  recall.
17  Q. So would that be the reason why you
18  decided to uphold his dismissal?
19  A. Yes. As well as your past performances.
20  Q. So just to be clear, because plaintiff's
21  psychiatrist said that he didn't -- let me rephrase.
22  Just because plaintiff's psychiatrist
23  implied that he was hesitant about taking medication
24  for his disability, that's why you decided to uphold
25  his dismissal?

6  (Pages 18 to 21)

# 119-20



# *STUDENT HANDBOOK*

# **2015 – 2016**

**January 1, 2016**

© 2016 Ross University School of Medicine.  All rights reserved.

- Do not sit for their first attempt of the USMLE Step 2 CS within one (1) year after completing their core clinical clerkship;
- Do not sit for their retake of USMLE Step 2 CS within one (1) year of prior attempt;
- Do not submit USMLE Step results within 30 days of receipt;
- Do not submit sitting dates for Step exams within 30 days of being verified with ECFMG by the Office of the Registrar;
- Do not submit missing file documentation within one semester of being admitted, including but not limited to transcripts, letters of recommendations and immigration documents;
- Do not submit required health documents prior to starting IMF; or
- Failure to meet the conditions of their readmission.

A student who is Administratively Withdrawn will be reported as withdrawn effective the last date of any academically related activity or the date the institution determined the change in status. The withdrawal date will be reported to the U.S. Department of Education which will cause the student's loans to enter repayment status, in accordance with the terms and conditions of the loans. Please consult with the Office of Student Finance to determine the impact on individual loan repayment.

**Academic Dismissal**

Students are subject to Academic Dismissal based on the following:

- Failing any course or semester upon two attempts;
- Failure of remedial courses;
- Student is, or will be, unable to complete the Foundations of Medicine curriculum in no more than 75 instructional weeks (five semesters) for students who completed their first semester prior to May 2013. Students who complete their first semester after May 2013 must complete their Foundations of Medicine curriculum in 90 instructional weeks (six semesters). The Promotions Committee may make an exception based on academic progress or mitigating circumstances;
- Failure to achieve a cumulative GPA of 2.00 or above by the completion of the Foundations of Medicine curriculum;
- Failure to pass the NBME CBSE in three consecutive attempts;
- Failure to pass the USMLE Step 1 or Step 2 CK or CS in six (6) attempts;
- Failure to pass any SCE in four (4) attempts;
- Failure of two clinical clerkships (including IMF);
- Failure of a clinical clerkship where a grade of R was awarded for the same clerkship;
- Failure to abide by RUSM policies;
- Student demonstrates the inability to meet the RUSM's technical standards;
- Failure to meet the conditions of their reinstatement on appeal; or
- Failure to complete all required degree requirements within seven (7) years of matriculation or as otherwise noted on reacceptance or reinstatement.

Students may also be dismissed for non-academic reasons or professionalism concerns pursuant to the Code of Conduct. (See **Code of Conduct** section in this Student Handbook).

**Appeals Process for Academic Dismissal: Foundations of Medicine**

First Appeal: Any student dismissed from the Foundations of Medicine curriculum may appeal the dismissal to the Student Promotions Committee – Foundations of Medicine Subcommittee. Academic Dismissal Appeal form and letter should be emailed to PromotionAppeals@RossU.edu and the Office of the Registrar (Registrar@RossU.edu) and must be made within 15 calendar days of the date on the dismissal notification letter. The appeal will be heard by the Student Promotions Committee – Foundations of Medicine Subcommittee, which will then make an official decision to uphold or overturn the dismissal.

RUSM 000361

Second Appeal: In cases of procedural irregularity, inappropriate decisions, or where additional data has become available that was not considered by the Student Promotions Committee – Foundations of Medicine Subcommittee, a final appeal may be made to the Dean of RUSM. Academic Dismissal Appeal form and letter must be emailed to the Dean at PromotionAppeals@Rossu.edu and the Office of the Registrar (Registrar@RossU.edu) within 15 calendar days of the date on the decision letter from the Student Promotions Committee – Foundations of Medicine Subcommittee and specifically address the rationale for the appeal. The Dean will respond within 15 calendar days of receipt of the appeal. The Dean's decision is final.

A student who successfully appeals a dismissal decision will be reinstated for the semester subsequent to the semester in which the decision regarding the appeal is made. For example, a student who is dismissed at the end of the September 2015 term, and is allowed to return, would be on inactive status for the January 2016 term and then resume his/her studies during the May 2016 term if his/her appeal is granted.

For a student who successfully appealed a dismissal for failure to pass the NBME CBSE will be notified of the conditions of reinstatement and provided a deadline to sit for the exam. Requests to change the conditions of the reinstatement are not granted, including an extension to sit for the exam. Students who are unable to meet the condition of their reinstatement have the option to withdraw. Failure to meet the condition of the reinstatement will result in a dismissal from RUSM.

**Appeals Process for Academic Dismissal: Clinical Sciences**
First Appeal: Any student dismissed from the Clinical Science curriculum may appeal the dismissal to the Student Promotions Committee – Clinical Sciences Subcommittee. Academic Dismissal Appeal form and letter should be emailed PromotionAppeals@RossU.edu and the Office of the Registrar (Registrar@RossU.edu) and must be made within 15 calendar days of the date on the dismissal notification letter. The appeal will be heard by the Student Promotions Committee – Clinical Science Subcommittee, which will then make an official decision to uphold or overturn the dismissal.

Second Appeal: In cases of procedural irregularity, inappropriate decisions, or where additional data has become available that was not considered by the Student Promotions Committee – Clinical Sciences Subcommittee, a final appeal may be made to the Dean of RUSM. Academic Dismissal Appeal form and letter must be emailed to the Dean via PromotionAppeals@Rossu.edu and the Office of the Registrar (Registrar@RossU.edu) within 15 calendar days of the date on the decision letter from the Student Promotions Committee – Clinical Sciences Subcommittee and specially address the rationale for the appeal. The Dean will respond within 15 calendar days of receipt of the appeal. The Dean's decision is final.

Academic Dismissal Appeal Form may be found on the student portal.

RUSM 000362

## PRIVACY RIGHTS AND FERPA NOTIFICATION

RUSM follows the guidelines of the U.S. Family Educational Rights and Privacy Act (FERPA), and maintains student rights as outlined below:

- *Right to Review*. Students have the right to inspect and review educational records within 45 days of the date that RUSM receives a request for access. Students should submit a written request to the Office of the Registrar that identifies the records they wish to inspect. The Office of the Registrar will make arrangements for access and notify the student of the time and place where the records may be inspected.

- *Corrections*. Students have the right to request the amendment of education records that they believe are inaccurate or misleading. Students should write to the Office of the Registrar, clearly identify the part of the record they want corrected and specify why it is inaccurate.

- *Hearings*. If RUSM decides not to amend the record as requested by the student, RUSM will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided when the student is notified of the right to a hearing.

- *Consent*. Students have a right to consent to disclosures of personally identifiable information contained in the student's education record, except to the extent that FERPA authorizes disclosure without consent.

- *Disclosures without Consent*. Disclosure can be made without consent to RUSM officials with legitimate educational interests who need to review a record in order to fulfill their professional responsibilities. A RUSM official is a person employed by RUSM in an administrative, supervisory, academic or research, or support staff position (including law enforcement unit personnel and health staff); a person or company with whom RUSM has contracted (such as an attorney, auditor, or collection agent); a person serving on the Board of Trustees; or a student serving on an official committee (such as a disciplinary or grievance committee) or assisting a RUSM official. Upon request, RUSM may disclose education records without consent to officials of another school in which a student seeks or intends to enroll.

- RUSM may disclose directory information upon request. Directory information includes:
    o Name, address, and telephone listing
    o Dates of attendance, degrees and awards
    o Field of study
    o Most recent school attended
    o Photographs
    o Date and place of birth
    o E-mail address

- Students have the right to file a complaint with the U.S. Department of Education concerning alleged failures by RUSM to comply with the requirements of FERPA. The name and address of the Office that administers FERPA is:

Family Policy Compliance Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202-8520

For further information, students may also contact the Family Policy Compliance Office directly at 1-800-**USA-LEARN (1-800-872-5327) (voice). Individuals who use TDD may call 1-800-437-0833.**

RUSM 000422

# 119-22



**ROSS UNIVERSITY SCHOOL OF MEDICINE**
**ACADEMIC CATALOG**
**2015-2016, VOL. 7**

i

AWOD004614

**RUSM AT A GLANCE**

**Year Founded: 1978**

**Location:**
**Dominica:** Foundations of Medicine

**Graduates:** 11,000+

**Clinical Rotations:** Performed in the US, Canada, and UK

**Enrollment:** Approximately 3,500 students; 98% are US or Canadian residents.

**Facilities:**
**Dominica:** 26-acre fully equipped, technologically advanced campus in Picard, Dominica; hospital, classroom and clinical examination rooms at Princess Margaret Hospital.

**Florida:** Five classrooms ranging in capacity from 32 to 150 seats, all wireless and technologically advanced; 4 clinical simulation laboratory rooms; 2 Harvey rooms; study and student lounge areas; and a Learning Resource Center.

**Faculty Members:**
**Dominica:** 90+ member faculty with MD and/or PhD credentials.

**Florida: In collaboration with the Center for Haitian studies (University of Miami)** 2 full-time faculty, 2 part-time faculty and 8 junior faculty, with MD credentials, in addition to 50+ community preceptors.

**Course of Study:** Students complete the foundational basic science courses in Dominica through the Foundations of Medicine curriculum.

iv

AWOD004617

Because RUSM operates on a year-round schedule (new classes start in September, January and May) students can complete their pre-clinical courses in either 16 or 20 months, depending on which curricular track they select. The IMF clerkship is completed in the US through our affiliation with the Center for Haitian Studies. Students then continue their clinical education at one of more than 29 teaching hospitals in the US that are affiliated with RUSM. Upon completion of the program of medical education and passing Step 1, Step 2 Clinical Knowledge and Step 2 Clinical Skills of the United States Medical Licensing Examination®(USMLE), students earn their MD degree from RUSM.

**Residencies:** RUSM graduates enter US residency programs in virtually every specialty of medicine.

**Licensing:** RUSM graduates can obtain licenses in all 50 US states, Canada and Puerto Rico. Some states require approval for international medical schools. RUSM is proud to be approved in each of the states that have a process to do so.

**To Apply:** Use our online application at www.rossu.edu/medical-school/apply.

**Waitlist:** A waitlist is established when the number of accepted students exceeds the number of students who can be adequately accommodated at the time of acceptance. Waitlisted students are automatically accepted for the following semester. There is no need to reapply.

**Financial Aid:** Current U.S. and Canadian students who meet the criteria for US financial aid (i.e., the student is a US citizen or eligible non-citizen) may be eligible for US/Canadian government and private loan programs.

v

AWOD004618

## GENERAL INFORMATION

**Foreword**
Students must be familiar with the policies and procedures of RUSM as stated in this catalog and the
RUSM *Student Handbook.*

The contents of this catalog represent the most current information available at the time of publication.
However, during the period of time covered by this catalog, it is reasonable to expect changes to be
made without prior notice. The online version, found at RossU.edu, is the most current and accurate
representation of RUSM's academic catalog. It is updated frequently to give you the most current
information, and students are responsible for reviewing the changes.

RUSM reserves the right to change, modify or alter, without notice, all fees, charges, tuition expenses
and costs of any kind. RUSM further reserves the right to add, modify or delete, without notice, any
course offering or information contained in this catalog. Class and exam schedules published each
semester will indicate additions or other changes.

Following a student's entry into the program, the curriculum may undergo modification(s). Students are
held responsible for degree requirements in effect at the time of enrollment, plus any changes made
during the student's progress toward the degree as long as such changes do not delay graduation.

This catalog describes the educational program and activities available at RUSM. RUSM makes no claims
that enrolling in a particular class or following the course curriculum will produce a specific
achievement, employment, qualification for employment, admission to postgraduate degree programs
or licensure. It is understood that the ultimate responsibility for complying with degree requirements
rests with the student. This publication is issued by RUSM as authorized and approved by the Dean and
Chancellor.

**Introduction and Overview**
RUSM is devoted to the education of medical professionals. Founded in 1978, RUSM is located in
Dominica, West Indies, offers clinical rotations in teaching hospitals across the United States, Canada
and United Kingdom and is supported by administrative offices located in Miramar, FL and Iselin, NJ.

RUSM offers a Doctor of Medicine (MD) degree program and has graduated more than 11,000
physicians during its 37-year history. Graduates are eligible for licensure in all 50 States, Canada and
Puerto Rico after the successful completion of the requisite licensing examinations.

The Foundations of Medicine curriculum, conducted in Dominica, consists of a minimum of 64 credits of
specifically prescribed coursework. All Foundations of Medicine coursework must be satisfactorily
completed at the RUSM campus in Dominica.

At the end of the Foundations of Medicine curriculum, students are required to take the National Board
of Medical Examiners (NBME) Comprehensive Basic Sciences examination (CBSE). Students receiving a
score of 66 or higher on the CBSE are certified to take the USMLE Step 1. Students who do not pass the
CBSE are given two subsequent opportunities to take and pass the CBSE in order to certify for the
USMLE Step 1.

1

AWOD004624

The Clinical Science curriculum in the United States begins with a 6-week clerkship: Internal Medicine Foundations (IMF), conducted through our affiliation agreement with the Center for Haitian Studies in South Florida. Following IMF, students complete 84 additional weeks of clinical . This clinical experience is designed to build on students' training in medical history and physical diagnostic skills, and better prepare them to meet the demands of their clinical studies. Students participate in patient care while rotating through various medical specialties in affiliated teaching hospitals and other approved healthcare facilities in the United States.

During clinical clerkships, students must complete and pass the USMLE Step 2 Clinical Knowledge (Step 2 CK) and the USMLE Step 2 Clinical Skills (Step 2 CS). RUSM requires students to pass both the USMLE Step 2 CK and Step 2 CS to be eligible for graduation.

**University Mission**
Our mission is to prepare highly dedicated students to become competent and caring physicians.

**Accreditation and Approval**
The government of the Commonwealth of Dominica authorizes RUSM to confer the Doctor of Medicine degree and graduates are also eligible for licensure in Dominica. The United States Department of Education, through its National Committee on Foreign Medical Education and Accreditation (NCFMEA), has determined that the accreditation standards employed by the Dominica Medical Board are comparable with those used to evaluate programs leading to the MD degree in the United States by the Liaison Committee on Medical Education.

This determination ensures that students enrolled at RUSM are eligible to participate in the US Federal Direct Loan Program. Students or applicants who wish to contact the Dominica Medical Board regarding any aspect of RUSM's medical education program can do so by writing to:

> **Dominica Medical Board Government Headquarters**
> Kennedy Avenue, Roseau, Commonwealth of Dominica, West Indies

RUSM students are eligible to take all of the United States Medical License Examinations (USMLE) by registering with the Educational Commission for Foreign Medical Graduates (ECFMG) and are eligible to apply for licensure in all states in the United States.

RUSM is also accredited by the Caribbean Accreditation Authority for Education in Medicine and other Health Professions (CAAM-HP). CAAM-HP is the legally constituted body established in 2003 under the aegis of the Caribbean Community (CARICOM), empowered to determine and prescribe standards and to accredit programs of medical, dental, veterinary and other health professions education on behalf of the contracting parties in CARICOM.

In addition, the General Medical Council of Great Britain has granted the RUSM Doctor of Medicine degree Limited Registration status, and the World Health Organization includes RUSM in its listing of medical schools approved by recognized national authorities.

In addition, the Society for Simulation in Healthcare (SSH) granted full accreditation to Ross University School of Medicine's Simulation Institute in November 2013.

2

AWOD004625

Laerdaal SimMan 3G high fidelity simulators and 7 Harvey Cardiopulmonary simulators, the simulation laboratories and medical simulation program deliver approximately 10,000 student hours of medical simulation experience per semester. The center is also used to administer practical examinations for the RUSM Clinical Skills course, which are structured as "fitness to practice" proficiency examinations assessing basic clinical skills and clinical reasoning. The Medical Simulation segment of the Clinical Skills course delivered at the Simulation Institute emphasizes a systematic approach to a patient with time sensitive medical needs (one of the AAMC Core Entrustable Professional Activities) and case content correlates with and reinforces basic science lecture content from the Foundations of Medicine curriculum. Now included in the Medical Simulation Program is a high quality Standardized Patient Program wherein students practice clinical skills and reasoning in a wide variety of standardized patient encounters.

## Campus Safety

RUSM provides 24-hour, seven-day a week security for the Portsmouth campus. Security is also provided at the Princess Margaret Hospital clinical facility for students during their clinical assignments and clinical clerkships. Additional campus safety and security information is provided in the *Student Handbook.*

## Miramar, Florida

The facilities include 5 classrooms ranging in capacity from 32 to 200 seats, all wireless and technologically advanced; 4 clinical simulation laboratory rooms; 2 Harvey rooms; study and student lounge areas and a Learning Resource Center.

AWOD004677

## Foundations of Medicine Campus Administration

**Paul Abney, PhD, LPC, NCC**
Assistant Dean of Educational Assessment

**Alan Bateson, PhD**
Chair, Pharmacology

**Ryan Didier**
Executive Administrator, Dominica Campus

**Jolynne Drummlesmith, PhD**
Interim Chair, Microbiology

**Rosanna Emmanuel, BBA, MPH**
Director, Clinical and Community Affairs

**Gerald A.C. Grell, MB, MD, FRCP, FACP, JP**
Special Advisor to the Dean and Chancellor
**James Grogan, PhD**
Associate Dean of Curriculum

**Maureen Hall, MD**
Interim Director, Center for Teaching and Learning

**Janice Johnson, MD**
Interim Chair, Pathology

**Claire Joseph, MBA, MHRM, CFD**
Director, Faculty Affairs

**Niels Larsen, PhD**
Chair, Biochemisty

**Sheila Nunn, PhD**
Chair, Anatomy

**Robert Sasso, MD, FACOG**
Vice Chair, Clinical Medicine

**Nancy Selfridge, MD**
Chair, Clinical Medicine
Assistant Dean, Clinical Sciences - Dominica

**Hashim Shams, MD**
Chair, Physiology

AWOD004682

**Davendranand Sharma, MD, MBBS, DPS**
Interim Chair, Behavioral Sciences

**Nathalie Watty, MPM, BSc (Econ)**
Director, Academic Administration and Strategic Planning

**Laura Welke, PhD**
Vice Chair, Anatomy

# FOUNDATIONS OF MEDICINE FACULTY

## Dominica Campus

## Anatomy Department

**Sheila Nunn, PhD**
Chair, Anatomy and Professor
BSc, University of Newcastle-Upon Tyne (Hons) Microbiology
PhD, The Queen's University of Belfast (Anatomy)
University of Leeds Certificate in Learning and Teaching in Higher Education

**Laura Welke, PhD**
Vice Chair,Anatomy and Associate Professor
PhD, Boston University School of Medicine

**Zoe Brett, PhD**
Assistant Professor
PhD, University of Sydney Medicine (Neurogenetics/Psychobiology)
Bachelor of Medical Science Honours I University of Sydney Anatomy Honours (Neuroscience/Genetics)
Bachelor of Medical Science University of Sydney Pharmacology, Physiology (Neuroscience)

**Rajdeo Kalliecharan, PhD**
Professor
PhD, Dalhousie University, Canada

**Mary Shannon Moore, PhD**
Associate Professor
PhD, University of Texas, Southwestern Medical School
**Gyorgy Nagy**
Professor
MD, University of Pecs
PhD, Semmelweis University of Medicine
DSc, Hungarian Academy of Sciences

**Aidi Yin, MB, MM**
Associate Professor
MM, Beijing Medical University
60

# 119-28



William F. Owen, Jr. MD, FACP
*Dean and Chancellor*
2300 SW 145th Avenue, Suite 200, Miramar, FL 33027
(t) 754-208-4743
(f) 754-208-4744
WOwen@RossU.edu

June 29, 2017

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, MD 201721

Dear Oluwamuyiwa:

I have carefully reviewed your academic record, your appeal of the Student Promotions Committee's recommendation for dismissal, and your pre-matriculation credentials. I concur with the Promotion Committee's decision to dismiss you from Ross University School of Medicine effective April 13, 2017.

I hope you do not let this detour keep you from achieving your goal of helping people in need.

Sincerely,

William F. Owen, Jr., MD, FACP
Dean and Chancellor

Cc: Sandra Herrin, University Registrar
    Gary Belotzerkovsky, Associate Dean, Academic & Student Operations
    Jennifer Dennis, Senior Director of Student Finance
    Danielle McDonald, Assistant Director of Clinical Student Conduct and Development
    Dr. Vijay Rajput, Associate Dean, Academic & Student Affairs



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,                    CASE NO. 0:18-cv-60482-KMM-AOV

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, moves for summary judgment on the Third Amended Complaint [ECF No. 47] (the "Complaint") filed by plaintiff Oluwamuyiwa Awodiya ("Plaintiff").

## I.    INTRODUCTION

In this action, Plaintiff brings the following ten (10) causes of action against RUSM: (i) violation of Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"); (ii) violation of Title III of the Americans with Disabilities Act ("ADA"); (iii) violation of 34 C.F.R. § 104.4, *et seq.*; (iv) violation of 34 C.F.R. § 104.44, *et seq.*; (v) violation of Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes; (vi) breach of contract; (vii) breach of the covenant of good faith and fair dealing; (viii) fraudulent inducement; (ix) misrepresentation in the inducement; and (x) breach of fiduciary duty. Each of Plaintiff's causes of action fail as a matter of law.

Counts I through IV of the Complaint, which allege that RUSM failed to provide Plaintiff with reasonable accommodations for his attention-deficient/hyperactivity Disorder ("ADHD"), anxiety, and obsessive compulsive disorder ("OCD"), fail because Plaintiff cannot establish two essential elements of these claims: (i) that he made an *actionable* request pursuant to federal law; and (ii) that he is "otherwise qualified" as defined by statute. Plaintiff's inability to proffer facts establishing these two elements are fatal to these claims.

Summary judgment is appropriate as to Counts III and IV of the Complaint, which allege that RUSM violated 34 C.F.R. § 104.4 and 34 C.F.R. § 104.44, because these sections of the Code of Federal Regulation are duplicative of the Rehabilitation Act claim and do not give rise to a private right of action.

Count V of the Complaint, which alleges that RUSM violated Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes, fail because there is no private right of action for a violation of Florida Administrative Code Section 6E-2.004(5)(c)(4) and Plaintiff has failed satisfy the jurisdictional prerequisites of a claim under Section 760.08, Florida Statutes.

Counts VI and VII of the Complaint, for breach of contract and breach of the covenant of good faith and fair dealing against RUSM, fail because there is no evidence of a breach and no evidence that RUSM acted arbitrarily or capriciously, as is required for a claim against an educational institution like RUSM.

Summary judgment is appropriate as to Counts VIII and IX of the Complaint, asserting claims for fraudulent inducement and negligent misrepresentation against RUSM, because there is no evidence of a false statement or justifiable reliance.

Count X of the Complaint, asserting that RUSM breached a fiduciary duty, fails because RUSM does not owe a duty to Plaintiff as a matter of law.

As to each count of the Complaint, there is no genuine issue of material fact and RUSM is entitled to summary judgment as a matter of law. Moreover, there is no evidence to support Plaintiff's claims for lost wages or punitive damages. Accordingly, the Court should grant the Motion and enter judgment in favor of RUSM on each of the counts of the Complaint.

## II.  FACTUAL BACKGROUND

Plaintiff is a former RUSM medical student. [ECF No. 47] at ¶1. Plaintiff attended RUSM on the island of Dominica from May 2014 until his dismissal from the university in June 2017. *See* RUSM's Statement of Material Facts in Support of its Motion for Summary Judgment ("SOF"), a copy of which is being filed simultaneously with this Motion, at ¶1. Before attending RUSM, Plaintiff completed his undergraduate studies at Morgan State University. *Id.* at ¶ 2. Plaintiff applied to RUSM in 2013. *Id.* at ¶ 4. When Plaintiff enrolled in RUSM, he did not believe he suffered from any impairment or disability. *Id.* at ¶ 5.

2

Plaintiff's medical records reflect that, during Plaintiff's fifth semester at RUSM, he struggled with emotional distress due to a relationship break-up with a female student who was unfaithful, as well as familial relationship issues and general loneliness. *Id.* at ¶¶ 7-9; *see* [ECF No. 102] at Exhibit SJ-10. This substantially impacted his academics, and contributed to his study habits. *Id.* In December 2015, Plaintiff failed his fifth semester. *Id.* at ¶ 10. After learning of this, Plaintiff suffered from suicidal thoughts and continued visiting the counseling center. *Id.* at ¶¶ 10-12. Plaintiff completed a suicidal assessment, admitting to suffering with self-harm ideations. *Id.* at ¶ 13. As a result, Plaintiff signed a Safety Plan, where he agreed to not attempt to cause harm to himself and agreed to participate in mental health treatment. *Id.* at ¶ 14.

Plaintiff continued to seek counseling from the counseling center at RUSM. *Id.* at ¶ 15. In an effort to get Plaintiff back to the United States sooner, Plaintiff signed a Release of Information Consent form on December 9, 2015. *Id.* at ¶ 16. This document allowed Plaintiff's counselors to communicate with RUSM administrators about getting him off the island earlier. *Id.* at ¶ 17. Plaintiff had not been diagnosed with ADHD, anxiety, or OCD by anyone at the time of executing the Release of Information Consent form. SOF at ¶ 17. Nor did Plaintiff ever request an accommodation or mention the need for extended test time to complete his exams. *Id.* at ¶ 18. Plaintiff continued counseling, pursuant to the Safety Plan, until he returned home to the United States for winter break in mid-December 2015. *Id.* at ¶¶ 19-21.

Upon returning to RUSM in January 2016, Plaintiff resumed counseling at RUSM's counseling center. *Id.* at ¶ 23. *Id.* The counseling center first made a diagnosis of Plaintiff's ADHD in January 2016. *Id.* at ¶ 24. *See also* Declaration of Ryan Roman In Support of Motion for Summary Judgment, Exhibit 25 at ¶ 4. RUSM first diagnosed Plaintiff's anxiety disorder in February 2016. *Id.* Despite receiving the diagnoses for ADHD and anxiety, Plaintiff never requested an accommodation and did not mention the need for additional testing time. SOF at ¶ 34.

RUSM requires its students to take and pass the National Board of Medical Examiners' Comprehensive Basic Science Exam (the "COMP exam") at the end of their fifth semester. *Id.* at ¶ 36. At the time Plaintiff enrolled at RUSM, the minimum passing score for the COMP was a 66. *Id.* at ¶ 37. In September 2015, RUSM advised students that, effective November 2015, it was changing the minimum passing score on the COMP exam from a 66 to a 68. *Id.* at ¶ 38. Plaintiff unsuccessfully attempted to pass the COMP exam five times. *Id.* at ¶¶ 39-47. After failing to pass

3

the exam the fifth time, Plaintiff was dismissed from RUSM in June 2017. *Id.* at ¶¶ 47. Plaintiff has offered no evidence that additional time would have enabled him to pass the COMP exam.

Plaintiff appealed his dismissal and RUSM's Student Promotions Committee upheld the dismissal. *Id.* at ¶ 48. In response, Plaintiff submitted a personal statement, where he makes no mention of needing additional testing time or that his alleged disability affected his test-taking abilities. *Id.* at ¶ 49. Plaintiff disclosed to RUSM for the first time that he was diagnosed with OCD in April 2017. *Id.* The decision of the Student Promotions Committee was upheld on appeal. *Id.* at ¶ 50.

## III.    LEGAL STANDARD

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some factual disputes – as opposed to genuine disputes of material fact – will not defeat a motion for summary judgment. *See Gordilis v. Ocean Drive Limousines, Inc.*, Civ. No. 12-24358-JLK, 2014 WL 2214274, at *1 (S.D. Fla. May 28, 2014) ("A fact is 'material' if it is may determine the outcome under the applicable substantive law."). To defeat summary judgment, "the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures." *McIntyre v. FLX of Miami, Inc.*, Civ. No. 08-20030-JJO, 2008 WL 4541017, at *3 (S.D. Fla. Oct. 8, 2008). A "genuine" dispute as to a material fact exists if the evidence is such that a rational trier of fact could return a verdict for the nonmoving party. *Foreman v. City of Port St. Lucie*, Civ. No. 07-14036-KMM, 2008 WL 958030, at *1 (S.D. Fla. Apr. 8, 2008) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id.*

## IV.    ARGUMENT

### A. Judgment Should be Entered on Counts I Through IV of the Complaint Because There is No Evidence that Plaintiff Made an Actionable Request for an Accommodation

To succeed on his failure to accommodate claims, including both his Title III ADA claim and his claim under Section 504 of the Rehabilitation Act, Plaintiff must demonstrate that he (i) has a disability; (ii) is a "qualified individual" under 42 U.S.C. § 12112(a); and (iii) was discriminated against because of his disability by failing to receive an accommodation. *Hetherington v. Wal-*

4

*Mart, Inc.*, 511 Fed. Appx. 909, 912 (11th Cir. 2013); *Portales v. Sch. Bd. of Broward County*, Civ. No. 16-62935-FAM, 2017 WL 4402534, at *4 (S.D. Fla. Oct. 2, 2017).

Under the ADA and Rehabilitation Act, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999). The demand for accommodation was required to comply with the procedure set by RUSM in its Student Handbook. *See Varad v. Barshak,* 261 F. Supp. 2d 47, 56 (D. Mass. 2003) (holding that plaintiff failed to state a cause of action for failure to accommodate because she did not comply with the Board of Bar Examiners' policy requiring requests for testing accommodations to be in a written format made at least seventy-five days prior to date of examination).

Here, the Student Handbook states: "Foundations of Medicine Requests for accommodations during the foundational science portion of the curriculum should be submitted *in writing to the Accommodations Coordinator for Foundations of Medicine*." *Id.* at ¶ 27 (emphasis added). It further provides that to "qualify for accommodation, a student must identify him/herself to the Accommodation Coordinator for Foundations of Medicine or the Director of Office of Consultation and Support Services for IMF/Clinical Sciences." *Id.* at ¶ 29. It is the responsibility of students, including Plaintiff, "to obtain a thorough written evaluation from an appropriate professional, documenting the presence, extent, and ramifications of the disability." *Id.* at ¶ 30. "The documentation should explain what specific types of accommodation the evaluator believes might be most helpful in offsetting the effects of the disability to an acceptable extent (in the medical school environment, if possible.)." *Id.*

By Plaintiffs' own acknowledgement in his alleged statement of facts filed in support of his motion for summary judgment, *see* [ECF No. 101], he did not follow this procedure. There is no evidence of a written request for accommodation in this case. Plaintiff attempts to circumvent this reality by claiming that a Release of Information Consent form is an accommodation request. [ECF No. 101] at ¶ 17. However, nothing in the Release of Information Consent form asks for an accommodation. The Release of Information Consent form only provides permission for RUSM's Counseling Center to send information to the RUSM administration. RUSM SOF, at ¶ 16. Neither an oral request by Plaintiff nor the completion of a Release of Information Consent form would qualify as a request pursuant to the Student Handbook. *Id.* at ¶¶ 27-35.

5

Because Plaintiff failed to make an actionable request pursuant to the requirements of the Student Handbook, Counts I through IV of the Complaint fail as a matter of law.

### B. Judgment Should be Entered on Counts I Through IV of the Complaint Because Plaintiff Cannot Establish that He is "Otherwise Qualified"

Plaintiff cannot establish that he is "otherwise qualified" as required by the ADA and the Rehabilitation Act. To prove that he is "otherwise qualified," Plaintiff must show that, with or without reasonable accommodation, he was able to perform the essential requirements to graduate from RUSM. *See* 42 U.S.C. § 12131(2). Put another way, Plaintiff must present sufficient evidence to show that he could satisfy the program's necessary requirements, or that any reasonable accommodation by the school would enable him to meet these requirements. Plaintiff has not presented evidence that he is "otherwise qualified."

RUSM's Student Handbook states that:

> Candidates must possess the emotional health required for the full utilization of their intellectual abilities, for the exercise of good judgment, for the prompt completion of all responsibilities attendant to the diagnosis and care of patients, for the development of effective relationships with patients and for effective functioning as a member of the health care team. Candidates must be able to tolerate physically taxing workloads and function effectively under stress. They must be able to adapt to changing environments, display flexibility and learn to function in the face of uncertainties inherent in the clinical problems of patients.

[ECF No. 107-1] at ¶ 64; *see also Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1012 (E.D. Mich. 2017) (finding a Plaintiff was not "otherwise qualified" if he failed to satisfy the medical school's professionalism requirements); *Zimmeck v. Marshall Univ. Bd. of Governors*, 106 F. Supp. 3d 776, 782 (S.D. W. Va. 2015) (finding that a student diagnosed with depression unqualified under the ADA because he failed to meet the professionalism requirements of the medical school).

In *Yaldo,* a plaintiff who suffered from severe anxiety and depression brought an action against his medical school for discrimination under the Rehabilitation Act and the ADA. 266 F. Supp. 3d. at 1011-1012. The court granted summary judgment in the defendant's favor after finding that the plaintiff was not "otherwise qualified" as defined in the Rehabilitation Act and ADA because he failed to satisfy the medical school's professionalism requirements. *Id.* In so holding, the Court looked to the medical school's Policy and Procedure Manual, which had

6

language substantially similar to the Student Handbook in this case. *Id.* The Policy and Procedure Manual in *Yaldo* stated:

> The candidate must possess the emotional health required for full utilization of his/her intellectual abilities, the exercise of good judgment, the prompt completion of all responsibilities attendant to the diagnosis and care of patients, and the development of mature, sensitive, and effective relationships with patients. The candidate must be able to tolerate physically taxing workloads and to function effectively under stress. He/she must be able to adapt to changing environments, to display flexibility, and to learn to function in the face of uncertainties inherent in the clinical problems of patients. Compassion, integrity, concern for others, interpersonal skills, interest and motivation are all personal qualities that will be assessed during the admissions and educational processes.

*Id.*

In *Yaldo,* the Court noted that the medical school's Policy and Procedure Manual required "not only that students exercise good judgment, but also that students be able to function effectively under stress." *Id.* The Court then looked at the plaintiff's medical records and noted that the plaintiff's therapist described Plaintiff's anxiety as causing him to react impulsively and make poor decisions. *Id.* Thus, "by the evidence Plaintiff submitted, he did not satisfy the Technical Standards the medical school required because he could not exercise good judgment while under stress." *Id.* The Court also noted that the Plaintiff's therapist found that he had "difficulty for assuming responsibility for his role in the issues that are occurring in his academic program . . . and his personality prevents him from acknowledgement of his responsibility at times and therefore he feels victimized." *Id.* The Court granted the defendant's motion for summary judgment because Plaintiff did not comply with the school's professionalism policy and "failed to carry the burden of demonstrating that he was otherwise qualified." *Id.*

Here, the Student Handbook requires not only that students possess the emotional health required for the full utilization of their intellectual abilities, but also that they exercise good judgment. [ECF No. 107-1, at ¶ 64]. It also requires that students tolerate physically taxing workloads and function effectively under stress. *Id.* Plaintiff has not shown that he satisfies the technical standards of the medical school. The evidence shows that Plaintiff was suffering from depression and had suicidal ideations due to a relationship break-up with a female student who was unfaithful, familial relationship issues, and general loneliness. *See* [ECF No. 102] at Exhibit SJ-10. Plaintiff also reported being "constantly forgetful in daily activities" and having constant

7

difficulty with tasks requiring persistence or organization, including schoolwork and job duties. SOF at ¶ 22. *See also* [ECF No. 102] at Exhibit SJ-03. Subsequently, Plaintiff also reported to a physician that he has been pulling his eyelashes and chin hairs out. SOF at ¶ 49. *See also* [ECF No. 102] at Exhibit SJ-04.

The Supreme Court of the United States has expressly rejected an interpretation of "otherwise qualified" that would prohibit an institution from considering an individual's limitations when determining that person's eligibility for an academic program. *See Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979). The *Davis* Court stated that "an otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406. The law does not require an academic program to compromise its enrollment criteria. *Id.*; *see also Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154 (1st Cir. 1998). Courts are deferential with respect to the academic judgment of universities. *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978) ("[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making."). "It is equally clear that '[u]niversity faculties must have the widest range of discretion in making judgments as to academic performance of students. . . .'" *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1232 (S.D. Fla. 2010). As this Court recently held, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." *See* Order on Motion for Judgment on the Pleadings [ECF No. 105] at 4 (*citing Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)).

"A school's code of conduct is not superfluous to its proper operation; it is an integral aspect of a productive learning environment." *Bercovitch*, 133 F.3d 141 at 154. Furthermore, Plaintiff has offered no evidence that additional time would have enabled him to pass the COMP exam) that he failed five times. Therefore, Plaintiff is not "otherwise qualified" and judgment should be entered in RUSM's favor on Counts I and II.

8

**C. Judgment Should be Entered on Counts III and IV of the Complaint Because They are Duplicative of Count I and There is No Private Right of Action**

In Counts III and IV of the Complaint, Plaintiff brings claims alleging that RUSM violated 34 C.F.R. 104.4 and 34 C.F.R. 104.44, respectively. Both of these claims must fail because they are duplicative of Count I of the Complaint, which alleges that RUSM violated Section 504 of the Rehabilitation Act.

The relevant sections of the Code of Federal Regulations were instituted by the Department of Education in coordination with the Attorney General of the United States after Executive Order No. 12250 §§ 1-201(c) and 1-402 directed all executive agencies covered by Section 504 to issue appropriate implementing regulations or policy guides. The purpose of 34 C.F.R. § 104.1, *et seq.*, "is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance." *See* 34 C.F.R. § 104.1. Neither 34 C.F.R. 104.4 nor 34 C.F.R. 104.44 can form the basis of separate claims from Plaintiff's Rehabilitation Act claim. Accordingly, judgment should be entered in RUSM's favor as a matter of law.

Moreover, neither 34 C.F.R. 104.4 nor 34 C.F.R. 104.44 create a private right of action. *See Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 869 (D. Wyo. 1998) (dismissing a plaintiff's claim under 34 C.F.R. § 104.1 because the regulations do not create a private cause of action). Instead, they set forth remedial actions for the Assistant Secretary for Civil Rights of the Department of Education to take if it is found that a recipient of federal funding discriminated against persons because of a handicap in violation of Section 504. *See e.g.* 34 C.F.R. § 104.6 (emphasis added). In *Powers*, the plaintiff brought a civil lawsuit under 34 C.F.R. §104.1 *et seq.* and the Court dismissed Plaintiff's claim. 993 F. Supp. at 869. In doing so, the Court stated as follows:

> The Court is unable to discern the reason for Plaintiffs' inclusion of this claim in their Complaint. Pt. 104 by its very terms states that its only purpose is to effectuate § 504 of the Rehabilitation Act. Given that Plaintiffs have stated a claim under § 504 any claim that could possibly be asserted under 34 C.F.R. Pt. 104 is obviously redundant. Furthermore, there is no authority – and Plaintiffs do not direct the Court's attention to any – indicating that Congress intended Pt. 104, or any other similarly obscure regulation, to bestow upon individuals a private cause of action. The Court therefore will dismiss this claim.

9

*Id.*

The reasoning of the Court in *Powers* is applicable here. Therefore, judgment should be entered in RUSM's favor on Counts III and IV.

### D. Judgment Should be Entered on Count V of the Complaint Because There is No Private Right of Action

In Count V of the Complaint, Plaintiff brings a claim alleging that RUSM violated Florida Administrative Code Section 6E-2.004(5)(c)(4) or, in the alternative, Section 760.08, Florida Statutes. Either claim must fail as a matter of law because there is no private right of action under the former and Plaintiff has failed to comply with a prerequisite to the latter.

### 1. There is No Private Right of Action Under Fla. Admin. Code Section 6E-2.004(5)(c)(4)

Plaintiff brings his fifth cause of action pursuant to Florida Administrative Code Section 6E-2.004(5)(c)(4). However, there is no private right of action under this regulation. This section of the Administrative Code regulates the standards and procedures for licensure of schools. The penalty for a violation of this section is denial of the license or discipline by the Commission for Independent Education. *See* Fla. Admin. Code § 6E-2.0061. The statute does not set forth any basis by which a private citizen can bring a civil claim pursuant thereto.

The Florida Supreme Court has made clear that "a statute that does not purport to establish civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994). Absent such expression of intent, a private right of action is not implied. *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003).

Here, the Administrative Code does not establish civil liability. Therefore, this claim should fail as a matter of law.

### 2. Plaintiff Has Not Met the Jurisdictional Prerequisites

As an alternative, Plaintiff brings a claim for violation of Section 760.08, Florida Statutes, the Florida Civil Rights Act ("FCRA"). This claim also fails because Plaintiff must exhaust all administrative remedies before bringing a claim for discrimination.

The FCRA provides that, if "the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy." Fla. Stat.

10

§ 760.07. In Section 760.11, the legislature provided an administrative remedy to any "person aggrieved by a violation of ss. 760.01-760.10." *Id.*

To maintain a cause of action under Section 760.08, Plaintiff was first required file a Complaint with the Florida Commission on Human Relations within 365 days of the alleged violation and follow the remaining mandatory procedures outlined in Section 760.11. *See Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1324-25 (M.D. Fla. 2013) ("As a jurisdictional prerequisite to filing an FCRA action, a plaintiff must exhaust her administrative remedies by filing a timely charge with the appropriate agency."); *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1361 (M.D. Fla. 2014) ("To bring a suit for discrimination under the FCRA, a plaintiff first must exhaust administrative remedies.");

Here Plaintiff failed to follow the mandatory procedures before filing this suit. Accordingly, summary judgment should be entered in RUSM's favor on Count V. *See Jones*, 985 F. Supp. 2d at 1331 (dismissing a complaint with prejudice for failing to timely exhaust administrative remedies).

### E. Judgment Should be Entered on Counts VI and VII of the Complaint Because Plaintiff Cannot Establish Essential Elements of These Claims

In Count VI and VII, Plaintiff asserts claims for breach of contract and breach of the covenant of good faith and fair dealing. Both of these claims deal with purported violations of the Student Handbook. Pursuant to Florida law, "[a] court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Sirpal v. Univ. of Miami*, Civ. No. 09-22662-STB, 2011 WL 3101791 at *14 (S.D. Fla. July 25, 2011) (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)). Plaintiff has broken down the purported violations into six different "sub-counts." [ECF No. 47] at ¶¶ 93-99. Summary judgment is warranted on each of these sub-counts because Plaintiff has not presented any evidence to show that RUSM's actions were arbitrary or capricious.

#### 1. Sub-Counts I Through III Fail as a Matter of Law

The first three sub-counts deal with Plaintiff's allegation that RUSM failed to provide Plaintiff with adequate accommodations after his ADHD diagnosis. There is no evidence that RUSM's alleged failure to provide him a reasonable accommodation was arbitrary or capricious. Instead, the record evidence clearly establishes that RUSM has a set policy, through its Student

11

Handbook, of how to apply for accommodations. SOF at ¶¶ 27-32. The record evidence also shows that Plaintiff failed to properly apply for an accommodation. SOF at ¶ 34. RUSM requires all applications for accommodations to be made in writing and be supported by adequate documentation. *Id.* at ¶ 29.

Courts have held that institutions can require requests for accommodations to be submitted in written format. *See Varad*, 261 F. Supp. 2d at 56 (holding that plaintiff failed to state a cause of action for failure to accommodate because she did not comply with the Board of Bar Examiners' policy requiring requests for testing accommodations to be in a written format made at least seventy-five days prior to date of examination). Where a plaintiff is aware of a policy requiring an application to be made in writing but fails to follow it, he is responsible for the breakdown of the interactive process. *Id.* Plaintiff failed to comply with RUSM's policy in seeking a reasonable accommodation. Summary judgment as to sub-counts I through III should be granted. Moreover, because sub-counts I through III relate to Plaintiff's failure to accommodate claims, to the extent that Plaintiff's ADA and Rehabilitation Act claims fail, these sub-counts must also fail.

### 2. *Sub-Counts IV and V Fail as a Matter of Law*

In sub-counts IV and V, Plaintiff alleges that RUSM breached a contract with him and breached the covenant of good faith and fair dealing by changing its Student Handbook after he enrolled. However, the Student Handbook in existence when Plaintiff enrolled provided that RUSM "reserved the right to change, modify or delete, without notice, any course offering or information contained in this catalog." SOF at ¶ 36.

Moreover, Plaintiff cannot establish that RUSM's changes to its policy were arbitrary or capricious. "Implicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 343 (Fla. Dist. Ct. App. 2008); *see also Doherty v. S. Coll. of Optometry,* 862 F.2d 570, 577–78 (6th Cir. 1988) ("No record evidence exists that [the school] acted arbitrarily, capriciously or with malice."). A court should not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes. *See John B. Stetson Univ. v. Hunt,* 102 So. 637, 640 (Fla. 1924); *see also McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("Courts are generally reluctant to

12

interfere with or substitute their judgment regarding decisions of academic institutions to award degrees.").

The United States Supreme Court has held that "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985). The decision of whether a student is qualified to be a physician is an academic judgment that "requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." *Jallali*, 992 So. 2d at 342. Like the plaintiff in *Jallali*, Plaintiff alleges that RUSM breached its contractual obligation and breached the covenant of good faith and fair dealing when it changed its academic policy and passing requirements. [ECF No. 47] at ¶ 95. However, Plaintiff has not presented any evidence to suggest that such changes to the Student Handbook or Academic Catalog were arbitrary or capricious. Nor is Plaintiff able to. RUSM has the ability to set forth the terms under which it will admit and subsequently graduate its students. Summary judgment should be granted in RUSM's favor as to sub-counts IV and V of Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims.

### 3. *Sub-Count VI Fails as a Matter of Law*

In sub-count VI, Plaintiff alleges that RUSM breached a contract and the covenant of good faith and fair dealing when RUSM's Dean failed to respond to Plaintiff within 15 calendar days of receipt of the second appeal. [ECF No. 47] at ¶ 95. The record evidence shows that Plaintiff submitted his appeal on June 13, 2017. [ECF No. 102] at Exhibit SJ-16. Upon review, Dean Owen upheld Plaintiff's dismissal and informed Plaintiff by letter on June 29, 2017. SOF at ¶ 50. This Court has previously held that Plaintiff cannot establish that the Dean's failure to reply within the 15 day deadline was arbitrary or capricious or otherwise affected Plaintiff in any material way. *See* Order on Plaintiff's Motion for Judgment on the Pleadings [ECF No. 105] at 7. Summary judgment is thus warranted as to sub-count VI of Count VI and Count VII.

### F. Judgment Should be Entered on Counts VIII and IX of the Complaint Because There is No Evidence of a False Statement or Justifiable Reliance

Under Florida law, in order to establish a viable cause of action for negligent misrepresentation, a plaintiff must prove that: (i) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (ii) the defendant was negligent

13

in making the statement because he should have known the representation was false; (iii) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (iv) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. Dist. Ct. App. 2004) (citing *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)).

Similarly, in order to prevail on a claim for fraudulent inducement, a plaintiff must show that: (i) the defendant made a misrepresentation material fact; (ii) the defendant knew or should have known of the falsity of the statement; (iii) the defendant intended for the representation to induce plaintiff to rely on it and act on it; and (iv) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Group, Ltd. v. Guarantee Management Servs., Inc.* 903 So. 2d 251 (Fla. 3d DCA 2005) (*citing Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001)).

Plaintiff contends RUSM made a misstatement on its website by representing: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." As an initial matter, Plaintiff has not stated any facts that establish the falsity of that statement. RUSM stands by the veracity of the statement made on its website. *Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 944 (Fla. Dist. Ct. App. 2001) (reversing judgment for fraudulent inducement where "there was no evidence, however, that the statement attributed to Mr. Brown in this press release was false or misleading at the time it was made."). The language clearly states that RUSM will comply with the ADA "as applicable and practical" in Dominica and the evidence supports that RUSM's actions are consistent with this statement.

Moreover, there is no evidence that RUSM intended to induce the plaintiff to rely on the statement or that Plaintiff justifiably relied on the statement. *Tambourine Comerico Int'l S.A. v. Solowsky*, No. 06-20682 CIV, 2007 WL 689466, at *6 (S.D. Fla. Mar. 4, 2007) (holding that "reliance requires a plaintiff to establish that, but for the alleged misrepresentation or omission, the plaintiff would not have entered into the transaction at issue."). Neither Plaintiff nor RUSM knew that Plaintiff suffered from an impairment or disability at the time he was admitted into medical school. SOF at ¶5. Moreover, Plaintiff testified that he never reviewed the ADA prior to the litigation. *Id.* at ¶4.

14

Plaintiff's failure to proffer evidence establishing the essential elements of his fraudulent inducement and fraudulent misrepresentations claims is fatal to these claims. Judgment should be entered in RUSM's favor on Counts VIII and IX of the Complaint.

### G. Judgment Should be Entered on Count IX for Breach of Fiduciary Duty Because RUSM Does Not Owe A Duty to Plaintiff as a Matter of Law

Plaintiff cannot establish a claim for breach of fiduciary duty, alleged in his tenth cause of action. *Morrison v. Univ. of Miami*, Case No. 1:15-cv-23856-UU, 2016 WL 3129490 (S.D. Fla. Jan. 20, 2016). As the Court held in *Morrison*, "a fiduciary duty does not simply arise because of students' status." *Id.* at *7. In *Morrison*, the plaintiff attempted to circumvent a long line of case law supporting this position by arguing that a "special relationship" arose from her "dependency" on the University to handle her complaints of discrimination and retaliation. *Id.* In response, this Court stated that "this reasoning would convert many, if not all, employer/employee relationships into fiduciary relationships, and there is simply no support in the law for such a result." *Id.* The Court dismissed the plaintiff's breach of fiduciary duty claim with prejudice.

The reasoning in *Morrison* is equally applicable here. Plaintiff cannot establish that any fiduciary relationship exists. Plaintiff's motion for summary judgment on his breach of fiduciary duty claim should be denied and his claim should be dismissed as a matter of law.

### H. Plaintiff's Claim for Lost Earning Capacity Damages Should be Stricken Because there are No Facts Showing that Plaintiff Lost Any Wages

Plaintiff's claim for lost earning capacity damages should be stricken because there is no evidence supporting such damages. Through the close of discovery, Plaintiff has not provided RUSM with any evidence, through tax returns or otherwise, that he lost any wages as a result of RUSM's alleged failure to accommodate. Although Plaintiff opines that he is unable to become a doctor or find equally as lucrative alternative work, *see* Plaintiff's Third Amended Calculation of Damages, attached hereto as **Exhibit A**, this is nothing more than a self-serving and unqualified vocational rehabilitation opinion by an unqualified lay witness and subject to a *Daubert* motion filed by RUSM concurrently herewith.

Only an expert can opine on whether or not Plaintiff can obtain equally as lucrative employment in the future. Plaintiff cannot meet his burden of establishing that he has the qualifications necessary to render such expert opinions and his opinion is not based on a reliable methodology used by experts in the field. *See Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000)

[illegible]

(discussing the "outer limit" of the qualifications necessary to testify as a vocational rehabilitation expert).

In *Elcock*, the Third Circuit discussed the "floor" with respect to an expert witness's qualifications. *Id.* at 743. In *Elcock*, Plaintiff's proffered expert had no formal training in vocational rehabilitation but had experience obtaining employment for disabled individuals while working with the Division of Workers' Compensation. The Court noted that in his position with the Division of Workers' Compensation, the proffered expert must have "learned about the difficulties disabled individuals face in employment, and has accumulated some experience in evaluating whether they can return to a particular job." *Id.* The Court also acknowledged that the proffered expert "kept abreast of the relevant literature in his field" and "consulted the Dictionary of Occupational Titles, a standard tool of the vocational rehabilitationist." *Id.* In addition, the expert possessed "a degree in a field tangentially related to the one about which he testified, and he has also attended conferences regarding vocational rehabilitation." *Id.* Finally, in the process of testifying as an expert in similar matters, the expert "no doubt performed his brand of vocational rehabilitation assessments." *Id.* Despite these qualifications the Court had "misgivings" and found that the proffered expert was only "marginally qualified to perform a vocational rehabilitation assessment." *Id.* In fact, the Court made clear that a district judge, within its discretion, would be free to decline to qualify him.

Plaintiff is not a vocational rehabilitation expert and has no experience helping people who suffer from mental impairments get or keep a job. Plaintiff cannot meet his burden of establishing that he has the qualifications necessary to render vocational rehabilitation opinions or show that his methodology is reliable. Outside of Plaintiff's owns self-serving and inadmissible opinion, there is no other evidence of lost earning capacity damages. Accordingly Plaintiff's claim for such damages should be stricken.

## I. Plaintiffs Claim for Monetary Damages on His ADA Title III Claim Should Be Stricken

Plaintiff may only seek injunctive relief on his ADA Title III claim (Count II). *See* 42 U.S.C.A. § 12188; 42 U.S.C.A. § 2000a-3. Monetary damages are not an available remedy. *Id.* Accordingly, Plaintiff's request for monetary damages for his ADA claim should be stricken as a matter of law. *Forbes v. St. Thomas Univ., Inc.*, No. 07-22502-CIV, 2008 WL 11411866, at *3

(S.D. Fla. Aug. 28, 2008) (granting motion to strike student's request for damages on her ADA, Title III claims).

### J. Plaintiff's Claim for Punitive Damages Should Be Stricken As a Matter of Law

Although Plaintiff can receive monetary damages under the Rehabilitation Act for intentional discrimination, punitive damages are not available. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding punitive damages are unavailable section 504). Moreover, punitive damages are not recoverable for breach of contract claims, irrespective of the motive of defendant. *Griffith v. Shamrock Village, Inc.*, 94 So. 2d 854 (Fla. 1957). Because punitive damages cannot be sought on Plaintiff's Rehabilitation Act Claim (Count I), ADA Title III Claim (Count II) and Breach of Contract Claims (Counts VI and XII), Plaintiff's claim for punitive damages on these claims should be stricken as a matter of law.

Moreover, under Florida Statutes Section 768.72(2), "a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. "No claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." *Id.*

Here, Plaintiff cannot meet his burden of establishing that RUSM engaged in intentional misconduct or gross negligence, nor has Plaintiff made any effort to do so. Accordingly, Plaintiff's claim for punitive damages should be stricken in its entirety.

### CONCLUSION

WHEREFORE, defendant Ross School of Medicine, School of Veterinary Medicine Limited respectfully requests that this Court enter an Order: (i) granting its motion for summary judgment in all respects; (ii) dismissing all of Plaintiffs' causes of action and entering final judgment in RUSM's favor; and (iii) granting RUSM such other and further relief as the Court deems just and proper.

17

Dated: January 4, 2019

Respectfully submitted,

*/s/Donnie M. King*
MICHAEL C. MARSH
Florida Bar Number: 0072796
Email: michael.marsh@akerman.com
Secondary: sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number: 0025509
Email: ryan.roman@akerman.com
Secondary: dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

*Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited*

18

47429652;1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com

_s/Donnie M. King_
Donnie M. King

19



Page 1

1           UNITED STATES DISTRICT COURT

2       FOR THE SOUTHERN DISTRICT OF FLORIDA

3

4   OLUWAMUYIWA AWODIYA,

5           Plaintiff

6   vs.                         CASE NO.
                                0:18-cv-60482-KMM

7   ROSS UNIVERSITY SCHOOL OF

    MEDICINE, SCHOOL OF

8   VETERINARY MEDICINE LIMITED,

9           Defendant.

10

    ```````````````````````````

11

12

13       VIDEO-CONFERENCED DEPOSITION OF

14           MATTHEW STEWART-FULTON

15

16           NOVEMBER 5, 2018

17              1:06 P.M.

18

19       ROSS UNIVERSITY SCOOL OF MEDICINE

20           KNOXVILLE, TENNESSEE

21

22

23

24       Deborah West, LCR-314 (TN), CLR

25

**Page 30**

1 documentation from that student's record with the
2 counseling center.
3     Q   How do you personally know that?
4     A   Because that is what the counseling
5 center advised me when I took on this role.
6     Q   Can that process occur before the
7 student actually comes to you and submits another
8 request for academic accommodations?
9     A   I don't understand what you mean by
10 another request in relation to the information
11 release.
12     Q   If the student first requests that
13 the counseling center send the documentation -- let
14 me rephrase.
15     Can the student have the
16 documentation sent over to the accommodations
17 coordinator before the student goes to the
18 accommodations coordinator to ask for a request?
19     A   Yes, they can.
20     Q   Okay. Were you contacted on behalf
21 of plaintiffs by the counseling center at any
22 point?
23     A   Not to my recollection.
24     Q   Would you remember if you were?
25     A   It's possible. But I don't remember

**Page 31**

1 all the contacts that I have had from the
2 counseling center.
3     Q   So is it correct that you can
4 neither confirm nor deny whether you received
5 communication from the counseling center on behalf
6 of plaintiff?
7     A   I do not have in my records any
8 documentation from the counseling center regarding
9 the plaintiff.
10     Q   What about phone calls?
11     A   I don't recall if I had any phone
12 calls with the counseling center about the
13 plaintiff.
14     Q   Is faculty at RUSM required to
15 comply with Title III of the Americans with
16 Disabilities Act?
17     A   Are you referring to the ADA?
18     Q   Yes.
19     A   No.
20     Q   Are they required to comply with
21 Section 504 of the Rehabilitation Act?
22     MR. ROMAN: I will object to this
23    and the last question to the extent it
24    calls for a legal conclusion. If the
25    witness can answer, he may do so.

**Page 32**

1     THE WITNESS: In reference to when
2    you were enrolled and the campus was
3    located on Dominica, we were not required
4    to comply with the ADA. Although in the
5    interest of supporting our students, we
6    abided by the spirit of the ADA and
7    Section 504 of the Rehabilitation Act to
8    provide appropriate accommodations within
9    the process that was defined in the
10    student handbook.
11 BY MR. AWODIYA:
12     Q   So just to clarify, there is no
13 policy that requires faculty to comply with those
14 laws you just stated?
15     A   That's my recollection based on
16 what's in the student handbook.
17     Q   So you, yourself, are not required
18 to comply with those laws in Dominica?
19     A   That is my understanding.
20     Q   Where did you get your knowledge
21 about what is required from Title III of the
22 Americans with Disabilities Act?
23     A   From review of the Americans with
24 Disabilities Act and Section 504 of the
25 Rehabilitation Act. From consultation with the

**Page 33**

1 hiring manager who brought me into this position.
2 And consultation with, at the time, the DeVry legal
3 office.
4     Q   But they did not tell you that you
5 were required to comply with those laws?
6     MR. ROMAN: I will object, for the
7    record, to the extent it calls for any
8    communications you had with DeVry's legal
9    counsel that would be covered by
10    attorney-client privilege and I would
11    instruct you not to answer.
12     To the extent you have spoken with
13    any of the other folks you described or
14    anyone else, you may answer the question.
15     THE WITNESS: The answer, I think,
16    ultimately goes back to the legal office,
17    so I will not answer any further on that.
18 BY MR. AWODIYA:
19     Q   Has anyone that is not in the legal
20 office of Ross University tell you that you -- let
21 me rephrase.
22     Is it correct to say that you were
23 never told that you had to comply with those laws?
24     A   That conversation goes back to the
25 conversation with the legal office.

9 (Pages 30 - 33)

Page 34

```
1      Q    No communication from the lawyers.
2  Let's limit the scope of this question to anyone
3  that is not a lawyer.
4      A    All right.  Please ask the question.
5      Q    Is it correct to say that no one
6  from Ross University, excluding lawyers, has told
7  you that you need to comply with the Americans with
8  Disability Act and Section 504?
9      A    That's correct.
10     Q    So if a student believes a violation
11 occurs, how would they go about enforcing it if you
12 are not required to follow those laws?
13     A    A violation of the legislation we
14 are discussing, the ADA and Section 504?
15     Q    Yes.
16     A    I don't know.  If there is an issue
17 like that I usually refer that up to my manager.
18     Q    Who is your manager?
19     A    Dr. Hayse.
20     Q    Is there any policy with faculty
21 about how to handle direct requests to them?
22     A    Direct requests for?
23     Q    Academic accommodations?
24     A    They are guided to contact me.
25     Q    Is there a policy?
```

Page 35

```
1      A    Not that I can recall.
2      Q    So how would other faculty know
3  that?
4      A    Other faculty know who I am and know
5  what the role of my office is.
6      Q    How would they know that?
7      A    It has been communicated previously
8  in faculty meetings.
9      Q    How often did you hold faculty
10 meetings?
11     A    Faculty meetings are usually held
12 once a month for the first three months of each
13 semester.
14     Q    In every meeting you tell them that
15 they need to send students to get accommodations
16 from you?
17     A    No.
18     Q    Are faculty meetings required to
19 attend?
20     A    No.
21     MR. AWODIYA:  I think that's it.  I
22 can't remember -- I had a question and I
23 didn't write it down and I don't remember
24 it right now.  But I appreciate your time
25 and I thank you very much.
```

Page 36

```
1      I think Mr. Ryan may have some
2  questions for you.
3      MR. ROMAN:  That's right.  We could
4  take a short break, and before we take a
5  break we will label this as exhibit --
6  let's call it Fulton 1.  This is the
7  document, the PDF that you sent me.
8      It actually has all of the exhibits
9  together.  I don't think we used all of
10 them but it will at least cover what we
11 used.
12     MR. AWODIYA:  Okay.  That's fine,
13 because they are Bates labeled, I
14 believe.
15     MR. ROMAN:  We will go off the
16 record for just a minute.
17     (Thereupon, the respective
18     document was marked as Exhibit
19     Number 1.)
20     (Break taken)
21         EXAMINATION
22 BY MR. ROMAN:
23     Q    We're back on the record.  Mr.
24 Stewart-Fulton my name is Ryan Roman and I am one
25 of the attorneys for Ross University school of
```

Page 37

```
1  medicine.  I just have a few questions for you.
2      Prior to today's deposition, do you
3  recall having met Mr. Awodiya
4      A    I do not.
5      Q    If you had met with Mr. Awodiya and
6  he had made a request for an accommodation, what
7  would you have said to him?
8      A    I would have, depending on the
9  circumstances at the time, what the request was
10 about, generally speaking I would talk about the
11 application process and offer to either provide an
12 application package in the moment or email one.
13     Q    This package is what you described
14 earlier as the packet of information that's
15 provided in response to a verbal request for
16 accommodations?
17     A    Correct.
18     Q    I am going to show you a document
19 that we will mark as Fulton 2.  And for the record
20 and for Mr. Awodiya, this is the PDF I sent you
21 that is Bates number RUSM 179 to 182.
22     (Thereupon, the respective
23     document was marked as Exhibit
24     Number 2.)
25
```

10 (Pages 34 - 37)

Page 1

1           UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF FLORIDA

3

4    OLUWAMUYIWA AWODIYA,

5            Plaintiff

6    vs.                              CASE NO.
                                      0:18-cv-60482-KMM

7    ROSS UNIVERSITY SCHOOL OF

     MEDICINE, SCHOOL OF

8    VETERINARY MEDICINE LIMITED,

9            Defendant.

10

     ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` ` `

11

12

13           VIDEO-CONFERENCED DEPOSITION OF

14                    BRYAN HAYSE

15

16               NOVEMBER 5, 2018

17                  3:07 P.M.

18

19        ROSS UNIVERSITY SCOOL OF MEDICINE

20             KNOXVILLE, TENNESSEE

21

22

23

24        Deborah West, LCR-314 (TN), CLR

25

| Page 14 | Page 16 |
|---|---|
| 1 required to comply, I mean does Ross require their | 1 Do you remember why you sent that |
| 2 employees to comply, not if they're legally | 2 email to Mr. Cuffy? |
| 3 required to comply. I am asking if Ross, the | 3 A No, unfortunately I do not remember. |
| 4 entity, requires their employees to comply with the | 4 Q Do you remember if you and Mr. Cuffy |
| 5 American with Disability Act. | 5 followed up after this email? |
| 6 A I am not sure I understand the | 6 A I do not remember. |
| 7 question. | 7 Q Would you have only sent that email |
| 8 Q It was a little long. Let me make | 8 at the request of the student? |
| 9 it shorter. | 9 A No. |
| 10 A Yeah. | 10 Q Is there any possible reason why you |
| 11 Q Does Ross University itself require | 11 would send an email to Mr. Cuffy regarding a |
| 12 its employees and faculties to comply with Title | 12 student? |
| 13 III of the American with Disability Act in | 13 A Typically if I reach out to |
| 14 Dominica? | 14 counseling or Mr. Cuffy, in this case, it would be |
| 15 A Not to my knowledge. | 15 if I referred a student to counseling, would be one |
| 16 Q Is that also correct for Section 504 | 16 reason, or if counseling had asked me to see |
| 17 of the Rehabilitation Act? | 17 somebody or had, I guess, opened the door to a |
| 18 A That is correct. | 18 meeting with a student beforehand. |
| 19 Q Okay. I am not going to keep you | 19 So that would be two examples of why |
| 20 long, because there's not much -- it's just I want | 20 I would have reached back out, either to say I have |
| 21 to go to the counseling documents just to see if we | 21 seen the student at your direction or to say I have |
| 22 can jog your memory a little bit about our | 22 met with the student you have asked me to speak |
| 23 interaction. | 23 with. |
| 24 Counsel, can you hand Dr. Hayse both | 24 Q I don't know if Ross has one of the |
| 25 the counseling documents, the one labeled RUSM | 25 documents, but I think they can fact check. In one |

| Page 15 | Page 17 |
|---|---|
| 1 000141 and 144? | 1 of the counseling documents, Dr. Sharma states that |
| 2 MR. ROMAN: Yes. We can use the | 2 plaintiff wanted to see you because of his grade |
| 3 same composite exhibit called Fulton 1 | 3 for our encounter in December of 2015. |
| 4 which has those two pages as the first | 4 Does that jog your memory? |
| 5 two pages of the exhibit. | 5 A It does not. |
| 6 BY MR. AWODIYA: | 6 Q Do you have any reasons specific to |
| 7 Q Okay. Dr. Hayse, do you see in this | 7 grades and academic situations as to why you would |
| 8 document where it says, "Client returned to office | 8 send an email to the counseling center? |
| 9 after talking to Dr. Hayse"? | 9 A I do not have any specific criteria |
| 10 A I do. | 10 for that, no. |
| 11 Q "And student affairs regarding his | 11 Q Would you be able to speak to |
| 12 academic situation"? | 12 Mr. Cuffy about a student without a release of |
| 13 A I do. | 13 information form? |
| 14 Q Do you remember what the academic | 14 A I would. I could speak to him. He |
| 15 situation was? | 15 might not be able to speak to me. |
| 16 A Unfortunately, I don't. | 16 Q So having a discussion about a |
| 17 Q Do you know why plaintiff would have | 17 student, a release of information agreement would |
| 18 been disappointed after he left your office? | 18 need to be signed? |
| 19 A I do not. | 19 A No. From my side, a student is |
| 20 Q Did plaintiff tell you that he was | 20 protected under FERPA on my side going by that. So |
| 21 having some type of attention problem? | 21 if I were to discuss a student that I had a meeting |
| 22 A I don't recall. | 22 with a counsel or anybody else with a need-to-know |
| 23 Q Same document. It says that | 23 basis, that I could do. |
| 24 Mr. Cuffy received an email from you requesting | 24 However, within counseling there is |
| 25 that you talk at some point about the plaintiff. | 25 much stricter guidelines that counselors go by. So |

5 (Pages 14 - 17)

Page 30

1 Stewart-Fulton or review the policy within the
2 handbook, or get the student's name and reach out
3 to them directly.
4     Q   Is there a policy telling faculty to
5 do that?
6     A   I don't know for sure.
7     Q   So how would faculty know that that
8 is what they are supposed to do?
9     A   I would say it is not something that
10 they -- that specific thing is not -- let me back
11 up a second.
12        So I would say that as well as many
13 other pieces of their job fall within -- our
14 faculty gets asked a lot of questions in a lot of
15 different areas. And I would say our faculty are
16 very well trained when being asked a question,
17 especially when it has to do with students to
18 consult the office of student affairs.
19        Because this is one of many, many
20 questions a student might ask that is outside of
21 their area of expertise. So I would say the vast
22 majority will reach out to us to help answer that
23 question. But the faculty member, quite frankly,
24 might answer I don't know the answer to that or I
25 don't know how to proceed with that as well.

Page 31

1     Q   But there is no clear guidance as to
2 what they should do?
3     A   I am not sure. I would have to
4 refer to the faculty handbook.
5     Q   So you think a policy of that effect
6 would be in the faculty handbook?
7     A   I am not sure.
8     Q   Let's assume it is not, because
9 everyone I have deposed said there is no
10 information regarding academic accommodations in
11 the faculty handbook.
12        So let's continue that presumption.
13 If there's no policy or guidance to that effect in
14 the faculty handbook, how would all faculty know
15 specifically to request for accommodation to send
16 the student to Mr. Matthew Stewart-Fulton?
17        MR. ROMAN: I am going to object to
18     the question because I don't believe that
19     was the testimony from Stewart-Fulton
20     earlier today.
21        So I will object on that basis. If
22     you can answer, if you understand the
23     question, you can answer.
24        THE WITNESS: Yeah, you know --
25

Page 32

1 BY MR. AWODIYA:
2     Q   Let me rephrase. How would a
3 faculty member know where to tell the students --
4 let me rephrase.
5        How would a faculty member know how
6 to handle such a request if there is no policy in
7 the faculty handbook about handling that request?
8     A   So the policies stated in the
9 student handbook of what a student needs to do, and
10 that's what students are held accountable to is the
11 student handbook, so I would say that most -- a lot
12 of things that might be in the student handbook
13 aren't necessarily referred to in the faculty
14 handbook.
15        So I think that students as adult
16 learners, you know, are responsible for knowing
17 that information. Like I said, most faculty have
18 been working with them for a number of years.
19        I think or I know because of
20 trainings I have been a part of, teach them to come
21 to student affairs with questions or colleagues, et
22 cetera, chairs, if they are asked a question or
23 referring the student to the student handbook.
24     Q   Or they could just simply deny the
25 request, right?

Page 33

1     A   They wouldn't have the authority to
2 deny the request.
3     Q   Well, they wouldn't know what to do
4 with it, so they would simply say I can't help you.
5 That is a possibility, right?
6     A   I would say any faculty that deals
7 with academic accommodations would know the
8 process. Not all faculty would be in a situation
9 where they would be able to grant or deny any type
10 of academic accommodation.
11     Q   But that is still an assumption. Is
12 there any policy anywhere, any rules, any guidance,
13 anything that Ross can go and get and produce
14 showing that Ross faculty should handle a request
15 directly to them in a certain way?
16     A   I am not aware.
17     Q   You said a student must make a
18 request in writing. The student handbook, when I
19 was enrolled, had yet to mention a request packet.
20 When I was enrolled, did the writing have to have
21 any specific structure?
22     A   I do not recall.
23     Q   You can't interpret that from the
24 student handbook that's in front of you?
25     A   So from the handbook it says, "To

9 (Pages 30 - 33)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-cv-60482-KMM

OLUWAMUYIWA AWODIYA,

     Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF MEDICINE,

     Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff Oluwamuyiwa Awodiya's ("Plaintiff") Motion for Partial Summary Judgment ("Pl.'s Mot.") (ECF No. 102) and Defendant Ross University School of Medicine's ("Defendant" or "RUSM") Motion for Summary Judgment ("Def.'s Mot.") (ECF No. 120). [1] The motions are now ripe for review.

## I.    BACKGROUND[2]

*Pro se* Plaintiff is a former medical student at RUSM, a private medical school in Dominica. Pl.'s 56.1 ¶¶ 1, 9. Plaintiff applied to RUSM in 2013. Def.'s 56.1 ¶ 4. On its website, RUSM stated that "[i]t is the policy and practice of [RUSM] to comply with the Americans with Disabilities Act ("ADA") as applicable and practical in Dominica." *Id.* In December, 2015, after Plaintiff failed his fifth semester at RUSM, Plaintiff utilized RUSM's

---

[1] Each party filed their respective responses and replies: ("Def.'s Resp.") (ECF No. 107); ("Pl.'s Reply") (ECF No. 114); ("Pl.'s Resp.) (ECF No. 137) (Def.'s Reply") (ECF No 142).

[2] The facts are taken from Plaintiff's Statement of Undisputed Facts ("Pl.'s 56.1") (ECF No. 101), Defendant's Response in Opposition ("Def.'s Resp. 56.1") (ECF No. 107–1); Plaintiff's Reply ("Pl.'s Reply 56.1") (ECF No. 115); Defendant's Statement of Undisputed Facts (Def.'s 56.1) (ECF No. 119), Plaintiff's Response in Opposition (Pl.'s Resp. 56.1) (ECF No. 139); Defendants' Reply ("Def.'s Reply 56.1") (ECF No. 143) and a review of the corresponding record citations and submitted exhibits.

counseling services, and signed a Release of Information Agreement ("ROI"), which allowed the RUSM counseling center ("Counseling Center") to send his records to the RUSM Administration. Pl.'s 56.1 ¶ 15–16; Def.'s Resp. 56.1 ¶ 15–16. After Plaintiff executed the ROI, the Counseling Center provided information to the RUSM Administration to allow Plaintiff to leave campus early for the semester. Def.'s. 56.1 ¶ 16. In January 2016, Plaintiff returned to campus and provided the Counseling Center with an assessment by a doctor in the United States diagnosing him with Attention-Deficit/Hyperactivity Disorder ("ADHD"). Pl.'s 56.1 ¶ 26. Plaintiff also informed Dr. Sharma in the Counseling Center that he was running out of time on his exams, and Dr. Sharma prescribed him Ritalin. *Id.* ¶ 22–23.

RUSM requires its students to take the National Board of Medical Examiners' ("NBME") Comprehensive Basic Science Exam ("COMP Exam" or "CBSE") at the end of their fifth semester. Def.'s 56.1 ¶ 36. RUSM publishes an Academic Catalog, which includes information regarding the minimum passing score for the NBME COMP Exam. *Id.* The Academic Catalog states "RUSM reserves the right to add, modify or delete, without notice, any course offering or information contained in this catalog." *Id.* In 2013 when Plaintiff enrolled at RUSM, the minimal passing score for the COMP Exam was a 66. Def.'s 56.1 ¶ 37.

In September 2015, an email was sent to all students advising them that the minimum passing score on the COMP Exam would be 68 as of mid-November 2015. Def.'s 56.1 ¶ 38. In May 2016, RUSM re-issued Volume 7 of the Academic Catalog. Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Awodiya Response Decl.") (ECF No. 138) Ex. RJ–11. The issue date of 2015–2016 Academic Catalog was September 15, 2015. *Id.*

2

Plaintiff took the COMP Exam five times. Def.'s 56.1 ¶ 39. On Plaintiff's first attempt in April 2016, Plaintiff failed with a score of 58. *Id.* On Plaintiff's second attempt in July 2016, Plaintiff failed with a score of 64. *Id.* ¶ 40. On Plaintiff's third attempt in August 2016, Plaintiff scored a 67,[3] and in October 2016, Plaintiff failed the COMP Exam with a score of 61. *Id.* ¶¶ 41–42. RUSM dismissed Plaintiff when he failed the COMP Exam in October 2016. *Id.* ¶ 43. Plaintiff appealed his dismissal and was readmitted to RUSM in December 2016. *Id.* ¶ 44. Plaintiff then took the COMP Exam for a fifth time and received a failing score of 60. *Id.* ¶ 46. Plaintiff was again dismissed from RUSM. *Id.* ¶ 47. Plaintiff again appealed the dismissal. *Id.* ¶ 48. In response, Plaintiff submitted a personal statement, wherein he informed the RUSM that he was diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017. *Id.* ¶ 49. The dismissal was upheld on appeal to the Dean. *Id.* ¶ 50; Pl.'s 56.1.

In the Third Amended Complaint ("TAC") (ECF No. 47) Plaintiff alleges ten counts against Defendant for failure to accommodate (Counts I–IV); violation of the Florida Administrative Code (Count V); breach of contract and breach of the covenant of good faith and fair dealing (Counts VI and VII); fraudulent inducement (Count VIII); negligent misrepresentation (Count IX); and breach of fiduciary duty (Count X).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56. A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "For factual issues to be considered genuine, they must have a

---

[3] It is disputed whether the passing score on the COMP Exam was a 66 or 68 in August 2016.

3

real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Credibility determinations and the weighing of the evidence are jury functions, not those of a judge at the summary judgment stage. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

*Pro se* Plaintiff moves for summary judgment on his claims of RUSM's failure to accommodate (Counts I through IV), fraudulent misrepresentation (Count VIII), negligent misrepresentation (Count IX) and breach of fiduciary duty (Count X).

#### i.   Failure to Accommodate

Plaintiff moves for summary judgment on his failure to accommodate claims (Counts I through IV), arguing that Defendant knew of his OCD and ADHD and failed to reasonably

4

accommodate his mental impairment by allowing him extra time on examinations. In response, Defendant argues that Plaintiff (1) was not disabled as defined by statute, (2) cannot establish that he was otherwise qualified to perform the essential requirements to graduate, and (3) cannot establish that he made an actionable request for an accommodation. [4]

To succeed on a failure to accommodate claim, including both a Title III ADA claim and a claim under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that he: (1) has a disability; (2) is an otherwise qualified individual; and (3) was discriminated against because of his disability by failing to receive an accommodation. *See Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (prima facie case of discrimination under Section 504 of the Rehabilitation Act); *see also Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 912 (11th Cir. 2013) (prima facie case of discrimination under the ADA). In addition, to prevail in his ADA claim, Plaintiff must further show that his disability is one that is recognized under the statute and that the impairment restricts important life activities in comparison to most people. *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1229 (S.D. Fla. 2010).

First, it is undisputed that Plaintiff was diagnosed with ADHD in December 2015 and was diagnosed with OCD in April 2017. Pl.'s 56.1 ¶¶ 10–11; Pl.'s Reply 56.1 ¶ 75. Defendant

---

[4] Plaintiff alleges several claims regarding RUSM's alleged lack of accommodation: a violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Count I); violation of the ADA (Count II), and violation of 34 C.F.R. § 104.4, *et seq* (Counts III and IV); which implement the ADA. However, in Plaintiff's motion for summary judgment, he moves generally for this Court to grant summary judgment on his "failure to accommodate" claims. Based on Plaintiff's arguments, the allegations, and the relevant rules and statutes, it is evident that Plaintiff is referring to Counts I through IV as the "failure to accommodate" claims. "[P]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be construed liberally." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). Accordingly, the Court construes Plaintiff's "failure to accommodate" arguments as arguments pertaining to Counts I through IV.

5

argues that these disabilities do not substantially limit Plaintiff's ability to concentrate, which is a "major life activity." Def.'s Resp. at 8. Whether a plaintiff is substantially limited in a major life activity is a question of fact for the jury. *Dwyer v. Ethan Allen Retail, Inc*, 528 F. Supp. 2d 1297, 1302 (S.D. Fla. 2007), *aff'd,* 325 F. App'x 755 (11th Cir. 2009). Accordingly, Plaintiff's motion for summary judgment as to the failure to accommodate claims (Counts I–IV) is DENIED.

<p style="text-align:center">ii.    Fraudulent Inducement and Negligent Misrepresentation</p>

Plaintiff moves for summary judgment on his claims of fraudulent inducement (Count VIII)[5] and negligent misrepresentation (Count IX), arguing that RUSM falsely advertised to prospective students that they complied with the ADA, which he relied on to his detriment. In response, RUSM argues that it did not make a misstatement when it stated on its website that it has a policy and practice to comply with the ADA, and Plaintiff cannot establish that he justifiably relied on that statement.

Under Florida law, to prevail on a claim for fraudulent inducement, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce plaintiff to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.,* 903 So.2d 251, 255 (Fla. 3d DCA 2005). Similarly, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove that (1) the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the

---

[5] In the TAC, Plaintiff alleges a claim for fraudulent inducement, but refers to this claim in his motion for summary judgment as a claim for fraudulent misrepresentation. The Court construes Plaintiff's motion to be one for summary judgment on a fraudulent inducement claim.

defendant was negligent in making the statement because he should have known that the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.*, 883 So.2d 826, 832 (Fla. Dist. Ct. App. 2004).

As discussed *infra* Section III.B.iv, there is a dispute of fact as to whether Defendant made a misstatement. There is also a dispute of fact as to whether Plaintiff relied on the statement. In support of his reliance on this statement, Plaintiff provides his own declaration stating that "[t]he ADA–Statement about RUSM's ADA compliance was one of the most important factors in [his] decision to leave the U.S. to become a student at RUSM in Dominica." Declaration of Oluwamuyiwa Awodiya ¶ 14 ("Awodiya Decl.") (ECF No. 102–1). Defendant points to the fact that, (1) Plaintiff was not aware of his own disability until December 2015 or January 2016–over a year and a half after he began his first semester at RUSM; and (2) Plaintiff did not even know what the ADA encompassed prior to this litigation. *See* Pl.'s 56.1 ¶¶ 9–10; Deposition of Oluwamuyiwa Awodiya ("Awodiya Dep.") at 148:13–17. The fact that Plaintiff did not have a disability or know exactly what the ADA covers goes to the weight and credibility of Plaintiff's statement. Credibility determinations and the weighing of the evidence are jury functions, not those of a judge at the summary judgment stage. *Strickland*, 692 F.3d at 1154. Viewing the facts in light most favorable to Defendant, Plaintiff's motion for summary as to Counts VIII and IX is DENIED.

iii.    Breach of Fiduciary Duty

Plaintiff moves for summary judgment on his breach of fiduciary duty claim (Count X), arguing that the Counseling Center had a duty to communicate with the RUSM Administration on Plaintiff's behalf regarding a request for an accommodation, and the Counseling Center failed

7

to do so. In response, Defendant argues that no fiduciary relationship exists as a matter of law between Plaintiff, as a student, and RUSM, as a university; and even if a fiduciary relationship did exist, there is a dispute of fact as to whether Plaintiff asked the Counseling Center to communicate with the RUSM Administration about an accommodation on his behalf.

Plaintiff provided no evidence to support his breach of fiduciary duty claim alleged against RUSM. First, in the TAC Plaintiff alleges a breach of fiduciary duty against RUSM, not against the Counseling Center. A college or university does not owe a fiduciary duty to its students solely based upon their status as students, *Morrison v. Univ. of Miami*, No. 1:15-CV-23856, 2016 WL 3129490, at *7 (S.D. Fla. Jan. 20, 2016).

Second, to the extent Plaintiff alleges a fiduciary relationship between himself and the Counseling Center, Plaintiff fails to provide sufficient facts that RUSM as an institution owed him any fiduciary duty because of that relationship. The fiduciary duty owed by a counselor is typically a duty of confidentiality, not a duty to disclose information. *See Gracey v. Eaker*, 837 So. 2d 348, 354 (Fla. 2002). It is undisputed that Plaintiff signed a ROI giving the Counseling Center permission to disclose certain confidential information without breaching its fiduciary duty to Plaintiff. *See* ROI (Pl.'s Mot Ex. SJ-07). However, Plaintiff does not provide, and the Court has not found, any case law to support the argument that the ROI created an affirmative duty on the Counseling Center to disclose all information related to a potential accommodation to the RUSM Administration. Accordingly, Plaintiff's motion for summary judgment as to Count X is DENIED.

## B.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all ten counts of the TAC.

i.  Failure to Accommodate

8

Counts I through IV allege failure to accommodate claims. In Count I, Plaintiff alleges failure to accommodate in violation of Section 504 of the Rehabilitation Act, in Count II Plaintiff alleges failure to accommodate in violation of the ADA, and in Counts III and IV Plaintiff alleges nearly identical claims of violation of the Code of Federal Regulations ("C.F.R.").

### 1.      *ADA and Rehabilitation Act*

Defendant moves for summary judgment on Counts I and II, arguing that Plaintiff did not make an actionable request for an accommodation as required under the ADA and the Rehabilitation Act and Plaintiff cannot establish that he is "otherwise qualified" to perform the essential graduation requirements.

Under the Rehabilitation Act and the ADA, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (internal citations omitted). The demand must be specific enough so that the defendant had "enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [person] to make appropriate inquiries about the possible need for an accommodation." *Id.* The Eleventh Circuit has not determined the exact form that a request must take. *See Barron v. Sch. Bd. of Hillsborough Cty.*, 3 F.Supp.3d 1323, 1330. Thus, there is no rule that a "specific demand" must be one that follows the written policy or procedures in place.[6]

---

[6]   The case Defendant cites for the proposition that Plaintiff is required to follow the formal procedures is inapposite. First, it is not binding on this Court. Second, while the Court there found that the plaintiff did not follow the instructions that she "admittedly had received on two occasions," they also found that the plaintiff made a verbal request more than a month after the written policy's deadline which at that point was "too little too late." *Varad v. Barshak*, 261 F. Supp. 2d 47, 48 (D. Mass. 2003). The court did not discuss whether the verbal request would have been sufficient had it been before the deadline.

9

There is a dispute of fact as to whether Plaintiff made a verbal request for an accommodation of extended testing time in January 2016.[7] Plaintiff testified that he met with Mr. Stewart–Fulton in the Accommodations Office and requested extended testing time. Awodiya Dep. At 1061–19. Mr. Stewart–Fulton, however, does not even recall meeting with Plaintiff, let alone receiving a request for an accommodation. Stewart–Fulton Dep. 8:20–22.

Because there is a question of fact as to an essential element of a failure to accommodate claim, and viewed in the light most favorable to Plaintiff, summary judgment as to Counts I and II is DENIED.

### 2. *Failure to Accommodate under the C.F.R.*

Defendant argues that summary judgment should be granted as to Counts III and IV because (1) they are duplicative of Counts I and II; and (2) there is no private right of action under the C.F.R. "The purpose of [Section 104 of the CFR] is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of

---

[7] Plaintiff also argues that he made a verbal request for an accommodation to Dr. Sharma in the Counseling Center in December 2015, before Plaintiff was formally diagnosed with ADHD. Further, Plaintiff has not cited any authority to suggest that Dr. Sharma, in his position as a counselor, had a duty to ensure he was provided with an accommodation. The ROI does not support this contention. The ROI states that Plaintiff "authorize[s] the RUSM Counseling Center to: Discuss otherwise confidential treatment pertaining to [Plaintiff's] treatment" for the purpose of "provid[ing] information relevant to academic accommodations and/or medical leave of absence." ROI (Ex. SJ-07) (ECF No. 102). This does not authorize the Counseling Center to *request* an accommodation on Plaintiff's behalf, it merely allows the Counseling Center to provide information when needed for academic accommodations, presumably otherwise requested by Plaintiff. Plaintiff also testified that he requested an accommodation from the Associate Dean for Medical Science Student Affairs, Dr. Hayse in December, 2015. Awodiya Dep. 75:8–20. Dr. Hayse, on the other hand, testified that Plaintiff did not request accommodations or extended testing time during this meeting. Deposition of Bryan Hayse. ("Hayse Dep") (ECF No. 102-22) at 7:25–8:2; 8:21–24. However, even if Plaintiff did request an accommodation at this time, it was before Plaintiff was formally diagnosed with ADHD, and Plaintiff has not provided any support for the notion that a suspicion of "attention concentration problems" was enough to demonstrate to Dr. Hayse that Plaintiff had a disability which required an accommodation.

handicap in any program or activity receiving Federal financial assistance." 34 C.F.R. § 104.1. There is no private right of action to enforce a statute's implementing regulation unless Congress has clearly indicated, expressly or impliedly, to the contrary. *American Association of People with Disabilities v. Harris*, 605 F.3d 1124, 1133 (11th Cir. 2010), *opinion vacated upon rehearing on other grounds by American Association of People with Disabilities v. Harris*, 647 F.3d 1093 (11th Cir. 2011). Here, the C.F.R. interprets and defines the scope of the ADA and Rehabilitation Act but does not provide any sort of private right of action that is already present in the statute. *See Mason v. City of Huntsville, Ala.*, No. 10-CV-02794, 2012 WL 4815518, at *13 (N.D. Ala. Oct. 10, 2012). The Court has not found, and Plaintiff does not cite, any authority indicating that Congress intended 34 C.F.R. § 104 to create a private cause of action. *See Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 869 (D. Wyo. 1998) (dismissing a claim under 34 C.F.R § 104 because there is no private cause of action). Accordingly, Defendant's motion for summary judgment as to Counts III and IV is GRANTED.

    ii.  Violation of Florida Administrative Code

    Defendant moves for summary judgment on Count V, which alleges violations of Florida Administrative Code Section 6E–2.004(5)(c)(4) or, in the alternative, Florida Statute Section 760.08. Defendant contends that there is no private right of action under Section 6E–2.004(5)(c)(4) and Plaintiff failed to exhaust all administrative remedies as required by Section 760.08. Plaintiff did not dispute this.

    Section 6E–2.0061 provides that the penalty for a violation of this section is denial, probation, or revocation of the license or discipline by the Commission for Independent Education. *See* Fl. Admin. Code § 6E–2.0061(1)–(4) (2006). The statute does not set forth a private right of action. A federal court is "reluctant to read a private right of action into a state

11

statute where the state court has not done so, and the plain language of statute does not establish the private right of action." *Sailboat Pointe Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 08-61129-CIV, 2009 WL 248373, at \*4 (S.D. Fla. Feb. 1, 2009). Thus, the Court will not read a private right of action here.

Alternatively, Plaintiff brings a claim for a violation of the Florida Civil Rights Act ("FCRA") Section 760.08. Fla. Stat. Ann. § 760.08 (2018). Section 760.08 provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of . . . handicap." *Id.* However, Section 760.07 states "[i]f the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy." *Id.* § 760.07. Section 760.11 provides an administrative remedy to "any person aggrieved by a violation of ss. 760.01–760.10," allowing them to "file a complaint with the commission within 365 days of the alleged violation." *Id.* § 760.11. Prior to filing suit for alleged violations of the FCRA, a plaintiff must first exhaust his administrative remedies. *Gillis v. Sports Auth., Inc.*, 123 F. Supp. 2d 611, 615 (S.D. Fla. 2000). Here, it is undisputed that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Accordingly, Defendant's motion for summary judgment as to Count V is GRANTED.

          iii.     <u>Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing</u>

As a threshold matter, Plaintiff's breach of contract claim (Count VI) was divided into six sub–counts, which will be discussed herein. Defendant moves for summary judgment on all six sub–counts, arguing that the allegations relate to purported violations of the Student Handbook, and Plaintiff cannot show that RUSM acted arbitrarily and capriciously in enforcing its

regulations. Defendant also moves for summary judgment on the breach of covenant of good faith and fair dealing claim (Count VII), arguing that because Plaintiff cannot show any breach of contract with RUSM, this count necessarily fails as well.

Under Florida law, the legal relationship between a private university and a student is "solely contractual in character." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.'" *Id.* These terms may be derived from university publications such as the student handbook and catalog. *Id.* "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.* "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985).

Further, "whether a student is qualified to be a physician is an academic judgment that requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008). "[I]mplicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Id.* at 342–43. "As long as the actions of the University have a rational basis, founded on reason and fact, and are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006). Decisions by a university are generally accorded great deference. *Id.*

13

### *1. Sub-Counts I through III*

Defendant moves for summary judgment as to sub-counts I through III, arguing summary judgment should be granted in Defendant's favor because there is no evidence that RUSM's failure to provide Plaintiff with a reasonable accommodation was arbitrary or capricious. In sub-count I, Plaintiff alleges that Defendant breached its express and implied contract in the Student Handbook and Academic Catalog by denying Plaintiff reasonable accommodations. In sub-count II, Plaintiff alleges breach of contract for Defendant's alleged denial of the right to a productive learning environment free from discrimination. TAC ¶ 95. The Student Handbook provides that "[r]equests for accommodation . . . should be submitted in writing to the Accommodations Coordinator for Foundations of Medicine" and that "[t]o qualify for an accommodation, a student must identify him/herself to the Accommodation Coordinator . . . or the Director of Office of Consultation and Support Services . . . declare the disability or suspected disability in writing, and request accommodation." RUSM Student Handbook (ECF 119–20) at 46. The Academic Catalog also requires students to "declare the disability or suspected disability in writing" to request an accommodation. Academic Catalog (ECF No. 119–22) at 49. It is undisputed that Plaintiff did not submit a written request for an accommodation. Def.'s 56.1 ¶ 34.[8] Because Plaintiff did not request an accommodation as required by the Student Handbook and Academic Catalog, Defendant did not breach the contract

---

[8] Plaintiff attempts to dispute this fact by stating that the Student Handbook requirement that the requests for accommodation be submitted in writing are "not material" because "Plaintiff did not read the student handbook in its entirety" and "could not recall ever reading the 'accommodations' section of the student handbook." Pl.'s Reply. 56.1 ¶ 27. While he now argues that the language in the Student Handbook is immaterial, Plaintiff's breach of contract claim is brought under the "implied contract . . . in connection with the rights explicitly guaranteed to [Plaintiff] by RUSM pursuant to the RUSM Student Handbook." TAC ¶ 94.

on the grounds alleged in sub–count I and II. Thus, Defendant's motion for summary judgment on sub–counts I and II is GRANTED.

In sub-count III, Plaintiff alleges a breach of contract claim due to Defendant's alleged refusal to process Plaintiff's request for accommodation on the United States Medical Licensing Examination ("USMLE"). It is undisputed that the Academic Catalog states "[i]f a student with a disability requires an accommodation for any phase of the USMLE testing, it is the student's responsibility to seek that accommodation directly from the NBME and/or the Federation of State Medical Boards (FSMB) in compliance with their policies" because "disability accommodations for these examinations are determined solely by the policies or processes of the NBME or FSMB." Academic Catalog at 50. It is undisputed that Plaintiff did not make such a request and Plaintiff has provided no reason why this policy is arbitrary and capricious, in violation of a constitution or statute, or for fraudulent purpose. Accordingly, Defendant's motion for summary judgment is GRANTED as to sub-count III.

### 2. Sub-Counts IV and V

In sub-count IV, Plaintiff alleges that Defendant breached its contract with Plaintiff by making Plaintiff sit for the CBSE within three consecutive attempts, because this requirement did not exist in the Student Handbook when he enrolled in 2014. TAC ¶ 95. Defendant argues that summary judgment is warranted on this sub–count because Defendant had the right to change RUSM's academic degree requirements and such changes were not arbitrary or capricious. Def.'s Mot. at 12. "[I]mplicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Jallali*, 992 So. 2d at 342–43. Plaintiff does dispute that this change was not arbitrary or capricious, and as such waives any argument otherwise. *See Hamilton v. Southland*

15

*Christian School, Inc.*, 680 F.3d 1316 1319, (11th Cir. 2012) ("The failure to make arguments and cite authorities in support of an issue waives it."). Accordingly, summary judgment as to sub–count IV is granted in favor of Defendant.

In sub–count V, Plaintiff alleges that Defendant breached its contract with Plaintiff when it dismissed Plaintiff after he obtained a score of 67 on the NMBE CBSE, because the latest version of the Academic Catalog stated the passing score was a 66. Defendant moves for summary judgment on this claim, arguing that RUSM had the right to change its academic degree requirements if such changes were not arbitrary or capricious, and Plaintiff has not established that the higher passing score requirement was arbitrary or capricious. Universities have a right to change the university's academic degree requirements if such changes are not arbitrary or capricious. *Jallali*, 992 So. 2d at 342–43

Here, Plaintiff was on notice via an email sent by the administration on or after September 11, 2015 that informed students the passing score on the CBSE would be increased from 66 to 68 effective November 2015. The email stated the passing score would be increased because,

> [a]ccording to the NBME, a CBSE score of 66 predicts a Step 1 score of approximately 190. A CBSE score of 68 predicts a Step 1 approximate score of 195. Since the current passing score on Step 1 is 192, RUSM believes it prudent to increase the RUSM passing score on the CBSE to 68. Beginning November 15, 2015, the RUSM passing score on the CBSE will increase from 66 to 68.

*See* Declaration of Sandra Herrin ("Herrin Decl.") Ex. 22 (ECF No. 119–23).

Plaintiff argues that this email was superseded by the Academic Catalog, Volume 7 issued on September 15, 2015 because the catalog was re–distributed in May 2016 with a 2016 copyright date. However, the Academic Catalog distributed in May 2016 is the same volume number as the "September 2015" catalog and has the same "Date of Issue"–September 15, 2015.

16

Awodiya Response Decl., Exs. RJ–10; RJ–11. Except for the copyright date, Plaintiff has shown no material difference between the catalogs distributed in September 2015 and May 2016 to indicate that this is an updated catalog or was meant to supersede the September 2015 version, as opposed to just republishing the same version already available. Regardless, the Academic Catalog specifically states that "RUSM reserves the right to add, modify or delete, *without notice*, any course offering or information contained in this catalog." *Id.* (emphasis added). Thus, even if the May 2016 catalog did supersede the September 2015 catalog, Defendant reserved the right to change the score requirement without notice.

Thus, it is undisputed that RUSM gave Plaintiff notice that the NBME passing score was changing effective November 2015. *See* Herrin Decl., Ex. 22. It is also undisputed that RUSM provided an explanation for that updated passing score in its email and Plaintiff has not shown that the change was arbitrary or capricious. Accordingly, Defendant's motion for summary judgment as to sub–count V is GRANTED.

### 3. Sub-Count VI

In sub-count VI, Plaintiff alleges that Defendant breached its contract with Plaintiff when RUSM's Dean failed to respond to Plaintiff within fifteen (15) calendar days of receipt of his appeal. Plaintiff submitted his appeal on June 13, 2017 and Dean Owen upheld Plaintiff's dismissal and informed Plaintiff by letter on June 29, 2017–sixteen (16) calendar days after receipt of his appeal. Def.'s 56.1 Ex. 27. Defendant argues that Plaintiff cannot establish that this failure to meet the 15–day deadline was arbitrary or capricious or otherwise affected Plaintiff in any material way. Def.'s Motion at 13. Plaintiff did not reply as to why summary judgment should not be granted on this sub-count, and as such, waives his argument opposing summary judgment. *See Hamilton,* 680 F.3d at 1319. Further, the Court can find no reason why a one–

17

day delay in responding to an appeal is arbitrary or capricious as a matter of law. Accordingly, Defendant's motion for summary judgment as to sub-count VI is GRANTED.

Because Defendant's motion for summary judgment is GRANTED as to all six sub–counts alleged in Count VI, summary judgment is GRANTED as to Count VI.

### 4. Breach of Good Faith and Fair Dealing

Under Florida law there can be no breach of the implied covenant of good faith and fair dealing absent a breach of contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). Because there is no breach a contract, Count VII of Plaintiff's TAC fails and summary judgment is granted in favor of Defendant.

### iv. Fraudulent Inducement and Negligent Misrepresentation

Defendant moves for summary judgment on Plaintiff's claim for fraudulent inducement and negligent misrepresentation, arguing that Defendant stands behind the veracity of the statement on its website that "[i]t is the policy and practice of [RUSM] to comply with the [ADA] as applicable and practicable in Dominica" and that Plaintiff has provided no evidence that he justifiably relied on Defendant's statement.

As previously stated, under Florida law, to prevail on a claim for fraudulent inducement, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce plaintiff to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Grp. Ltd.,* 903 So.2d at 255. Similarly, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove that (1) the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the defendant was negligent in making the statement because he should

18

have known that the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon*, 883 So.2d at 832.

First, while Defendant "stands by" the statement on its website, Defendant provides no evidence why the statement is true.  Additionally, while RUSM outlines in the Student Handbook how a student must apply for an accommodation, Defendant does not provide the Court with any information as to how this policy complies with the ADA or whether it has a separate policy in place to comply with the ADA.[9]  Dr. Hayse testified that, to his knowledge, RUSM did not require its employees and facilities to comply with the ADA in Dominica. Hayse Dep. 14:11-18.  Plaintiff argues that Defendant did not, in fact, have a policy and practice to comply with the ADA. Pl.'s Resp. at 18.  At minimum, there is a dispute as to whether RUSM in fact had a policy or practice of complying with the ADA.

Second, Defendant argues that there is no evidence that RUSM "intended to induce [Plaintiff] to rely on the statement" because RUSM did not know that Plaintiff suffered from an impairment or disability at the time he was admitted. Def.'s Mot. at 4.  Fraud in the inducement exists when "the maker [of a false statement] intends that another rely upon the statement." *Spitz v. Prudential-Bache Sec., Inc.*, 549 So. 2d 777, 778 (Fla. Dist. Ct. App. 1989).  Here, the statement was made on RUSM's admission requirements page of its website. Def.'s 56.1 ¶4. RUSM.  Viewing the facts in the light most favorable to the Plaintiff, a reasonable juror could find that the admission requirements page of a medical school's website is targeted towards prospective students, such as Plaintiff, to induce them to apply for admission at the school.

---

[9] As discussed, *supra*, the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made," (*Hialeah Hous. Auth.*, 418 F. App'x at 876) but the Eleventh Circuit has not determined how that request must be made. *Barron*, 3 F.Supp.3d at 1330.

19

Third, as discussed *supra* Section III.A.ii, there is a dispute of fact as to whether Plaintiff relied on this statement.

Accordingly, Defendant's motion for summary judgment as to Counts VIII and IX is DENIED.

<div align="center">v.     <u>Breach of Fiduciary Duty</u></div>

Defendant moves for summary judgment on Plaintiff's breach of fiduciary duty claim (Count X), arguing that there was no fiduciary relationship between Plaintiff and Defendant. As discussed *supra* Section III.A.iii, a college or university does not owe a fiduciary duty to its students solely based upon their status as students. *Morrison*, 2016 WL 3129490, at *7. Accordingly, Defendant's motion for summary judgment as to Count X is GRANTED.

<div align="center">vi.     <u>Plaintiff's Claims for Damages</u></div>

Defendant argues that certain of Plaintiff's claims for damages should be stricken. First, Defendant argues that Plaintiff's lost earning capacity damages should be stricken because Plaintiff is not an expert and has not provided any evidence supporting such damages. [10] As a lay witness, Plaintiff may testify to his own personal knowledge on a topic. *See* Fed. R. Evid. 701(a). Although Plaintiff may not be able to sustain a lost earnings capacity award should he prevail at trial, as set forth in the Court's forthcoming order on the motions in limine and Daubert motions, Defendant's motion to exclude Plaintiff's testimony on damages is DENIED WITHOUT PREJUDICE. *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2019 WL 186864, at *3–4 (S.D. Fla. Jan. 14, 2019) (denying without prejudice defendant's motion to exclude plaintiff's speculative lost earning capacity damages).

---

[10] This part of Defendant's motion is duplicative of Defendant's Daubert Motion (ECF No. 117). The Court will provide further analysis on this issue in its subsequently-filed order on Defendant's Daubert Motion.

<div align="center">20</div>

Second, Defendant argues that monetary damages are not an available remedy for an ADA Title III claim. Monetary damages are only available under Title III of the ADA if the action is initiated by the Attorney General *See Jairath v. Dyer*, 154 F.3d 1280, 1283 n. 7 (11th Cir. 1998) Thus, Defendant's motion to strike monetary damages on Count II is GRANTED.

Finally, Defendant argues that Plaintiff's claims for punitive damages should be stricken.[11] Punitive damages are not available under the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (punitive damages are not available under Section 504 of the Rehabilitation Act). As such, Plaintiff's claim for punitive damages on Count I is stricken. Defendant also moves to strike Plaintiff's punitive damages for fraudulent inducement and negligent misrepresentation. Pursuant to Section 768.72(2) of the Florida Statutes, "a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of misconduct or gross negligence." Fla. Stat. § 768.72(1). Under Florida law, punitive damages are permitted for claims of fraudulent inducement. *See XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 6679427, at *5 (S.D. Fla. Nov. 14, 2016) (Florida courts allow an award of punitive damages for fraudulent inducement). Additionally, a claim of negligent misrepresentation that resembles fraud in the inducement may support a claim for punitive damages. *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1025 (S.D. Fla. 1992). As such, Plaintiff's claim for punitive damages on Counts VII and IX may proceed.

Accordingly, Defendant's motion to strike Plaintiff's claims of punitive damages is GRANTED IN PART and DENIED IN PART.

---

[11] As discussed above, Defendant's motion for summary judgment is granted as to Plaintiff's breach of contract claims. Accordingly, the Court need not discuss Defendant's request to strike punitive damages on these claims.

IV.     **CONCLUSION**

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED Plaintiff's Motion for Summary Judgment (ECF No. 102) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 120) is GRANTED IN PART AND DENIED IN PART as follows:

A.     Summary judgment on Counts III, IV, V, VI, VII, and X is GRANTED; and

B.     Summary judgment on Counts I, II, VIII and IX is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this____day of March, 2019.

_____
K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c:     All counsel of record



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

In the matter of: Civil Case Transfers to
**District Judge Roy K. Altman**

| | | |
|---|---|---|
| Federal Trade Commission v. Dluca et al | (Plaintiff v. Defendant), Case No: | 0:18-cv-60379-KMM |
| Awodiya v. Ross Univ. School of Med. | (Plaintiff v. Defendant), Case No: | 0:18-cv-60482-KMM |
| Katz v. Festival Fun Parks, LLC | (Plaintiff v. Defendant), Case No: | 0:18-cv-62420-KMM |
| Morgan v. The GEO Group, Inc. | (Plaintiff v. Defendant), Case No: | 0:18-cv-62774-KMM |
| Cohan v. First Coast Energy, LLP | (Plaintiff v. Defendant), Case No: | 0:18-cv-62777-KMM |
| Fuller v. Hibiscus Beach Kids, LLC | (Plaintiff v. Defendant), Case No: | 0:19-cv-60674-KMM |
| Cruz v. Green et al | (Plaintiff v. Defendant), Case No: | 0:18-cv-60995-KMM |
| Spinelli v. Tower Resorts Realty, Inc. | (Plaintiff v. Defendant), Case No: | 0:18-cv-62835-KMM |
| Expansion Church Corp. v. Lloyd's London | (Plaintiff v. Defendant), Case No: | 0:18-cv-62914-KMM |
| Raskin v. Southeast Frozen Foods Company | (Plaintiff v. Defendant), Case No: | 0:18-cv-62990-KMM |
| Pearl Holding Group, Inc. v. Doxo, Inc. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60442-KMM |
| Cox v. American Security Insurance Co. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60520-KMM |
| Griffith v. USAA Casualty Insurance Co. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60525-KMM |
| Corrodus et al v. GeoVera Specialty | (Plaintiff v. Defendant), Case No: | 0:19-cv-60620-KMM |
| W1 Optimum Partners, LLC v. White Rock FZE | (Plaintiff v. Defendant), Case No: | 0:19-cv-60777-KMM |
| Chambers v. Lehman Property Management, Inc. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60844-KMM |
| Dillworth v. Beach Haus Bal Harbour, LLC | (Plaintiff v. Defendant), Case No: | 0:19-cv-60453-KMM |
| Gottlieb v. Berryhill | (Plaintiff v. Defendant), Case No: | 0:19-cv-60681-KMM |
| Lemus et al v. Certified Health Care | (Plaintiff v. Defendant), Case No: | 0:19-cv-60488-KMM |
| Henry v. Commissioner of Social Security | (Plaintiff v. Defendant), Case No: | 0:19-cv-60349-KMM |
| Rodriguez v. 111 SW 2nd Ave, LLC | (Plaintiff v. Defendant), Case No: | 0:19-cv-60061-KMM |
| Kennedy v. Karishma Riya Inc. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60764-KMM |
| Cohan v. Countyline Auto Center, Inc. | (Plaintiff v. Defendant), Case No: | 0:19-cv-60277-KMM |

## ORDER OF REASSIGNMENT

The above-styled cases have been selected by the Clerk of Court utilizing a random

selection procedure to insure the fair and impartial reassignment of cases from the undersigned

District Judge to the newly appointed **District Judge Roy K. Altman.**

Prior to executing this Order, the undersigned has reviewed the files and has ruled upon all pending ripe motions that have not been referred to the paired Magistrate Judge, and which are fully briefed, in accordance with the policy established by the Judges of the Southern District of Florida (See Internal Operating Procedures, Section 2.05.03 -2.05.04). It is hereby

ORDERED that the above-styled actions are hereby REASSIGNED to the calendar of the Honorable Roy K. Altman as of *April 11th, 2019* for all further proceedings. It is further

ORDERED that all pleadings hereafter filed shall bear the assigned case number followed by the initials **RKA** in lieu of the present initials.

DONE and ORDERED at *Miami*, Florida, in chambers this *11th* day of *April*, 2019.

_____
United States District Judge

c: All counsel of record/pro se parties



<div align="center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-60482-CIV-ALTMAN/Hunt**

</div>

OLUWAMUYIWA AWODIYA,

      Plaintiff,

v.

**ROSS UNIVERSITY SCHOOL**
**OF MEDICINE,**

      Defendant.

_____/

<div align="center">

**ORDER**

</div>

**THIS CAUSE** came before the Court upon a *sua sponte* review of the record. On April 11, 2019, the Defendant, Ross University School of Medicine ("Defendant" or "RUSM"), filed a Motion for Leave to File a Partial Motion for Summary Judgment [ECF No. 175]. On April 17, 2019, the Plaintiff, Oluwamuyiwa Awodiya, filed a Motion for Reconsideration and Alteration [ECF No. 178] of the Court's March 2, 2019 Omnibus Order [ECF No. 154]. The Court has carefully reviewed the parties' written submissions, their responses and replies, and the applicable law.

**I.    The Defendant's Motion for Leave to File a Partial Motion for Summary Judgment**

Pursuant to the original Scheduling Order [ECF No. 37] in this case, "[a]ny and all pretrial motions, including motions for summary judgment . . . must be filed no later than eighty (80) days prior to the trial date." *Id.* Trial in this matter was initially set for March of 2019. *Id.* The Defendant filed its Motion for Summary Judgment [ECF No. 120] on January 4, 2019. The Defendant now seeks to file what amounts to a second motion for summary judgment long after the deadline

<div align="center">

1

</div>

imposed in the Court's original Scheduling Order has passed. While Rule 56 of the Federal Rules of Civil Procedure does not prohibit the filing of multiple motions for summary judgment,[1] the Defendant must show good cause under Rule 16(b)(4) for deviating from the Court's initial scheduling deadlines.

In its Motion for Leave, the Defendant contends that the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") do not apply in Dominica, which is where the relevant acts in this case occurred. While that may be true, this argument was available to the Defendant when it filed its initial Motion for Summary Judgment in January of 2019. The record reveals that no new discovery has taken place since then, nor has the Defendant introduced any new evidence that might warrant construing the Motion for Leave as one for reconsideration. In any event, because the Defendant has failed to show good cause, its Motion For Leave [ECF No. 175] is **DENIED**.

## II.    The Plaintiff's Motion for Reconsideration and Alteration[2] of the Omnibus Order

To succeed on a failure to accommodate claim, including both an ADA and an RA claim, a plaintiff must demonstrate that he: 1) has a disability; 2) is an otherwise qualified individual; and 3) was discriminated against because of his disability. *See Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007).

In his Motion for Reconsideration, the Plaintiff argues that the Court misapplied the standard that applies at summary judgment for determining whether he "has a disability." Pl. Mot.

---

[1] On the other hand, S. D. FLA. L. R. 7.1(c)(2) prohibits multiple successive motions for partial summary judgment absent prior permission of the Court.

[2] The Plaintiff may not proceed via Rule 59(e) of the Federal Rules of Civil Procedure, which provides the Court with a means to "alter or amend a [prior] judgment" because more than 28 days have elapsed since the Court's entry of judgment on March 2, 2019 [ECF No. 154]. *See* FED. R. CIV. P. 59(e). As such, the Court will treat the Plaintiff's Motion as one for reconsideration under Rule 60(b).

Reconsideration 6. Generally speaking, there are three grounds that justify reconsideration of a Court's order on summary judgment: 1) an intervening change in controlling law; 2) the availability of new evidence or an expanded factual record; and 3) the need to correct a clear error or prevent manifest injustice. *See Woide v. Fed. Nat'l Mortg. Ass'n*, 705 F. App'x 832, 836 (11th Cir. 2017) (quoting *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383) (Fed. Cir. 2010)).

The Plaintiff contends that his medical diagnoses—attention-deficit/hyperactivity disorder and obsessive compulsive disorder—require a *per se* finding that the Plaintiff "has a disability" for purposes of both the ADA and the RA. While the amendments to the ADA the Plaintiff cites (Pl. Mot. Reconsideration 8-10) certainly lowered the threshold that plaintiffs must meet in order to establish disability, those amendments did not, as the Plaintiff claims, eliminate the requirement that plaintiffs must make an individualized showing that their alleged disability substantially limits a major life activity. *Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, Inc.*, No. 12-80040-CIV, 2013 WL 3892986, at *9 (S.D. Fla. July 26, 2013) (noting that the question of whether the plaintiff is substantially limited, even after the 2008 amendments, created a question of fact that could not be resolved at summary judgment stage). In other words, medical diagnoses, without more, do not satisfy the first prong of a failure to accommodate claim.

But, even if the Plaintiff could show that his medical diagnoses, standing alone, satisfied this first prong, he does not explain how he is entitled to summary judgment on the remaining elements of his failure to accommodate claims. In its Omnibus Order, for instance, the Court found that a disputed issue of material fact exists as to whether the Plaintiff ever made a request for an accommodation [ECF No. 154 at 10]. The Plaintiff does not even address this finding in his Motion. Accordingly, the Plaintiff's Motion [ECF No. 178] is **DENIED**.

3

## III.   Federal Rule of Civil Procedure 56(f)(3)

Although district courts have discretion under Fed. R. Civ. P. 16(b)(4) to grant parties leave

to file a second summary judgment motion, the Court finds that the more prudent course in this

case is to proceed under Fed. R. Civ. P. 56(f)(3), which reads, in relevant part:

> Rule 56. Summary Judgment
>
> *               *               *
>
> (f) Judgment Independent of the Motion. After giving notice and a reasonable time
> to respond, the court may:
>     (1) grant summary judgment for a nonmovant;
>     (2) grant the motion on grounds not raised by a party; or
>     (3) consider summary judgment on its own after identifying for the parties
>     material facts that may not be genuinely in dispute.

The Court notes that the Defendant has not yet raised the issue of whether the ADA and

the RA even apply in Dominica—a tiny foreign island in the Caribbean Sea. But the Court finds

that it does not "further the interests of justice, judicial economy, or the Court's interest in the

sound adjudication of this case to ignore important issues," such as the extraterritorial

application—or lack thereof—of the statute on which this case turns, solely because the parties

have failed to raise the issue. *See Lawrence v. Am. Ira, LLC*, No. 1:12-CV-2209-JSA, 2014 WL

11833264, at *2 (N.D. Ga. Sept. 3, 2014). The Defendant's omission of this question seems

particularly surprising in light of the Defendant's previous litigation of a nearly identical issue

before the Third Circuit Court of Appeals. *See Archut v. Ross Univ. Sch. of Veterinary Med.*, 580

F. App'x 90 (3d Cir. 2014) (finding that the ADA and RA do not apply extraterritorially).

Federal Rule of Civil Procedure 56(f) equips a federal district court with the authority to

act on its own initiative in considering whether summary judgment is appropriate.[3] The parties do

---

[3] *See Lillo ex rel. Estate of Lillo v. Bruhn*, 413 F. App'x. 161 (11th Cir. 2011) (affirming summary judgment after district court *sua sponte* raised qualified immunity issue at summary judgment); *Flood v. Young Woman's Christian Ass'n*, 398 F.3d 1261, 1267 (11th Cir. 2005) ("A district court may enter summary judgment *sua sponte* if all the parties are given adequate notice that they must

4

not dispute that the events in this case took place in Dominica. *See generally* Pl. Stat. Mat. Facts [ECF No. 101]; Def. Stat. Mat. Facts [ECF No. 119]. Moreover, the Court's review of the record suggests that there may not be a genuine dispute about whether the ADA and the RA apply extraterritorially. *See* Plaintiff's Request for Admission #30 [ECF No. 102 at 52] (asking the Defendant to "[a]dmit that it is false that the Americans with Disabilities Act is applicable to RUSM in Dominica."). And, if the ADA and the RA *do not* apply extraterritorially, it may well be that a plaintiff like Mr. Awodiya may not, in the first instance, *justifiably* rely on the Defendant's representation that RUSM complies with the ADA "as applicable and practical in Dominica." If this is so, the Defendant may be entitled to summary judgment, not just on the Plaintiff's ADA and RA claims, but on his fraudulent inducement and negligent misrepresentation claims as well.

Accordingly, the Court hereby gives **NOTICE** to both parties of its intention *sua sponte* to consider the applicability of the ADA and the RA in Dominica.

Furthermore, the Court hereby **ORDERS** as follows:

1. By **May 29, 2019**, the parties shall, in no more than **10 pages**, brief the question of the extraterritorial application of the ADA and the RA, as well as the impact, if any, that the answer to this question might have on the Plaintiff's remaining claims, which include: Count I (failure to accommodate under the ADA); Count II (failure to accommodate under the RA); Count VIII (fraudulent inducement under Florida law);

---

present all of their evidence."); *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) ("District courts unquestionably possess the power to trigger summary judgment on their own initiative." (citations omitted); *Franks v. Indian Rivers Mental Health Ctr.*, No.7:08-cv-1035-SLB, 2014 WL 514130, at *7 (N.D. Ala. Feb. 7, 2014) ("Pursuant to Rule 56(f), the court may grant a *sua sponte* motion for summary judgment 'after identifying for the parties material facts that may not be genuinely in dispute,' and giving the opponent at least ten days notice and time to respond.") (citing *Burton v. Cty. of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999)); *accord Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) (district courts "unquestionably possess the power" to enter summary judgment *sua sponte*, even on the eve of trial and after the dispositive motions deadline has passed).

5

and Count IX (negligent misrepresentation under Florida law). The parties shall include citations to the existing evidentiary record as needed. The Court will then determine whether summary judgment is appropriate as to the Plaintiff's remaining claims.

2.     The Defendant's Motion for Leave to File Partial Motion for Summary Judgement [ECF No. 175] is **DENIED**.

3.     The Plaintiff's Motion for Reconsideration and Alteration of Omnibus Order [ECF No. 178] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 14th day of May 2019.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Oluwamuyiwa Awodiya, *pro se*

6



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 0:18-CV-60482-KMM

OLUWAMUYIWA AWODIYA,

     Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE,

     Defendant.

## RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Defendant ROSS UNIVERSITY SCHOOL OF MEDICINE, by and through its attorneys

Seyfarth Shaw LLP, hereby submits its Response To Plaintiff's First Set of Requests for

Admission.

### REQUEST FOR ADMISSION NO. 1:

Admit that the formal legal name of the organization that operates RUSM is Ross
University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited.

### RESPONSE TO NO. 1:

Denied. The entity that operates Ross University School of Medicine (RUSM) is Ross

University School of Medicine, School of Veterinary Medicine Limited, a Dominican entity

different from Ross University School of Medicine, School of Veterinary Medicine (St. Kitts)

Limited, which is a Kittitian entity that operates Ross University School of Veterinary Medicine.

### REQUEST FOR ADMISSION NO. 2:

Admit that RUSM receives United States federal financial assistance through federal
student aid.

46502448v.1

**RESPONSE TO NO. 15:**

Defendant objects to this request because it appears to assume facts not in evidence,

including that Plaintiff was disabled, required accommodations to his disability(ies) during tests,

and requested such accommodations from RUSM. Subject to and without waiving that objection,

Defendant notes that it permitted Plaintiff to take the NBME CBSE a fifth time and denies

Request No. 15.

**REQUEST FOR ADMISSION NO. 16:**

Admit that RUSM did not provide Plaintiff with extended testing time for the NBME
CBSE.

**RESPONSE TO NO. 16:**

Admitted.

**REQUEST FOR ADMISSION NO. 17:**

Admit that extended testing time was an available accommodation for the NBME CBSE
exam. (See attached Exhibit 10 at page 2).

**RESPONSE TO NO. 17:**

Defendant admits that extended testing time for the NBME CBSE is an accommodation

sometimes provided to disabled students taking the exam and that Page 2 of Exhibit 10

references this possible accommodation. To the extent that Request No. 17 requests an admission

of anything else, it is objectionable because it is ambiguous, and Defendant is therefore unable to

admit or deny the assertion.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the decision to provide students with test accommodations for the NBME
CBSE is made by RUSM. (See attached Exhibit 10 at page 2).

**RESPONSE TO NO. 18:**

Defendant admits that RUSM, not the NBME, is the entity that determines whether its

students require accommodations to a disability when taking the NBME CBSE and that this is

6

referenced at Page 2 of Exhibit 10. To the extent that Request No. 18 requests an admission of

anything else, it is objectionable because it is ambiguous, and Defendant is therefore unable to

admit or deny the assertion.

## REQUEST FOR ADMISSION NO. 19:

Admit that Plaintiff was dismissed for failing to pass the NBME CBSE.

## RESPONSE TO NO. 19:

Admitted.

## REQUEST FOR ADMISSION NO. 20:

Admit that 99% of 2014-2015 RUSM graduates who passed their USMLE exams on the
first attempt attained a residency. (See Institutional Outcomes at
https://medical.rossu.edu/student-consumer-information.html ).

## RESPONSE TO NO. 20:

Defendant admits that the referenced website states as follows as of June 3, 2018: "99%

of 2014-2015 RUSM graduates who passed their USMLE exams on the first attempt attained a

residency by April 2016." To the extent that Request No. 20 requests an admission of anything

else, it is objectionable because it is ambiguous, and Defendant is therefore unable to admit or

deny the assertion.

## REQUEST FOR ADMISSION NO. 21:

Admit that the RUSM USMLE Step 1 first-time pass rate in 2016 was 93%. (See General
FAQ'S at https://medical.rossu.edu/about/faq.html).

## RESPONSE TO NO. 21:

Defendant denies that the referenced website contains the statement in Request No. 21, as

of June 3, 2018. To the extent that Request No. 21 requests an admission of anything else, it is

objectionable because it is ambiguous, and Defendant is therefore unable to admit or deny the

assertion.

7

**REQUEST FOR ADMISSION NO. 25:**

Admit that Ross University School of Medicine and Ross University School of Veterinary Medicine are registered as the same corporation.

**RESPONSE TO NO. 25:**

Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that RUSM asserts that "Title III of the Americans with Disabilities Act of 1990 ("ADA") does not extend to conduct occurring outside the United States, and it follows that it does not extend to the Defendant's activities in Dominica." (See Dkt. No. 30).

**RESPONSE TO NO. 26:**

Admitted.

**REQUEST FOR ADMISSION NO. 27:**

Admit that Ross University School of Medicine, School of Veterinary Medicine (St. Kitts) Limited with Adtalem Global Health, Inc., asserted that Title III of the ADA is applicable only in the United States and its territories. (See Galligan v. Adtalem Global Education, Inc. et al). (See also Archut v. Ross Univ. Sch. of Veterinary Med., CIVIL ACTION NO. 10-1681 (MLC) (D.N.J. Nov. 19, 2012)).

**RESPONSE TO NO. 27:**

Admitted.

**REQUEST FOR ADMISSION NO. 28:**

Admit that RUSM made the following statement on the admission requirements page of the RUSM website "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica."

**RESPONSE TO NO. 28:**

Admitted.

**REQUEST FOR ADMISSION NO. 29:**

Admit that it is false that RUSM will comply with the Americans with Disabilities Act in Dominica.

46502448v.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 0:18-CV-60482-KMM

OLUWAMUYIWA AWODIYA,

       Plaintiff,

   v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE,

       Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION

Defendant, ROSS UNIVERSITY SCHOOL OF MEDICINE, by and through its attorneys, Seyfarth Shaw LLP, and in response to Plaintiff's Second Set of Requests for Admission, states as follows:

### Preliminary Objection

Defendant objects to Plaintiff's Instructions 1-4, 14, and 18 to the extent they seek to impose more or different requirements than the applicable Federal Rule(s) of Civil Procedure and Local Rule(s) of the Court. Defendant will answer in accordance with those rules and not Plaintiff's Instructions.

Defendant objects to Plaintiff's Definitions 10 and 15 because they create ambiguity and may seek to impose requirements on Defendant that are inconsistent with applicable rules. Defendant will interpret the terms "you" and "your" to refer to Defendant and the term "its," when referring to Defendant, as Defendant alone.



**RESPONSE:**

Admitted.

**REQUEST NO. 53:**

Admit that Plaintiff did not have any accommodations for his ADHD on his first NBME CBSE attempt.

**RESPONSE:**

Admitted.

**REQUEST NO. 54:**

Admit that Plaintiff did not have any accommodations for his ADHD on his second NBME CBSE attempt.

**RESPONSE:**

Admitted.

**REQUEST NO. 55:**

Admit that Plaintiff did not have any accommodations for his ADHD on his third NBME CBSE attempt.

**RESPONSE:**

Admitted.

**REQUEST NO. 56:**

Admit that Plaintiff did not have any accommodations for his ADHD on his fourth NBME CBSE attempt.

**RESPONSE:**

Admitted.

**REQUEST NO. 57:**

Admit that Plaintiff did not have any accommodations for his ADHD on his fifth NBME CBSE attempt.

46670927v.1

**RESPONSE:**

    Admitted.

**REQUEST NO. 58:**

    Admit that extended testing time for the NBME CBSE is a reasonable accommodation for some disabled students that need extended testing time.

**RESPONSE:**

    Admitted.

**REQUEST NO. 59:**

    Admit that RUSM intended for prospective students to rely on the following statement posted on the Admissions Requirements page of the RUSM website: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica. No qualified individual with a disability will be denied access to or participation in services, programs, or activities of Ross University School of Medicine."

**RESPONSE:**

    Defendant admits that its current website contains this statement, but

Defendant is without knowledge or information sufficient to admit or deny that the

website contained the same statement when Plaintiff applied to RUSM.

**REQUEST NO. 60:**

    Admit that in 2015, the first-attempt residency attainment rate for RUSM students was 88%. (See *Institutional Outcomes* at https://medical.rossu.edu/student-consumer-information.html).

**RESPONSE:**

    Admitted.

**REQUEST NO. 61:**

    Admit that 91% of RUSM 2014-2015 graduates attained residency placements by July 1, 2016 after single or multiple USMLE exam attempts or residency placement attempts. (See *Institutional Outcomes* at https://medical.rossu.edu/student-consumer-information.html)[.]

**RESPONSE:**

Admitted

**REQUEST NO. 71:**

Admit that Plaintiff's second, third, fourth, and fifth NBME attempts were in Prometric Test Centers in the Unites States of America.

**RESPONSE:**

Defendant objects to the term "NBME" as ambiguous. To the extent Plaintiff

means the NBME CBSE, Defendant admits that Plaintiff's second through fifth

attempts occurred at Prometric Test Centers in the United States of America.

**REQUEST NO. 72:**

Admit that RUSM granted Plaintiff's fifth NBME CBSE attempt based on an academic judgment that involved his "academic history."

**RESPONSE:**

Admitted.

**REQUEST NO. 73:**

Admit that it is obvious that a student with an "attention problem" could have problems paying attention during test examinations.

**RESPONSE:**

Denied.

**REQUEST NO. 74:**

Admit that it is obvious that a student with an "inattentive presentation" could have problems staying attentive during test examinations.

**RESPONSE:**

Denied.

 **NBME**

# Administration of NBME Examinations at Prometric Test Centers

The comprehensive and clinical science web-based subject examinations and the Emergency Medicine Advanced Clinical examination may be ordered for administration at Prometric's worldwide network of 350 secure, convenient test centers. Prometric testing may be preferred for students serving on clinical rotations in a distributed hospital network or for those located at sites without web-based test delivery.

This document provides basic information on ordering, fees, and related information to request administration of an NBME subject examination to your students at Prometric Test Centers. If you have any questions, please contact us at **subjectexams@nbme.org**.

## Examinations Available at Prometric Test Centers

▶ Clinical Neurology

▶ Comprehensive Basic Science

▶ Comprehensive Clinical Science

▶ Emergency Medicine Advanced Clinical

▶ Family Medicine Modular

▶ Medicine

▶ Ob/Gyn

▶ Pediatrics

▶ Psychiatry

▶ Surgery

> *You must place your order no later than 28 days prior to the start of the testing window.*
>
> *But plan ahead—place your order as far in advance of your anticipated testing window as possible.*
>
> *Even at 28 days, there may be a risk that your students will not be able to test within the window due to Prometric seat availability.*

## Ordering

The online ordering system allows you to provide information for Prometric test administration. Testing at Prometric centers requires some more advanced planning to allow students sufficient time to schedule testing appointments.

▶ When you order a web-based exam for administration, you will select Prometric Test Centers as the testing location.

▶ *You will set a testing window of a minimum of 7 to a maximum of 14 calendar days.* This is necessary because your students may have trouble finding a seat on a single test date.

▶ The order will lock 21 days prior to the start of the testing window. You cannot make changes to your order after that.

## Populating Your Test Administration Roster

The NBME roster system, which supports the administration and scoring of its web-based exams, has two components: a master roster for maintaining the records of all students and a test administration roster specific to the test date or window. If you have not used NBME web-based exams before, you must create your master roster first.

*June 2016*

▶ An e-mail address is required for every student. You will have the option to enter the e-mail address for each record individually, or to upload a file with e-mail addresses to the master roster.

▶ You must create your test administration roster *no later than* 21 days prior to the start of the testing window.

## Scheduling a Testing Appointment

After you submit the test administration roster, the NBME will generate a scheduling permit for each student on the roster in about 2 to 3 business days. There are exceptions if the student requires test accommodations (see Arranging for Test Accommodations below).

Your students:

▶ will receive an e-mail with a link to a web page where they can print/download their scheduling permits and view policies and procedures for the testing session.

▶ will schedule their testing appointment online through Prometric's website and receive a confirmation notice from Prometric.

▶ can reschedule their testing appointments (only within the testing window) or cancel them, but if the request is made *less than 15 days prior to the scheduled appointment,* Prometric will charge a fee. Fees for rescheduling/cancellation appear on the confirmation notice.

## Arranging for Test Accommodations

It is essential that you follow the specific procedure outlined below in order for the NBME to make arrangements for your students to take an examination with test accommodations at a Prometric Test Center. Please note that the decision to provide an accommodation is still yours, as it is with locally-delivered NBME web-based examinations.

To notify the NBME about students who need test accommodations, you will:

▶ enter the number of students who need extra testing time along with the appropriate pacing (1.25x, 1.5x, or 2x) into the online order.

▶ edit the related student records on the test administration roster by setting the pacing and/or clicking in the "other accommodations" field and selecting a Prometric testing region (e.g., US, Asia).

▶ download an Excel file from this roster. It will be pre-populated with these records.

▶ send the file to the NBME as instructed.

*Students who need accommodations will not be able to schedule their testing appointments online. Their permits will provide instructions to call Prometric (based on the testing region) to schedule their testing appointments.*



NBME staff will review the file and send the information to Prometric. *Scheduling permits for these students will not be generated until this process is complete.* Depending on the nature of the accommodation, this process could take as long as 2 weeks, so please enter your order as far in advance of the testing window as possible.

Please note that Prometric test centers are secure facilities and that students are prohibited from bringing personal items into the secure testing room. If an examinee requires use of a personal item for medical reasons during the testing session, you will need to approve this as a test accommodation and enter specific information about the item you are approving on the Excel file that you send to the NBME. Note that Prometric has administrative policies about certain types of items that are not permitted for use in the regular testing room, even with your authorization, and the student may be required to test in a separate testing room. Items that require use of a separate testing room at Prometric generally include food, drink, and injectables (glucometer with fingerstick, syringes, etc).

## Exam Fees

Fees are posted on the NBME website (www.nbme.org) and are subject to change.

## Assigning Different Examination Forms to Enhance Security

As you know, the NBME has multiple forms of each exam available during an academic year. These forms have been scaled and equated so that your students' performance is directly comparable across the different forms.

When you order subject exams for local administration, form assignment is made at the order level, so all students take the same form. However, since your students will be taking these exams at Prometric test centers during a 7 to 14 day window, form assignment will be made at the examinee level. This means that your students will see different forms of an exam during the window, which minimizes the risk of sharing test content.

## Viewing Score Reports

Score reports will be posted to the NBME Services Portal within 2 to 3 days AFTER the end of the testing window.

If you have any questions, please contact us at **subjectexams@nbme.org**.

## CERTIFICATE OF SERVICE

I do hereby certify that on this 26th day of August, 2019, I have caused a true

and correct copy of the foregoing by emailing a copy to the counsel of record.

By: Oluwamuyiwa Awodiya, *pro se* litigant

1