IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA Case No. 19-12832-D
United States District Court, Southern District of Florida
Case No.: 0:18-cv-60482-RKA

OLUWAMUYIWA AWODIYA

Plaintiff/Appellant,

v.

ROSS UNIVERSITY SCHOOL OF MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED

Defendant/Appellee.

**ANSWER BRIEF OF APPELLEE ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY MEDICINE LIMITED**

MICHAEL C. MARSH
RYAN ROMAN
DONNIE M. KING
OCTAVIA M. GREEN
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

ATTORNEYS FOR APPELLEE

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 26.1-1, appellee Ross University School of Medicine, School of Veterinary Medicine Limited ("Ross University") submits this Certificate of Interested Persons and Corporate Disclosure Statement. Counsel for Ross University certifies that the following have or may have an interest in the outcome of this case:

1. Adtalem Global Education Inc.

2. Akerman LLP

3. Altman, Roy K. (Trial Judge)

4. Awodiya, Oluwamuyiwa

5. Green, Octavia M., Esq.

6. King, Donnie M., Esq.

7. Marsh, Michael C., Esq.

8. Roman, Ryan, Esq.

9. Ross University School of Medicine, School of Veterinary Medicine Limited

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, counsel for Appellee

Ross University School of Medicine, School of Veterinary Medicine Limited ("Ross

University"), a non-governmental party, states that Ross University's parent entity

is Adtalem Global Education Inc. ("Adtalem"; ticker: ATGE), which is a publicly

held corporation.  BlackRock, Inc. (ticker: BLK) is a publicly traded company and

owns 10.9% of Adtalem's stock.

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Ross University School of Medicine does not believe oral argument

will benefit the Court in this case because the law is well settled.

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................1

CORPORATE DISCLOSURE STATEMENT .......................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS .................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF THE CASE .............................................................................1

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND....................................................................3

STANDARD OF REVIEW ...................................................................................8

ARGUMENT ........................................................................................................9

I.      Mr. Awodiya's Discrimination Claims Do Not Involve a Domestic Application ............................................................................................9

        A.     The Analysis Regarding Extraterritoriality and Domestic Application9

        B.     The Focus of the ADA and the Rehab Act is on the Elimination of Discriminatory Decisions .................................................11

        C.     The Administration of the Comp Exam Is Not the Focus of the Rehab Act and the ADA ...................................................14

               1.     Mr. Awodiya relies on evidence submitted in support of an order not currently on appeal. ..................................15

               2.     Ross University's determination as to whether Mr .................16

        D.     Ross University Was Not Required to Institute a Sixth Exam Attempt ........................................................................16

        E.     Ross University's Administrations in the United States Did Not Have a Duty to Act on Plaintiff's Need for Examination Accommodation.20

II.     The District Court Correctly Concluded that Ross University was Entitled to Summary Judgment on Plaintiff's Claim for Fraud in the Inducement .................24

CONCLUSION...................................................................................................27

CERTIFICATE OF COMPLIANCE....................................................................29

CERTIFICATE OF SERVICE ...........................................................................30

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander/Davis Properties, Inc. v. Graham*,
    397 So. 2d 699 (Fla. Dist. Ct. 1981) ................................................................25

*Archut v. Ross Univ. Sch. of Veterinary Med.*,
    No. CIV. A. 10-1681 MLC, 2012 WL 5867148 (D.N.J. Nov. 19, 2019), *aff'd*,
    580 F. App'x 90 (3d Cir. 2014) ................................................................11, 12

*Bd. of Curators, Univ. of Mo. v. Horowitz*,
    435 U.S. 78 (1978) ................................................................................................20

*Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.*,
    903 So. 2d 251 (Fla. Dist. Ct. 2005) ................................................................24

*Bogle v. Orange Cnty. Bd. of Cnty. Com'rs*,
    162 F.3d 653 (11th Cir. 1998) ............................................................................16

*Boyle v. City of Pell City*,
    866 F. 3d 1280 (11th Cir. 2017) ........................................................................12

*Community Coll. v. Davis*,
    442 U.S. 397 (1979) ............................................................................................21

*Davis v, DeKalb Cnty. School Dist.*,
    233 F.3d 1367 (11th Cir. 2000) ...................................................................19, 21

*Doe v. Sch. Bd. of Broward Cnty., Fla.*,
    604 F.3d 1248 (11th Cir. 2010) ..........................................................................19

*Dudley v. Hannaford Bros. Co.*,
    333 F.3d 299 (1st Cir. 2003) ..............................................................................23

*Fed. Deposit Ins. Corp. v. 232, Inc.*,
    920 F.3d 815 (11th Cir. 1991) ............................................................................17

*Gesber v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ....................................................................................18, 19

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

*Halpern v. Wake Forest Univ. Health Sciences*,
669 F.3d 454 (4th Cir. 2012) ...............................................................21

*J.A.M. v. Nova Se. Univ., Inc.*,
646 Fed. Appx. 921 (11th Cir. 2016)..................................................20, 21, 22

*J.F.K. v. Troup Cnty. Sch. Dist.*,
678 F.3d 1254 (11th Cir. 2012) .........................................................19

*Jacobson v. City of West Palm Beach*,
Case No. 16-cv-81638-MIDDLEBROOKS, 2017 WL 6355841 (S.D. Fla. May
16, 2017) ...............................................................................21

*Liese v. Indian River Cnty. Hosp. Dist.*,
701 F.3d 334 (11th Cir. 2012) ...........................................................19

*Lykes Bros., Inc. v. U.S. Army Corps of Eng'r*,
64 F.3d 630 (11th Cir. 1995) ..............................................................8

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010).....................................................................6, 9

*In re Poff*,
344 Fed Appx. 523 (11th Cir. 2009)........................................................8

*Quantum Capital, LLC v. Banco de los Trabajadores*, No.: 1-14-cv-23193-UU,
2015 WL 12253226 (S.D. Fla. Dec. 22, 2015)..............................................26

*Regents of Univ. of Mich. v. Ewing*,
474 U.S. 214 (1985)......................................................................20

*RJR Nabisco, Inc. v. European Cmty.*,
136 S.Ct. 2090 (2016).................................................................9, 10, 13

*Steere v. George Washington Univ.*,
368 F. Supp. 2d 52 (D.D.C . 2005).......................................................22, 23

*WesternGeco LLC v. Ion Geophysical Corp.*,
138 S.Ct. 2129, 2136 (2018).............................................................9, 10

*White v. State Farm Fire and Cas. Co.*,
664 F.3d 860 (11th Cir. 2011) ...........................................................16

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## Statutes

20 U.S.C. § 1682 ................................................................18

29 U.S.C. § 794 ................................................................12

42 U.S.C. § 12101(b) .........................................................12

42 U.S.C. § 12182(b)(2)(A)(ii) ..........................................20

42 U.S.C. § 12189 .............................................................14

Title III of the American with Disabilities Act................................passim

§ 504 of the Rehabilitation Act ...........................................passim

## Rules

Federal Rule of Civil Procedure 41(a)(2) ..............................................2

Title IX .........................................................................18

## STATEMENT OF THE CASE

## I.    INTRODUCTION

The district court correctly granted summary judgment in favor of Defendant-Appellee Ross University School of Medicine, School of Veterinary Limited ("Ross University").

Plaintiff-Appellant Oluwamuyiwa Awodiya ("Mr. Awodiya") is a former medical school student who filed a complaint against Ross University alleging, in part, violations of Section 504 of the Rehabilitation Act (the "Rehab Act") and Title III of the American with Disabilities Act (the "ADA"), stemming from his purported requests for accommodations and denial of the same in Dominica. [DE 1]. The operative Third Amended Complaint (the "Complaint") was filed on July 16, 2018. [DE 47].

On March 2, 2019, the district court entered partial summary judgment in favor of Ross University and against Mr. Awodiya. [DE 154].  As a result, only four of Mr. Awodiya's claims against Ross University survived: Count I (failure to accommodate under the Rehab Act); Count II (failure to accommodate under the ADA); Count VIII (fraudulent inducement); and Count IX (negligent misrepresentation). *Id.*

On May 16, 2019, the district court *sua sponte* entered an Order requesting that the Parties brief: (1) the question of the territorial application of Title III of the

ADA and Section 504 of the Rehab Act; and (2) the impact, if any, that the answer to this question might have on Mr. Awodiya's remaining claims. [DE 191 at 4-5]. The Parties briefed these two issues and oral arguments were held on June 11, 2019. [DE 216]. During this hearing, Mr. Awodiya moved in open court to voluntarily dismiss Count IX (negligent misrepresentation) with prejudice under Federal Rule of Civil Procedure 41(a)(2), and the district court granted that motion. [DE 210 at 1].

On June 18, 2019, the district court issued an order granting summary judgment in favor of Ross University and dismissing the remaining claims. [DE 210]. In regards to Count I (failure to accommodate under the Rehab Act) and Count II (failure to accommodate under the ADA), the district court concluded that: (1) neither the ADA nor the Rehab Act apply extraterritorially; and (2) the central facts upon which Mr. Awodiya's complaint is premised occurred outside the United States. [DE 210 at 4-11]. In regards to Count VIII (fraudulent inducement), the district court concluded that the evidence in this case does not support the view that the purported statement was false at the time it was made. [DE 210 at 11-14]. Thus, summary judgment was appropriate on each of the remaining claims.

Mr. Awodiya filed his Notice of Appeal on July 18, 2019, challenging the June 18, 2019 order and the corresponding Final Judgment order entered on June 20, 2019. [DE 218].

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## II.    FACTUAL BACKGROUND

Mr. Awodiya enrolled in medical school at Ross University in 2014. [DE 101 at ¶ 9].  In December 2015, Mr. Awodiya attended counseling sessions at Ross University in Dominica. [DE 101 at ¶15].  Mr. Awodiya contends that in December 2015, Ross University allegedly became aware of a suspected attention/concentration problem.  [DE 102 at 1].  On December 9, 2015, Mr. Awodiya executed a Release of Information Agreement ("ROI") with the counseling center in Dominica. [DE 102 at 6].  Upon signing the ROI, Mr. Awodiya claims that he verbally asked his treating physicians in Dominica, Dr. Davendrand Sharma ("Dr. Sharma") and Mr. McMillian Cuffy ("Mr. Cuffy"), to tell Ross University administration that he needed extended testing time. [DE 102 at 6].

Around the same time, Mr. Awodiya also met with Ross University's Associate Dean, Dr. Bryan Hayse ("Dr. Hayse"), in Dominica.  [DE 102 at 8-9]. According to Mr. Awodiya, he asked Dr. Hayse for a testing accommodation, but his request was purportedly denied. *Id.*

By December 30, 2015, Mr. Awodiya had returned to the United States and underwent an assessment with his primary health care provider. [DE 102 at 4].  In January 2016, Mr. Awodiya returned to Ross University in Dominica and provided the assessment to the Ross University counseling center, which is located in Dominica.  [DE 47 at ¶ 11].  Mr. Awodiya was diagnosed with attention-

deficit/hyperactivity disorder ("ADHD") while visiting with the Ross University counseling center in January 2016. [DE 119-26 at 5]. Mr. Awodiya claims that he subsequently requested an accommodation from the Ross University counseling center in Dominica, but his request was allegedly denied. [DE 47 at ¶¶ 17-22].

Shortly thereafter, Mr. Awodiya claims that he met with the Accommodations Coordinator, Matthew J. Stewart-Fulton ("Mr. Stewart-Fulton"), in Dominica to request a testing accommodation, but was purportedly denied. [DE 47 at ¶¶ 17, 18].

Mr. Awodiya continued his counseling sessions in Dominica, meeting regularly with Dr. Sharma and Mr. Cuffy. [DE 102-1 at 3-5]. At all relevant times, Dr. Sharma and Mr. Cuffy were located and working in Dominica. [Brief at 5]. According to Mr. Awodiya, Dr. Sharma and Mr. Cuffy were well aware of his need for an accommodation and their respective counseling records indicated that he was "running out of time" on his exams. [DE 102 at 5].

After completing his fifth semester at Ross University, Mr. Awodiya was required to sit for the National Board of Medical Examiner's Comprehensive Basic Science Exam (the "Comp exam"). [DE 119-20 at 30]. Mr. Awodiya attempted the Comp exam five different times. [DE 119-24]. Mr. Awodiya's first attempt on the Comp exam occurred on April 22, 2016 in Dominica. [DE 119-24 at 6]. Mr. Awodiya's second through fifth attempts occurred at a third party test provider, Prometric Test Centers, in the United States. [Brief at 4]. Mr. Awodiya sat for the

Comp exam for the second time on July 2, 2016. [DE 119-24 at 5]. His third and fourth attempts on the Comp exam occurred on August 26, 2016, and October 22, 2016, respectively. [DE 119-24 at 3-4].

In October 2016, Mr. Awodiya was dismissed from Ross University for failure to pass the Comp exam within four attempts. [DE 119-2 at 15-16]. Mr. Awodiya appealed his dismissal and Ross University reinstated Mr. Awodiya in December 2016. [DE 119-2 at 17]. This reinstatement permitted Mr. Awodiya to sit for a fifth attempt on the Comp exam. [DE 119-2 at 17-18]. On March 30, 2017, Mr. Awodiya sat for the Comp Exam for a fifth time but failed again. [DE 119-2 at 18].

Ross University dismissed Mr. Awodiya on April 13, 2017 for failure to pass the Comp exam a fifth time. *Id.* Mr. Awodiya appealed this decision, which was upheld by the Student Promotions Committee. [DE 119-2 at 18, 20-21]. Mr. Awodiya then appealed his decision directly to the Dean of Ross University, Dean William F. Owen, Jr. ("Dean Owen"), disclosing for the first time that he had been diagnosed with Obsessive Compulsive Disorder ("OCD") in April 2017. [DE 119-25]. Dean Owen upheld Mr. Awodiya's dismissal from Ross University on June 29, 2017. [DE 119-28].

Subsequently, Mr. Awodiya filed this lawsuit against Ross University for failure to accommodate under the Rehab Act and the ADA. [DE 47]. Mr. Awodiya

also alleged that Ross University fraudulently induced him into attending the university by falsely representing compliance with the ADA in Dominica. [DE 47].

Before deciding to enroll at Ross University, Mr. Awodiya contends that he read the following statement posted on Ross University's website:

> It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.

[DE 102-1 at ¶ 14]. Although Mr. Awodiya was not disabled at the time of applying to the university, [DE 119-2 at 10], he contends that he relied on the statement in making his decision to attend Ross University. [DE 101 at ¶ 38].

## SUMMARY OF ARGUMENT

Notably, Mr. Awodiya does not contest the district court's finding that the Rehab Act and ADA do not apply in Dominica. After unsuccessfully arguing before the lower court that the Rehab Act and ADA are intended to apply extraterritorially, Awodiya now argues on appeal that this action involves a domestic application of the Rehab Act and ADA. The argument that this case involves a domestic application is incorrect. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), and its progeny foreclose Mr. Awodiya's argument.

The district court correctly held that the focus of the Rehab Act and the ADA is the elimination of discriminatory decision making regarding accommodations. [DE 210]. Having determined the proper focus of the Rehab Act and the ADA, the

6

district court concluded that the relevant conduct in this matter occurred in Dominica.

The gravamen of the alleged discriminatory decision making occurred in Dominica. Mr. Awodiya admits as much by asserting that he spoke to several individuals, all in Dominica, about his need for an accommodation. [DE 101 at ¶¶ 17, 24, 26]. Mr. Awodiya also attended several counseling sessions, all in Dominica, where he alleges that his counselors were made aware of his need for an accommodation. [DE 101 at ¶¶ 13, 19-23, 27]. Mr. Awodiya's ADHD diagnosis occurred in Dominica. [DE 119-26 at 5]. The purported denial of at least four different requests for an accommodation, according to Mr. Awodiya, occurred in Dominica—well before he ever sat for any examination in the United States. [DE 47 at ¶¶ 8-22]. Mr. Awodiya cannot establish that the relevant conduct occurred in the United States.

The district court also correctly dismissed Mr. Awodiya's fraudulent inducement claim. [DE 210]. Mr. Awodiya argues that the district court misconstrued his claims but it is clear that Mr. Awodiya misconstrues the district court's decision. Regardless of the theory, the elements necessary to prove a fraudulent inducement claim are the same. All four elements must be present. The district court correctly ruled that Mr. Awodiya could not prove a false statement regarding a material fact. [DE 210 at 12-14]. The alleged misstatement—"[i]t is

the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica"—is not a misstatement. The undisputed material evidence in the case does not support Mr. Awodiya's view that, at the time Ross University posted the statement on its website, Ross University specifically intended not to have a policy and practice to comply with the ADA. The Court should affirm the district court's order.

## STANDARD OF REVIEW

Generally, summary judgment is reviewed *de novo*, but a district court's factual findings are reviewed for clear error. *In re Poff*, 344 Fed Appx. 523, 525 (11th Cir. 2009); *see also Lykes Bros., Inc. v. U.S. Army Corps of Eng'r*, 64 F.3d 630, 634 (11th Cir. 1995). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be 'left with the definite and firm conviction that a mistake has been committed.'" *Id.*

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

# ARGUMENT

## I.    Mr. Awodiya's Discrimination Claims Do Not Involve a Domestic Application.

Mr. Awodiya's argument that this case involves a domestic application of the Rehab Act and the ADA must be rejected because: (1) the focus of the Rehab Act and the ADA is to eliminate acts that constitute discriminatory accommodation decisions; and (2) the accommodation decisions alleged in this case occurred in Dominica.

The district court correctly held that the gravamen of the conduct in this action occurred in Dominica—a place where the Rehab Act and the ADA are inapplicable.

### A.    The Analysis Regarding Extraterritoriality and Domestic Application.

"It is the basic premise of our legal system that in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2100 (2016). "This principal finds expression in a canon of statutory construction known as the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.* (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)). As the Supreme Court has noted, "the question [in examining whether a statute applies extraterritorially] is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought

9

of the situation before the court,' but whether Congress has affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco*, 136 S.Ct. at 2100 citing *Morrison*, 561 U.S. at 261). "When a statute gives no clear indication of an extraterritorial application, it has none." *Id.*

In *WesternGeco LLC v. Ion Geophysical Corp.*, the Supreme Court laid out a two-step framework used in determining whether a statute applies exterritorialy:

> This Court has established a two-step framework for deciding questions of extraterritoriality. The first step asks "whether the presumption against extraterritoriality has been rebutted" (citation omitted) It can be only rebutted only if the text provides a "clear indication of an extraterritorial application" (citation omitted). If the presumption against extraterritoriality has not been rebutted, the second step of our framework asks "whether the case involves a domestic application of the statute."

138 S.Ct. 2129, 2136 (2018) (citing *RJR Nabisco*, 136 S.Ct. at 2101).

The determination as to whether a case involves a domestic application of a statute is made by identifying "the statute's 'focus'" and asking whether the conduct relevant to that focus occurred in the United States. *RJR Nabisco, Inc.*, 136 S.Ct. at 2101. "The focus of a statute is "the object[] of [its] solicitude," which can include the conduct it "seeks to 'regulate,'" as well as the parties and interests it "seeks to 'protec[t]'" or vindicate. *WesternGeco*, 138 S. Ct. at 2137.

In discussing how to determine the statute's focus, the Supreme Court held:

> When determining the focus of the statute, we do not analyze the provision at issue in a vacuum. (citation omitted). If the statutory provision at issue works in tandem with other provisions, it must be

10

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

assessed in concert with those other provisions.  Otherwise, it would be impossible to accurately determine whether the application of the statute in the case is a "domestic application."  (citation omitted).  And determining how the statute has actually been applied is the whole point of the focus test.

*WesternGeco*, 138 S. Ct. at 2137.

The district court correctly concluded that this case did not involve a domestic application of the statutes.

### B.    The Focus of the ADA and the Rehab Act is on the Elimination of Discriminatory Decisions.

Despite previously conceding that the relevant conduct occurred in Dominica, [DE 192], Mr. Awodiya now contends that the focus of the statute is the unaccommodated examinations that took place in the United States.  [Brief at 15] This assertion is wrong.

In this case, the district court correctly concluded that the focus of the Rehab Act and ADA is the elimination of acts that constitute discriminatory accommodation decisions.  [DE 210].  In its analysis, the district court relied on several opinions addressing this precise issue. [DE 210 at 4].

In *Archut*, the United States District Court for the District of New Jersey engaged in an extraterritoriality analysis involving both the Rehab Act and the ADA. *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV. A. 10-1681 MLC, 2012 WL 5867148, at *11 (D.N.J. Nov. 19, 2019), *aff'd*, 580 F. App'x 90 (3d Cir. 2014).  In dismissing the plaintiff's claims, the court found that: (1) the presumption against

11

extraterritoriality was not rebutted; (2) the focus of the Rehab Act and ADA is on

acts that constitute discriminatory accommodation decisions.  *Id.*  The decision was

affirmed by the United States Court of Appeals for the Third Circuit.  *See Archut v.*

*Ross Univ. Sch. of Veterinary Med.*, 580 F. App'x 90 (3d Cir. 2014).  Analyzing the

Rehab Act, the district court in *Archut* explained:

> The portion of the statute directed at protecting disabled individuals
> ***targets discriminatory decision-making***.  29 U.S.C. § 794 (prohibiting
> schools from discriminating against disabled students by causing that
> person to be "excluded from the participation in, be denied benefits of,
> or be subjected to discrimination").  ***The focus is centered on acts that***
> ***constitute exclusionary or accommodating decisions.***    Thus, the
> location of the actor when such decisions are made is important, not the
> citizenship of the person affected by the decision.

*Archut*, 2012 WL 5867148 at *9 (emphasis added).

Claims involving the Rehab Act and ADA are analyzed together.  *See Boyle*

*v. City of Pell City*, 866 F. 3d 1280, 1288 n.5 (11th Cir. 2017).  Here, looking at the

text of the Rehab Act and ADA, the district court correctly concluded that "the

'[p]urpose' of the ADA is to ***eliminate discrimination***—that is, decisions that

discriminate—against individuals with disabilities." [DE 217 at 3-5].  "Specifically

the ADA endeavors to 'provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with disabilities.'"  *Id.* (citing 42

U.S.C. § 12101(b)).  Having found that the focus of the Rehab Act and ADA is the

elimination of discriminatory accommodation decisions, the district court then

correctly found that the gravamen of this conduct occurred in Dominica.  [DE 210].

"If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred aboard; ***but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in the U.S. territory***." *RJR Nabisco, Inc.*, 136 S.Ct. at 2101 (emphasis added).

As the district court correctly noted, Mr. Awodiya's own Statement of Undisputed Material Facts supports such a finding. Specifically, the evidence considered by the district court establishes that: (1) Ross University, which was located *in Dominica*, was the entity empowered to grant the Plaintiff extended testing time; (2) the Plaintiff authorized the Counseling Center *in Dominica* to "discuss his confidential information [with the administration]" for the purpose of determining whether an accommodation was appropriate; (3) the Plaintiff verbally asked Dr. Sharma and Mr. Cuffy, who were *in Dominica*, to tell the Ross University's administration that he needed extended testing time because of his disability; (4) Mr. Awodiya, while *in Dominica*, went in person to provide the Counseling Center with a medical assessment upon which he was relying for his request; and, most importantly, (5) Dr. Hayse, Ross University's Associate Dean of Student Affairs, who lived and worked *in Dominica*, "made the final decision [with respect to the Mr. Awodiya's request for accommodation] and oversaw the academic

accommodations process. [DE 101 at ¶¶ 16-17, 26, 32, 34] (emphasis added).  The district court correctly determined that the relevant conduct that serves as the gravamen of Mr. Awodiya's discrimination claims all occurred in Dominica.

### C.    The Administration of the Comp Exam Is Not the Focus of the Rehab Act and the ADA.

The focus of the Rehab Act and the ADA is the elimination of acts that constitute discriminatory accommodation decisions.  Mr. Awodiya challenges the district court's ruling by incorrectly asserting that the focus of the Rehab Act and the ADA is the administration of examinations.  This assertion is wrong and Mr. Awodiya provides no legal authority to support his argument.

Instead, Mr. Awodiya cites to 42 U.S.C. §12189 and case law defining this single provision of the ADA.  None of the cases cited by Mr. Awodiya discuss the focus of the Rehab Act or the ADA.  Instead, these cases define the term 'accessibility' as stated in this unrelated provision of the statute.  42 U.S.C. § 12189 states:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

Title III of the ADA expressly speaks to physical barriers.  In interpreting the above-mentioned provision, courts analyzing a request for testing accommodations have noted the ambiguity in § 12189's use of 'accessible' since an examination is

not equivalent to a physical space.  However, this issue is irrelevant to the Court's determination.

Mr. Awodiya misinterprets the district court's ruling.  Specifically, Mr. Awodiya states that "[t]he district court also erred in its legal conclusion because the unaccommodated examinations were administered at an off-campus testing center in the United States, that [Ross University] is not liable for those examinations." [Brief at 16-17].  However, the district court correctly noted that, by the time Mr. Awodiya sat down to take his examinations, the alleged discriminatory decision to deny his requested accommodation—the decision upon which Mr. Awodiya's Rehab Act and ADA claims are based—had already been made in Dominica.  [DE 210 at 10-11].  Therefore, the district court properly analyzed the domestic application of these statutes under the facts of this case.

### 1.    Mr. Awodiya relies on evidence submitted in support of an order not currently on appeal.

As a secondary argument, Mr. Awodiya asserts that this case involves a domestic application of the Rehab Act and the ADA because Ross University selects and controls the manner in which the examinations are administered at Prometric Test Centers in the United States.  [Brief at 18].  As an initial matter, Mr. Awodiya relies on evidence not presented to the district court in response to its *sua sponte* order.  Specifically, Mr. Awodiya relied on evidence submitted in support of Plaintiff's Motion for Amended and Additional Findings in the Court's Order

15

Closing Case [DE 212], which was filed by Mr. Awodiya after final judgment was entered by the district court. The district court refused to make the findings requested by that motion. Moreover, this court does not have jurisdiction to evaluate that order because Mr. Awodiya did not appeal it. *See White v. State Farm Fire and Cas. Co.*, 664 F.3d 860, 863-64 (11th Cir. 2011) ("When a notice of appeal names specific orders to be appealed, 'we must infer that the appellant did not intend to appeal other unmentioned orders or judgments.'"); *Bogle v. Orange Cnty. Bd. of Cnty. Com'rs*, 162 F.3d 653, 660 (11th Cir. 1998).

> **2.    Ross University's determination as to whether Mr. Awodiya needed an accommodation was made in Dominica before the Comp exam.**

Even if the Court considers this evidence, Mr. Awodiya's arguments are meritless. Mr. Awodiya asserts that Ross University is the entity that determines whether its students requires accommodations for a disability when taking the Comp exam. [Brief at 18]. Even so, any decision pertaining to Mr. Awodiya's need for an accommodation occurred in Dominica and long before Mr. Awodiya ever sat for an examination in the United States. According to Mr. Awodiya himself, his requests for an accommodation occurred in Dominica. [DE 101 at ¶¶ 16-17, 26, 32, 34].

> **D.    Ross University Was Not Required to Institute a Sixth Exam Attempt.**

Mr. Awodiya is challenging the district court ruling and asserts that this case involves a domestic application of the Rehab Act and the ADA because: 1) Ross

University's administrators located within the United States should have instituted a sixth examination attempt with corrective measures for testing accommodations; and 2) Ross University's administrators within the United States also had a duty to act on his need for examination accommodations. [Brief at 19-22]. As an initial matter, Mr. Awodiya did not advance either argument before the district court and this Court should not consider arguments raised for the first time on appeal. *See Fed. Deposit Ins. Corp. v. 232, Inc.*, 920 F.3d 815, 817 (11th Cir. 1991).

The arguments presented by Mr. Awodiya further support the district court's conclusion that the focus of the Rehab Act and the ADA is the elimination of acts that constitute discriminatory accommodation decisions. [DE 210].

Mr. Awodiya argues that Ross University administrators located in the United States had the ability to institute a sixth examination attempt and that Ross University failed to act when it had knowledge of Plaintiff's need for examination accommodations. [Brief at 21-22]. Mr. Awodiya argues that Dean Owen, as an official, had the authority to grant an accommodation. [Brief at 20]. It is undisputed that Mr. Awodiya was dismissed from Ross University in April 2017. [DE 119-2 at 18]. Mr. Awodiya appealed his dismissal directly to Dean Owen, disclosing for the first time his OCD diagnosis. [DE 119-25]. However, Mr. Awodiya conflates **knowledge of a disability** with **knowledge of discrimination.**

Mr. Awodiya misinterprets the concept of discriminatory intent. Mr. Awodiya relies on a theory that would impute liability onto Ross University through its official's knowledge of ongoing discriminatory actions and failure to adequately respond. However, Mr. Awodiya does not assert (here or below to the district court) that Dean Owen had actual knowledge of any prior discrimination (i.e., the purported denials of Mr. Awodiya's requests for accommodation in Dominica). Nor does Mr. Awodiya point to any record evidence showing that Dean Owen knew that Mr. Awodiya took the Comp exam without a requested accommodation. This theory of discriminatory intent is irrelevant in this Court's determination of whether the district court erred in ruling that Mr. Awodiya's discrimination claims do not involve a domestic application.

The United States Supreme Court addressed discriminatory intent in *Gesber v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). There, the Supreme Court analyzed whether a school district could be found liable under Title IX for discriminatory intent involving a teacher's sexual harassment of a student. Looking at the text and legislative history of Title IX, the Supreme Court articulated the standard for imputing liability on an entity for a Title IX violation:

> Because the express remedial scheme under Title IX is predicated upon notice to an "appropriate person" and an opportunity to rectify any violation, 20 U.S.C. § 1682, we conclude, in the absence of further direction from Congress, that the implied damages remedy should be fashioned along the same lines. An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to

take corrective action to end the discrimination.  Consequently, in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has ***actual knowledge of discrimination*** in the recipient's programs and fails adequately to respond.

*Gesber*, 524 U.S. 274, 290 (1998) (emphasis added).

The Eleventh Circuit adheres to this standard.  *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 347 (11th Cir. 2012) (analyzing discriminatory intent in the context of a Rehab Act claim). *See also J.F.K. v. Troup Cnty. Sch. Dist.*, 678 F.3d 1254 (11th Cir. 2012); *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248 (11th Cir. 2010); *Davis v, DeKalb Cnty. School Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000).

Even if Mr. Awodiya could advance this argument, such argument fails. There is no evidence that any administrators in the United States, including Dean Owen, had actual knowledge of the discriminatory conduct that purportedly occurred in Dominica.  *See J.F.K. v. Troup Cnty. Sch. Dist.*, 678 F.3d 1254, 1260 (11th Cir. 2012) (affirming summary judgment in favor of the appellee-defendant and finding that the school principal lacked ***actual notice*** of the actual harassment endured by the plaintiff.); *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010);  *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000) (emphasis added).

19

The record is devoid of any evidence that Dean Owen (or any administrator in the United States) was ever given notice of any single act, or combination of acts, of any purported request for an accommodation or failure by the institution to grant such accommodation.    Mr. Awodiya's arguments fail under his theory of discriminatory intent.

E.    **Ross University's Administrations in the United States Did Not Have a Duty to Act on Plaintiff's Need for Examination Accommodation.**

Mr. Awodiya's second argument also fails.  Mr. Awodiya improperly asserts that administrators within the United States had a duty to act on his need for an examination accommodation.  This assertion is wrong.

As a matter of law, Ross University was not required to take measures that would alter its program. "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement of promotion or graduation." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n. 11 (1985) (citing *Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96, n. 6 (1978)).  In fact, our Supreme Court has held that, "[w]hen judges are asked to review the substance of a genuinely academic decision[,] . . . they should show great respect for the faculty's professional judgment." *Regents of Univ. of Mich.*, 474 U.S. at 225.

Accordingly, the ADA does not require Ross University to take measures that would alter its program.  42 U.S.C. § 12182(b)(2)(A)(ii). *See also J.A.M. v. Nova Se. Univ., Inc.*, 646 Fed. Appx. 921, 925 (11th Cir. 2016).  Similarly, the Rehab Act "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Community Coll. v. Davis*, 442 U.S. 397, 412-13 (1979).  *See also J.A.M.*, 646 Fed. Appx. at 925.

In *Davis*, the Supreme Court of the United States held:

> Where the purpose of an educational program is to train persons to serve their profession in all customary ways, an institution's refusal to make "major adjustments" to its program in order to accommodate the disabled does not amount to disability-related discrimination.

442 U.S. 397, 412-13 (1979).

It is undisputed that Mr. Awodiya took the Comp exam five different times and was ultimately dismissed for his repeated failures.  [DE 119-24].  Mr. Awodiya now argues for the first time on appeal that Ross University was required to grant him a sixth attempt on the COMP exam, in an effort to conflate his dismissal from the institution with that of a separate request for accommodation.  However, there is no evidence that Mr. Awodiya was dismissed for any other reason than his inability to pass his COMP exam within the allotted attempts.

The Eleventh Circuit has held that a university is not required to excuse past misconduct, even if that misconduct is linked to a student's mental disability.

*J.A.M.*, 646 Fed. Appx. at 926.  *See also Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012); *Jacobson v. City of West Palm Beach*, Case No. 16-cv-81638-MIDDLEBROOKS, 2017 WL 6355841 (S.D. Fla. May 16, 2017).

In *J.A.M.*, the plaintiff breached a substance abuse and alcohol agreement on at least three separate occasions.  646 Fed. Appx. at 926.  The Eleventh Circuit held that the plaintiff's mental disability does not excuse his misconduct. *Id.* Furthermore, the plaintiff in *J.A.M.* could not show that his mental disability was the sole reason for his dismissal.  *Id.* at 927 (emphasis added).   Mr. Awodiya did not present the district court with any evidence to support the notion that his disability was the ***sole reason*** for his dismissal.

Now, Mr. Awodiya argues that Ross University violated the ADA when it failed to consider his disability during his appeal process.  This argument strays far from the issue before the district court—whether the Rehab Act and the ADA applies in Dominica.   To support his proposition, Mr. Awodiya cites to cases that are unavailing for several reasons.   First, by the time Mr. Awodiya appealed his dismissal directly to Dean Owen, he was already dismissed from the institution. [DE 119-20 at 52].  Second, Mr. Awodiya does not allege and is not stating that Ross University has a policy or practice of not considering a student's disability at the time of an appeal.

In *Steere v. George Washington Univ.*, 368 F. Supp. 2d 52 (D.D.C . 2005), a medical school student brought a Title III claim against his medical school, alleging that he was dismissed because of his disability.  In response, the medical school argued that it had no obligation to provide an accommodation because plaintiff failed to request an accommodation before his dismissal.  368 F. Supp. 2d at 56.  Although the *Steere* court agreed that there is no duty to provide an accommodation after dismissal, the court found that the plaintiff was not yet dismissed.  The dean merely considered a recommendation of dismissal from the school's Medical Student Evaluation Committee.  *Id.* at 56-57.  The facts of our case are dissimilar from *Steere*. Here, Mr. Awodiya was already dismissed before his appeal reached Dean Owen. [DE 119-20 at 52].

Similarly, *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299 (1st Cir. 2003), is inapposite.  In *Dudley*, a plaintiff suffered severe injuries during a car crash that caused him to exhibit traits of being intoxicated.  The defendant in that matter had a policy of never selling alcohol to a patron that appeared inebriated.  The court considered whether the liquor store's policy of never reconsidering its refusal to sell alcohol to a customer violated the ADA.  *Id.*  Mr. Awodiya appears to rely on *Dudley* in support of his position that Dean Owen's failure to consider his diagnosis during the appeals process violated the ADA.  However, this issue was not raised below

and there is no record evidence as to whether Ross University has a policy of never considering disabilities during an appeal process.

Mr. Awodiya's reliance on this case law is unavailing and the district court's ruling should be affirmed.

## II.    The District Court Correctly Concluded that Ross University was Entitled to Summary Judgment on Plaintiff's Claim for Fraud in the Inducement

The district court correctly concluded that Ross University was entitled to summary judgment on Mr. Awodiya's claim for fraudulent inducement.   Mr. Awodiya alleges that before he applied and enrolled at Ross University, the university published the following statement on its website:

> It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica.

[DE 101 at ¶ 33].

Mr. Awodiya contends that he relied on this statement when making his decision to enroll at Ross University.  [DE 101 at ¶ 38].

Under Florida law, to succeed on a claim for fraudulent inducement, a plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce the plaintiff to rely and act upon the misrepresentation; and (4) the plaintiff suffered injury in justifiable reliance

on the representation. *See Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. Dist. Ct. 2005).

In order to succeed on a claim of fraud, a plaintiff must show that the promisor had a specific intent not to fulfill his promise at the time the promise was made. [DE 210 at 12] (citing *Alexander/Davis Properties, Inc. v. Graham*, 397 So. 2d 699, 706 (Fla. Dist. Ct. 1981). The district court's analysis turned on whether Mr. Awodiya could prove that Ross University made a misrepresentation.

The district court correctly concluded that the record evidence does not support Mr. Awodiya's claim that, at the time Ross University posted the challenged statement on its website, Ross University specifically intended not to comply with the ADA. The evidence instead showed as follows:

- Dr. Sharma, for example, a Ross University Professor of Behavior Sciences in Dominica, testified that he has helped other students obtain testing accommodations at Ross University, and that he routinely sends the necessary documentation to the Ross University's Accommodations Office to facilitate that process. [DE 102 at 102].

- Dr. Sharma further testified that Ross University "does not deny student accommodations once documentation is adequate." [DE 102 at 108].

- Mr. Stewart-Fulton, one of the accommodations coordinators at Ross University in Dominica, testified that, although Ross University was not required to comply with the ADA, "in the interest of supporting our students, we abide by the spirit of the ADA and Section 504 of the Rehab Act to provide appropriate accommodations within the process that was defined in the student handbook. [DE 102 at 122].

- Dr. Bryan Hayse testified that Ross University "uses [the] ADA as a guideline, but [RUSM is] not necessarily beholden to [it]." [DE 102 at 114].

- Ross University maintains an Accommodations Office for the sole purpose of determining whether a student is eligible for the kind of accommodation that Mr. Awodiya sought. [DE 119-20 at 47-48].

Mr. Awodiya incorrectly states that the district court misconstrued his claim and insists that his fraudulent inducement claim also includes allegations of: (1) fraud by commission of a false statement regarding a material fact; and (2) fraud by omission of a material fact. [Brief at 28].

Mr. Awodiya misses the reasoning behind the district court's finding. The elements to succeed on a fraudulent inducement claim are the same, regardless of either theory Mr. Awodiya attempts to pursue. The district court correctly concluded that Mr. Awodiya's fraudulent inducement claim could not survive because of his inability to prove that there was a misstatement. [DE 210] (citing *Quantum Capital, LLC v. Banco de los Trabajadores*, Case No.: 1-14-cv-23193-UU, 2015 WL 12253226 (S.D. Fla. Dec. 22, 2015)). Mr. Awodiya's fraudulent omission theory fails because there is no evidence that Ross University did not have a policy or practice to comply with the ADA at the time that the statement was made. The district court did not misconstrue Mr. Awodiya's claim.

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## CONCLUSION

The Court should affirm the district court's order. The focus of the Rehab Act and the ADA is to eliminate discriminatory decision making regarding accommodations. The district court correctly concluded that the relevant conduct relating to the statutes' focus occurred in Dominica.

This Court should also affirm the district court's dismissal of Mr. Awodiya's fraudulent inducement claim. There is no evidence that, at the time that the challenged statements were made, Ross University did not have a policy or practice to comply with the ADA. The undisputed material evidence shows the contrary.

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

Dated: October 10, 2019

Respectfully submitted,

*/s/Michael C. Marsh*
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*Attorneys for Appellee Ross University School of Medicine, School of Veterinary Medicine Limited*

28

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in

Fed. R. App. P. 32(a)(7)(B).  This brief contains 6278 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface

requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R.

App. P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using

Microsoft Word in 14 point Times New Roman font.

*/s/Michael C. Marsh*
Michael C. Marsh

Appeal No. 19-12832-D
*Awodiya v. Ross Univ.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 10, 2019 a true and correct copy of the

foregoing document was served via ECF and email on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com


/s/*Michael C. Marsh*
Michael C. Marsh

30