# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

OLUWAMUYIWA AWODIYA,

*Plaintiff-Appellant,*

-v-

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF
VETERINARY MEDICINE
LIMITED,

*Defendant-Appellee.*

Appeal No.  19-12832-DD

On Appeal from the United States
District Court for the Southern
District of Florida
Case No. 0:18-cv-60482-RKA

## APPELLANT'S REPLY BRIEF

*Pro se* plaintiff-appellant Oluwamuyiwa Awodiya ("Plaintiff") hereby files

his reply brief.

Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF INTERESTED PERSONS

1.  Akerman LLP, Law firm for Defendant-Appellee

2.  Altman, Roy K., U.S. District Court Judge

3.  Awodiya, Oluwamuyiwa, *Pro se* Plaintiff-Appellant

4.  Green, Octavia M., Attorney for Defendant-Appellee

5.  King, Donnie M., Attorney for Defendant-Appellee

6.  Marsh, Michael C., Attorney for Defendant-Appellee

7.  Roman, Ryan A., Attorney for Defendant-Appellee

8.  Ross University School of Medicine, School of Veterinary Medicine

Limited, Defendant-Appellee

# TABLE OF CONTENTS

**Certificate of Interested Persons** ............................................................................ i

**Table of Contents** ..................................................................................................... ii

**Table of Citations** ................................................................................................... iv

**I.    Argument** ........................................................................................................ 1

    A.    A DE NOVO REVIEW IS THE ONLY STANDARD OF REVIEW APPROPRIATE
    FOR THIS APPEAL. ......................................................................................... 1

    B.    RUSM IGNORES THE VARIOUS FORMS OF DISCRIMINATION FOR WHICH
    THE ADA AND THE REHABILITATION ACT ARE FOCUSED TO ELIMINATE.
    ........................................................................................................................ 1

        i.    RUSM's Reliance on *Archut* Is Misplaced. ................................. 1

        ii.    The Administration of an Unequal Benefit Afforded by RUSM
        Is Conduct Relevant the Focus of the ADA and the Rehabilitation
        Act Because 42 U.S.C. § 12189 and 42 U.S.C. §
        12182(b)(1)(A)(ii) Are Not Meaningless Provisions. ................ 2

    C.    RUSM MISCHARACTERIZES PLAINTIFF'S POSITION REGARDING THE
    DELIBERATE INDIFFERENCE OF RUSM OFFICIALS LOCATED WITHIN THE
    UNITED STATES. ............................................................................................ 4

        i.    RUSM Mischaracterizes the Dismissal Process. ........................ 5

        ii.    RUSM Is Required to "Alter" Its Program for Disabled
        Individuals, Unless It Can Prove That the Alteration Would
        "Fundamentally Alter" the Nature of the Program. ................... 7

        iii.    There's a Distinction between Excusing "Misconduct" Because
        of an Un-accommodatable Disability versus Denying Available
        Accommodations that Remedy or Prevent the "Misconduct." ... 9

        iv.    Plaintiff Relied on the Same Evidence That Was Already on the
        Record Prior to the Orders That Are Currently on Appeal. ...... 11

        v.    Plaintiff's Has Argued before the District Court That Dean
        Owen, an RUSM Administrator within the United States, Failed
        to Accommodate Plaintiff in His Appeal to Retake the NBME
        CBSE ("COMP" Exam) with an Accommodation. ................... 11

D.    RUSM CONCEDES THAT THE DISTRICT COURT OVERLOOKED RECORD EVIDENCE THAT ESTABLISHED DISPUTED FACTS REGARDING THE FRAUDULENT MISREPRESENTATION CLAIMS.........................................15

# TABLE OF CITATIONS

## Cases

*Alumni Cruises, LLC v. Carnival Corp.*,
    987 F. Supp. 2d 1290 (S.D. Fla. 2013) ............................................................8

*Archut v. Ross Univ. Sch. of Veterinary Med.*,
    CIVIL ACTION NO. 10-1681 (MLC) (D.N.J. Nov. 19, 2012) ........................2

*Borkowski v. Valley Cent. School Dist*,
    63 F.3d 131 (2d Cir. 1995) ..............................................................................11

*Burton v. City of Belle Glade*,
    178 F.3d 1175 (11th Cir. 1999) ........................................................................14

*Caporicci v. Chipotle Mexican Grill, Inc.*,
    No. 16-13494 (11th Cir. Apr. 5, 2018) .............................................................10

*Den Hartog v. Wasatch Academy*,
    129 F.3d 1076 (10th Cir. 1997) ........................................................................10

*Feliciano v. City of Miami Beach*,
    707 F.3d 1244 (11th Cir. 2013) ........................................................................15

*Halpern v. Wake Forest Univ. Health Sciences*,
    669 F.3d 454 (4th Cir. 2012) ...........................................................................10

*Holly v. Clairson Indus*,
    492 F.3d 1247 (11th Cir. 2007) ........................................................................11

*Humphrey v. Memorial Hospitals Ass'n*,
    239 F.3d 1128 (9th Cir. 2001) ................................................................. 10, 11

*In re Optical Technologies, Inc.*,
    246 F.3d 1332 (11th Cir. 2001) ..........................................................................1

*Leal v. Georgia Department of Corrections*,
    254 F.3d 1276 (11th Cir. 2001) ........................................................................12

iv

*Miller v. Donald*,
    541 F.3d 1091 (11th Cir. 2008) .........................................................................12

*Poff v. Poff*,
    344 Fed Appx. 523 (11th Cir. 2009).................................................................1

*Redding v. Nova Se. Univ., Inc.*,
    165 F. Supp. 3d 1274 (S.D. Fla. 2015)............................................................8

*Regents of University of Michigan v. Ewing*,
    474 U.S. 214 (1985)..........................................................................................8

*Rendon v. Valleycrest Productions, Ltd.*,
    294 F.3d 1279 (11th Cir. 2002) .......................................................................3

*Revere v. McHugh*,
    362 Fed. Appx. 993 (11th Cir. 2010)..............................................................13

*Shook v. United States*,
    713 F.2d 662 (11th Cir. 1983) .........................................................................1

*Spector v. Norwegian Cruise Line Ltd.*,
    545 U.S. 119 (2005).........................................................................................7

*Steere v. George Washington University*,
    368 F. Supp. 2d 52 (D.D.C. 2005)..................................................................5

*Von Drasek v. Burwell*,
    121 F. Supp. 3d 143 (D.D.C. 2015).................................................................5

*Westerngeco LLC v. Ion Geophysical Corp.*,
    138 S. Ct. 2129 (2018)..................................................................................3, 4

*Wynne v. Tufts University School of Medicine*,
    932 F.2d 19 (1st Cir. 1991)...........................................................................8, 9

### **Statutes**

42 U.S.C. § 12182 ..................................................................................... 3, 4, 6, 7

42 U.S.C. § 12189 ............................................................................. 2, 4, 6

**Other Authorities**

28 C.F.R. § 36.309 ................................................................................6

## I.    ARGUMENT

### A.    A De Novo Review Is the Only Standard of Review Appropriate for This Appeal.

RUSM incorrectly suggests that the "district court's factual findings are reviewed for clear error." *See* Answer Brief at 8. RUSM's reliance on *Poff v. Poff*, 344 Fed Appx. 523 (11th Cir. 2009) is misplaced. In *Poff*, the Court used a standard of review that was specific to a "bankruptcy court's denial of a motion to reopen" a case, 344 Fed. Appx. at 525, it did not review, as here, a district court's order granting summary judgment. *See In re Optical Technologies, Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001) ("While it is true that, in general, a district court reviews a bankruptcy court's factual findings for clear error, we do not read *In re Club Assocs.* to hold, nor could it be so read in light of our precedent, that the standard of review for summary judgment, which by definition involves no findings of fact, is anything other than *de novo*.").[1]

### B.    RUSM Ignores the Various Forms of Discrimination for Which the ADA and the Rehabilitation Act Are Focused to Eliminate.

#### i.    RUSM's Reliance on *Archut* Is Misplaced.

Ignoring the clear statutory text of the ADA and the Rehabilitation Act, RUSM relies exclusively on *Archut v. Ross Univ. Sch. of Veterinary Med.*, CIVIL

---

[1] "Although recitation of the undisputed facts supporting summary judgment in the form of 'findings of fact' are desirable, the only required finding is that there is no genuine issue as to any material fact. If any fact issues exist a trial judge must not make findings but is required to deny the motion and proceed to trial." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citations omitted).

1

ACTION NO. 10-1681 (MLC) (D.N.J. Nov. 19, 2012) in a failed attempt to support its "focus" argument. First, *Archut* is inapposite because the examinations in the *Archut* case were only **administered outside of the United States**. *Id*. at \*5–9. Second, the court in *Archut* suggested that its opinion would have reached a different conclusion if the examinations in question had been administered within the United States, stating: "Congress sought to reduce physical or other barriers to sites where disabled individuals need access. This focus is presumed to be domestic, as no indication exists in the text of the statute to suggest otherwise. This statute is narrowly addressed to the domestic issue of providing access for disabled United States citizens." *Id*. at \*27.

Here, Plaintiff has already pointed out that he had requested accommodations for the unequal, unaccommodated examinations that were administered in the United States. *See* Opening Brief at 4. Therefore, the question before this Court is not the same question that was before the *Archut* court.

      ii.    <u>The Administration of an Unequal Benefit Afforded by RUSM Is Conduct Relevant the Focus of the ADA and the Rehabilitation Act Because 42 U.S.C. § 12189 and 42 U.S.C. § 12182(b)(1)(A)(ii) Are Not Meaningless Provisions.</u>

RUSM also argues that 42 U.S.C. § 12189 is an "unrelated provision" of the ADA, *see* Answer Brief at 14, but its argument ignores precedent.

As the Supreme Court recently explained: "When determining the focus of a statute, we do not analyze the provision at issue in a vacuum." *Westerngeco LLC v.*

*Ion Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018) (citing *Morrison*, 561 U.S. at 267-69). "If the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those other provisions. Otherwise, it would be impossible to accurately determine whether the application of the statute in the case is a 'domestic application.'" *Id*. (citing *RJR Nabisco*, 136 S. Ct. at 2101).

We also cannot ignore the precedent set by this Court. As the Eleventh Circuit has explained:

> A reading of the plain and unambiguous statutory language at issue reveals that ***the definition of discrimination provided in Title III covers both tangible barriers***, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(iv), ***and intangible barriers***, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(i)-(ii).

*Rendon v. Valleycrest Productions, Ltd*., 294 F.3d 1279, 1283–84 (11th Cir. 2002) (emphasis added) (footnotes omitted). The Court continued to explain that "[t]he statute also recognizes that an intangible barrier may result as a consequence of a defendant entity's failure to act, that is, when it refuses to provide a reasonable auxiliary service that would permit the disabled to gain access to or use its goods and services." *Id*. at 1284 n.7 (citing 42 U.S.C. § 12182(b)(2)(A)(iii)). This Court

3

should continue to hold that "*[t]here is nothing in the text of the statute to suggest that discrimination via an imposition of [intangible barriers] must occur on site to offend the ADA.*" *Id.* at 1283–84 (emphasis added).

42 U.S.C. § 12189 and 42 U.S.C. § 12182(b)(1)(A)(ii) work in tandem to regulate examinations that are afforded to disabled individuals within the United States—these provisions must be assessed in concert with each other. *Westerngeco LLC*, 138 S. Ct. at 2137. *See also* Opening Brief at 13–16.

Accordingly, RUSM imposed an intangible barrier in the United States as a consequence of its failure to act on Plaintiff's need for accommodations on examinations administered within the United States. Although RUSM's argument that its "decision" in Dominica to "deny" Plaintiff's requested accommodations for examinations administered in the United States implicates a violation of 42 U.S.C. § 12182(b)(1)(A)(i) (the denial), *see* Answer Brief at 15–16, RUSM's argument fails to acknowledge that violations of 42 U.S.C. § 12182(b)(1)(A)(ii) (the unequal benefit afforded) and 42 U.S.C. § 12189 (administration of the unequal benefit afforded) took place within the United States.

**C.    RUSM Mischaracterizes Plaintiff's Position regarding the Deliberate Indifference of RUSM Officials Located within the United States.**

The deliberate indifference by RUSM officials within the United States, including Dean Owen—who had **knowledge of Plaintiff's disabilities _and need_ for**

***examination accommodations*** before making a final decision to dismiss Plaintiff

from the school—is itself discrimination regardless if these RUSM officials had

knowledge of prior "denials" by other RUSM officials that occurred in Dominica.

In RUSM's attempt to ignore this reality, it improperly argues (1) that Plaintiff was

already "dismissed" before RUSM rendered its "final" decision; (2) that the ADA

does not require it to "alter its program"; and (3) that it is not required to excuse the

failed attempts to pass the unaccommodated examinations. RUSM's arguments fail.

i.    RUSM Mischaracterizes the Dismissal Process.

Although RUSM does not object to *Von Drasek v. Burwell*, 121 F. Supp. 3d

143, 157 (D.D.C. 2015) (Holding that "an employee for whom removal has been

proposed has the right to provide a written response, and as part of this response, the

employee may provide medical records, which the employer must consider ***before***

***issuing a final decision*** on the proposed employment action" (emphasis added)),

RUSM attempts to distinguish the case here, from *Steere v. George Washington*

*University*, 368 F. Supp. 2d 52 (D.D.C. 2005). RUSM's argument misses the point

of the *Steere* court. In *Steere*, the court held that "[t]he defendants' own regulations

doom their timeliness argument: ***they give the Dean total discretion to adopt or***

***ignore*** the MSEC recommendations." 368 F. Supp. 2d at 56 (emphasis added).

It is undisputed that according to RUSM's own policies and regulations, an

academic dismissal is a process that is not final until the Dean of RUSM makes a

final decision. *See* Opening Brief at 6 n.2. RUSM did not make its final decision to dismiss Plaintiff until June 29, 2017. *See* Opening Brief at 7–8 (citing Doc. 119-28 at 2). The dismissal letter containing the final decision made on June 29, 2017, states that Dean Owen acted on his discretion to adopt or ignore "the Student Promotions Committee's ***recommendation for dismissal***." Doc. 119-28 at 2 (emphasis added).

Before making this final decision, Plaintiff himself and Plaintiff's psychiatrist and psychotherapist informed the Dean of RUSM that Plaintiff's disabilities have been adversely affecting his academic performance. *See* Opening Brief at 7. Specifically, in his appeal letter directly to the Dean of RUSM, Plaintiff informed Dean Owen that he never finished his exams because of his disability. *Id.* (citing Doc. 213 at 22-24).[2] Because of Plaintiff's disabilities, the "examination results" failed to "accurately reflect" Plaintiff's "aptitude or achievement level" rather than reflecting his disabilities in violation of Title III of the ADA. 28 C.F.R. § 36.309(b); *see also* 42 U.S.C. § 12189; 42 U.S.C. § 12182(b)(1)(A)(ii).

---

[2] On page 5 and 17 of Appellee's Answer Brief, RUSM cites to Doc. 119-25 out of context in an ambiguous reference to Plaintiff's appeals during the dismissal process. Please take note that Doc. 119-25 is not the appeal letter to Dean Owen, rather, Doc. 119-25 is the appeal statement addressed to the Student Promotions Committee as Plaintiff indicated therein the first sentence stating, "Hello promotion committee." In contrast, the appeal letter that was sent directly to Dean Owen, which states "Dear Dr. Owen" on the first line, was originally filed as Doc. 102 at 80–83 and was refiled, with another motion, as Doc. 213 at 22-24 for the convenience of the District Court at that time.

Before making the final decision to dismiss Plaintiff because of these unequal examinations administered in the United States, Dean Owen's "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," 42 U.S.C. § 12182(b)(2)(A)(iii), and his deliberate indifference to deny Plaintiff the opportunity to benefit from examination accommodations, *see* 42 U.S.C. § 12182(b)(1)(A)(i), occurred within the United States.

    ii. <u>RUSM Is Required to "Alter" Its Program for Disabled Individuals, Unless It Can Prove That the Alteration Would "Fundamentally Alter" the Nature of the Program.</u>

RUSM also argues that the ADA does not require it to "alter" its program in any way for disabled individuals. Answer Brief at 21. RUSM misstates the law. Under the ADA, RUSM is required to make modifications in policies, practices, or procedures and must provide auxiliary aids and services for disabled individuals, "unless the entity can demonstrate that taking such steps would ***fundamentally alter***" the program. 42 U.S.C. §§ 12182(b)(2)(A)(ii)–(iii) (emphasis added); *accord Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129 (2005). Moreover, "If the plaintiff satisfies its burden to demonstrate that the proposed modification is reasonable, ***the burden then shifts to the defendant to prove that making the proposed modification would 'fundamentally alter' the nature of the services or***

***accommodation***." *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1306 (S.D. Fla. 2013) (emphasis added). RUSM does not argue, nor has it pointed to any evidence, as to why a sixth examination attempt with extended testing time would "fundamentally" alter its program.

According to RUSM's Student Handbook, RUSM requires its students to take the NBME CBSE exam because "[t]he NBME CBSE or 'COMP' exam has proven to be a good predictor of student performance on the ***USMLE Step 1 exam***." Doc. 119-20 at 30 (emphasis added). However, RUSM affords all its students six attempts to pass the USMLE Step 1 exam. *Id*. at 32 ("Students must pass USMLE Step 1 in a maximum of ***six attempts in order to receive the MD degree***. Failure to pass the test within six attempts will result in dismissal." (emphasis added)).

RUSM's reliance on *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985) is misplaced. Courts in this circuit have explained that "[i]n the disability discrimination context, the First Circuit has held that the *Ewing* standard should be modified as it relates to the 'reasonable accommodation' analysis." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1291 (S.D. Fla. 2015) (citing *Wynne v. Tufts University School of Medicine*, 932 F.2d 19, 25-26 (1st Cir. 1991) (en banc)). "*Wynne* is consistent with current Eleventh Circuit law." *Id*. at 1292.

In short, *Wynne* stated:

> The question in *Ewing* was whether a university had violated substantive due process (i.e., had engaged in

wholly arbitrary action) …. This was a context where no federal statutory obligation impinged on the academic administrators; their freedom to make genuine academic decisions was untrammeled. This is why the Court added to the above quoted passage the sentence: "Plainly, [judges] may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." [quoting *Ewing,* 474 U.S. at 225].

In the context of an "otherwise qualified-reasonable accommodations" inquiry under the Rehabilitation Act, the same principle of respect for academic decision making applies but with two qualifications. First, as we have noted, there is a real obligation on the academic institution to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation. Second, the *Ewing* formulation, hinging judicial override on "a substantial departure from accepted academic norms," is not necessarily a helpful test in assessing whether professional judgment has been exercised in exploring reasonable alternatives for accommodating a handicapped person.

*Wynne*, 932 F.2d at 25-26.

> iii.  There's a Distinction between Excusing "Misconduct" Because of an Un-accommodatable Disability versus Denying Available Accommodations that Remedy or Prevent the "Misconduct."

RUSM argues that it is not required to "excuse" the failed attempts on the unaccommodated examinations. As an initial matter, the Eleventh Circuit has recently stated that "[w]hether a firing based on disability-related [misconduct] constitutes disability-based discrimination under the ADA is an open question in this

circuit." *Caporicci v. Chipotle Mexican Grill, Inc*., No. 16-13494, at *9 (11th Cir. Apr. 5, 2018) (per curiam). However, RUSM's argument is irrelevant in a failure to accommodate case.

RUSM's reliance on *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012) is misplaced. In *Halpern*, the plaintiff was unable to propose a reasonable accommodation to help remedy or avoid his behavioral misconduct, he merely proposed that the school tolerate his un-accommodatable behavioral misconduct because it was related to his disability. *Id*. at 465–466. As the Tenth Circuit has explained:

> We therefore disagree with the district court's conclusion that the ADA's general anti-discrimination provision, 42 U.S.C. § 12112(a), contemplates a stark dichotomy between "disability" and "disability-caused misconduct." Rather, the language of the ADA, its statutory structure, and the pertinent case law, suggest that an employer should normally consider whether a mentally disabled employee's purported misconduct could be remedied through a reasonable accommodation. If so, then the employer should attempt the accommodation. If not, the employer may discipline the disabled employee only if one of the affirmative defenses articulated in 42 U.S.C. §§ 12113, 12114 (1994) applies.

*Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1088 (10th Cir. 1997); *see also Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ("It would be inconsistent with the purposes of the ADA to permit an employer to deny

an otherwise reasonable accommodation because of past disciplinary action taken due to the disability sought to be accommodated.").[3]

### iv.   Plaintiff Relied on the Same Evidence That Was Already on the Record Prior to the Orders That Are Currently on Appeal.

The post-judgment evidence that RUSM takes issue with is the same evidence that was already before the District Court before it rendered its Doc. 210 Order that is currently on appeal. Plaintiff simply refiled the same pre-judgment evidence in support of a post-judgment motion.

| Description | Refiled as | Previously filed as |
|---|---|---|
| Letter from RUSM to Plaintiff | Doc. 213 at 14 | Doc. 102 at 76 |
| Email chain w/ RUSM and Plaintiff | Doc. 213 at 16 | Doc. 138 at 83 |
| Plaintiff's psychiatrist's letter/email to the Dean of RUSM | Doc. 213 at 20 | Doc. 102 at 78 |
| Plaintiff's appeal letter to the Dean of RUSM | Doc. 213 at 22–24 | Doc. 102 at 80–83 |

### v.   Plaintiff's Has Argued before the District Court That Dean Owen, an RUSM Administrator within the United States, Failed to Accommodate Plaintiff in His Appeal to Retake the NBME CBSE ("COMP" Exam) with an Accommodation.

---

[3] RUSM also conflates failure to accommodate claims with disparate treatment claims. *See Holly v. Clairson Indus*, 492 F.3d 1247, 1262 (11th Cir. 2007) ("an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA"); *Borkowski v. Valley Cent. School Dist*, 63 F.3d 131, 143 (2d Cir. 1995) ("Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) ("the consequence of the failure to accommodate is, as here, frequently an unlawful termination.").

RUSM incorrectly asserts that the above argument—regarding its failure to provide an examination accommodation for Plaintiff in response to his appeal for a sixth examination attempt—was not presented to the District Court. RUSM's assertion is simply not true.[4]

As an initial matter, "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be construed liberally." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). As reflected in the Complaint, Dean Owen's final decision to dismiss Plaintiff has always been viewed as the point of which Plaintiff was dismissed, officially dismissed, permanently dismissed or any other way that RUSM has attempted to characterize this. Doc. 47 ¶ 34. Before making the final decision to dismiss Plaintiff, RUSM was required "to provide appropriate and necessary accommodations and modifications to Plaintiff so that he could continue in his educational program." *Id*. ¶ 51.

In Plaintiff's second motion for partial summary judgment, Plaintiff argued that "[a]fter Plaintiff's NBME CBSE [a]ttempts" "Dean Owen denied Plaintiff the opportunity to continue despite being informed by Plaintiff's mental health providers

---

[4] However, even if the Court were to accept RUSM's incorrect assertion, it should vacate the District Court's dismissal and remand for the District Court to consider the argument. *See Leal v. Georgia Department of Corrections*, 254 F.3d 1276, 1280 (11th Cir. 2001) (Instead of entertaining the parties' arguments for the first time on appeal, the Court vacated the district court's dismissal and remand for the district court to consider the argument, in the first instance).

that Plaintiff suffers from a disability that adversely affects his academic performance." Doc. 102 at 16. As the District Court acknowledge in its Order, one of Plaintiff's "principal arguments" was "that 'most of' the acts in this case occurred in the United States—thus obviating any need to determine whether the ADA applies extraterritorially." Doc. 210. Contrary to RUSM's assertion, Plaintiff, who is *pro se*, raised the issue multiple times in the District Court.

Even assuming, *arguendo*, that RUSM's incorrect assertion had any merit, this Court has established five exceptions that permit issues to be raised for the first time on appeal. *See Revere v. McHugh*, 362 Fed. Appx. 993, 995 (11th Cir. 2010). One of these exceptions is if "the appellant had no opportunity to raise the argument at the district court level." *Id*.

During the disposition of the parties' motions for summary judgement—Plaintiff's second motion for partial summary judgment, Doc. 102, the statement of facts in support of that motion, Doc. 101, Defendant's motion for summary judgment, Doc. 120, and the March 2, 2019 omnibus order denying these motions for summary judgment, Doc. 154—as the District Court acknowledge in its subsequent May 15, 2019 order to *sua sponte* trigger summary judgement, Doc. 191, "the Defendant has not yet raised the issue of whether the ADA and the RA even apply in Dominica."

13

In a literal reading of the *sua sponte* order, the District Court requested the parties to "brief the question of the extraterritorial application of the ADA and the RA" but it did not give Plaintiff notice that he had to come forward with all of his evidence. Doc. 191 at 5–6. "A district court possesses the power to enter summary judgment *sua sponte* provided the losing party 'was on notice that she had to come forward with all of her evidence.'" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "As we have long recognized, 'this notice provision is not an unimportant technicality, but a vital procedural safeguard' to a party's right to offer the best defense to any challenge." *Id*. at 1203–04 (quoting *Massey v. Congress Life Ins. Co*., 116 F.3d 1414, 1417 (11th Cir. 1997)).

On May 22, 2019, Plaintiff filed his brief, Doc. 192, in response to the District Court's May 15, 2019 *sua sponte* order. Although Plaintiff argued that most of his failure to accommodate claim occurred in the United States, he also advised the District Court that he could not fully brief the issue because: (1) the limited evidence offered at the previously disposed of motions for summary judgment and the statement of facts in support thereof, did not fully reflect the location of the acts in this case; and (2) he needed an estimated five additional pages to "***fully*** brief the depth of the mix questions of fact and law." Doc. 192 at 8–9. Seven days later, on March 29, 2019, RUSM filed its brief, Doc. 193, in response to the District Court's

14

May 15, 2019 *sua sponte* order. To its advantage, RUSM raised several conclusory and unsupported arguments, which Plaintiff did not have a chance to defend since he had already submitted his brief a week prior to RUSM's submission. For example, in its brief, RUSM argued that there was no "evidence to show that actions took place in the United States rather than abroad." Doc. 193 at 3.

The District Court acknowledge and denied Plaintiff's request to fully brief the issue on the grounds that "Plaintiff's suggestion that the record evidence is 'not developed' enough to determine whether the acts he has challenged occurred in Dominica is belied by the aforementioned citations to the Plaintiff's own 'Statement of Undisputed Material Facts.'" Doc. 210 at 11 n.7.

### D.    RUSM Concedes That the District Court Overlooked Record Evidence That Established Disputed Facts regarding the Fraudulent Misrepresentation Claims.

Not only does RUSM's argument ignore the evidence presented by Plaintiff, RUSM does not dispute that reasonable minds can conclude that RUSM's omission and failure to disclose that no policy actually existed, was material to the advertised statement. *See* Opening Brief at 29–30. The Eleventh Circuit has held that "when conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's *version*." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (alteration in original) (quoting *Evans v. Stephens,* 407 F.3d 1272, 1278 (11th Cir.2005) (en banc)).

DATED this 31st day of October, 2019:

Respectfully submitted,

*/s/Oluwamuyiwa Awodiya*

By: Oluwamuyiwa Awodiya, *pro se* litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2019 a true and correct copy of the

foregoing document was served via ECF on the counsel of record.


*/s/Oluwamuyiwa Awodiya*

By: Oluwamuyiwa Awodiya, *pro se* litigant