## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

OLUWAMUYIWA AWODIYA,

*Plaintiff-Appellant,*

-v-

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF
VETERINARY MEDICINE
LIMITED,

*Defendant-Appellee.*

)
)
)
)
)
)
)
)
)
)
)
)

Appeal No.  19-12832-DD

On Appeal from the United States
District Court for the Southern
District of Florida
Case No. 0:18-cv-60482-RKA

## SUPPLEMENTAL APPENDIX TO REPLY BRIEF OF APPELLANT

*Pro se* plaintiff-appellant Oluwamuyiwa Awodiya ("Plaintiff") hereby files

the supplemental appendix to Appellant's Reply Brief.

Oluwamuyiwa Awodiya, pro se litigant
15005 Dahlia Dr.
Bowie, MD 20721
(240) 602-1836
Plaintiff, in Proper Person

## INDEX TO SUPPLEMENTAL
## APPENDIX TO REPLY BRIEF OF APPELLANT

| Docket/Tab | Description |
|---|---|
| 119-20 | Supplemental Pages of the RUSM Student Handbook |
| 138 | Email Chain w/ RUSM and Plaintiff |
| 193 | Defendant's Brief in Response to the District Court's Order |

# **Tab 119-20**



# *STUDENT HANDBOOK*

# **2015 – 2016**

**January 1, 2016**

© 2016 Ross University School of Medicine.  All rights reserved.

RUSM 000326

Students are required to complete all exams as scheduled. There are no make-up exams. A student may be excused from one mid-term examination per semester in an emergency. In the case of a single approved absence from a mid-term exam, the student's score on their Final exam will be substituted for the missed mid-term exam. In cases where there are multiple sections on the Final exam, the student's score on the entire Final exam will be substituted. Students who are unable to complete all mid-term exams, with the exception of a single approved absence, may be administratively withdrawn. The student will receive a grade at the time of withdrawal which is based on a percentage of the weighted exams which the student has completed before withdrawal. Students with a cumulative weighted score of 70%, or higher, will receive a WP. Below 70% will receive a WF.  RUSM will not modify exam group assignments, for either written or clinical exams, to accommodate a student's travel off the island. Do not book a flight on the same day as your exam.

In order to be excused from a mid-term examination, the student must present valid documentation prior to the exam describing the nature of the emergency to the Associate Dean of Student Affairs, or his/her designee, and must include appropriate supporting documentation. Approval is at the discretion of the Associate Dean, or his/her designee. A mid-term examination missed without prior approval will be assigned a grade of zero. (See exceptions in **Attendance** section)

Final examinations must be taken on schedule; failure to do so could result in a failing grade for the course.  On the rare occasion a student is excused from taking a final examination, a grade of I will be assigned and the exam must be taken at the end of the following semester. The I grade will revert to an F if the incomplete exam is not made up by the end of the following semester. The student will not be eligible for promotion until after the incomplete has been rectified.


**NBME CBSE**
The NBME CBSE or "COMP" exam has proven to be a good predictor of student performance on the USMLE Step 1 exam. In an effort to assess the readiness of RUSM students to pass the Step 1 on their 'first attempt', RUSM requires that students first pass the NBME CBSE. Students are required to take the CBSE at the end of their final Foundations of Medicine semester. Students must obtain a passing score, as determined by the Dean, prior to being certified to take USMLE Step 1. Students are given three opportunities to obtain a passing grade on the NBME CBSE and must pass: (1) within no more than three consecutive attempts, (attempt dates are pre-established by the Office of the Registrar and are determined based on the date of the first attempt, a scheduled exam that a student does not take is considered an attempt) and (2) within six months of becoming eligible. Any student failing to pass the CBSE within three attempts is subject to review by the Promotions Committee-Foundations of Medicine. The Promotions Committee-Foundations of Medicine will then conduct a careful review of the student's entire academic record, and either grant a student an additional opportunity to take the NBME CBSE.


*Clinical Sciences Exams*

**NBME SCE**
Students must pass the SCE at the conclusion of each core clerkship.  (See the SCE policy in the **Policies and Administrative Procedures** section)  Scores of 75 or above on SCE will be noted on the MSPE.

A student must pass at least five (5) subject clerkship examinations to be eligible to sit for the NBME CCSE. Students will not be scheduled for the NBME CCSE until successful completion of five (5) core clerkships, including passing each SCE exam.

Please refer to page 126 regarding the SCE policy for core clerkships.

**NBME CCSE**

*Overview:*

Students are required to sit for the NBME CCSE to be eligible to sit for the USMLE Step 2 CK. This is a formative exam to gauge a student's readiness for USMLE Step 2 and to prepare every student to score his/her best possible score.  The examination will be provided at no cost to students unless the student is a no-show or fails to cancel/reschedule within the time frame indicated by the Office of the Registrar.

*Eligibility:*

RUSM Students are eligible to sit for the NBME CCSE after receiving passing scores on five (5) core NBME SCEs. Students are encouraged to complete all clinical core clerkships prior to sitting for USMLE Step 2 CK.

Students who fail the NBME CCSE exam a second time may sit for the USMLE Step 2 CK, RUSM **strongly recommends** that they obtain academic counseling before so doing.

## USMLE STEP 1 EXAM

*Overview*

USMLE Step 1 assesses fluency in basic medical science. Students must sit for USMLE Step 1 to start IMF. Students must pass USMLE Step 1 in order to continue the core clinical clerkships portion of the curriculum.

*Eligibility*
In order take USMLE Step 1, you must be ECFMG verified by the Office of the Registrar. Eligibility for verification includes the following:
1) Enrollment as a full-time student in good standing;
2) Have met all financial obligations; students with a Bursar hold will not be certified or verified;
3) Passed all courses in the Foundations of Medicine curriculum;
4) Passed NBME CBSE; and
5) Submitted a completed ECFMG Form 186 to the Office of the Registrar. Applications and forms are available on the ECFMG website: www.ecfmg.org.

*Timeframe*
Students must sit for the USMLE Step 1 exam for the first time within six (6) months of passing the CBSE and pass within six attempts. *No extensions will be granted to this rule.* Students who fail to sit for their first attempt by this deadline will be Administratively Withdrawn from RUSM*.*

Students must pass USMLE Step 1 in a maximum of six attempts in order to receive the MD degree. Failure to pass the test within six attempts will result in dismissal. Students who are dismissed or withdrawn (personally or administratively) will have their ECFMG status revoked. If the student is reinstated or readmitted, he/she will need to reapply to ECFMG and register for a new exam.

*Enrollment in IMF on or after September 1, 2014*
Students scheduled to begin IMF must sit for the USMLE Step 1 before starting IMF. Students may defer IMF to allow remediation of the NBME CBSE or to prepare to sit for Step 1. Once a student passes the CBSE, he/she must sit for USMLE Step 1 within six (6) months, regardless if the student is deferring IMF.

*Step 1 Failures*
Students who fail USMLE Step 1 will be required to sit for their retake within six (6) months of their prior exam attempt. Any student who fails to sit for their USMLE Step 1 retake by this deadline will be administratively withdrawn from RUSM. Please note that all USMLE scores (pass or fails) must be submitted to the Office of the Registrar within 30 days of receipt. Students who fail to submit their score reports are subject to Administrative Withdrawal. Students must submit their failing USMLE Step Score report to Registrar prior to being verified for the retake. Students who fail USMLE Step 1 while enrolled in IMF will be allowed to complete IMF but will be placed in a Temporary Withdraw (TW) status until he/she passes USMLE Step 1 and begin clinical clerkships.

Students have up to six (6) attempts to pass USMLE Step 1, however these attempts must be in accordance with the requirement for the student to complete his/her degree requirements within seven (7) years of matriculation. If it is determined that the student will not be able to complete his/her degree requirements within the seven year timeframe, he/she will be dismissed from RUSM.

Students who are dismissed or withdrawn (personally or administratively) will have their ECFMG status revoked.  If the student is reinstated or readmitted, he/she will need to reapply to ECFMG and register for a new exam.

## USMLE STEP 2 EXAMS

**ECFMG Certification & Verification for the USMLE Step 2 CK and USMLE Step 2 CS**

# Tab 138

**To:** Larsen, Niels
**From:** Larsen, Niels
**Sent:** Mon 6/12/2017 2:40:58 PM
**Subject:** RE: Appeal Letter Decision

Hello Oluwamuyiwa,
I am sorry to say that your email got stuck under some other urgent matter and I thereafter forgot about it until today. I would not have been able to help with your request anyway, no other student I have been aware of have received such a service.

Good luck
Niels Larsen

**From:** Awodiya, Oluwamuyiwa [mailto:OluwamuyiwaAwodiya@students.rossu.edu]
**Sent:** Thursday, June 08, 2017 10:06 AM
**To:** Larsen, Niels <NLarsen@RossU.edu>
**Cc:** Hall, Maureen PM. <mpmhall@RossU.edu>
**Subject:** RE: Appeal Letter Decision

Hello Dr. Larsen,

I was hoping to see if there was a possible update to the questions that I asked in my last email?

I apologize for resending this email. Its only because I have under a week left to prepare before submitting my letter to the Dean.

Best regards,
Oluwamuyiwa Awodiya

**From:** Awodiya, Oluwamuyiwa
**Sent:** Friday, June 2, 2017 12:57 PM
**To:** Larsen, Niels
**Cc:** Hall, Maureen PM.
**Subject:** RE: Appeal Letter Decision

Good morning Dr. Larsen,

Thank you very much for taking the time to respond to my email and for your advice.

I would also want to ask if it is possible for Ross to set up a proctored NBME exam of any fashion.

I have been working diligently on addressing my recent diagnosis and have made remarkable progress.

With this, for the first time ever I passed my first NBME a couple of weeks ago and plan on taking another one very soon to (next few days) to measure my growth and progress.

Because these exams are highly accurate and because of my relentless, continuous treatment I am confident that I will pass any exam as of today.

It would be great if I could take the next unofficial NBME in an environment that Ross considers adequate enough so that there is no doubt that I can now pass these exams.

So my questions are:

Is there anyway that I can have Ross unofficially or officially send an exam for me to take in a Prometric center around me? My family will take care of any cost if there is any associated with setting this up.

If not possible then do you think it is good enough to just record myself, my environment, and my screen when taking another NBME?

Also, I just wanted to confirm if all the previous submitted documents will be handed to the Dean or should I resubmit them?

Gratefully,

Oluwamuyiwa Awodiya

**From:** Larsen, Niels
**Sent:** Friday, June 2, 2017 11:41 AM
**To:** Awodiya, Oluwamuyiwa
**Cc:** Hall, Maureen PM.
**Subject:** RE: Appeal Letter Decision

Dear Oluwamuyiwa,
The committee decisions are made by secret ballot so I cannot know what swayed the different members of the committee in one direction or another. However, I may be able to give you some other advise, hope this helps.

The most important advise is that if there was something you were shy about and did not want to share, this is definitely the time to come out with it. I realize it can be difficult to share very private details, but this is the time.

Another thing is that you have a few more words to provide details in the appeal to the Dean. Use those wisely: try to avoid repetitions but use them to make sure you give a reasonably complete description of those things you do describe.

Lastly, make sure you have a clear, coherent description of what you will to differently if allowed back.

Sincerely

**Niels Larsen, PhD**
*Professor, Department of Physiology and Biochemistry*
*Chair, Student Promotions Committee*

**Ross University School of Medicine**
*Dominica Campus*:
P.O. Box 266
Roseau
Commonwealth of Dominica

*Miramar Location*:
2300 SW 145th Avenue, Suite 200
Miramar, FL 33027

Phone: 767-255-6323
Mobile: 767-235-2431
Email: nlarsen@rossu.edu
Web: RossU.edu

**ROSS UNIVERSITY**
SCHOOL OF MEDICINE

**From:** Hall, Maureen PM.
**Sent:** Thursday, June 01, 2017 7:34 PM
**To:** Awodiya, Oluwamuyiwa <OluwamuyiwaAwodiya@students.rossu.edu>
**Cc:** Larsen, Niels <NLarsen@RossU.edu>
**Subject:** Re: Appeal Letter Decision

Dear Oluwamuyiwa:

RUSM 0007

Please be aware that I am sorry about the outcome of your appeal to the committee which was upheld. Please be aware that Dr. Niels Larsen is now the Chair of the Committee and is best able to help you. I have copied him for your convenience.

Respectfully,
Dr. Hall


Sent from my iPad
On Jun 1, 2017, at 7:24 PM, Awodiya, Oluwamuyiwa <OluwamuyiwaAwodiya@students.rossu.edu> wrote:

Good afternoon Dr. Hall,

I am really sorry to bother you but I just received the email about my Appeal decision which stated that it was upheld. I plan on following the directions on getting a decision from the Dean.

I am reaching out to you because I was hoping maybe I could receive some advice about why the decision to uphold the appeal may have occurred. So that I can possibility address those issues in my letter to the dean. Anything, no matter how small will be appreciated.

Thank you for your time.

Sincerely,

Oluwamuyiwa Awodiya

# **Tab 193**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

OLUWAMUYIWA AWODIYA,                         CASE NO.  0:18-cv-60482-RKA

      Plaintiff,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, SCHOOL OF VETERINARY
MEDICINE LIMITED,

      Defendant.

_____/

## DEFENDANT'S BRIEF ON EXTRATERRITORIAL APPLICATION OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

Pursuant to the Court's Order dated May 14, 2019 [ECF No. 191], defendant Ross University School of Medicine, School of Veterinary Medicine Limited ("RUSM"), by counsel, hereby submits this brief pursuant to the Court's instructions and states as follows:

## I.    INTRODUCTION

On May 14, 2019, the Court *sua sponte* entered an Order asking that the parties "brief the question of the territorial application of [Title III of the Americans With Disabilities Act ("ADA")] and the [Rehabilitation Act ("RA")], as well as the impact, if any, that the answer to this question might have on Plaintiff's remaining claims. …" *See* [ECF No. 191] at 5.

In response to the Court's opportunity to brief this issue, RUSM states that the ADA and RA do not apply in Dominica, where the alleged conduct took place, and therefore, summary judgment should be entered in favor of RUSM on each of the remaining counts in this action.  In Plaintiff's Response to the Court's May 16, 2019 Order [ECF No. 192] ("Plaintiff's Brief"), Plaintiff simply dismisses the decision in *Archut v. Ross University School of Veterinary Medicine*, Civil Action No. 10-1681 (MLC), 2012 WL 5867148, at *4 (D.N.J. Nov. 19, 2012), as "no longer

48917323;4

good law" and then proceeds to misinterpret and misapply Title III of the ADA and Section 504 of the RA. Because the ADA and RA only apply to conduct that occurs in the United States, and because the conduct in question here took place in the country of Dominica, Count I (failure to accommodate under the ADA) and Count II (failure to accommodate under the RA) fail as a matter of law.

Furthermore, Count VIII (fraudulent inducement under Florida law) and Count IX (negligent misrepresentation under Florida law) also fail because they are premised on an alleged statement on a website which is not a misrepresentation as a factual matter and cannot give rise to a claim of this type. In other words, Plaintiff cannot establish, as a matter of law, that the statement is false or that he justifiably relied on the statement. The statement, which is that it is RUSM's policy to comply with the ADA in Dominica as "applicable and practical," cannot be false where, as here, neither the ADA nor the RA apply in Dominica.

For each of these reasons, the Court should enter summary judgment in favor of RUSM and against plaintiff Oluwamuyiwa Awodiya ("Plaintiff") on the four remaining counts in this action.

## II.   FACTUAL BACKGROUND

Plaintiff is a former RUSM medical student. *See* Declaration of Oluwamuyiwa Awodiya in Support of Plaintiff's Second Motion for Partial Summary Judgment [ECF No. 102-1] at ¶ 2. Plaintiff attended RUSM's campus which is located on the island of Dominica. *Id.* at ¶¶ 11-12, 15. The RUSM Counseling Center, where Plaintiff received treatment, is located in Dominica. *See, e.g., id.* at Exhibits SJ-02, SJ-05, SJ-06, SJ-10, SJ-11, SJ-12, SJ-13 (notes of counseling sessions showing the location of RUSM's Counseling Center in Dominica). All of the conduct pertaining to Plaintiff's counseling sessions and his purported requests for an accommodation

2

occurred in Dominica.  There is no evidence that Plaintiff met with any representative of RUSM in the United States.

In Plaintiff's Brief, rather than point to record evidence to show that actions took place in the United States rather than abroad, Plaintiff instead states that, despite the volumes of discovery conducted in this action and the fact that it was initially set for trial in late March 2019, "the record evidence before the Court is not developed to answer" that question.  Plaintiff's Brief at 9.  In fact, Plaintiff only alleges that certain COMP Exams – which are administered by a third party – took place in both Dominica and the United States.  *Id.*  However, it is undisputed that Plaintiff never met with any representative of RUSM in the United States regarding any purported accommodations request and that all of Plaintiff's counseling sessions with the RUSM Counseling Center took place overseas in Dominica.  This action – just like with the *Archut* matter involving RUSM's sister veterinary program – pertains to extraterritorial conduct not covered by Title III of the ADA or Section 504 of the RA.

## III.   **LEGAL STANDARD**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The existence of some factual disputes – as opposed to genuine disputes of material fact – will not defeat a motion for summary judgment.  *See Gordilis v. Ocean Drive Limousines, Inc.*, Civ. No. 12-24358-JLK, 2014 WL 2214274, at *1 (S.D. Fla. May 28, 2014) ("A fact is 'material' if it is may determine the outcome under the applicable substantive law.").  To defeat summary judgment, "the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures."  *McIntyre v. FLX of Miami, Inc.*, Civ. No. 08-20030-JJO, 2008 WL 4541017, at *3 (S.D. Fla. Oct. 8, 2008).  A "genuine" dispute as to a material fact exists

if the evidence is such that a rational trier of fact could return a verdict for the nonmoving party.

*Foreman v. City of Port St. Lucie*, Civ. No. 07-14036-KMM, 2008 WL 958030, at *1 (S.D. Fla. Apr. 8, 2008) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).  The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."  *Id.*

## IV.   ARGUMENT

### a. Judgment Should be Entered on Count I and Count II of the Complaint Because the ADA and RA are Not Applicable in Dominica as a Matter of Law

The ADA and RA are American laws.  Dominica is an island country in the West Indies and is an independent sovereign from the United States.  Neither the ADA nor the RA can be found to be applicable in Dominica absent express consent by Congress.  *See Archut v. Ross Univ. Sch. of Veterinary Med.*, Civil Action No. 10-1681 (MLC), 2012 WL 5867148, at *4 (D.N.J. Nov. 19, 2012) (citing *Morrison v. Nat'l Austl. Bank, Ltd.*, 130 S.Ct. 2869, 2877 (2010) ("There is a presumption against extraterritorial application of United States law where Congress failed to expressly communicate an intent to have the law apply extraterritorially.")).  Neither Title III of the ADA nor the RA contain clear indication of an extraterritorial application.  Thus, Counts I and II fail because these statutes do not apply to conduct allegedly occurring outside of the United States.

In *Archut,* the United States District Court for the District of New Jersey examined virtually identical allegations to those made by the Plaintiff in this case.  In fact, *Archut* involved RUSM's sister veterinary school in St. Kitts.  In *Archut*, the plaintiff argued that RUSM should be subjected to liability under the RA because the institution received federal financial aid.  In rejecting the plaintiff's argument, the court stated:

> While federal funds are distributed to many institutions, some of
> which are beyond the physical territory of the United States,

> Congress failed to mention that these anti-discrimination standards
> for institutions receiving assistance were to follow wherever the
> money went. Without an express extension of the statute to foreign
> institutions receiving federal financial aid, it cannot be implied that
> Congress actually intended such extraterritorial application. The
> inclusion of "any program or activity receiving Federal financial
> assistance" is not a clear communication indicating that Congress
> intended foreign institutions receiving money to also be subject to
> these restrictions aimed at equalizing domestic educational,
> professional, or social opportunities for disabled individuals within
> the United States.

*Archut*, 2012 WL 5867148, at *10.

Further, the court in *Archut* declined to find that RUSM subjected itself to liability by mentioning the United States anti-discrimination standards in a student handbook. *Id*. at *10 ("The Court does not find that this case supports the proposition that mentioning United States anti-discrimination standards in a student handbook binds a school to liability if it fails to meet the standards of law it is not legally obligated to follow."). The Third Circuit affirmed the trial court's ruling and approvingly noted that "we can add little to that court's analysis and discussion" of the extraterritoriality issue. *Archut v. Ross Univ. School of Med.*, 580 Fed. App'x 90 (3d. Cir. 2014).

Contrary to Plaintiff's assertion that *Archut* is no longer good law following *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), Archut was cited approvingly just three months ago in *Galligan v. Adtalem Global Education, Inc.*, Case No. 17 C 6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019), another lawsuit involving RUSM's veterinary school, where the Court dismissed plaintiff's ADA and RA claims on the basis that those statutes do not apply outside of the United States. *Id*. at *3 ("Neither of the federal statutes on which Galligan relies applies outside the United States."). The plaintiff in *Galligan* made identical allegations to those made by Plaintiff in this action – namely, that he allegedly requested additional testing time accommodations from the school and that the request was denied. *Id*. at *1. The Court dismissed the accommodations claims with prejudice. *Id*. at *8. In *Galligan*, the federal district court cited to the standard from

5

*Morrison*, which remains good law.  *Galligan*, 2019 WL 423356, at \*3 ("statutes are presumed not to apply extraterritorially; '[w]hen a statute gives no clear indication of extraterritorial application, it has none.'" (quoting *Morrison*, 561 U.S. at 255).  The district court goes on to cite to *RJR Nabisco* as well, to determine the very question facing this Court: "whether the case involves a domestic application of the statute."  *Galligan*, 2019 WL 423356, at \*3 (*citing RJR Nabisco*, 136 S. Ct. at 2101).  The district court in *Galligan* concludes that the accommodations claims under Title III of the ADA and the RA – the same claims raised by Plaintiff here – did not involve domestic application of the statutes and dismissed the claims.  *Galligan*, 2019 WL 423356, at \*8.  In determining that Title III of the ADA and the RA did not apply outside of the United States, the court held as follows:

> Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of accommodation." 42 U.S.C. § 12182(a). ***Title III does not clearly indicate that it applies outside the United States. And like the Rehab Act, there is evidence pointing in the other direction***, as Title I of the ADA (prohibiting employment discrimination) explicitly extends outside the United States, see Civil Rights Act of 1991, Pub. L. 102-166 § 109, 105 Stat. 1071 (1991) (codified at 42 U.S.C. § 12111(4)), but Title III does not. "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 561 U.S. at 265.

*Id*. at \*3 (emphasis added).

The law is clear.  Applied to the undisputed facts, the Court should enter summary judgment in RUSM's favor on Counts I and II.  Here, all of the conduct pertaining to any purported request for accommodation took place in Dominica, which is where Plaintiff attended RUSM.  Therefore, the ADA and RA do not apply.

**b.  Because the ADA and RA are Not Applicable in Dominica as a Matter of Law, Judgment Should Also be Entered on Count VIII and Count IX of the Complaint**

Plaintiff contends that RUSM is liable for fraudulent inducement and negligent misrepresentation because it made a misstatement on its website by representing that: "It is the policy and practice of the University to comply with the Americans with Disabilities Act as applicable and practical in Dominica." Compl. at ¶¶ 106, 115. However, Plaintiff cannot succeed on these claims because he cannot prove that the aforementioned statement is actually false or that he justifiably relied on such a statement.

Under Florida law, to prevail on a claim for fraudulent inducement, plaintiff must show that (1) the defendant made a misrepresentation of material fact; (2) the defendant knew or should have known of the falsity of the statement; (3) the defendant intended for the misrepresentation to induce plaintiff to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. *Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005). *See also* Order at 6.

Similarly, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove that (1) the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the defendant was negligent in making the statement because he should have known that the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004). *See also* Order at 6-7.

Here, because the ADA is not applicable in Dominica, RUSM's statement that it would comply with the ADA "***as applicable and practical in Dominica***" cannot be false as a matter of law, nor could Plaintiff justifiably rely on such a representation. Moreover, the evidence in the

48917323;4

record establishes that, even though RUSM is not bound by the ADA in Dominica, the school made every effort to provide students with an accommodation where such an accommodation was requested.  Therefore, Counts VIII and IX fail and summary judgment is appropriate.

## V.    __CONCLUSION__

WHEREFORE, defendant Ross School of Medicine, School of Veterinary Medicine Limited respectfully requests that the Court enter an Order: (i) granting summary judgment in favor of RUSM and against Plaintiff on Counts I, II VIII and IX of Plaintiff's Third Amended Complaint and (ii) granting RUSM such other and further relief as the Court deems just and proper.

Dated: May 29, 2019                          Respectfully submitted,

_s/Ryan Roman_
MICHAEL C. MARSH
Florida Bar Number:  0072796
Email:  michael.marsh@akerman.com
Secondary:  sharon.luesang@akerman.com
RYAN A. ROMAN
Florida Bar Number:  0025509
Email:  ryan.roman@akerman.com
Secondary:  dorothy.matheis@akerman.com
DONNIE M. KING
Florida Bar Number: 101386
Email: donnie.king@akerman.com
Secondary: simone.tobie@akerman.com
OCTAVIA M. GREEN
Florida Bar Number: 119179
Email: octavia.green@akerman.com
Secondary: simone.tobie@akerman.com
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

_Attorneys for Defendant Ross University School of Medicine, School of Veterinary Medicine Limited_

48917323;4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2019 a true and correct copy of the foregoing document was served via CM/ECF on:

Oluwamuyiwa Awodiya
15005 Dahlia Drive
Bowie, Maryland 20721
Telephone: (240) 602-1836
E-mail: drmuyiwa.a@gmail.com


*s/Ryan Roman*
Ryan Roman

48917323;4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2019 a true and correct copy of the foregoing document was served via ECF on the counsel of record.


*/s/Oluwamuyiwa Awodiya*
By: Oluwamuyiwa Awodiya, *pro se* litigant